1  Thomas v. Girardi, SBN 36603
2  Amy F. Solomon, SBN 140333
   GIRARDI | KEESE
3  1126 Wilshire Boulevard
4  Los Angeles, California 90017
   Telephone:   (213) 977-0211
5  Facsimile:   (213) 481-1554

6  Kurt B. Arnold Texas SBN 24036150
7  Jason A. Itkin Texas SBN 24032461
   Noah M. Wexler
8  ARNOLD & ITKIN LLP
9  1401 McKinney Street, Suite 2550
   Houston, Texas 77010
10 Telephone:   (713) 222-3800
11 Facsimile:   (713) 222-3850

12 J. Steve Mostyn SBN 00798389
13 The Mostyn Law Firm
   3810 West Alabama Street
14 Houston, TX 77027
15 Telephone:   (713) 861-6616
   Facsimile:   (713) 861-8084
16
17 Attorney(s) For: Plaintiff(s)

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 12 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

18
19
20          SUPERIOR COURT OF THE STATE OF CALIFORNIA
21                    COUNTY OF LOS ANGELES
22

SHERRY PATE, DONNA FLORES,       )   CASE NO.   BC515037
23 JOAN ROBERTS, ROSEMARY         )
24 TORRES, ALLISON MOOREHEAD,     )   **Complaint:**
   MARY BOND, JOSEPHINE PENZA,    )
25 VALERIE SCHEIBNER, DENISE      )   (1) Negligence & Negligence Per Se;
26 HUTCHINSON, JANICE RICHARDS,   )   (2) Design Defect;
   WILMA HAYMES, BEVERLY          )   (3) Manufacturing Defect;
27 TOWERY, PATRICIA DABNEY,       )   (4) Failure to Warn;
28 NICOLE DALE, BESSIE JORDAN,    )   (5) Breach of Implied Warranties; and
   CHARLENE PRUETT, LELA          )   (6) Gross Negligence

**EXHIBIT 1**
                                    1
**6**

**COMPLAINT FOR DAMAGES**

1  STANLEY, DARLENE REIMOND,       )   **DEMAND FOR TRIAL BY JURY**
   CHERYL REYNOLDS, DONNA          )
2  ADKINS, SALLY KELLEY,           )
   ADELINE LEARD, YVETTE           )
3  THOMPSON, SHARYN KMIECIAK,      )
4  SUSAN MACMURDO, DONNA           )
   LACKEY, DEBORAH NAVARRO,        )
5  LEONA BEHEL, ROBIN FLOYD,       )
6  TAMI TITTLE, SANDRA             )
   YARBROUGH, GWENDOLYNE           )
7  ENGLAND, MARY KING, ANN         )
8  MCALISTER, KAREN WARREN,        )
   YVONNE BRANHAM, SYLVIA          )
9  OLIVER-STITT, JENNIFER          )
10 GIORDANO, REBECCA SANDERS,      )
   MYRTELINA RIVERA, KATHY         )
11 JENNINGS, TRESA BERGIN, LOIS    )
12 GILLUM, KRISTEN HODGES,         )
   MELINDA CALHOUN, GENEVA         )
13 CHRISTIAN, CHERRI               )
14 BLANKENSHIP, REBECCA            )
   BOUTWELL, SYLVIA MCQUISTON,     )
15 KAREN WASCHKOWSKI,              )
16 MARYANN SCARAMUZZINI,           )
   CAROL BENSON, ANITA             )
17 SOKERKA, ROBIN MARET,           )
   PAMELA LINGNAU, MARY            )
18 BISHOP, RANDEE NIMMER, ANNA     )
19 WEBB, RUTHIE ALGAIER, EDDIE     )
   KREDER, EVA AINESWORTH,         )
20 ESTHER ROMERO, DARLENE          )
21 CAMPBELL, BARBARA HALE, SUE     )
   WEAVER, and                     )
22                                 )
23          Plaintiff(s),          )
                                   )
24 vs.                             )
                                   )
25 BOSTON SCIENTIFIC               )
26 CORPORATION a Delaware          )
   Corporation; and DOES 1 through 500, )
27 inclusive,                      )
28
          Defendant(s).

**EXHIBIT 1**

**7**   2

COMPLAINT FOR DAMAGES

_____ )

Plaintiffs, as identified in further detail below, bring this action for damages against Defendant, as identified in further detail below, and would show the Court as follows:

## I.

## Parties

**A.   Plaintiffs**

1.   At all relevant times, Plaintiffs resided in the United States of America or its territories. Plaintiffs include women who had Defendant's Mesh Products implanted in their bodies.  There are a total of sixty-five (65) Plaintiffs bringing claims in this action.

2.   As a result of Defendant's intentional and coordinated conduct, Plaintiffs were implanted with Defendant's defective and dangerous Mesh Products.  Plaintiffs' use of Defendant's Mesh Products caused Plaintiffs' injuries and resulting damages. As pled with additional particularly herein, Defendant's Mesh Products were defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with their use.

3.   Plaintiff Sherry Pate is a female resident and citizen of the state of California.

4.   Plaintiff Donna Flores is a female resident and citizen of the state of California.

5.   Plaintiff Joan Roberts is a female resident and citizen of the state of California.

6.   Plaintiff Rosemary Torres is a female resident and citizen of the state of California.

7.   Plaintiff Allison Moorehead is a female resident and citizen of the state of California.

8.   Plaintiff Mary Bond is a female resident and citizen of the state of California.

9.   Plaintiff Josephine Penza is a female resident and citizen of the state of Massachusetts.

10.   Plaintiff Valerie Scheibner is a female resident and citizen of the state of Massachusetts.

11.   Plaintiff Denise Hutchinson is a female resident and citizen of the state of Delaware.

**EXHIBIT 1**

**COMPLAINT FOR DAMAGES**

12. Plaintiff Janice Richards is a female resident and citizen of the state of Iowa.

13. Plaintiff Wilma Haymes is a female resident and citizen of the state of Georgia.

14. Plaintiff Beverly Towery is a female resident and citizen of the state of Texas.

15. Plaintiff Patricia Dabney is a female resident and citizen of the state of Texas.

16. Plaintiff Nicole Dale is a female resident and citizen of the state of Georgia.

17. Plaintiff Bessie Jordan is a female resident and citizen of the state of Georgia.

18. Plaintiff Charlene Pruett is a female resident and citizen of the state of Georgia.

19. Plaintiff Lela Stanley is a female resident and citizen of the state of Georgia.

20. Plaintiff Darlene Reimond is a female resident and citizen of the state of Ohio.

21. Plaintiff Cheryl Reynolds is a female resident and citizen of the state of Ohio.

22. Plaintiff Donna Adkins is a female resident and citizen of the state of West Virginia.

23. Plaintiff Sally Kelley is a female resident and citizen of the state of Utah.

24. Plaintiff Adeline Leard is a female resident and citizen of the state of Oregon.

25. Plaintiff Yvette Thompson is a female resident and citizen of the state of Oregon.

26. Plaintiff Sharyn Kmieciak is a female resident and citizen of the state of Pennsylvania.

27. Plaintiff Susan MacMurdo is a female resident and citizen of the state of Pennsylvania.

28. Plaintiff Donna Lackey is a female resident and citizen of the state of Texas.

29. Plaintiff Deborah Navarro is a female resident and citizen of the state of Texas.

30. Plaintiff Leona Behel is a female resident and citizen of the state of Alabama.

31. Plaintiff Robin Floyd is a female resident and citizen of the state of Alabama.

32. Plaintiff Tami Tittle is a female resident and citizen of the state of Alabama.

33. Plaintiff Sandra Yarbrough is a female resident and citizen of the state of Alabama.

34. Plaintiff Gwendolyne England is a female resident and citizen of the state of Arizona.

35. Plaintiff Mary King is a female resident and citizen of the state of Georgia.

## EXHIBIT 1

9   4

**COMPLAINT FOR DAMAGES**

36.   Plaintiff Ann McAlister is a female resident and citizen of the state of Georgia.

37.   Plaintiff Karen Warren is a female resident and citizen of the state of Indiana.

38.   Plaintiff Yvonne Branham is a female resident and citizen of the state of Kentucky.

39.   Plaintiff Sylvia Oliver-Stitt is a female resident and citizen of the state of Kentucky.

40.   Plaintiff Jennifer Giordano is a female resident and citizen of the state of New Jersey.

41.   Plaintiff Rebecca Sanders is a female resident and citizen of the state of Ohio.

42.   Plaintiff Myrtelina Rivera is a female resident and citizen of the state of Pennsylvania.

43.   Plaintiff Kathy Jennings is a female resident and citizen of the state of Tennessee.

44.   Plaintiff Tresa Bergin is a female resident and citizen of the state of Texas.

45.   Plaintiff Lois Gillum is a female resident and citizen of the state of Texas.

46.   Plaintiff Kristen Hodges is a female resident and citizen of the state of Texas.

47.   Plaintiff Melinda Calhoun is a female resident and citizen of the state of West Virginia.

48.   Plaintiff Geneva Christian is a female resident and citizen of the state of West Virginia.

49.   Plaintiff Cherri Blankenship is a female resident and citizen of the state of Alabama.

50.   Plaintiff Rebecca Boutwell is a female resident and citizen of the state of Alabama.

51.   Plaintiff Sylvia McQuiston is a female resident and citizen of the state of Florida.

52.   Plaintiff Karen Waschkowski is a female resident and citizen of the state of Iowa.

53.   Plaintiff Maryann Scaramuzzini is a female resident and citizen of the state of New Jersey.

54.   Plaintiff Carol Benson is a female resident and citizen of the state of New Jersey.

55.   Plaintiff Anita Sokerka is a female resident and citizen of the state of Nevada.

56.   Plaintiff Robin Maret is a female resident and citizen of the state of Ohio.

57.   Plaintiff Pamela Lingnau is a female resident and citizen of the state of Oklahoma.

58.   Plaintiff Mary Bishop is a female resident and citizen of the state of Pennsylvania.

59.   Plaintiff Randee Nimmer is a female resident and citizen of the state of Tennessee.

**EXHIBIT 1**

**10**

**COMPLAINT FOR DAMAGES**

60.    Plaintiff Anna Webb is a female resident and citizen of the state of Texas.

61.    Plaintiff Ruthie Algaier is a female resident and citizen of the state of Texas.

62.    Plaintiff Eddie Kreder is a female resident and citizen of the state of Texas.

63.    Plaintiff Eva Ainesworth is a female resident and citizen of the state of Texas.

64.    Plaintiff Esther Romero is a female resident and citizen of the state of Utah.

65.    Plaintiff Darlene Campbell is a female resident and citizen of the state of Virginia.

66.    Plaintiff Barbara Hale is a female resident and citizen of the state of Virginia.

67.    Plaintiff Sue Weaver is a female resident and citizen of the state of West Virginia.

**B.    Defendant**

68.    Boston Scientific Corporation is a Delaware corporation with its corporate headquarters in Boston, Massachusetts.

69.    Defendant Boston Scientific Corporation is referred to herein as "Defendant."

70.    Defendant designed, manufactured, packaged, labeled, marketed, sold, and distributed the transvaginal mesh products at issue in this matter (collectively referred to herein as "Defendant's Mesh Products" or "Mesh Products").

71.    Defendant is a citizen of Delaware and Massachusetts.

72.    Plaintiffs are ignorant of the true names and capacities of defendants herein sued as DOES 1 through 500 inclusive, and therefore sues said defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint and allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that each of said fictitiously named defendants is negligently responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries as herein alleged were proximately caused by such negligence.

**EXHIBIT 1**

**11**    6

**COMPLAINT FOR DAMAGES**

## II.

### Jurisdiction & Venue

72.     Jurisdiction in this Court is proper as Defendant does business in the state of California and committed torts in whole or in part against Plaintiffs in California.

73.     Venue is proper in this Court pursuant to Cal. Civ. Proc. Code § 395 because Defendant resides in Los Angeles County, and maintains its principal place of business in Los Angeles County. Further, one or more of the named Plaintiffs reside in, were implanted with Defendant's Mesh Products, and/or were injured in California.

74.     At all times material to this action, Defendant and/or their predecessors in interest and/or its subsidiaries, regularly engaged in business in California and Los Angeles County, including advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging, producing, processing, promoting, researching, selling, testing, and/or training in the use of the Mesh Products.

75.     Defendant regularly solicits and transacts business in, receives substantial revenues from, and/or distributes products in California and Los Angeles County.

76.     It was reasonably foreseeable to Defendant that the Mesh Products would be used on patients such as Plaintiffs and in the state of California and Los Angeles County.

77.     At all relevant times, Defendant transacted business in the state of California and Los Angeles County.

78.     At all relevant times, Defendant committed tortious conduct within the state of California and Los Angeles County.

79.     At all relevant times, Defendant used or possessed property situated in the state of California and Los Angeles County.

**EXHIBIT 1**

12     7

**COMPLAINT FOR DAMAGES**

80.     At all relevant times, Defendant marketed, promoted, and sold its Mesh Products throughout the state of California and Los Angeles County.

81.     Defendant's contacts with the state of California and Los Angeles County were at all relevant times systematic and continuous such that the exercise of jurisdiction comports with the notions fair play and substantial justice.

82.     Additionally, some Plaintiffs named herein were implanted with and suffered injury as a direct and proximate result of Defendant's Mesh Products and/or Defendant's acts and/or omissions in the state of California and Los Angeles County.

83.     Plaintiffs do not assert claims or rights arising under the Constitution, treaties, or laws of the United States; thus, there is no federal question at issue pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1331.

84.     Complete diversity of citizenship is lacking pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1332(c) as certain Plaintiffs and Defendant are citizens of the same state.

85.     Plaintiffs' claims are brought pursuant to state law. As such, there is no federal subject matter jurisdiction because no federal question is raised and complete diversity does not exist.

86.     Plaintiffs' claims present common questions of fact and law concerning, as alleged herein, what information Defendant possessed concerning the harmful effects of the Mesh Products, what information Defendant chose to disclose, and what information Defendant was required by law to disclose about those harmful effects.

87.     Plaintiffs' claims are logically related because all Plaintiffs allege the same claims related to their use of Mesh Products. Further, these Mesh Products were defectively designed, manufactured, marketed and sold by Defendant, and Defendant failed to provide appropriate warnings and instructions regarding the dangers posed by these Mesh Products.

**EXHIBIT 1**

13     8

COMPLAINT FOR DAMAGES

88.     Defendant's conduct, which resulted in Plaintiffs' injuries, is common to all Plaintiffs and includes, but is not limited to, Defendant's failure to conduct adequate safety and efficacy testing, Defendant's submissions to the regulatory agency that indicated that the Mesh Products were the substantial equivalent to pre-existing and previously approved devices, Defendant's marketing materials and literature, and Defendant's failure to provide adequate warnings regarding the risks associated with Defendant's Mesh Products.

89.     Defendant's conduct in designing, developing, marketing, and distributing these products relates to all Plaintiffs and provides a common universe of facts underlying Plaintiffs' claims, such that Plaintiffs' claims against Defendant arise from the same transaction or occurrence or the same series of transactions or occurrences.

90.     Plaintiffs suffered injuries and damages as a result of the Mesh Products, and common liability facts will be presented to demonstrate that Defendant knew or should have known that its Mesh Products cause such serious complications and injuries.

91.     Discovery will be identical for all Plaintiffs' claims with respect to Defendant's conduct and regulatory violations, as all claims arise out of the same acts and/or omissions of Defendant and involve common questions of law and/or fact.

92.     Joinder of Plaintiffs' claims is proper because Plaintiffs' claims arise out of the same acts and/or omissions of Defendant and involve common questions of law and/or fact.

93.     This is an action for damages that exceeds the minimum jurisdictional limits of this Court.

94.     Plaintiffs have timely filed this lawsuit within the applicable statutory limitations period.

95.     All conditions precedent have been satisfied or have occurred.

96.     Plaintiffs' claims are not removable to federal court on the basis of diversity jurisdiction, federal question jurisdiction, or any other jurisdictional basis, any attempt to remove this matter would be improper and would provide grounds for sanctions.

**EXHIBIT 1**

9

**COMPLAINT FOR DAMAGES**

## III.

## Tolling of Statute Of Limitations

97.    Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rule, and/or fraudulent concealment.

98.    Despite diligent investigation by Plaintiffs into the cause of their injuries, the nature of Plaintiffs' injuries and damages and their relationship to the Mesh Products was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed within the applicable statutory limitations period.

99.    Further, the running of the statute of limitations in this cause is tolled under the doctrine of equitable tolling. Defendant is estopped from asserting a statute of limitations defense due to Defendant's concealment of the true risks associated with the use of the Mesh Products. Plaintiffs could not have reasonably discovered the wrongdoing. As a direct and proximate result of Defendant's concealment, the Plaintiffs suffered severe injuries and damages.

## IV.

## General Allegations

100.    At all relevant times, Defendant designed, patented, tested, manufactured, labeled, marketed, sold, and distributed the Mesh Products in question.  Defendant's Mesh Products were designed primarily for the purposes of treating pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI").

101.    POP is a condition that results from weakened or stretched tissues that support the female pelvic organs. When treating POP, the Mesh Products are usually implanted vaginally to reinforce the vaginal wall.

## EXHIBIT 1
**15**   10

---

**COMPLAINT FOR DAMAGES**

102.   SUI is a medical condition involving involuntary leakage of urine during moments of physical activity.   When treating SUI, Defendant's Mesh Products are usually implanted vaginally to support a patient's urethra.

103.   Surgical mesh products have been used to repair abdominal hernias for decades. In the 1990's surgeons began using surgical mesh for the treatment of POP and SUI.   At or near that time, Defendant began to modify the mesh previously used for abdominal hernia repairs to be used as products specifically marketed for the surgical treatment of POP and SUI.   Defendant began marketing these Mesh Products along with the tools and appurtenances used for pelvic area tissue insertion and fixation.

104.   Defendant's Mesh Products are targeted for use in women who suffer from POP and/or SUI. Defendant's Mesh Products are composed of biologic and/or non-absorbable synthetic.   Despite Defendant's claims that the materials used in their Mesh Products are inert, the scientific evidence indicates that this material is biologically incompatible with human tissue and promotes a negative immune response and/or inflammation of pelvic tissue in a large subset of patients frequently resulting in significant adverse events, severe injuries, and debilitating medical complications.

105.   Further, the collagen components of Defendant's Mesh Products cause hyper-inflammatory responses leading to medical problems including, but not limited to, chronic pain and fibrotic reaction. Defendant's Mesh Products cause chronic pain, fibrotic reaction, disability, and infection resulting from hyper-inflammatory responses to Defendant's Mesh Products.

106.   Defendant's Mesh Products cause erosion through vaginal epithelium, infection, pain, urinary problems, and recurrence of prolapse and/or incontinence in addition to complications at the time of insertion, which included the perforation of the bowel, bladder, and blood vessels.   In addition, Defendant's Mesh Products degrade, fragment, shrink, migrate, and fold after implantation.

107.   Defendant's Mesh Products are biologically incompatible with human tissue and stimulate a negative immune response in patients.   This negative response promotes inflammation of the pelvic tissue

**EXHIBIT 1**

**16**   11

<u>COMPLAINT FOR DAMAGES</u>

and contributes to the formation of severe adverse reactions to the mesh, such as those experienced by Plaintiffs.

108.    Despite having knowledge of these serious side effects, Defendant has continued to market the Mesh Products as safe treatment options for POP and SUI.

109.    At all relevant times, Defendant knew or should have known of the risks and complications associated with Defendant's Mesh Products. Defendant knew or should have known that the Mesh Products unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do not involve the same risks.

110.    At all relevant times, Defendant possessed the knowledge, the means, and the duty to adequately warn regarding the risks associated with the Mesh Products.

111.    At all relevant times, Defendant, their agents, servants, and employees acting in the course and scope of their employment, negligently and recklessly breached their duty to adequately warn regarding the risks associated with the Mesh Products.

112.    At all relevant times, Defendant knew or should have known that the Mesh Products exposed Plaintiffs to unreasonable risk while failing to provide significant improvement in clinical outcomes over alternative treatments which were equally or more effective and did not involve the same risk.

113.    Despite having extensive knowledge of the extreme risks associated with the use of the Mesh Products, as well as the absolute duty to properly and adequately warn foreseeable users, Defendant failed to adequately warn of the risks associated with the Mesh Products.

114.    Defendant knew of the dangerous side effects associated with the Mesh Products. Defendant failed to properly evaluate the risk profile of the Mesh Products or did not properly publish, disclose, and/or disseminate the results of the testing and studies it did conduct. Defendant failed to

**EXHIBIT 1**
**17**    12

adequately warn or remedy the risks associated with the Mesh Products, but instead concealed, suppressed and failed to disclose the dangers.

115.   Defendant omitted the risks, dangers, defects, and disadvantages of the Mesh Products, and advertised, promoted, marketed, sold and distributed the Mesh Products as safe medical devices when Defendant knew or should have known that the Mesh Products were not safe for their intended purposes, and that the Products would cause, and did cause, serious medical problems for Plaintiffs.

116.   Contrary to Defendant's representations and marketing, Defendant's Mesh Products have significantly high rates of failure, injury, and complications, fail to perform as intended, and have caused severe and irreversible injuries to Plaintiffs.

117.   Defendant failed to adequately disclose, report, and/or disseminate information regarding the propensity of the Mesh Products to fail and cause injury and complications, and have made unfounded representations regarding the efficacy and safety of the Mesh Products through various means and media. Defendant underreported information about the injuries caused by the use of the implantation kits and instructions that accompany Defendant's Mesh Products.

118.   Defendant failed to adequately test and evaluate the risks and benefits of Defendant's Mesh Products.  Further, Defendant failed to design and establish a safe, effective procedure for removal of the Mesh Products, or to determine if a safe, effective procedure for removal of the Mesh Products exists.

119.   At all relevant times, feasible, suitable, safer, and more effective alternatives to the Mesh Products existed.

120.   At all relevant times, Defendant continued to promote the Mesh Products as safe and effective having conducting no clinical trials to support the efficacy and safety of the Mesh Products.

121.   Defendant failed to disclose, train, or disseminate information about the known risks and failed to warn of dangers and risks associated with the Mesh Products of which Defendant knew or should have known.

**EXHIBIT 1**

**18**   13

122.    Defendant failed to provide adequate warnings, training, and instructions about the dangers and adverse effects caused by the Mesh Products. Defendant's Mesh Products were defective as marketed due to inadequate warnings, training instructions, labeling and/or inadequate testing.

123.    Defendant's Mesh Products were in the same or substantially similar condition as they were when they left Defendant's possession, and in the condition directed by and expected by Defendant.

124.    Defendant's Mesh Products were at all times utilized and implanted in a manner foreseeable to Defendant.

125.    The injuries, conditions, and complications suffered by those implanted with Defendant's Mesh Products were foreseeable consequences of Defendant's conduct and the dangerous and defective nature of Defendant's Mesh Products.

126.    As a direct and proximate result of Defendant's Mesh Products and/or Defendant's negligence, negligence per se, defective design, defective manufacture, failure to warn, breach of implied warranties, and/or gross negligence, Plaintiffs have suffered and will continue to suffer severe injuries and damages as further described herein.

## V.

## Plaintiffs' Mesh Implants & Resulting Injuries

127.    Plaintiffs incorporate by reference all the above paragraphs as if set forth in full herein.

128.    Plaintiffs bring this action to recover damages resulting from injuries suffered as a direct and proximate result of the implantation of Defendant's Mesh Products.

129.    Plaintiffs' use of Defendant's Mesh Products caused Plaintiffs' injuries and resulting damages.  During Plaintiffs' procedures, Defendant's Mesh Products were used in a manner reasonably foreseeable to Defendant.  Defendant's Mesh Products were defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with the Mesh Products use at the time of their implantation in Plaintiffs.

**EXHIBIT 1**

**COMPLAINT FOR DAMAGES**

130.   Plaintiffs have suffered serious injuries and damages as a direct and proximate result of Defendant's Mesh Products.  Plaintiffs' injuries necessitate continued medical treatment for the foreseeable future.

131.   Prior to Plaintiffs' respective surgeries, Defendant knew or should have known of the risks associated with implantation of the Mesh Products and possessed the means to provide adequate warning regarding the risks associated with Defendant's Mesh Products.  Had Plaintiffs been adequately warned that Defendant's Mesh Products could cause serious side effects, they would have not have undergone treatment involving Defendant's Mesh Products.

132.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Plaintiffs' implanting physicians, were unaware, and could not reasonably know, or through the exercise of reasonable diligence could not have known, that the Mesh Products exposed Plaintiffs to the risks and injuries alleged herein.

133.   As a direct and proximate result of Defendant's conduct, Plaintiffs suffered physical injuries and damages. Further, the Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss.

134.   Plaintiffs also have suffered and will sustain past and future general and special damages, including past and future medical care and treatment, lost wages, and lost earning capacity.

135.   As a direct and proximate result of Defendant's conduct and/or Defendant's Mesh Products, Plaintiffs have incurred, and will continue to incur for the foreseeable future, medical, nursing, diagnostic, hospital, pharmaceutical, rehabilitative, and other related costs and expenses for Plaintiffs' treatment and care, along with lost wages, lost earning capacity, and other damages for which they are entitled to compensation.

**EXHIBIT 1**
**20**    15

136.    Plaintiffs are entitled to punitive damages because Defendant's conduct was reckless and without regard for the Plaintiffs' and the public's safety and welfare. Defendant misled both the medical community and the public at large, including the Plaintiffs, by making false representations about the safety of the Mesh Products. Defendant downplayed, understated and/or disregarded its knowledge of the serious risks associated with the Mesh Products.  Nevertheless, Defendant continued to market the Mesh Products by providing false and misleading information with regard to their safety and efficacy.  Defendant's conduct constitutes a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public.

137.    Defendant is liable to the Plaintiffs for all damages, punitive damages, and all other relief to which Plaintiffs are entitled to by law or equity.

## VI.

## Plaintiffs' Causes Of Action

138.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

139.    Plaintiffs set forth the following claims in the alternative, such that the sufficiency of this Complaint shall not be defeated by an inconsistency or insufficiency among any one or more of the alternative claims set forth herein.

## FIRST CAUSE OF ACTION

## Negligence & Negligence Per Se- As to All Defendants

140.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

141.    At relevant times, Defendant had a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, marketing, labeling, packaging, sale, and distribution of Defendant's Mesh Products.

142.    Defendant is liable to Plaintiffs as a result of Defendant's negligent advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging,

## EXHIBIT 1

21

## COMPLAINT FOR DAMAGES

patenting, producing, processing, promoting, selling, testing, and/or training in the use of Defendant's Mesh Products.

143.    Defendant was under a duty to exercise reasonable care in advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing the Mesh Products.

144.    Defendant owed a duty to adequately warn of the risks, dangers, and adverse effects associated with the use of Defendant's Mesh Products.

145.    Defendant negligently and carelessly breached the above-described duties to Plaintiffs by:

a.    Failing to design and manufacture the Mesh Products without defects that would result in an unreasonable risk of harm to patients implanted with the Mesh Products;

b.    Failing to exercise reasonable care in testing the Mesh Products prior to marketing, sale, and distribution of the Mesh Products so as to avoid unreasonable risk of harm and injury to patients implanted with the Mesh Products;

c.    Failing to exercise reasonable care in inspecting the Mesh Products prior to distribution to avoid the implantation of the defective Mesh Products in women and exposing them to unreasonable risk or harm.

d.    Failing to ensure the Mesh Products warnings to the medical community, physicians, the Plaintiffs' physicians, and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with the Mesh Products;

e.    Failing in their obligation to provide relevant information, data and warnings regarding the adverse health risks associated with exposure to the Mesh Products, and/or that there existed safer and more or equally effective alternative methods or treatment options;

f.    Failing to conduct post market safety surveillance and report that information;

g.    Failing to include adequate warnings and/or provide adequate and clinically relevant information;

h.    Failing to continually monitor, test, and analyze data regarding safety, efficacy, and the implantation practices for the Mesh Products;

**EXHIBIT 1**

22    17

**COMPLAINT FOR DAMAGES**

i.   Failing to review all adverse product event information and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by the Mesh Products to the appropriate parties;

j.   Failing to provide adequate post-marketing warnings and instructions;

k.   Failing to disclose the results of the testing and other information in their possession regarding the possibility that the Mesh Products can cause serious and catastrophic side effects;

l.   Failing to adequately warn about the dangers of using the Mesh Products;

m.   Promoting and marketing the Mesh Products as safe and effective for use with women when, in fact, they were unsafe;

n.   Failing to act as a reasonably prudent product manufacturer in advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging, producing, processing, promoting, researching, selling, testing, and/or training in the use of the Mesh Products;

o.   Failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with the safety and efficacy of the Mesh Products' use;

p.   Continuing to promote the safety and effectiveness of the Mesh Products, while downplaying their risks, even after Defendant knew or should have known of the risks of the Mesh Products;

q.   Negligently and carelessly promoting the Mesh Products as safe and effective for use with women when, in fact, they were unsafe;

r.   Negligently and carelessly over-promoting the Mesh Products in a zealous and unreasonable way, without regard to the potential danger that they posed to patients; and

s.   Negligently and carelessly failing to act as a reasonably prudent product manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

146.   In addition, Defendant's negligence and negligence per se resulted in the negligent design and/or manufacture of Defendant's Mesh Products.

**EXHIBIT 1**

23        18

**COMPLAINT FOR DAMAGES**

147.    Defendant negligently failed to instruct and warn Plaintiffs and/or Plaintiffs' physicians, hospitals, health care professionals, and the general public regarding the risks associated with Defendant's Mesh Products.  Specifically, Defendant did not provide sufficient or adequate warnings regarding:

a.    The tendency of the Mesh Products to shrink, migrate, fragment, degrade and deform following implantation;

b.    The propensity of the Mesh Products to cause patients chronic infections;

c.    The propensity of the Mesh Products to require corrective surgery to remove or modify the placement of the Mesh Products;

d.    The Mesh Products design defects outlined herein;

e.    The increased risks associated with the Mesh Products when compared to equally or more effective alternative treatment options;

f.    The increased risk of complications associated with future corrective surgeries following implantation of the Mesh Products when compared to equally or more effective alternative treatment options;

g.    The increased risk for multiple future surgeries;

h.    The tendency of Mesh Products to extrude and erode;

i.    The propensity of Mesh Products to cause chronic infection and recurrent, intractable, and chronic pain;

j.    The propensity of the Mesh Products to cause permanent scarring in the vaginal and pelvic region, following implantation;

k.    The design defects of the Mesh Products which inhibit proper mating with the pelvic and vaginal tissues;

l.    The propensity of the Mesh Products to cause severe complications and expose patients to many health hazards;

m.    The propensity of removal of the Mesh Products to necessitate additional surgeries, exposing the patient to greater risk; and/or

n.    The risk that complete removal of the Mesh Products may not remedy the health issues of the patient.

148.    Defendant knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Defendant's failure to exercise ordinary care, as described above.

**EXHIBIT 1**

**24**    19

**COMPLAINT FOR DAMAGES**

149.   Defendant's conduct described herein constitutes negligence *per se*.

150.   As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## SECOND CAUSE OF ACTION

### Strict Liability- Design Defect- As to All Defendants

151.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

152.   Defendant is strictly liable to Plaintiffs for injuries and damages suffered as result of the defective design of the Mesh Products.

153.   At all relevant times, Defendant's Mesh Products were not reasonably safe for their intended uses and were defectively designed.

154.   Defendant manufactured, marketed, promoted, distributed, and sold the Mesh Products in the stream of commerce despite the design defects that Defendant knew or should have known of.

155.   Defendant's Mesh Products are defectively designed when compared to safer non-vaginal mesh alternative treatments.  Patients who are implanted with Defendant's Mesh Products are exposed to a number of dangerous defects which include, but are not limited to:

   a.   The Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

   b.   The materials used in the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

   c.   The design of the Mesh Products and/or implantation kits requires implantation into and through an area of the body with high levels of bacteria that can adhere to the mesh and/or can injure nerves in the pelvic region causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

   d.   The design of the Mesh Products increase the likelihood of contracture, shrinkage, erosion, and/or folding causing chronic immune, inflammatory,

### EXHIBIT 1

**25**   20

and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

e.   The design of the Mesh Product increases the risk of movement, elongation, and/or deformity after implantation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

f.   The design of the Mesh Products increases the risk of improper mating to the delicate and sensitive areas where they are implanted causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

g.   The design of the Mesh Products increases the risk of degradation, erosion, and/or fragmentation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

h.   The disintegration of and hyper-inflammatory responses to the collagen components of the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

i.   The hardening of the Mesh Products following implantation cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae; and/or

j.   The design of the Mesh Products creates a non-anatomic condition in the pelvis causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae.

156.   Defendant knew and intended that consumers, including Plaintiffs, would use the Mesh Products, without any inspection for defects, and those using the Mesh Products would rely upon the representations made by Defendant.

157.   Prior to the manufacture, sale, and distribution of the Mesh Products, Defendant knew, or should have known, that the Mesh Products were defectively designed.

158.   The Mesh Products were used for the intended purpose and the dangerous defects could not have been discovered through the exercise of due care.

**EXHIBIT 1**

26   21

**COMPLAINT FOR DAMAGES**

159.   At the time that Defendant manufactured, marketed, promoted, distributed, and sold the Mesh Products, there existed safer and more or equally effective alternative treatment methods.

160.   Defendant is strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the defectively designed Mesh Products.

161.   As a direct and proximate result of Defendant's defective design of the Mesh Products, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## THIRD CAUSE OF ACTION

### Strict Liability- Manufacturing Defect- As to All Defendants

162.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

163.   Defendant is strictly liable to Plaintiffs for injuries and damages suffered as result of the defective manufacture of the Mesh Products.

164.   At all relevant times, Defendant's Mesh Products were not reasonably safe for their intended uses and were defectively manufactured.

165.   Defendant's Mesh Products were not reasonably safe for their intended uses and were defective as described herein as a matter of law with respect to their manufacture. These manufacturing defects pose unreasonable risks of serious bodily harm to Plaintiffs.

166.   Defendant knew that the Mesh Products would be used by Plaintiffs without inspection for defects, and that there was a reasonable expectation that Defendant's Mesh Products were free of manufacturing defects.

167.   Prior to the manufacture, sale, and distribution of the Mesh Products, Defendant knew, or should have known, that the Mesh Products were defectively manufactured.

168.   The Mesh Products used for their intended purpose and the manufacturing defects could not have been and were not discovered through the exercise of due care.

**EXHIBIT 1**

**27**  22

169.     At all relevant times, there existed safer and more or equally effective alternative treatment methods.

170.     Defendant is strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the defectively manufactured Mesh Products.

171.     As a direct and proximate result of Defendant's defective manufacture of the Mesh Products, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## FOURTH CAUSE OF ACTION

### Strict Liability- Failure to Warn- As to All Defendants

172.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

173.     At all relevant times, Defendant's Mesh Products were not reasonably safe for their intended uses and were defective as a matter of law due to their lack of appropriate and necessary warnings.

174.     Amongst other failures, Defendant did not adequately warn that:

    a.  The Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    b.  The materials used in the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    c.  The design of the Mesh Products and/or implantation kits requires implantation into and through an area of the body with high levels of bacteria that can adhere to the mesh and/or can injure nerves in the pelvic region causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    d.  The design of the Mesh Products increases the likelihood of contracture, shrinkage, erosion, and/or folding causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    e.  The design of the Mesh Product increases the risk of movement, elongation, and/or deformity after implantation causing chronic immune, inflammatory,

**EXHIBIT 1**

**28**        23

and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

f.  The design of the Mesh Products increases the risk of improper mating to the delicate and sensitive areas where they are implanted causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

g.  The design of the Mesh Products increases the risk of degradation, erosion, and/or fragmentation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

h.  The disintegration of and hyper-inflammatory responses to the collagen components of the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

i.  The hardening of the Mesh Products following implantation cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae; and/or

j.  The design of the Mesh Products creates a non-anatomic condition in the pelvis causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae.

175.  At all relevant times, Defendant knew or should have known that the warnings they provided regarding the risks associated with the use of the Mesh Products were inadequate.

176.  Plaintiffs, and the Plaintiffs' healthcare providers, did not have the same knowledge as Defendant, and no adequate warning or other clinically relevant information was communicated to Plaintiffs or Plaintiffs' healthcare providers to adequately apprise them of the risks described herein.

177.  Defendant had a continuing duty to provide warnings regarding the risks and dangers associated with the Mesh Products as it became or should have become available to Defendant.

178.  Defendant knew or should have known that consumers, and Plaintiffs specifically, would foreseeably and needlessly suffer injury as a result of Defendant's failures to provide adequate warnings.

**EXHIBIT 1**

29   24

**COMPLAINT FOR DAMAGES**

179.    Through both omissions and affirmative misstatements, Defendant misled Plaintiffs, Plaintiffs' treating physicians, the medical community, and the general public about the risks and benefits of the Mesh Products, which resulted in injury to Plaintiffs.

180.    Despite having inadequate warnings, Defendant continued to aggressively manufacture, market, promote, distribute, and sell the Mesh Products, even after they knew or should have known of the unreasonable risks of from the Mesh Products.

181.    By failing to provide Plaintiffs and the Plaintiff's physicians with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with the Mesh Products, Defendant breached their duty of reasonable care and safety.

182.    Defendant is strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the Mesh Products with inadequate warnings.

183.    As a direct and proximate result of Defendant's failure to warn, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranties- As to All Defendants

184.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

185.    Defendant made implied assurances that the Mesh Products were safe and reasonably fit for their intended purposes.

186.    Defendant is liable to Plaintiffs for the breach of implied warranties with respect to Defendant's Mesh Products.

187.    Defendant, by directly and indirectly advertising, marketing, and promoting the Mesh Products, and by placing the Mesh Products into the stream of commerce knowing that the Mesh Products would be implanted in women, impliedly warranted that the Mesh Products were safe, merchantable, effective, and reasonably fit for their intended purposes.

## EXHIBIT 1

30      25

---

**COMPLAINT FOR DAMAGES**

188.   Defendant knew or should have known that users of the Mesh Products would reasonably rely on these implied warranties.

189.   Plaintiffs' use of Defendant's Mesh Products was consistent with the purposes for which Defendant directly and indirectly advertised, marketed, and promoted the Mesh Products.

190.   Defendant breached these implied warranties because the Mesh Products implanted in Plaintiffs were unreasonably dangerous and defective and not as Defendant had represented.

191.   As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## SIXTH CAUSE OF ACTION

### Gross Negligence- As to All Defendants

192.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

193.   At all relevant times, Defendant failed to perform adequate testing to ensure that the Mesh Products were reasonably safe for implantation in patients, including Plaintiffs.

194.   At all relevant times Defendant designed, patented, tested, manufactured, labeled, marketed, sold, and distributed the Mesh Products with actual and/or constructive knowledge that the Mesh Products can shrink, disintegrate and/or degrade inside the body, and cause the other serious medical problems and resulting sequelae.

195.   Defendant consciously disregarded reports from regulatory agencies, patients, the medical community, and individual health care providers that the Mesh Products did not perform as intended and that the Mesh Products were associated with increased risks of serious injuries and resulting sequelae.

196.   Rather than preforming adequate testing to determine the cause of these injuries, or to rule out defects with the Mesh Products, Defendant chose to continue marketing and selling the Mesh Products, fraudulently, intentionally, and/or recklessly misrepresenting, concealing, and/or suppressing material information regarding the safety and efficacy of the Mesh Products.

**EXHIBIT 1**

**31** 26

197.    Defendant knew or should have known that the Mesh Products were unreasonably dangerous in light of their risks.

198.    Defendant knew and consciously disregarded the fact that the Mesh Products caused debilitating injuries and related sequelae with significantly greater frequency than feasible alternative treatment methods.

199.    Defendant fraudulently, willfully, maliciously, oppressively, consciously, intentionally, and/or recklessly misrepresented, concealed, and/or suppressed material information regarding the safety and efficacy of the Mesh Products so as to minimize the perceived risk of injuries caused by the Mesh Products.

200.    Defendant knew or should have known of the Mesh Products' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the Mesh Products so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs.

201.    Defendant continues to fraudulently, willfully, maliciously, oppressively, consciously, intentionally, and/or recklessly misrepresent conceal, and/or suppress material information regarding the safety and efficacy of the Mesh Products from the public to promote continued and increased sales of the Mesh Products.

202.    As a direct and proximate result of Defendant's gross negligence, Plaintiffs suffered, and continue to suffer, injuries and damages, as set forth herein.

203.    Furthermore, Defendant has been unjustly enriched as a result of their gross negligence. In addition to the causes of action set forth herein, Plaintiffs assert a claim of unjust enrichment.

204.    Defendant's actions constitute a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public, justifying an award of punitive damages.

**EXHIBIT 1**

**32**   27

**COMPLAINT FOR DAMAGES**

# VII.

## Plaintiffs' Damages

205.   Plaintiffs incorporate all of the above paragraphs as if set forth in full herein.

206.   As a direct and proximate result of Defendant's conduct and Defendant's Mesh Products, Plaintiffs have suffered severe injuries and damages in an amount in excess of the jurisdictional minimum of this Court.

207.   As a direct and proximate result of Defendant's conduct, Plaintiffs suffered physical injuries and damages. Further, the Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss.

208.   As a direct and proximate result of Defendant's conduct and/or Defendant's Mesh Products, Plaintiffs have incurred, and will continue to incur for the foreseeable future, medical, nursing, diagnostic, hospital, pharmaceutical, rehabilitative, and other related costs and expenses for Plaintiffs' treatment and care, along with lost wages, lost earning capacity, and other damages.

209.   As Defendant's actions constitute a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public justifying an award of punitive damages, Plaintiffs sue for an additional amount as exemplary damages.

210.   Accordingly, Plaintiffs sue for special, compensatory, and punitive damages, cost of court, reasonable attorneys' fees, pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiffs' behalf, and for all other relief to which they each may be entitled in law and/or equity.

**EXHIBIT 1**

**33** 28

## PRAYER

**WHEREFORE,** Plaintiffs demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

a.   Special and compensatory damages representing fair, just, and reasonable compensation for their respective common law and statutory claims in excess of the jurisdictional minimum of this Court;

b.   Past and future lost wages and lost earning capacity;

c.   Past and future medical expenses;

d.   Past and future disfigurement, physical impairment, mental anguish, pain, and suffering;

e.   Punitive damages;

f.   Cost of court;

g.   Reasonable attorneys' fees;

h.   Pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiffs' behalf; and

i.   Such other relief as is deemed just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues which may be tried by a jury.

DATED:  July 12, 2013                    GIRARDI | KEESE

BY: _____
THOMAS V. GIRARDI
AMY F. SOLOMON
Attorney for Plaintiffs

**EXHIBIT 1**
**34** 29

**COMPLAINT FOR DAMAGES**

| | |
|---|---|
| **SUMMONS**<br>*(CITACION JUDICIAL)* | **SUM-100** |

<div style="text-align:right">

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 1 2 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

</div>

**NOTICE TO DEFENDANT:** BOSTON SCIENTIFIC CORPORATION a
*(AVISO AL DEMANDADO):* Delaware Corporation; and DOES 1
through 500, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** SHERRY PATE, DONNA FLORES, JOAN
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* ROBERTS, ROSEMARY TORRES,
ALLISON MOOREHEAD, MARY BOND, JOSEPHINE PENZA, VALERIE SCHEIBNER, DENISE
HUTCHINSON, JANICE RICHARDS, WILMA HAYMES, BEVERLY TOWERY, PATRICIA DABNEY,
(Additional Parties form Attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Central District<br>111 N. Hill St.<br>111 N. Hill St.<br>Los Angeles 90012 | **CASE NUMBER:**<br>*(Número del Caso:)* **BC515037** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Amy Fisch Solomon (SBN 140333)              213-977-0211    213-481-1554
Girardi | Keese
1126 Wilshire Blvd.
Los Angeles, CA 90017

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | John A. Clarke Clerk, by _Amber Hayes_ | , Deputy<br>*(Adjunto)* |
| | *(Secretario)* | |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

JUL 1 2 2013

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

EXHIBIT 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

SUM-200(A)

| SHORT TITLE:  Pate, et al. v. Boston Scientific Corporation, et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

➜   This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜   If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons:  "Additional Parties Attachment form is attached."

List additional parties *(Check only one box.  Use a separate page for each type of party.):*

[x] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

NICOLE DALE, BESSIE JORDAN, CHARLENE PRUETT, LELA STANLEY, DARLENE REIMOND, CHERYL REYNOLDS, DONNA ADKINS, SALLY KELLEY, ADELINE LEARD, YVETTE THOMPSON, SHARYN KMIECIAK, SUSAN MACMURDO, DONNA LACKEY, DEBORAH NAVARRO, LEONA BEHEL, ROBIN FLOYD, TAMI TITTLE, SANDRA YARBROUGH, GWENDOLYNE ENGLAND, MARY KING, ANN MCALISTER, KAREN WARREN, YVONNE BRANHAM, SYLVIA OLIVER-STITT, JENNIFER GIORDANO, REBECCA SANDERS, MYRTELINA RIVERA, KATHY JENNINGS, TRESA BERGIN, LOIS GILLUM, KRISTEN HODGES, MELINDA CALHOUN, GENEVA CHRISTIAN, CHERRI BLANKENSHIP, REBECCA BOUTWELL, SYLVIA MCQUISTON, KAREN WASCHKOWSKI, MARYANN SCARAMUZZINI, CAROL BENSON, ANITA SOKERKA, ROBIN MARET, PAMELA LINGNAU, MARY BISHOP, RANDEE NIMMER, ANNA WEBB, RUTHIE ALGAIER, EDDIE KREDER, EVA AINESWORTH, ESTHER ROMERO, DARLENE CAMPBELL, BARBARA HALE, SUE WEAVER,

**EXHIBIT 1**

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Legal Solutions Plus

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Amy Fisch Solomon (SBN 140333)<br>Girardi \| Keese<br>1126 Wilshire Blvd.<br>Los Angeles, CA 90017<br>TELEPHONE NO.: 213-977-0211   FAX NO.: 213-481-1554<br>ATTORNEY FOR *(Name):* Plaintiffs | CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br><br>JUL 12 2013<br><br>John A. Clarke, Executive Officer/Clerk<br>By Amber Hayes, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: Pate, et al. v. Boston Scientific Corporation, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) □ Limited (Amount demanded is $25,000 or less) | □ Counter  □ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC515037<br>JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- □ Auto (22)
- □ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- □ Asbestos (04)
- [x] Product liability (24)
- □ Medical malpractice (45)
- □ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- □ Business tort/unfair business practice (07)
- □ Civil rights (08)
- □ Defamation (13)
- □ Fraud (16)
- □ Intellectual property (19)
- □ Professional negligence (25)
- □ Other non-PI/PD/WD tort (35)

**Employment**
- □ Wrongful termination (36)
- □ Other employment (15)

**Contract**
- □ Breach of contract/warranty (06)
- □ Rule 3.740 collections (09)
- □ Other collections (09)
- □ Insurance coverage (18)
- □ Other contract (37)

**Real Property**
- □ Eminent domain/Inverse condemnation (14)
- □ Wrongful eviction (33)
- □ Other real property (26)

**Unlawful Detainer**
- □ Commercial (31)
- □ Residential (32)
- □ Drugs (38)

**Judicial Review**
- □ Asset forfeiture (05)
- □ Petition re: arbitration award (11)
- □ Writ of mandate (02)
- □ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- □ Antitrust/Trade regulation (03)
- □ Construction defect (10)
- □ Mass tort (40)
- □ Securities litigation (28)
- □ Environmental/Toxic tort (30)
- □ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- □ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- □ RICO (27)
- □ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- □ Partnership and corporate governance (21)
- □ Other petition *(not specified above)* (43)

2. This case □ is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. □ Large number of separately represented parties
   b. □ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. □ Substantial amount of documentary evidence
   d. □ Large number of witnesses
   e. □ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. □ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. □ nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 6 (six)
5. This case □ is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 12, 2013

Amy Fisch Solomon (SBN 140333)
(TYPE OR PRINT NAME)                                    ▶ *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**EXHIBIT 1**
**37**

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

| SHORT TITLE: Pate, et al. v. Boston Scientific Corporation, et al. | CASE NUMBER | BC515037 |
|---|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL?  [x] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 10  [ ] HOURS/ [x] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage<br>[ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | [x] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons<br>[ ] A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250 Premises Liability (e.g., slip and fall)<br>[ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>[ ] A7270 Intentional Infliction of Emotional Distress<br>[ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

**EXHIBIT 1**

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION
88

Local Rule 2.0
Page 1 of 4

LA-CV109

| SHORT TITLE: Pate, et al. v. Boston Scientific Corporation, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

EXHIBIT
35

| SHORT TITLE: Pate, et al. v. Boston Scientific Corporation, et al. | CASE NUMBER | |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

# EXHIBIT 1

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: Pate, et al. v. Boston Scientific Corporation, et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: Parties reside and do business in multiple counties, both in and out of California |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |
| CITY:               STATE:        ZIP CODE: | |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Superior___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: ___7/12/13___

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**EXHIBIT 1**

41

| LACIV 109 (Rev. 03/11) | **CIVIL CASE COVER SHEET ADDENDUM** | Local Rule 2.0 |
| LASC Approved 03-04 | **AND STATEMENT OF LOCATION** | Page 4 of 4 |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE

Case Number _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

BC515037

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| ✓ Hon. Rafael Ongkeko | 91 | 635 | | | |
| Hon. Amy D. Hogue | 92 | 633 | | | |
| Hon. Samantha P. Jessner | 93 | 631 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Other | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____  JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

## EXHIBIT 1
### NOTICE OF CASE ASSIGNMENT –
### UNLIMITED CIVIL PERSONAL INJURY CASE

Page 1 of 1

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

In re Personal Injury Cases Assigned to
Departments 91, 92 and 93

)  Case No.:   BC515037
)
)  GENERAL ORDER
)
)

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure, the California Rules of Court, and the Los Angeles County Court Rules, the COURT HEREBY GENERALLY ORDERS AS FOLLOWS IN THIS ACTION:

1.      Plaintiff(s) is/are ordered to serve a copy of this General Order and the General Order - Final Status Conference on the Defendant(s) with copies of the summons and complaint and to file proof of service, as mandated in this order.  (Code Civ. Proc., § 594, subd. (b).)

2.      The Court sets the following dates in this action, each in Department _____ at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012:

---

**FINAL STATUS CONFERENCE:**

- **Date:** ___12/26/2014___ at 10:00 a.m.

**TRIAL DATE:**

- **Date:** ___1/12/2015___ at 8:30 a.m.

**OSC re DISMISSAL (Code Civ. Proc., § 583.210) DATE:**

- **Date:** ___7/12/2016___ at 8:30 a.m.

---

(Cal. Rules of Court, rules 3.714(b)(3) & 3.729).

**EXHIBIT 1**

**43**

GENERAL ORDER - 1

**Withdrawal of Motion**

8.     Pursuant to California Rules of Court, rule 3.1304(b), the moving party must notify the court if a matter will not be heard on the scheduled date.

**Ex Parte Applications**

9.     Ex parte applications should be noticed for 8:30 a.m.

**Discovery Motions**

10.     To expedite the discovery process, counsel are encouraged to enter into a "Stipulation – Discovery Resolution." The "Stipulation – Discovery Resolution" form is available on-line at www.lasuperiorcourt.org, at "Tools for Litigators - Voluntary Efficient Litigation Stipulations."

11.     No discovery motion, other than a motion to compel where there has been no response, shall be filed or heard unless the moving party contacts the courtroom to schedule an informal discovery conference.

**REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

12.     Parties seeking to transfer from a Personal Injury Department to an Independent Calendar Department shall properly file and serve the Court's "Motion to Transfer Complicated Personal Injury Case to Independent Calendar Court."

13.     An opposition should be filed in Room 102 of the Stanley Mosk Courthouse, using the same form, and served within five (5) days of the filing and service of the Request for Transfer.

14.     Unless otherwise ordered, no hearing date will be set in these matters.

15.     The court will not transfer a case to an Independent Calendar Department upon stipulation alone.

**EXHIBIT 1**

## GENERAL ORDER – FINAL STATUS CONFERENCE
## PERSONAL INJURY DEPARTMENTS
## LOS ANGELES SUPERIOR COURT

The date for Trial having been set in this matter, the COURT ORDERS AS FOLLOWS:

**1.    MEET AND CONFER**

In preparation for the Final Status Conference, the parties shall meet and confer and jointly prepare the Trial Readiness Documents to be filed and lodged with the court. The parties shall also work to reach stipulations to ultimate facts, legal issues, motions in limine and the authenticity/admissibility of exhibits.

**2.    EXHIBIT BINDERS**

The parties shall jointly prepare, and lodge at the Final Status Conference, three sets of tabbed, internally paginated and properly marked exhibits, organized numerically in three-ring binders (a set for the court, the Judicial Assistant and the witnesses). The parties shall mark non-documentary exhibits and insert a simple written description of the exhibit behind the corresponding numerical tab in the exhibit binder.

**3.    TRIAL READINESS DOCUMENTS**

At least 5 calendar days prior to the Final Status Conference, the parties shall serve and file (in Room 102 of the Stanley Mosk Courthouse) the following Trial Readiness Documents:

**A.    TRIAL BRIEFS**

Each party shall file a trial brief succinctly identifying:
   (1) the claims and defenses subject to litigation;
   (2) the major legal issues (with supporting points and authorities);
   (3) the relief claimed and calculation of damages sought; and
   (4) any other information that may assist the court at trial.

**B.    MOTIONS *IN LIMINE***

Before filing motions *in limine*, the parties shall comply with the statutory notice provisions of Code of Civil Procedure Section 1005 and the requirements of Local Rule 3.57(a). The caption of each motion *in limine* shall concisely identify the subject of the motion and designate the specific evidence sought to be precluded.  Parties filing more than one motion *in limine* shall number them consecutively.  Parties filing opposition papers shall identify, in the caption, the number of each motion to which it responds.

## EXHIBIT 1
## 45

## 5.    COMPLIANCE

The court has discretion to impose SANCTIONS for any party's failure, without good cause, to timely submit any item required in this order. The court's SANCTIONS may include monetary sanctions, exclusion of evidence, issue preclusion, denial of a claim or defense, dismissal and/or default.

Dated: March 18, 2013

_____
Judge of the Superior Court

**EXHIBIT 1**

**46**

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

## EXHIBIT 1

**47**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (new)
LASC Approved 04/11          **STIPULATION – EARLY ORGANIZATIONAL MEETING**          Page 1 of 2

EXHIBIT 1

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
     (INSERT DATE)                 (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

_____   ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

LACIV 229 (new)
LASC Approved 04/11          **STIPULATION – EARLY ORGANIZATIONAL MEETING**                    Page 2 of 2

EXHIBIT 1
49

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):    FAX NO. (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____                    >    _____
        (TYPE OR PRINT NAME)                                      (ATTORNEY FOR PLAINTIFF)

Date:

_____                    >    _____
        (TYPE OR PRINT NAME)                                      (ATTORNEY FOR DEFENDANT)

Date:

_____                    >    _____
        (TYPE OR PRINT NAME)                                      (ATTORNEY FOR DEFENDANT)

Date:

_____                    >    _____
        (TYPE OR PRINT NAME)                                      (ATTORNEY FOR DEFENDANT)

Date:

_____                    >    (ATTORNEY FOR _____ )
        (TYPE OR PRINT NAME)

Date:

_____                    >    (ATTORNEY FOR _____ )
        (TYPE OR PRINT NAME)

Date:

_____                    >    (ATTORNEY FOR _____ )
        (TYPE OR PRINT NAME)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                    FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a **Request for Informal Discovery Conference**, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an **Answer to Request for Informal Discovery Conference**, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):      FAX NO. (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

    a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

    b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)
LASC Approved 04/11            **STIPULATION AND ORDER – MOTIONS IN LIMINE**            Page 1 of 2

EXHIBIT 1

54

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

Case 2:13-cv-06276-PAG-RZRD Document 1-20 Filed 08/29/13 Page 1 of 51 Page ID #:467
Case 2:13-cv-06276-PAG-RZRD Document 1-20 Filed 08/29/13 Page 1 of 51 Page ID #:729
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**    IN CHAMBERS - COURT ORDER

Before the Court is a Notice of Removal filed by defendants American Medical Systems, Inc., American Medical Systems Holdings, Inc., Endo Pharmaceuticals, Inc., and Endo Health Solutions, Inc. ("Defendants"). Defendants assert that this Court has jurisdiction over the action brought against them by plaintiffs Shannon Muller, et al. ("Plaintiffs") based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

In attempting to invoke this Court's diversity jurisdiction, Defendants must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

**EXHIBIT 2**

**56**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

The sixty-six (66) plaintiffs in this action allege injuries from the surgical implantation of one or more AMS pelvic surgical mesh devices. For purposes of diversity, Plaintiffs are citizens of Massachusetts, Ohio, Virginia, California, Indiana, New Jersey, New Mexico, Texas, Georgia, Alabama, Kentucky, Tennessee, Utah, West Virginia, Florida, and Louisiana; Plaintiff Redethia Davis is a citizen of Delaware and Plaintiff Patricia Zeiber is a citizen of Pennsylvania; American Medical Systems, Inc. is a citizen of Delaware and Minnesota; American Medical Systems Holdings, Inc. is a citizen of Delaware and Minnesota; Endo Pharmaceuticals, Inc. is a citizen of Delaware and Pennsylvania; and Endo Health Solutions, Inc. is a citizen of Delaware and Pennsylvania.

The Ninth Circuit has recognized an exception to the complete diversity requirement where a non-diverse defendant has been "fraudulently joined." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). If a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. See, e.g., Morris, 236 F.3d at 1067.

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. See id. at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." Lieberman v. Meshkin, Mazandarani, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). A court should remand a case "unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" Padilla v. AT&T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting Burris v. AT&T Wireless, Inc., 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)).

Here, Defendants argue that the citizenship of two plaintiffs, Redethia Davis and Patricia Zeiber, should be ignored for diversity purposes based on fraudulent misjoinder. In order for Plaintiffs to join their claims into a single action, the claims must (1) arise out of "the same transaction, occurrence, or series of transactions or occurrences;" and (2) contain "any question of law or fact common to all" plaintiffs. Fed. R. Civ. P. 20(a). Defendants cite Eleventh and Fifth Circuit cases in support of the doctrine of fraudulent misjoinder. "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. Ala. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000); accord In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002) (recognizing that misjoinder of plaintiffs should not be allowed to "circumvent diversity jurisdiction"). The Eleventh Circuit further stated, "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360. However, other than the

**EXHIBIT 2**

**57**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

Eleventh and Fifth Circuits, no other circuit court has adopted the fraudulent misjoinder doctrine; the Ninth Circuit has not expressly adopted it. See Caouette v. Bristol-Myers Squibb Co., 2012 U.S. Dist. LEXIS 113980, 28-33 (N.D. Cal. Aug. 10, 2012).

Several district courts "have criticized Tapscott, arguing that questions of joinder under state law do not implicate federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 621-22 (8th Cir. 2010) (citing cases); see also In re Yasmin & Yaz Mktg., Sales Pracs. & Prods. Liab. Litig., 779 F. Supp. 2d 846, 854-55 (S.D. Ill. 2011) (citing cases). "Many of these courts also opine that the better approach is for parties to seek severance in state court prior to removal." Id. at 855; see also Caouette, 2012 U.S. Dist. LEXIS at 28-33.

Even if the Court were to adopt the doctrine of fraudulent misjoinder and conclude that plaintiffs' claims are not properly joined in this action, it is not clear that the joinder is egregious or grossly improper. See Tapscott, 77 F.3d at 1360; Prempro, 591 F.3d at 622-24 ("absent evidence that plaintiffs' misjoinder borders on a 'sham,' [the Court] decline[s] to apply Tapscott to the instant case"). Defendants have failed to carry their heavy burden of persuasion to demonstrate that the plaintiffs were fraudulently joined. Thus, defendants have not met their burden to establish complete diversity of citizenship between the parties. Accordingly, the Court remands this action to the Los Angeles County Superior Court, Case No. BC515042, for lack of federal subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

## EXHIBIT 2
## 58



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN  DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN  DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date:    August 30, 2013

Clerk, Los Angeles Superior Court
Central District
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA  90012

Re:   Case Number:  CV 13-06276 PA (RZx)

Previously Superior Court Case No.  BC515042

Case Name:  Shannon Muller, et al. v. American Medical Systems, Inc., et al.

Dear Sir / Madam:

Pursuant to this Court's ORDER OF REMAND issued on 8/29/2013                    , the above-referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: G. Kami
Deputy Clerk    213-894-0747

☒ Western    ☐ Eastern    ☐ Southern Division

*cc: Counsel of record*

=====================================================================================

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By:

Date                        Deputy Clerk

**EXHIBIT D2**

**59**

CV - 103 (09/08)                  **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

*REMAND/JS-6*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

| PROCEEDINGS (IN CHAMBERS): | **RULINGS ON: (1) PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION [18], (2) DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO STAY ALL PROCEEDINGS PENDING A TRANSFER BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION [23], AND (3) MOTION TO DISMISS PLAINTIFFS' COMPLAINT [26]** |
|---|---|

Boston Scientific Corporation ("BSC") removed this action on August 29, 2013, arguing that the 73 plaintiffs from 20 different states led by Cheryl Mauck (collectively "Plaintiffs") had been fraudulently misjoined in state court such that this Court could ignore the fact that three of the plaintiffs – Jennie Foley, Rosemarie Lambert and Audrey Aho – are of non-diverse citizen-ship vis-a-vis BSC. Plaintiffs now move to remand, whereas BSC moves to stay the action pending the resolution of an effort to have the action transferred to an MDL proceeding in the Southern District of West Virginia.[1] That MDL proceeding now includes approximately 8,000 cases against BSC. *See* Awong Decl. (Docket No. 24) ¶ 9. BSC also moves to dismiss, but the Court will not address that motion – either the case will be stayed pending resolution of the MDL-transfer proceedings or it will be remanded to state court. The

---

[1] BSC provided notice to the MDL panel of this "tag-along" action, and a Conditional Transfer Order was issued September 13, 2013. *See* Awong Decl. (Docket No. 24) ¶ 6 & Exh. A.

## EXHIBIT 2

60    Initials of Preparer    JG

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

Court finds the matter suitable for resolution on the briefs, and therefore vacates the October 21, 2013, hearing date.

As both parties recognize, district courts – including courts within this District – have taken different approaches to the question of whether subject matter jurisdiction must be resolved prior to transfer to a pending MDL. In similar circumstances involving medical product liability actions against DePuy Orthopaedics, Inc., this Court has stayed proceedings due to impending MDL-transfer proceedings. *See, e.g.*, *Stone v. DePuy Orthopaedics, Inc.*, CV 13-1265, Docket No. 30 (Apr. 18, 2013); *Liebscher v. DePuy Orthopaedics, Inc.*, CV No. 12-6832, Docket No. 25 (Aug. 31, 2012). It took that approach to allow the MDL proceeding to resolve issues raised by remand motions in a way that is universally applicable to all the cases raising the same jurisdictional issue, thereby avoiding duplication of work and the possibility of inconsistent rulings. If the same judicial economy can be realized here – *i.e.*, if the MDL already has other cases raising the exact same removal/jurisdictional issues which it must resolve – the Court would adopt the same course.

Neither party has addressed what law the MDL applies with respect to any removal/jurisdictional issues it must resolve. The Court will presume that the MDL must apply Ninth Circuit law – to the extent there is any – concerning "fraudulent misjoinder" to any cases transferred to it from district courts within the Ninth Circuit.[1] *Cf. In re Nucorp Energy Secs. Litig.*, 772 F.2d 1486, 1491-92 (9th Cir. 1985). As such, the Court is concerned with whether the MDL already must resolve this issue *in one or more cases transferred to it from a district court within the Ninth Circuit*. Only Exhibit B to the Awong Declaration concerns Central District of California cases that have been transferred to the BSC MDL. *See* Awong Decl. (Docket No. 24) ¶ 9. However, that exhibit only reflects Conditional Transfer Orders for those cases; those orders say nothing about whether the jurisdictional issue raised in this case is now before – or has ever been before – the judge handling the MDL proceeding. Exhibits C-

---

[1] The parties agree that the "fraudulent misjoinder" doctrine is of varied levels of acceptance across the Circuits, meaning that resolution of the issue in a case removed within, for instance, the Eleventh Circuit would not necessarily result in the same resolution with respect to a case removed within, for instance, the Ninth Circuit.

## EXHIBIT 2
**61**   Initials of Preparer _____ : _____   JG

*REMAND/JS-6*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

F reflect other cases transferred to the same judge handling BSC's MDL, but those cases concern a different MDL proceeding (albeit another one involving the same type of medical product at issue here). *See id.* ¶¶ 10-14. In any event, the jurisdictional/removal issues raised in those four rulings concerned fraudulent joinder *of a non-diverse defendant*, *see id.*, Exhs. C-E, or application of the "forum defendant rule," *id.*, Exh. F, not an alleged fraudulent misjoinder *of plaintiffs*. *Rubio v. Arndal*, No. 1:13-cv-0027-LJO-BAM, 2013 U.S. Dist. LEXIS 29149, *11 (C.D. Cal. Mar. 4, 2013), on which BSC also relies, similarly considers the distinct issue of fraudulent joinder of a non-diverse *defendant*.

   In other words, BSC has failed to demonstrate that there will be any judicial efficiency gained by staying this matter so that the MDL proceeding can resolve the jurisdictional issue. As a result, this Court will proceed to resolve the jurisdictional issue. As other courts have noted, the Ninth Circuit has never adopted the "fraudulent misjoinder of plaintiffs" basis for ignoring the citizenship of non-diverse plaintiffs. *See, e.g.*, *Muller v. Am. Med. Sys.*, CV 13-6276 PA (RZx), 2013 U.S. Dist. LEXIS 124747, *5-6 (C.D. Cal. Aug. 29, 2013); *see also Goodwin v. Kojian*, 2013 U.S. Dist. LEXIS 53403, 2013 U.S. Dist. LEXIS 53403, *11-12 (C.D. Cal. Apr. 12, 2013). Absent a clear indication that it must do so, neither will this Court.

   Removal jurisdiction is to be narrowly-construed, and doubts about its propriety are to be resolved in favor of remand. *See, e.g.*, *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). As such, diversity jurisdiction is lacking here. The Court grants Plaintiffs' motion to remand and denies BSC's motion to stay. The motion to dismiss is moot.

## EXHIBIT 2
## 62            Initials of Preparer   JG

_____ : _____



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 18, 2013

Los Angeles County Superior Court
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

Re:  Case Number: __CV 13-6343-GW(JEMx)__

   Previously Superior Court Case No. __BC515043__

   Case Name: __Cheryl Mauck et al v. Boston Scientific Corporation et al__

Dear Sir / Madam:

   Pursuant to this Court's ORDER OF REMAND issued on __October 16, 2013__, the above-referenced case is hereby remanded to your jurisdiction.

   Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

   Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

                    Respectfully,

                    Clerk, U. S. District Court

                    By: __P. Lopez phyllis_lopez@cacd.uscourts.gov__
                    Deputy Clerk   __213-894-__

                    ☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

=================================================================

Receipt is acknowledged of the documents described herein.

                    Clerk, Superior Court

                    By: _____
_____                         Deputy Clerk
Date

**EXHIBIT D-2**

**63**

CV - 103 (09/08)          **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-06321 BRO (AJWx)** | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** |
|---|---|

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS)

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND, AND VACATING DEFENDANT'S MOTION TO STAY AND MOTION TO DISMISS**

Pending before the Court are three separate motions: (1) Plaintiffs Sherry Pate, et al.'s motion to remand (Dkt. No. 18); Defendant Boston Scientific's motion to stay (Dkt. No. 23); and (3) Defendant Boston Scientific's motion to dismiss (Dkt. No. 26). For the following reasons Plaintiffs' motion to remand is GRANTED. Because the Court remanded the suit, it VACATES Defendant's motion for stay and motion to dismiss.

## I.      FACTUAL BACKGROUND

Defendant Boston Scientific Corporation is an entity incorporated under the laws of Delaware, and headquartered in Boston, Massachusetts. (Notice Removal Ex. A ("Compl.") ¶ 68.) Apparently, Defendant designs, manufactures, and distributes various medical and surgical devices, including pelvic mesh products that are the focus of this lawsuit. (*See* Compl. ¶ 70.)

Defendant designed the particular mesh products primarily as a treatment for pelvic organ prolapse and stress urinary incontinence. (Compl. ¶ 100.) Pelvic organ prolapse is a medical condition resulting from weakened or stretched tissues that support a female's lower abdominal organs. (Compl. ¶ 101.) As a treatment for the condition, Defendant designs, manufactures, and distributes its mesh products to be surgically inserted and implanted to reinforce a patient's pelvic region. (Compl. ¶ 101.) Stress urinary incontinence is a medical condition involving incontinence during physical

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-06321 BRO (AJWx)** | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

activity. (Compl. ¶ 102.) Defendant designs, manufactures, and distributes its mesh products to be implanted in a patient's pelvic area in order to provide support to the patient's urethra, thus preventing incontinence. (*See* Compl. ¶ 102.)

Plaintiffs are sixty-five women medical patients who were treated using Defendant's mesh products. (*See* Compl. ¶¶ 2–67, 90, 128–134.) Following their respective medical procedures, Plaintiffs experienced serious side effects and injuries, requiring additional procedures, and causing severe and lasting pain. (Compl. ¶¶ 129–134.) Apparently, Plaintiffs' adverse side effects were caused due to the material of which Defendant's mesh products are made: composed biological and non-absorbable synthetic materials. (*See* Compl. ¶ 104.) Evidently, certain scientific evidence has indicated the possibility that those materials are biologically incompatible with human tissue, resulting in a negative immune response and inflammation of a patient's pelvic tissue. (Compl. ¶ 104.)

Consequently, on July 12, 2013, Plaintiffs jointly initiated a civil lawsuit against Defendant by filing a complaint with the Superior Court of California, County of Los Angeles. (*See* Compl.) Shortly thereafter, on August 28, 2013, Defendant removed the action to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, alleging this Court has original jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. No. 1.) Plaintiffs objects to Defendant's removal, contending jurisdiction under 28 U.S.C. § 1332 does not lie because the parties are not entirely diverse. (*See* Dkt. No. 18.) Accordingly, on September 13, 2013, Plaintiff filed a motion to remand the action to the Superior Court. (Dkt. No. 18.)

Apparently, Defendant is involved in myriad cases involving its mesh products. (*See* Dkt. No. 23, Def.'s Mot. Stay.) Thus, there is a multidistrict litigation proceeding, established in the Southern District of West Virginia, to coordinate all federal product liability actions involving Defendant's mesh products. (Def.'s Mot Stay 1.) At some point, Defendant applied to transfer this case to the multidistrict litigation proceeding, and on September 13, 2013, a conditional transfer order was issued. (Def.'s Mot. Stay 3; Awong Decl. ¶ 6, Ex. A.) Accordingly, on September 23, 2013, Defendant filed a motion to stay this case pending the transfer to the multidistrict litigation proceeding. (Dkt. No. 23.)

**EXHIBIT 2**

**65**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | | Date | October 21, 2013 |
|---|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

Additionally, Defendant has moved to dismiss the complaint for failure to state a claim. (Dkt. No. 26.)

## II. LEGAL STANDARD

Whether a defendant may rightfully remove a case from a state court to a federal district court is entirely governed by statutory authorization by Congress. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979.) Under 28 U.S.C. § 1441, a civil action may be removed to the district court only if that court has original jurisdiction over the issues alleged in the state court complaint.[1] Because federal courts are courts of limited jurisdiction, they possess original jurisdiction only as authorized by the Constitution and federal statute. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Pursuant to 28 U.S.C. § 1331, a federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A case "arises under" federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or that the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). Because a defense is not part of a plaintiff's properly pleaded claim, *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987), jurisdiction may not properly be based on an anticipated defense created by federal law, *see Franchise Tax Bd.*, 463 U.S. at 14. Accordingly, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

Original jurisdiction may also be established pursuant to 28 U.S.C. § 1332. Under § 1332, a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

[1] Although inapplicable in this case, 28 U.S.C. § 1443 provides another means for removing a state court action to a federal district court.

**EXHIBIT 2**
**66**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-06321 BRO (AJWx) | | Date | October 21, 2013 |
|----------|------------------------|--|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

costs, and" the dispute is between "citizens of different states."[2] The Supreme Court has interpreted the statute to require "complete diversity of citizenship," meaning it requires "the citizenship of each plaintiff [to be] diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996).

Section 1441 also limits removal to cases where none of the defendants "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Nevertheless, this so-called "forum defendant rule" is a "procedural, or non-jurisdictional," limitation on removal jurisdiction, and therefore may be waived. *Lively v. Wild Oats Markets Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

In determining whether removal in a given case is proper, a court should "strictly construe the removal statute against removal jurisdiction"; "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). As such, the removing party bears a heavy burden of establishing proper removal to and original jurisdiction in the district court in order to rebut the strong presumption against removal jurisdiction. *See id.*

## III. REQUEST FOR JUDICIAL NOTICE

A court may properly take judicial notice of: (1) material which is included as part of the complaint or relied upon by the complaint; and (2) matters in the public record. *See Tellabs Inc. v. Makor Issues & Rights Ltd.,* 551 U.S. 308, 322 (2007) ; *Lee v. City of Los Angeles,* 250 F.3d 668, 688–69 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Further, a court "shall take judicial notice if requested by a party and supplied with the necessary information." *See* Fed.R.Evid. 201(d); *Mullis v. U. S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 n. 9 (9th Cir.1987).

---

[2] Diversity of citizenship may also be established on other grounds that are not relevant here. *See* 28 U.S.C. § 1332.

**EXHIBIT 2**

**67**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-06321 BRO (AJWx) | | Date | October 21, 2013 |
|---|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

Here, Defendant filed a Request for Judicial Notice, asking this Court to take judicial notice of exhibits A through K of the Awong Declaration. Exhibits A through K, are orders from courts throughout the United States and are properly judicially noticeable under Federal Rule of Evidence 201. Therefore, to the extent necessary to rule on the pending motions, the Court has considered all Defendants' judicially noticeable exhibits.

## IV. DISCUSSION

The Court will consider the motions in the order they were filed: first, Plaintiffs' motion to remand the action; second, Defendant's motion to stay the action pending a transfer to the multidistrict litigation proceeding; and, third, Defendant's motion to dismiss for failure to state a claim.

In their motion, Plaintiffs contend Defendants have inappropriately removed this action to federal court. (*See generally* Pls.' Mot.) They assert that jurisdiction cannot possibly be based on 28 U.S.C. § 1332 because the parties are not completely diverse. (Pls.' Mot 12:6–17.) Indeed, three of the plaintiffs are not diverse with Defendant: Plaintiffs Josephine Penza and Valerie Scheibner are residents and citizens of Massachusetts, and Plaintiff Denise Hutchinson is a resident and citizen of Delaware, (Compl. ¶¶ 9–11). Defendant is headquartered in Massachusetts, and incorporated in Delaware. (Compl. ¶ 68.) Therefore, jurisdiction in this matter cannot properly lie based on 28 U.S.C. § 1332. And after reviewing their complaint, it is readily apparent to the Court that Plaintiffs have alleged no federal causes of action; therefore, jurisdiction cannot properly lie based on 28 U.S.C. § 1331, either.

Yet, Defendant believes this action is rightly before the Court.[3] (Def.'s Opp'n 7.) According to Defendant, the three non-diverse plaintiffs have been "fraudulently misjoined," and should therefore be severed, leaving only diverse plaintiffs. (*See* Def.'s Opp'n 7–8.) Fraudulent misjoinder is a concept originating in the Eleventh Circuit. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996). It appears to be

---

[3] Defendant also contends the Court should stay the matter pending a possible transfer to multidistrict litigation proceedings, and thus not decide whether remand is necessary. (Def.'s Opp'n 4.) Nevertheless, if there is no subject matter jurisdiction over this case in a federal court, it cannot be heard in this Court, nor can it be heard in another federal district where the multidistrict litigation proceeds. Therefore, the Court will properly consider Plaintiffs' motion to remand before considering Defendant's motion to stay.

**EXHIBIT 2**

**68**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|----------|------------------------|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

related to the legal doctrine of fraudulent joinder. *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Fraudulent joinder of a non-diverse defendant is an exception to the requirement for complete diversity among the parties in a suit whose federal subject matter jurisdiction is based upon 28 U.S.C. § 1332. *Morris v. Princess Cruises Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder is a term of art, and does not describe plaintiff's subjective intent. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). It exists, and therefore the non-diverse defendant is ignored for purposes of determining diversity of the parties, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* at 1339; *accord Ritchey v. Upjohn Drug Co.*, 139 F.2d 564, 566 (9th Cir. 1998). Because the removal statute in general is narrowly construed, thus favoring remand, the doctrine of fraudulent joinder is likewise narrowly construed: "[i]n borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in state court." *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). Indeed, a Court should reject removal, and remand the action to state court, unless the plaintiff is unable to state a claim against the non-diverse defendant, and "has no reasonable ground for supposing" it could. *Id.* Therefore, if any *possibility* exists that a plaintiff may prevail against the non-diverse defendant, fraudulent joinder must be rejected, and the case must be remanded. *Plute v. Roadway Package Sys., Inc.*, F. Supp. 2d 1005, 1008, 1012 (N.D. Cal. 2001).

Fraudulent misjoinder differs from fraudulent joinder. Under the Federal Rules of Civil Procedure, there are two requirements for "[p]ersons [to] join in one action as plaintiffs": (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences"; and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Misjoinder occurs when multiple plaintiffs attempt to join separate claims that are not sufficiently related to warrant joinder. *See Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 869 (E.D. Ohio 2008). *Fraudulent* misjoinder occurs when misjoinder is "so egregious as to constitute fraudulent joinder," thus warranting a severance of the improperly joined claims. *See Tapscott* 77 F.3d at 1360. Yet the Court would note that "[m]isjoinder is not a ground for dismissing an action," and "the court

**EXHIBIT 2**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | **CV 13-06321 BRO (AJWx)** | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

*may* at any time, on just terms, add or drop a party," or "sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added).[4]

Although the Ninth Circuit has acknowledged the concept of fraudulent misjoinder in an unpublished decision, it has not yet elected to adopt the doctrine. *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001);[5] *Osborn*, 341 F. Supp. 2d at 1127; *Caouette v. Bristol-Meyers Squibb Co.*, No. C-12-1814, 2012 WL 3283858 (N.D. Cal. Aug. 10, 2012). The Court need not decide whether to adopt the doctrine in this case. Even were fraudulent misjoinder a viable doctrine within the Ninth Circuit, in the Court's view, Defendant would not have met its heavy burden in demonstrating that removal was proper. The Court reiterates that "[f]ederal jurisdiction must be rejected if there is *any doubt* as to the right of removal in the first instance," and consequently Defendant bears a heavy burden of establishing proper removal to and original jurisdiction in this Court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). And, as articulated by the Eleventh Circuit in *Tapscott*, mere misjoinder is not fraudulent joinder; it only rises to the level of fraudulent joinder if it is sufficiently egregious.[6] *Tapscott*, 77 F.3d at 1360. Therefore, whereas fraudulent joinder

---

[4] The Court notes the permissive nature of Rule 21 and finds it telling of the standard, if one actually exists, for circumstances where dropping a party or severing a claim would be mandatory. Because Rule 21 is permissive, such a standard would of necessity be very demanding.

[5] Although the Ninth Circuit did not in fact adopt the doctrine of fraudulent misjoinder in *California Dump Truck Owners Association*, it did apply the doctrine in that case: "For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs." 24 Fed. App'x at 729.

[6] The Court notes Defendant's contention that misjoinder need not be egregious to be fraudulent. (Def.'s Opp'n 13–14.) And the Court is mindful of the district court cases cited by Defendant in support of its contention. (*See id.*) Yet, the Court rejects Defendant's argument in this respect. The court in *Tapscott* was clear: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is *so egregious as to constitute fraudulent joinder.*" 77 F.3d at 1360 (emphasis added). If the Eleventh Circuit did not intend egregiousness to be the standard for fraudulent misjoinder, it could have selected one of myriad other terms to use in that sentence instead of "egregious." Moreover, the standard for fraudulent joinder is also very demanding: a court should reject removal and remand the action to state court unless the plaintiff is unable to state a claim against the non-diverse defendant, and "has no reasonable ground for supposing" it could. *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). Therefore, logically then, the standard for fraudulent misjoinder would be similarly demanding. In any case, the Ninth Circuit has not adopted the doctrine of fraudulent misjoinder. As such, the Court is in no position to be altering the standard for a concept it would be borrowing from the Eleventh Circuit. This is especially true because, as noted above, a Ninth Circuit panel has in fact acknowledged the doctrine, without actually adopting it for the circuit, and applied it in the case before it. *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001). That panel specifically referred to the doctrine as "egregious joinder of plaintiffs." *Id.* (interior quotation marks omitted). Although the panel's decision is not binding, it is the only Ninth Circuit guidance available on this issue, and the Court is unwilling to disregard it.

**EXHIBIT 2**
**70**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|----------|------------------------|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

must be proven by clear and convincing evidence, *Hamilton Materials Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), the Court interprets the corollary, that fraudulent misjoinder must also be proven by clear and convincing evidence.

In its opposition, Defendant contends Plaintiffs' "complaint alleges absolutely no factual connection among [P]laintiffs' claims, except that each was allegedly implanted with different pelvic mesh products manufactured by [Defendant]." (Def.'s Opp'n 11.) Yet, in the Court's view, Defendant oversimplifies Plaintiffs' claims. Indeed, Plaintiffs allege Defendant breached its duty to them by: "[f]ailing to design and manufacture the Mesh Products without defects," (Compl. ¶145(a)); "[f]ailing to exercise reasonable care in testing the Mesh Products prior to [their] marketing, sale, and distribution," (Compl. ¶ 145(b)); and "[f]ailing to include adequate warnings," (Compl. ¶ 145(c)). Additionally, Plaintiffs assert that "Defendant's Mesh Products are defectively designed," and therefore Defendant is strictly liable to them. (Compl. ¶ 155.) Moreover, Plaintiffs were injured when Defendant's mesh products were implanted into them. (Compl. ¶¶ 130, 133.) Defendant fails to explain why it cannot be said that Plaintiffs are "assert[ing a] right to relief . . . with respect to or arising out of the same . . . series of transactions or occurrences." Fed. R. Civ. P. 20. Instead, it merely asserts it has manufactured many different mesh products and therefore it is not plausible that Plaintiffs' claims arise out of the same transactions or occurrences. (Def.'s Opp'n 12.) Yet, Defendant's speculation does not rise to the level of clear and convincing evidence. Even if the Court were to accept Defendant's assertion that it is not plausible—and it is not clear that accepting Defendant's assertion would be appropriate—it is still *possible* that Plaintiffs' claims do arise out of the same transactions or occurrences. Without any kind of showing that Plaintiffs' are improperly joined, Defendant's efforts do not meet the requisite clear and convincing evidence standard.

Additionally, in the Court's view, Defendant's argument in favor of severing only the non-diverse plaintiffs' claims is inconsistent when based on the doctrine of fraudulent misjoinder. According to Defendant, Plaintiffs' claims do not arise out of the same transactions or occurrences, and are therefore fraudulently misjoined. It is not clear whether severance under fraudulent misjoinder would be permissive or mandatory. But, in either case, the Court is not persuaded that Plaintiffs have improperly joined their claims in a single lawsuit.

## EXHIBIT 2

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|----------|------------------------|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Accordingly, Plaintiffs' motion to remand is GRANTED. As such, Defendants' motion to stay and motion to dismiss are VACATED as moot.

## V.     CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand. Defendant's motion to stay and motion to dismiss are VACATED as moot.

**IT IS SO ORDERED.**

|  | : |
|--|--|
| Initials of Preparer | rf |

## EXHIBIT 2



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 23, 2013

Name & Address
Los Angeles County Superior Court
111 N. Hill Street
Los Angeles, CA 90012

Re:   Case Number: CV12-6321-BRO(AJWx)

Previously Superior Court Case No. BC515037

Case Name: Sherry Pate -v- Boston Scientific Corporation

Dear Sir / Madam:
    Pursuant to this Court's ORDER OF REMAND issued on October 21, 2013         , the above-referenced case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: Brent Pacillas
   Deputy Clerk    213-894-

☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

==================================================================================

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____
   Deputy Clerk

Date _____

**EXHIBIT D2**

**73**

CV - 103 (09/08)         **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

E-Filed – **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6344-GHK (PLAx) | Date | October 10, 2013 |
|---|---|---|---|
| Title | *Marie Howe, et al. v. Coloplast Corp., et al.* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Remand Order**

On September 11, 2013, we ordered Defendants to show cause why the above-captioned matter should not be remanded to state court for lack of subject matter jurisdiction. We noted that Defendants' Notice of Removal ("NOR") asserted that we have subject matter jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship, but that, as Defendants acknowledged in their NOR, diversity does not exist on the face of the complaint, as two plaintiffs are citizens of the same states as two defendants. We further explained that we were not inclined to adopt the "fraudulent misjoinder" doctrine, which Defendants requested we adopt, to dismiss the two non-diverse Plaintiffs.

On September 25, 2013, Defendants timely filed a response to our OSC. In their Response, Defendants again requested we adopt the doctrine of fraudulent misjoinder, or alternatively, that we either defer ruling on the remand question until a determination has been made in their pending request to the MDL Panel to transfer this action to the Southern District of West Virginia or transfer this action to Judge Bernal, who has related cases pending before him. We decline to do any of the foregoing.

As a court of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), we must determine the issue of subject matter jurisdiction before reaching the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The removing party bears the burden of establishing the existence of federal subject matter jurisdiction, and if there is any doubt as to whether removal was proper, remand is required. 28 U.S.C. § 1447(c); *Duncan v. Stuetzie*, 76 F.3d 1480, 1485 (9th Cir. 1996). We need not postpone such a ruling merely because an MDL transfer motion has been filed. *See Totola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997). "To stay this case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." *Stone v. Baxter Int'l, Inc.*, 2009 WL 236116, at *2 (D. Neb. Jan. 30, 2009). Further, "a determination of the fraudulent misjoinder issues raised in this case requires an application and analysis of Ninth Circuit law, and this Court is in as good a position, if not better, than a court in West Virginia or two of this circuit than a court in West Virginia." *Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013).

**EXHIBIT 2**
**74**

E-Filed – **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6344-GHK (PLAx) | | Date | October 10, 2013 |
|---|---|---|---|---|
| Title | *Marie Howe, et al. v. Coloplast Corp., et al.* | | | |

　　　　As we explained in our OSC, the Ninth Circuit has recognized an exception to the complete diversity requirement where a nondiverse defendant has been "fraudulently joined." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1997). Under the "fraudulent joinder" doctrine, a district court may disregard the citizenship of a nondiverse defendant if it is obvious that the plaintiffs have failed to state a claim against that defendant. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The Ninth Circuit has not, however, recognized the doctrine of "fraudulent misjoinder," which permits the court to ignore the citizenship of nondiverse parties when there is no real connection among the plaintiffs' claims, such that plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder." *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2011). This doctrine has only been recognized by the Fifth and Eleventh Circuits. *See Id.* at 1360; *accord In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002).

　　　　Even if we were to adopt the doctrine of fraudulent misjoinder, it is not clear that the joinder in this case is "so egregious as to constitute fraudulent joinder." *See Tapscott*, 77 F.3d at 1360; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 624 ("[A]bsent evidence that plaintiffs' misjoinder borders on a 'sham,' we decline to apply *Tapscott* to the present case." (citation omitted)). Thus, Defendants have not met their burden to establish complete diversity of citizenship between the parties. Accordingly, this case is hereby **REMANDED** to the state court from which it was removed. In light of the foregoing, Plaintiffs' Motion to Remand (Dkt. 22), currently noticed for hearing on November 4, 2013, is **DENIED as moot**, and the hearing date is **VACATED**.

　　　　**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |

**EXHIBIT 2**

**75**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 10, 2013

Name & Address
Los Angeles County Superior Court
111 N. Hill Street
Los Angeles, CA 90012

Re:  Case Number: <u>CV13-6344-GHK(PLAx)</u>

Previously Superior Court Case No. <u>BC515057</u>

Case Name: <u>Marie Howe -v- Coloplast Corp</u>

Dear Sir / Madam:
    Pursuant to this Court's ORDER OF REMAND issued on <u>October 10, 2013</u>, the above-referenced case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: <u>Brent Pacillas</u>
    Deputy Clerk    213-894-

☒ Western    ☐ Eastern    ☐ Southern Division

*cc: Counsel of record*

============================================================================

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

_____
Date

**EXHIBIT D2**

**76**

CV - 103 (09/08)      **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | | Date | October 8, 2013 |
|---|---|---|---|---|

| Title | ***Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.*** | Page | 1 of 8 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO STAY CASE [Doc. ## 13, 14]**

## I.
## INTRODUCTION

On July 12, 2013, 93 Plaintiffs ("Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants C.R. Bard, Inc., Sofradim Production SAS, and Tissue Science Laboratories Limited, relating to injuries which they allege arose from implantation of defective pelvic mesh products. [Doc. # 1, Exh. A.] The Complaint alleges six state law causes of action for: (1) Negligence and Negligence Per Se; (2) Design Defect; (3) Manufacturing Defect; (4) Failure to Warn; (5) Breach of Implied Warranties; and (6) Gross Negligence.

On August 28, 2013, Defendant C.R. Bard, Inc. ("Defendant") removed the action to this Court, asserting subject matter jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446.[1] [Doc. # 1.]

Defendant contends that the instant case is related to Multidistrict Litigation ("MDL") pending in the Southern District of West Virginia. (Not. of Removal ¶ 5; *see also id.*, Exh. C.) On August 30, 2013, Defendant submitted to the United States Judicial Panel on Multidistrict Litigation ("JPML") a Notice of Potential Tag-Along, seeking an order to transfer the action to MDL No. 2187. (Mot. for Stay at 3 [Doc. # 13].)

On September 4, 2013, Defendant filed a Motion to Stay all proceedings pending a decision on transfer by the JPML. [Doc. # 13.] On September 16, Plaintiffs filed an opposition

---

[1] Defendant was served the Complaint on July 29, 2013. (Not. of Removal ¶ 10 [Doc. # 1].) Defendants Sofradim Production SAS and Tissue Science Laboratories Limited apparently had not yet been served at the time of removal, but they consented to removal. (*Id.* ¶ 11.)

**EXHIBIT 2**
**77**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 2 of 8 |
|---|---|---|---|

to Defendant's Motion to Stay.  [Doc. # 25.]  On September 20, Defendant filed a reply.  [Doc. # 26.]

On September 6, 2013, Plaintiffs filed a Motion to Remand the case to Los Angeles County Superior Court.[2]  [Doc. # 14.]  On September 13, 2013, Defendant filed an opposition to the motion.  [Doc. # 24.]

The Motion to Stay and Motion to Remand were originally scheduled for hearing on October 4, 2013.  [Doc. ## 13, 14.]  On October 2, 2013, the Court deemed these matters suitable for decision without oral argument.  [Doc. # 27.]  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Plaintiffs' Motion to Remand is **GRANTED**, Defendant's Motion to Stay Case is **DENIED** as moot, and this action is **REMANDED** to Los Angeles County Superior Court.

**II.**
**DISCUSSION**

**A.    The Court First Decides the Motion to Remand**

Defendant argues that the Court should address the Motion to Stay first and decline to rule on Plaintiffs' Motion to Remand (Mot. to Stay at 3-4) or, alternatively, the Court should deny Plaintiffs' Motion to Remand and grant the Motion to Stay.[3]  (Opp'n to Mot. to Remand at 7.)  Defendant contends that this Court has discretion to first consider the Motion to Stay based on *Sinochem International Co. v. Malaysia International Shipping Co.*, 549 U.S. 422, 127 S. Ct. 1184 (2007),[4] and notes that several district courts in this circuit have granted motions to stay while motions to remand have been pending.  (*Id.* at 2-7.)  Defendant contends that the MDL court is in the best position to decide pending jurisdictional issues in order to promote judicial efficiency and consistency and to prevent inconsistent rulings on the same jurisdictional issue. (Mot. to Stay at 8.)

_____

[2] Plaintiffs request expedited consideration of their motion (Mot. to Remand at 1, 11, 22), but they did not file an *ex parte* application under Local Rule 7-19.

[3] In its opposition to Plaintiffs' motion to remand, Defendant argues in the alternative that the Court should sever the New Jersey Plaintiffs, remand their claims, and stay the claims of the remaining Plaintiffs.  (Opp'n to Mot. to Remand at 1 n.1.)

[4] The *Sinochem* Court held that "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal," a court may dismiss on the ground of *forum non conveniens* without first addressing the jurisdictional issues.  *Sinochem*, 549 U.S. at 435-36.

**EXHIBIT 2**
**78**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 3 of 8 |
|---|---|---|---|

The Ninth Circuit has made clear that *Sinochem* does not "change the Supreme Court's command that [courts] address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively 'less burdensome.'" *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) (quoting *Sinochem*, 549 U.S. at 436).

Defendant is correct that some district courts in this circuit have granted motions to stay in the context of a pending decision on transfer to an MDL court before ruling on a motion to remand, using the approach of the Northern District of California district court in *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004).[5] (Opp'n. to Mot. to Remand at 3-5.) *See, e.g., Vest v. Allied Packing and Supply, Inc.*, No. C 11-00061, 2011 WL 333241, at *2 (N.D. Cal. Jan. 31, 2011); *but see Jones v. Bristol-Myers Squibb Co.*, No. C 13-2415, 2013 WL 3388659, at *4 (July 8, 2013). The *Conroy* court noted that "[t]he decision to grant or deny a temporary stay of proceedings pending a ruling on the transfer of the matter to the MDL court lies" within the discretion of a district court, and it reasoned that "[o]ften, deference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system." *Conroy*, 325 F. Supp. 2d at 1053. The court used a three-part test to determine whether to address a motion to remand or a motion to stay pending a ruling on transfer to the MDL court: (1) "the court should give preliminary scrutiny to the merits of the motion to remand" because the venue statute, 28 U.S.C. § 1404(a), limits transfer of a civil action to "a venue where the case could have been brought originally" and therefore "questions regarding subject matter jurisdiction must be resolved before any such transfer"; (2) "if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding"; (3) "if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action." *Id.*, citing *Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1048-49 (E.D. Wis. 2001).

The Ninth Circuit has not expressly adopted the *Conroy* court's approach, *see Jones*, 2013 WL 3388659, at *4, and the cases cited by Defendant are not binding on this Court. Moreover, several courts in this district have considered motions to remand before motions to stay in the context of a pending decision on transfer to an MDL court. *See Carpenters Pension*

---

[5] Defendant also argues that "[c]ourts in this district have . . . appl[ied] the three-factor test set forth in *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)." In *Rivers*, however, there was no pending motion to remand and the court used the three-factor test merely to determine whether to grant the stay. *See Rivers*, 980 F. Supp. at 1360.

**EXHIBIT 2**
**79**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 4 of 8 |
|---|---|---|---|

*Trust For S. California v. Ebbers*, 299 B.R. 610, 615 (C.D. Cal. 2003); *Shelton v. DePuy Orthopaedics, Inc.*, CV 11-08082, 2011 WL 6001630 (C.D. Cal. Dec. 1, 2011); *Andrews v. Bayer Corp.*, CV 09-08762, 2010 WL 234808 (C.D. Cal. Jan. 12, 2010); *but see Sanchez v. DePuy Orthopaedics Inc.*, 2:11-CV-07867, 2011 WL 7092289 (C.D. Cal. Nov. 21, 2011).

The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Supreme Court and Ninth Circuit precedent suggest that the Court should consider Plaintiffs' Motion to Remand first. Moreover, even if this Court were to apply the *Conroy* test, it would not be necessary to proceed beyond the first step as the jurisdictional issue does not appear "factually or legally difficult." *See Goodwin v. Kojian*, SACV 13-325, 2013 WL 1528966, at *2 (Apr. 12, 2013) ("Here, a preliminary assessment [under *Conroy*] of Plaintiff's MTR suggests that removal was improper, and thus, the Court must promptly complete its consideration of Plaintiff's MTR and remand if necessary.").

Defendant urges the Court to adopt the analysis of three district courts in this circuit that granted motions to stay and either denied or terminated with prejudice motions to remand in cases involving pelvic mesh. (Opp'n to Mot. to Remand, Exh. A.) As Plaintiffs point out, however, courts in this circuit are not of one mind as to whether to address a motion to stay or motion to remand first in pelvic mesh cases. *Compare Perry v. Luu*, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case), *and Goodwin*, 2013 WL 1528966, at *3 (same), *with Kelly Pecoraro and Michael Pecoraro v. Frances Sanghei-Kim, et al.*, EDCV 13-00987 (C.D. Cal.) (considering motion to stay pending determination by JPML before motion to remand in pelvic mesh case), *and Diane Thomas-Lanska, et al. v. Antoine A. Hanna, et al.*, CV 13-1434 (C.D. Cal.). While none of these cases are binding on this Court, the Court finds most persuasive the cases reaching the jurisdictional issue first.

Thus, this Court turns first to Plaintiffs' Motion to Remand.

**B.**     **The Court Lacks Subject Matter Jurisdiction**

"The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)). There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*) (internal quotation marks omitted)).

**EXHIBIT 2**
**80**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 5 of 8 |
|---|---|---|---|

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity: every plaintiff must be diverse from every defendant. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct 606, 163 L. Ed.2d 415 (2005). The Ninth Circuit has recognized an exception to the complete diversity requirement in the doctrine of fraudulent joinder. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

Plaintiffs contend that complete diversity is lacking on the face of the Complaint. (Mot. to Remand at 12.) The Complaint is brought on behalf of 93 Plaintiffs[6] from 21 states, including three Plaintiffs from New Jersey.[7] (Not. of Removal ¶ 21.) Defendant is a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. Therefore, for purposes of diversity jurisdiction, Defendant is a "citizen" of New Jersey. 28 U.S.C. § 1332(c)(1). Because Defendant and three Plaintiffs are citizens of New Jersey, diversity is lacking on the face of the Complaint.

Defendant does not suggest that complete diversity exists on the face of the Complaint, or that the fraudulent joinder exception is applicable. Rather, Defendant argues that this Court has jurisdiction under the "fraudulent misjoinder" doctrine, relying on a line of authority beginning with the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). (Not. of Removal ¶¶ 20, 25-35; Opp'n. to Mot. to Remand at 7-15.) *Tapscott* involved two putative classes of plaintiffs, each of which sued a different group of defendants based on "wholly distinct" transactions. *Tapscott*, 77 F.3d at 1360. Defendant Lowe's, the representative of one defendant class, removed the case to federal court on the basis of diversity jurisdiction, and the district court disregarded the citizenship of the second class of

---

[6] The Complaint alleges that it is brought on behalf of 94 Plaintiffs (Compl. ¶ 1), but only 93 Plaintiffs are named (*see id.* ¶¶ 3-95), and Plaintiffs' briefing in this Court refers to 93 Plaintiffs. (*See* Mot. to Remand at 1.)

[7] Twenty-three Plaintiffs are from California; 10 Plaintiffs are from Texas; 8 Plaintiffs are from Pennsylvania; 7 Plaintiffs are from Indiana; 5 Plaintiffs are from Ohio; 4 Plaintiffs are from Georgia; 4 Plaintiffs are from Illinois; 4 Plaintiffs are from Oregon; 4 Plaintiffs are from Tennessee; 3 Plaintiffs are from Kansas; 3 Plaintiffs are from New Jersey; 3 Plaintiffs are from Oklahoma; 3 Plaintiffs are from Utah; 2 Plaintiffs are from Louisiana; 2 Plaintiffs are from Nevada; 2 Plaintiffs are from Virginia; 2 Plaintiffs are from West Virginia; 1 Plaintiff is from Colorado; 1 Plaintiff is from Florida; 1 Plaintiff is from Kentucky; and 1 Plaintiff is from Missouri. (Compl. ¶¶ 3-95.)

**EXHIBIT 2**
**81**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 6 of 8 |
|---|---|---|---|

defendants, asserted jurisdiction, and severed and remanded the remainder of the action. *Id.* at 1355, 1360. The Eleventh Circuit affirmed the district court's orders, holding that where a plaintiff's attempt to defeat diversity by joining parties is "so egregious as to constitute fraudulent joinder," a court could disregard the fraudulently joined parties in order to assert diversity jurisdiction. *Id.* at 1360. The court noted that it "d[id] not hold that mere misjoinder is fraudulent joinder." *Id.*

The "fraudulent misjoinder" doctrine has received a "tepid" response outside the Eleventh Circuit. *See Early v. Northrup Grumman Corp.*, 2:13-CV-3130, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013). While the Fifth Circuit adopted the doctrine in a one-paragraph opinion, *see In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002), the other circuit courts to consider the doctrine have not formally adopted it. *See, e.g., California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 Fed. App'x. 727, 729 (9th Cir. 2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs."); *Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. App'x. 732, 739 (10th Cir. 2010); *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010).

District courts in this circuit have criticized the "fraudulent misjoinder" doctrine. *See Osborn v. Metro. Life Ins. Co.*, 341 F. Supp.2d 1123, 1127-28 (E.D. Cal. 2004) (opining that "the last thing the federal courts need is more procedural complexity" associated with fraudulent misjoinder doctrine, noting the doctrine raises "unnecessary difficulties," such as uncertainty as to whether the federal or state joinder rules should apply, and suggesting the state court was competent to determine the issue of misjoinder); *Lopez v. Pfeffer*, 13-CV-03341, 2013 WL 5367723, at *3 (N.D. Cal. Sept. 25, 2013) (noting that defendant was entitled to litigate in MDL only if court had subject matter jurisdiction and court was "in just as good a position or better" than MDL court to resolve jurisdictional issue); *Early*, 2013 WL 3872218, at *2 - *3 (noting "the doctrine raises more questions than answers" because it is not clear when joinder is so egregious or otherwise inappropriate to require application of doctrine, and concluding that the doctrine "flips [the maxim that § 1441 should be narrowly construed] on its head by making cases removable that by § 1441's plain terms should not be, effectively increasing the jurisdiction of federal courts beyond what the rules envision"); *Perry v. Luu*, 1:13-CV-00729, 2013 WL 3354446, at *5 (E.D. Cal. July 3, 2013) (noting court was "confounded" by the "circular logic" of fraudulent misjoinder doctrine which "requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and *only then* find it has jurisdiction" while "the authority to sever misjoined claims or defendants under Rule 20 *presumes* the Court has jurisdiction to act" (emphasis in original)).

**EXHIBIT 2**
**82**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | | Date | October 8, 2013 |
|---|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | | Page | 7 of 8 |
|---|---|---|---|---|

It appears that two district courts in this circuit have used "fraudulent misjoinder" to exercise diversity jurisdiction, *see Sutton v. Davol*, 251 F.R.D. 500, 503-05 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp.2d 674, 684-85 (D. Nev. 2004).[8] Many other courts in this circuit have declined to decide whether the doctrine is good law, finding that it would not control their respective cases. *See, e.g.*, *Ramirez v. Our Lady of Lourdes Hosp. at Pasco*, 2:13-CV-01108, 2013 WL 5373213, at *3 - *4 (W.D. Wash. Sept. 25, 2013); *Caouette v. Bristol-Myers Squibb Co.*, C-12-1814, 2012 WL 3283858, at *6 - *7 (N.D. Cal. Aug. 10, 2012); *Selman v. Pfizer, Inc.* 11-CV-1400, 2011 WL 6655354, at *12 - *13 (D. Or. Dec. 16, 2011).

Having considered both sides' arguments regarding the fraudulent misjoinder doctrine, this Court concludes that it must apply the traditional standards governing the existence *vel non* of diversity jurisdiction. Defendant identifies no precedent binding on this Court to support its contention that "fraudulent misjoinder" doctrine applies. The Ninth Circuit has not formally adopted the doctrine, and under Ninth Circuit precedent, 28 U.S.C. § 1441 is to be strictly construed and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566; *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252.

Defendant has not met its burden of establishing that the Court has diversity jurisdiction over this case. Defendant fails to demonstrate that the New Jersey Plaintiffs were joined merely in order to defeat diversity jurisdiction. While Defendant accuses Plaintiffs of "blatant forum shopping" due to the joinder of three New Jersey Plaintiffs (Opp'n to Mot. to Remand at 15), Defendant's arguments suggest only that Plaintiffs' pleading is generally deficient as to all 93 Plaintiffs.[9] Thus, because complete diversity was destroyed by the presence of the New Jersey Plaintiffs, this Court lacks jurisdiction over this action.

---

[8] In these cases involving the alleged fraudulent misjoinder of defendants, the courts considered misjoinder under federal law and one of the courts used a standard lower than the egregiousness standard articulated in *Tapscott. See Greene*, 344 F. Supp.2d at 685.

[9] Specifically, Defendant contends: (1) "Plaintiffs' Complaint alleges claims arising from unidentified Bard products designed for the treatment of POP and SI. *No Plaintiff* identifies which product she received, if any"; (2) "The Complaint *does not allege injuries specific to each Plaintiff*, but rather lists various alleged dangers of polypropylene mesh in general"; (3) "*Each Plaintiff* has a unique medical history, which includes the highly individualized conditions and symptoms their symptoms were designed to treat, as well as their unique gynecological, urological, and other medical information"; (4) "The pelvic mesh products *for the 93 Plaintiffs* were undoubtedly implanted by different physicians, for different medical reasons, at different times, and at different medical facilities around the country; (5) "*Plaintiffs* have not stated when their surgeries occurred. It is likely that they occurred over a number of years given the potential range of products available to physicians, beginning in 2000." (Not. of Remand at 13-16 (emphasis added).)

**EXHIBIT 2**
**83**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 8 of 8 |
|---|---|---|---|

**III.**
**CONCLUSION**

In light of the foregoing, Plaintiffs' Motion to Remand is **GRANTED**, Defendant's Motion to Stay Case is **DENIED** as moot, and this action is hereby **REMANDED** to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

---

To the extent that Defendant argues that allegedly deficient pleading as to *all* plaintiffs is evidence of fraudulent misjoinder of only *some* plaintiffs, it fails to cite any binding Ninth Circuit precedent in support of this conclusion.

**EXHIBIT 2**
**84**

| CV-90 | CIVIL MINUTES—GENERAL | Initials of Deputy Clerk <u>vv</u> |
|---|---|---|



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN  DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN  DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Re:  Case Number: _____

Previously Superior Court Case No. _____

Case Name: _____

Dear Sir / Madam:

    Pursuant to this Court's ORDER OF REMAND issued on _____, the above-referenced case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: _____
    Deputy Clerk

☐ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

=====================================================================

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____
    Deputy Clerk

_____
Date

**EXHIBIT D2**

**85**

CV - 103 (09/08)                **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

# JS-6

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | **CV 14-0468 JGB (SPx)** | | Date | February 20, 2014 |
|---|---|---|---|---|

| Title | *Gail Straughn, et al. v. American Medical Systems, Inc., et al.* |
|---|---|

**Present: The Honorable**   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) DENYING Defendants' Motion to Stay (Doc. No. 15); (2) GRANTING Plaintiffs' Motion to Remand (Doc. No. 19); (3) VACATING the March 3, 2014 Hearings; and (4) REMANDING the Action to the Superior Court of California, County of Los Angeles (IN CHAMBERS)**

Before the Court are Plaintiffs' motion to remand (Doc. No. 19) and Defendants' motion to stay (Doc. No. 15). The Court finds these matters appropriate for resolution without hearings. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers timely filed in support of and in opposition to the motions, the Court GRANTS Plaintiffs' motion to remand and DENIES AS MOOT Defendants' motion to stay. The March 3, 2014 hearings on the motions are VACATED.

## I. BACKGROUND

On December 30, 2013, fifty-seven individual Plaintiffs filed a complaint in state court against Defendants American Medical Systems, Inc., American Medical Systems Holdings, Inc., Endo Pharmaceuticals, Inc., Endo Pharmaceuticals Holdings, Inc., and Endo Health Solutions, Inc. (collectively, "Defendants"). ("Compl.," Not. of Removal, Doc. No. 1, Exh. A.) The Complaint alleges Plaintiffs suffered a variety of injuries from the surgical implantation of pelvic mesh devices manufactured by Defendants. (Compl. ¶¶ 1, 88-95, 103-29.) On January 21, 2014, Defendants removed the action to this Court on the basis of diversity jurisdiction. (Not. of Removal at 4-13.)

On February 4, 2014, Plaintiffs moved to remand this action to state court, contending that complete diversity is lacking because Defendants' allegations of fraudulent misjoinder are

**EXHIBIT 2**
**86**

unfounded. ("MTR," Doc. No. 19.) On February 10, 2014, Defendants opposed. ("MTR Opp'n," Doc. No. 28.)

On February 3, 2014, Defendants moved to stay the case pending a transfer by the Judicial Panel on Multidistrict Litigation. ("MTS," Doc. No. 15.) Plaintiffs opposed on February 10, 2014. ("MTS Opp'n," Doc. No. 23.)

On February 7, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") opened an MDL action in the United States District Court for the Southern District of West Virginia for coordinated pretrial proceedings for all AMS pelvic surgical mesh device-related litigation. See In re AMS Pelvic Repair Sys. Prods. Liab. Litig.["AMS MDL"], 844 F. Supp. 2d 1359 (J.P.M.L. 2012). To date, approximately 17,000 cases have been transferred to the AMS MDL. (MTS at 2.)

## II. LEGAL STANDARD

### A. Stay

The United States Supreme Court holds that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket within economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citations omitted). District courts consider three factors when deciding whether to grant a motion to stay proceedings pending the motion filed with the MDL: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." Id.

### B. Remand

Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (internal citations omitted).

## III. DISCUSSION

CIVIL MINUTES—GENERAL

EXHIBIT 2
87

## A. Order of the Motions

In previous actions involving Defendants and the AMS MDL, the Court has taken up the stay issue first and agreed to stay the action pending the JPML's decision to transfer. See, e.g., Kathryn Carpenter, et al. v. American Medical Systems, Inc., et al., No. CV 13-6022 JGB (SPx); Tanguay, et al. v. American Medical Systems, Inc., et al., No. CV 13-5937 JGB (SPx); Susannah Elton, et al. v. American Medical Systems, Inc., et al., No. CV 13-5712 JGB (SPx). However, after reviewing several other recent decisions by courts in this district, the Court finds that the weight of authority favors remand.

The Ninth Circuit has made clear that courts should "address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively 'less burdensome.'" Potter v. Hughes, 546 F.3d 1051, 1061 (9th Cir. 2008) (quotation omitted). The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Ninth Circuit precedent suggests that the Court should consider Plaintiffs' motion to remand first. Numerous courts in this circuit have decided to take up the issue of remand prior to stay in order to address the jurisdictional issue first. See DeKalb v. C.R. Bard, Inc., No. CV 13-6308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013); Perry v. Luu, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case); Goodwin v. Kojian, SACV 13-325, 2013 WL 1528966, at *2 (C.D. Cal. Apr. 12, 2013) (same).

Accordingly, the Court first turns to the motion to remand.

## B. Remand

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity, meaning every plaintiff must be diverse from every defendant. See Lincoln Property Co. v. Roche, 546 U.S. 81, 89 (2005). Here, three Plaintiffs, Janin Kost, Patricia Madrigal, and Debra Gahm, are citizens of Minnesota and are not diverse from Defendants American Medical Systems, Inc. and American Medical Systems Holdings, Inc., both of which have their principal place of business in Minnesota and therefore are citizens of that state. (Compl. ¶¶ 11-13, 60-74; Not. of Removal ¶¶ 24-25.) Another Plaintiff, Charlotte Miller, is a citizen of Pennsylvania, which is also the citizenship of Defendants Endo Pharmaceuticals, Inc. and Endo Health Solutions, Inc. (Compl. ¶ 39; Not. of Removal ¶¶ 26-27.) Thus, it appears from the face of the Complaint that jurisdiction cannot properly lie.

Defendants assert that diversity jurisdiction exists because Plaintiffs have "fraudulently misjoined" four non-diverse Plaintiffs to circumvent diversity jurisdiction. (MTR Opp'n at 7.) Fraudulent misjoinder is a concept originating in the Eleventh Circuit. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). It appears to be related to the legal doctrine of fraudulent joinder. See Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Fraudulent joinder of a non-diverse defendant is an exception to the requirement for complete diversity among the parties in a suit whose federal subject matter jurisdiction is based upon 28 U.S.C. § 1332. See Morris v. Princess Cruises Inc., 236 F.3d 1061, 1067 (9th Cir.

**EXHIBIT 2**
**88**

2001). Fraudulent misjoinder, on the other hand, permits the court to ignore the citizenship of non-diverse plaintiffs when there is no real connection among the plaintiffs' claims, such that plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder. Tapscott, 77 F.3d at 1360.

The doctrine of fraudulent misjoinder has only been recognized by the Fifth and Eleventh Circuits. See id.; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002). The Ninth Circuit has not adopted the doctrine, and courts in this circuit have criticized its application. See Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc., 24 Fed. App'x 727, 729 (9th Cir. 2001); Osborn, 341 F. Supp. 2d at 1127-28; Early v. Northrup Grumman Corp., 2:13-CV-3130, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013). Defendants identify no precedent binding on this Court to support its contention that the "fraudulent misjoinder" doctrine applies. The Ninth Circuit has not formally adopted the doctrine, and under Ninth Circuit precedent, 28 U.S.C. § 1441 is to be strictly construed and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566.

Defendants have not met their burden of establishing that the Court has diversity jurisdiction over this case. Even if the Court recognized the doctrine of fraudulent misjoinder, Defendants fail to demonstrate that joinder of the non-diverse Plaintiffs was "egregious" and that they were joined merely in order to defeat diversity jurisdiction. Defendants' arguments suggest only that Plaintiffs' pleading is generally deficient as to all Plaintiffs due to its failure to satisfy the joinder requirements of Rule 20(a). (MTR Opp'n at 15-16.) However, as the Eleventh Circuit made clear, mere misjoinder is not fraudulent joinder; it only rises to the level of fraudulent joinder if it is sufficiently egregious. Tapscott, 77 F.3d at 1360; see also Pate v. Boston Scientific Corp., CV 13-06321 BRO AJWX, 2013 WL 5743499, at * 5 (C.D. Cal. Oct. 21, 2013) ("If the Eleventh Circuit did not intend egregiousness to be the standard for fraudulent misjoinder, it could have selected one of myriad other terms to use in that sentence instead of "egregious."). Defendants have not provided the Court with evidence from which the Court could conclude that joinder is egregious.

Because the Ninth Circuit has not adopted the doctrine of fraudulent misjoinder and complete diversity was destroyed by the presence of the Pennsylvania and Minnesota Plaintiffs, this Court lacks jurisdiction over this action. This Court now joins several other courts in this district in remanding pelvic mesh device actions improperly removed on the basis of fraudulent misjoinder. See Pate, CV 13-06321 BRO AJWX, 2013 WL 5743499, at * 5; Cheryl Mauck, et al. v. Boston Scientific Corporation, et al., No. CV 13-6343 GW (JEMx), Doc. No. 43 (C.D. Cal Oct. 16, 2013); Sheila Dekalb, et al. v. C.R. Bard, Inc., et al., No. CV 13-06308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand, DENIES AS MOOT Defendants' motion to stay, and REMANDS this action to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

**EXHIBIT 2**
**89**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court


Re:   Case Number: _____

      Previously Superior Court Case No. _____

      Case Name: _____


Dear Sir / Madam:
        Pursuant to this Court's ORDER OF REMAND issued on _____, the
above-referenced case is hereby remanded to your jurisdiction.

        Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this
Court.

        Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it
to our office.  Thank you for your cooperation.

                                        Respectfully,

                                        Clerk, U. S. District Court


                                        By: _____
                                              Deputy Clerk

                                        ☐ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

==============================================================================
Receipt is acknowledged of the documents described herein.

                                        Clerk, Superior Court

                                        By: _____
_____                  Deputy Clerk
Date                          **EXHIBIT 4**
                                 **90**
_____

CV - 103 (09/08)              **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

 Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
 111 North Hill Street
 Los Angeles, CA 90012

Re:   Case Number:      2:15–cv–05382–PA–FFM
         Previously Superior Court Case No.      BC531848BBB
         Case Name:      XOCHILT ROBINSON V. JOHNSON AND JOHNSON ET AL

Dear Sir/Madam:

        Pursuant to this Court's ORDER OF REMAND issued on       7/21/2015      , the above–referenced case is hereby remanded to your jurisdiction.

        Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

        Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

                                        Respectfully,

                                        Clerk, U.S. District Court

                                        By:  /s/ *Grace Kami*
                                              Deputy Clerk
                                              (213) 894–0747
                                              Western Division

*cc: Counsel of record*

———————————————————————————————————————

Receipt is acknowledged of the documents described herein.

                                        Clerk, Superior Court

                                        By: _____

_____
Date                                       Deputy Clerk

**EXHIBIT 2**
**91**

CV–103 (09/08)    LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Xochilt Robinson ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

# EXHIBIT 2
## 92

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

### A. Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of California. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B. Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/] Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT 2**
**96**

**CIVIL MINUTES - GENERAL**

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.     Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

---

facts about Plaintiff.

### EXHIBIT 2
**94**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

## EXHIBIT 2
## 95

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2] Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848BBB, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2] Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional. See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional. While the district court may remand any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

EXHIBIT 2
96

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| A. MARZ<br>GIRARDI AND KEESE<br>1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000 | **FILED**<br>Los Angeles Superior Cou. |

POS-010

TELEPHONE NO.: **(213) 977-0211**      FAX NO. *(Optional)*:  **(213) 481-1554**

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*: **Plaintiff:**

**AUG 08 2013**

Los Angeles County Superior Court - Stanley Mosk

STREET ADDRESS: 111 N. Hill St.

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles, CA 90012

BRANCH NAME: Central

John A. Clarke, Executive Officer/C...

By _____, Dep...

KATHY MORALES

| PLAINTIFF/PETITIONER: SHERRY PATE, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BOSTON SCIENTIFIC CORPORATION | BC515037 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 29129 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    a. ☒ summons
    b. ☒ complaint
    c. ☐ Alternative Dispute Resolution (ADR) package
    d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
    e. ☐ cross-complaint
    f. ☒ other *(specify documents)*:
    
    **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment; General Order; General Order- Final Status Conference; Voluntary Efficient Litigation Stipulations**

3. a. Party served *(specify name of party as shown on documents served)*:
    **BOSTON SCIENTIFIC CORPORATION**

    b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
    **BECKY DE GEORGE - PERSON AUTHORIZED TO ACCEPT**

4. Address where the party was served:    **CSC LAWYERS**
    **2710 GATEWAY OAKS DR., # 150N**
    **SACRAMENTO, CA 95833**

5. I served the party *(check proper box)*

    a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **7/29/2013**    (2) at *(time)*: **3:50 PM**

    b. ☐ by substituted service. On *(date)*:  at *(time)*:  I left the documents listed in item 2 with or
    in the presence of *(name and title or relationship to person indicated in item 3b)*:

    (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
    *(date)*:  from *(city)*:                               or ☐ a declaration of mailing is attached.

    (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

# EXHIBIT 3

97

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/LA307251752 |
|---|---|---|

| PETITIONER: SHERRY PATE ET A' | CASE NUMBER: |
| RESPONDENT: BOSTON SCIENTIFIC CORPORATION | BC515037 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date)*:                              (2) from *(city)*:

   (3)☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4)☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify)*:
c. ☐ as occupant.
d. ☒ On behalf of *(specify)*: **BOSTON SCIENTIFIC CORPORATION**
   under the following Code of Civil Procedure section:

   ☒ 416.10 (corporation)            ☐ 415.95 (business organization, form unknown)
   ☐ 416.20 (defunct corporation)       ☐ 416.60 (minor)
   ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
   ☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
   ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                  ☐ other:

7. **Person who served papers**

a. Name: **Brittan Jackson-Cooley - Janney & Janney Attorney Service, Inc.**
b. Address: **1545 Wilshire Blvd., Ste. 311  Los Angeles, CA 90017**
c. Telephone number: **(213) 628-6338**
d. The fee for service was: **$ 75.00**
e. I am:

   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ registered California process server:
     (i) ☐ owner   ☐ employee   ☒ **independent contractor.**
     (ii) Registration No.: **2012-0003**
     (iii) County: **Nevada**

8. ☒ I **declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I **am a California sheriff or marshal and** I certify that the foregoing is true and correct.

   Date:  **July 30, 2013**

**Janney & Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., Ste. 311**
**Los Angeles, CA 90017**
**(213) 628-6338**

_____
**Brittan Jackson-Cooley**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

*Brittan Cooley*
(SIGNATURE)

# EXHIBIT 3

1  Thomas V. Girardi, SBN 36603
2  Amy F. Solomon, SBN 140333
   Amanda H. Kent, SBN 258298
3  GIRARDI | KEESE
4  1126 Wilshire Boulevard
   Los Angeles, California 90017
5  Telephone: (213) 977-0211
6  Facsimile: (213) 481-1554

7  Kurt B. Arnold Texas SBN 24036150
   Jason A. Itkin Texas SBN 24032461
8  Noah M. Wexler SBN 24060816
   Caj D. Boatright SBN 24036237
9  ARNOLD & ITKIN LLP
   6009 Memorial Drive
10 Houston, Texas 77007
   Telephone: (713) 222-3800
11 Facsimile: (713) 222-3850

12 J. Steve Mostyn SBN 00798389
   The Mostyn Law Firm
13 3810 West Alabama Street
   Houston, TX 77027
14 Telephone: (713) 861-6616
   Facsimile: (713) 861-8084
15 Attorney(s) For: Plaintiff(s)

16

17                 UNITED STATES DISTRICT COURT

18           FOR THE CENTRAL DISTRICT OF CALIFORNIA

19                       WESTERN DIVISION

20 SHERRY PATE, et al              )  CASE NO. CV 13-06321 BRO (AJW)
                                   )  [Assigned to Hon. Beverly Reid O'Connell]
21        Plaintiff(s),            )
                                   )
22                                 )  **NOTICE OF MOTION AND MOTION**
23 vs.                             )  **TO REMAND AND REQUEST FOR**
                                   )  **EXPEDITED CONSIDERATION;**
24 BOSTON SCIENTIFIC CORPORATION,  )  **MEMORANDUM OF POINTS AND**
                                   )  **AUTHORITIES; [PROPOSED] ORDER**
25        Defendant(s).            )
26                                 )  DATE:     October 21, 2013
                                   )  TIME:     1:30 p.m.
27                                 )  CTRM:     14
                                   )  JUDGE     Hon. Beverly Reid O'Connell
28                                 )
                                   )

                              **EXHIBIT 4**

                           MOTION TO REMAND

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................1

II.  FACTS ................................................................................................3

III. ARGUMENT AND AUTHORITIES ...................................................6

    1.   The jurisdictional analysis is a threshold issue that merits
        immediate consideration..............................................................6

    2.   On August 29, 2013, another Central District Court issued an
        order remanding a multi-party vaginal mesh suit with the same
        jurisdictional issues as this case.................................................11

    3.   Diversity jurisdiction is lacking based on the face of Plaintiffs'
        Original Complaint....................................................................12

    4.   The fraudulent misjoinder doctrine – the primary basis for
        Boston Scientific's removal of this case – has not been adopted
        by the Ninth Circuit or the Central District of California and is
        inapplicable...............................................................................12

    5.   Even assuming the fraudulent misjoinder doctrine is viable
        here, Boston Scientific cannot satisfy its heavy burden to prove
        that the Massachusetts and Delaware Plaintiffs were
        fraudulently misjoined and removal is proper.............................15

        a.   There is a strong presumption against removal
            jurisdiction and Boston Scientific bears a heavy burden
            to prove that removal is proper...........................................16

        b.   Boston Scientific cannot satisfy its heavy burden to prove
            that the out-of-state Plaintiffs were fraudulently
            misjoined..........................................................................17

IV.  CONCLUSION..................................................................................22

**EXHIBIT 4**

i

**100**

MOTION TO REMAND

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. Merck & Co., Inc.*,
   2005 WL 5792361 (C.D. Cal. July 26, 2005) ...............................................4,13

*Abrego v. Dow Chem. Co.*,
   443 F.3d 676  (9th Cir. 2006) ..........................................................................15

*Alaniz v. Merck & Co., Inc.*,
   2005 WL 6124308 (C.D. Cal. June 3, 2005)...................................................13

*Albright v. Gates*,
   362 F.2d 928 (9th Cir. 1966)...........................................................................18

*Atwell, et al. v. Boston Scientific Corporation*,
   2013 WL 136471 (E.D. Mo. Jan. 10 2013)............................................ 9, 19, 21

*Brannen, et al. v. Ethicon, Inc., et al.*,
   4:12CV1429 RWS (E.D. Mo. Aug. 14, 2012) ..................................9, 20, 21

*Calif. ex. rel. Lockyer v. Dynegy, Inc.*,
   375 F.3d 831 (9th Cir. 2004) ..........................................................................15

*Cauoette v. Bristol-Myers Squibb*,
   2012 WL 3283858 (N.D. Cal. Aug. 10, 2012) ................................................16

*Duncan v. Stuetzle*,
   76 F.3d 1480 (9th Cir. 1996) ..........................................................................15

*Flores v. Chevron Corp.*,
   2011 WL 2160420 (C.D. Cal May 31, 2011).............................................4,13

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) ..........................................................................15

*Goodwin v. Kojian*,
   2013 WL 1528966 (C.D. Cal. Apr. 12, 2013).  .............................10,12,13,14

*Hamilton Materials, Inc. v. Down Chem. Corp.*,
   494 F.3d 1203 (9th Cir.2007)..........................................................................16

*HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*,
   No. 04–03615 RMW, 2005 WL 2216950 (N.D. Cal. July 25, 2005)........................13

*In re Prempo Products Liability Litigation*,
   591 F.3d 613 (8th Cir. 2010) ..................................................... 5,16,18,19,21

*League to Save Lake Tahoe v. Tahoe Regional Planning Agency*,
   558 F.2d 914 (9th Cir. 1977) ..........................................................................17

*Lincoln Property Co. v. Roche*,
   546 U.S. 81 (2005)..........................................................................................11

*Moore v. New York Cotton Exchange*,
   270 U.S. 593  (1926)........................................................................................18

**EXHIBIT 4**

ii

**101**

*Moore–Thomas v. Alaska Airlines, Inc.,*
  553 F.3d 1241 (9th Cir. 2009) ...........................................................15
*N.C. ex rel. Jones v. Pfizer, Inc.,*
  2012 WL 1029518 (N.D. Cal. March 26, 2012) ............................13
*Osborn v. Metro Life Ins. Co.,*
  341 F.Supp.2d 1123 (E.D. Cal. 2004) .......................................13, 14
*Padilla v. AT & T Corp.,*
  697 F.Supp.2d 1156 (C.D.Cal.2009) ............................................16
*Perry v. Luu,*
  2013 WL 3354446 (E.D. Cal. July 3, 2013) ...........................9,12,14
*Sutton v. Davol, Inc.,*
  251 F.R.D. 500 (E.D. Cal. May 28, 2008) ....................................13
*Tapscott v. MS Dealer Service Corp.,*
  77 F.3d 1353 (11th Cir. 1996) ...........................................4,5,12,13,16
*United Mine Workers of America v. Gibbs,*
  383 U.S. 715 (1966) .........................................................................17


**Statutes**
28 U.S.C. § 1332(c)(1) ...........................................................................11
28 U.S.C. § 1407 ...............................................................................5,6
Cal. Civ. Code, § 378 .......................................................................12,17


**Rules**
Fed. R. Civ. P. 20 .................................................................................12


**Other Authorities**
*Federal Practice and Procedure,* § 1653, at 415 (3d ed. 2001)....................18

**EXHIBIT 4**

iii

MOTION TO REMAND

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs' simple, straightforward motion to remand should be granted because:

1) Complete diversity is plainly lacking as some Plaintiffs and Boston Scientific are residents of the same states;

2) A recently issued *sua sponte* remand order from the Central District in another multi-plaintiff vaginal mesh case implicating the same jurisdictional issue is directly on point;

3) The fraudulent misjoinder doctrine – Boston Scientific's primary basis for removal – has not been adopted by the Ninth Circuit or the Central District of California and is inapplicable; and

4) Even if the doctrine is viable here, Boston Scientific does not come close to satisfying its heavy burden to prove that joinder of the non-diverse Plaintiffs is so "egregious" that it "borders on a sham." Rather, joinder of Plaintiffs' claims is highly appropriate under both the California and federal permissive joinder statutes.

Plaintiffs also respectfully request that the jurisdictional issue be decided on an expedited basis, as a threshold matter, pursuant to U.S. Supreme Court, Ninth Circuit, and Central District of California case law. Plaintiffs therefore respectfully request this Court to remand the case to the state court in which it was appropriately filed on an expedited basis.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Each of the sixty-five Plaintiffs in this case is a female who suffered from pelvic organ prolapse and/or stress urinary incontinence. Each of sixty-five Plaintiffs was vaginally implanted with a surgical mesh kit designed, manufactured, marketed, and sold

**EXHIBIT 4**

by Defendants to treat her condition. Each of the sixty-five Plaintiffs has experienced severe and debilitating problems associated with the surgical mesh kit implanted in her.

Facing similar injuries caused by the same defective products produced by a common manufacturer, Plaintiffs joined together to file this suit. Six Plaintiffs are from California. More importantly for purposes of this motion, two Plaintiffs are from Massachusetts and one is from Delaware, the states of corporate residence for Boston Scientific. Diversity jurisdiction is clearly lacking. Nonetheless, Boston Scientific removed this case on that very basis, alleging that all Plaintiffs were "fraudulently misjoined," a doctrine that has not been adopted by the Ninth Circuit or this District. However, even if the doctrine is viable here, Boston Scientific does not, because it cannot, satisfy its heavy burden to prove that Plaintiffs' joinder is "egregious." In fact, given the significant legal and factual issues common to all Plaintiffs, joinder under Federal of Civil Procedure 20 and California Code of Civil Procedure § 378 is entirely appropriate.

The true motive behind Boston Scientific's Notice of Removal in light of the clear absence of diversity jurisdiction comes into sharp focus when considering its simultaneous efforts to transfer it to the MDL – Boston Scientific's end game. Indeed, Boston Scientific's strategy is to convince this Court to delay ruling on the threshold jurisdictional matter prior to the JPML's transfer determination. Plaintiffs respectfully submit that that the Court should instead follow the guidance of the Supreme Court and the Ninth Circuit,

**EXHIBIT 4**

2

MOTION TO REMAND

promptly evaluate whether it has subject matter jurisdiction (which is lacking), and remand this case to state court.

## II.
## FACTS

On July 12, 2013, sixty-five Plaintiffs who suffered from POP and/or SUI, and had been vaginally implanted with the same surgical mesh kits designed, manufactured, marketed, and sold by the same company, joined together to file this suit. *See* Plaintiffs' Original Complaint at ¶¶86-92, 100-26. Consistent with the FDA's determination that the "serious complications" associated with the vaginal implantation of Boston Scientific's surgical mesh kits are "not rare" and "mesh used in transvaginal mesh repair introduces risks not present in traditional non-mesh surgery," each Plaintiff was seriously injured as a result of her implant. *See id.* at ¶¶128-37. The liability facts underlying each Plaintiff's claims are identical. *See id.* at 100-26; *see also* ¶¶140-204. Boston Scientific's failure to adequately design, test, label, and warn about its surgical mesh products, underpinned by its knowledge that such products should not be vaginally implanted, is common to each Plaintiff's claims. *See id.* As such, the liability discovery in this case for all Plaintiffs will be identical. *See id.* at ¶91. Plaintiffs' injuries and damages also involve common questions of law and fact: each Plaintiff suffered from POP and/or SUI, each was vaginally implanted with Boston Scientific's surgical mesh kit, each suffered serious complications following implantation, and each of their injuries and damages arose from and was caused by the same conduct of Boston Scientific. *See id.* at ¶¶100-204

EXHIBIT 4

MOTION TO REMAND
105

Six Plaintiffs reside in California. *See id.* at ¶¶3-8. Two Plaintiffs reside in Massachusetts and one resides in Delaware, the state of corporate residence for Boston Scientific. *See id.* at ¶¶9-11, 68-71. Boston Scientific concedes as much. But, despite the clear absence of diversity between the parties, Boston Scientific removed the case on diversity grounds, contending that Plaintiffs were "fraudulently misjoined" because their claims do not involve common questions of law and fact, and do not arise out of the same transaction, occurrence, or series of transactions or occurrences. (Doc. # 1 at pp.7-22).[1] The fraudulent misjoinder doctrine originated in the Eleventh Circuit, has not been adopted by the Ninth Circuit or the Central District of California, and can be established only by showing that the joinder of Plaintiffs is so "egregious" that it "borders on a sham." *See Flores v. Chevron Corp.*, 2011 WL 2160420, at **4-5 (C.D. Cal May 31, 2011) (acknowledging that the Ninth Circuit has "neither discussed nor adopted the Eleventh Circuit's holding in *Tapscott*," and refusing to sever parties based on the doctrine); *Aaron v. Merck & Co., Inc.*, 2005 WL 5792361, at *3 (C.D. Cal. July 26, 2005) (holding that "the Court declines to adopt and apply the theory set forth in *Tapscott* to this case"); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996); *In re Prempo Products Liability Litigation*, 591 F.3d 613, 620-24 (8th Cir. 2010).

---

[1] Boston Scientific even attempts to parse its fraudulent joinder argument into two separate jurisdictional concepts – improper jurisdictional manipulation and fraudulent misjoinder – in essence, getting two bites at the apple. However, both hinge squarely on whether Boston Scientific can satisfy its heavy burden to prove that the plaintiffs were improperly joined, a task it cannot achieve, particularly in light of its repeated representations to the JPML that the claims should be consolidated into one proceeding.

**EXHIBIT 4**

Ironically, and directly contrary to its fraudulent misjoinder argument, Boston Scientific is simultaneously attempting to transfer Plaintiffs' claims to the Boston Scientific transvaginal mesh MDL in West Virginia, in essence joining Plaintiffs' case with other vaginal mesh cases due to the common issues among the Plaintiffs' claims, the near identical discovery they entail, and the judicial efficiencies created by litigating them together. *See* Boston Scientific's Response to Plaintiffs' Motion for Transfer to the Southern District of West Virginia Pursuant to 28 U.S.C. § 1407 (Doc. # 32 in MDL 2326 – *In re Boston Scientific Corp., Pelvic Repair Products Liability Litigation*) attached hereto as Exhibit A at p.5 (exhibits omitted).   When the MDL was formed, Boston Scientific admitted that consolidation of the mesh cases against it "would serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation." *Id.*   More importantly, when Boston Scientific has opposed the attempts of MDL plaintiffs seeking to vacate transfer orders to that proceeding, it has conceded that the claims against it "share[] common questions of law and fact...." *See* Boston Scientific Corporation's Response in Opposition to Plaintiffs' Motion to Vacate CTO-72 as to Jennings-Welch (Doc. #628 in MDL 2326), which is attached as Exhibit B at p.2) (exhibits omitted).   Boston Scientific' pleadings – when attempting to establish the MDL and transfer cases to it – run directly counter to its contention in the Notice of Removal that "plaintiffs' claims here do not arise out of the same transaction, occurrence, or series of transactions; nor do they give rise to common questions of law or fact," and "joinder of

EXHIBIT 4

5

MOTION TO REMAND

107

these various claims will not serve to promote the efficient resolution of these claims." (Doc #1 at ¶¶60-61). Boston Scientific's diametrically opposed arguments cannot be squared and expose the weakness of their fraudulent misjoinder argument.

Boston Scientific's real strategy is clear – seek to delay this Court's jurisdictional analysis in hopes that the case will be transferred to the MDL first. In fact, before Plaintiffs were even allowed to file the instant motion to remand under the local rules of this Court, Boston Scientific had already filed a tag-along notice with the JPML, hoping to prompt transfer to the MDL before this Court has a chance to determine if diversity jurisdiction exists. With diversity jurisdiction plainly lacking, Plaintiffs file this Motion to Remand along with a request to consider the remand issue on an expedited basis. Plaintiffs respectfully request the Court to consider and grant their Motion to Remand on an expedited basis, and send the case back to the state court in which it was properly filed.

## III.

## ARGUMENTS AND AUTHORITIES

**1.     The jurisdictional analysis is a threshold issue that merits immediate consideration.**

Plaintiffs respectfully submit that their motion to remand should be decided as a threshold issue according to the U.S. Supreme Court, the Ninth Circuit, and District Courts around the country. It is axiomatic that "[w]ithout jurisdiction, [a] court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, **the _only_ function remaining to the court is that of announcing the fact and dismissing the**

EXHIBIT 4
6
MOTION TO REMAND
108

1  cause." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (emphasis added).

2  The requirement that jurisdiction be established as a threshold matter "spring[s] from the

3  nature and limits of the judicial power of the United States[,]" and is "inflexible and

4  without exception." *Id.* (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382

5  (1884)). Based on these principles, "federal courts normally must resolve questions of

6  subject matter jurisdiction before reaching other threshold issues." *Potter v. Hughes,* 546

7

8  F.3d 1051, 1061 (9th Cir. 2008); *see also Kokkonen v. Guardian Life Ins. Co. of America,*

9  511 U.S. 375, 377 (1994) (holding that since district courts are "courts of limited

10  jurisdiction," they have an obligation to assure themselves of jurisdiction); *Gen. Atomic*

11

12  *Co. v. United Nuclear Corp.,* 655 F.2d 968, 968–69 (9th Cir. 1981).

13

14       This is true even when a defendant has a removed a case to federal court and is

15  seeking transfer of the matter to a federal MDL. As the JPML has established in its own

16

17  procedural rules, the presence of a conditional transfer issued by the panel "does not affect

18  or suspend orders and pretrial proceedings in any pending federal district court action and

19  does not limit the pretrial jurisdiction of that court." Rule of Procedure 2.1(d) of the United

20

21  States Judicial Panel on Multidistrict Litigation. The Panel has conveyed the import of its

22  rules to federal district courts around the country, explaining that district courts are free to

23  rule on motions to remand prior to a transfer order becoming effective: "the Panel would

24

25  like to emphasize that your jurisdiction continues until transfer to the MDL – if the Panel so

26  orders – becomes effective. **You should feel free to rule on any pending motions,**

27

28

**including, but not limited to motions for remand to state court.**" *T.F., et al. v. Pfizer, Inc.*, 2012 WL 3000229, at fn. 3 (E.D. Mo. July 23, 2012) (letter from the Chairman of the JPML [The Honorable John G. Heyburn, II] to the Honorable Judge Perry of the Eastern District of Missouri) (emphasis added).

With this guidance, federal courts in California and elsewhere have refused to delay remand rulings pending potential transfer orders to a federal MDL. For instance, in *T.F., et al. v. Pfizer*, Judge Perry explained:

> I will not stay ruling on remand. "A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed." *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F.Supp. 1186, 1188-89 (N.D. Cal 1997). "This is especially true where, as here, the pending motion is one for remand and goes to the Court's subject matter jurisdiction." *See Thompson v. Apple, Inc.*, 2011 WL 2671312, *4 (E.D. Ark. July 8, 2011). "In this case, the court believes the best course is to decide the motion to remand because judicial economy will best be served by addressing the remand issue as it will facilitate litigation in the appropriate forum." *Kohl v. American Home Products Corp.*, 78 F.Supp. 2d 885, 888 (W.D. Ark. 1999) (internal quotation marks omitted). As another district court in this circuit has commented, "This Court is in the best position to determine its subject matter jurisdiction....To stay the case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." *Stone v. Baxter Intern., Inc.*, 2009 WL 236116, *2 (D. Neb. Jan. 30, 2009).

2012 WL 3000229, at *1. Based in part on the letter Judge Perry received from the JPML Chairman cited above, she further explained:

> Pfizer argues that transferor courts "regularly decline" to consider motions to remand in cases pending transfer to the MDL court upon the insistence of the JPML. This is contrary to my experience, not only as a transferee judge presiding over other MDL actions, but also as the judge in this case.

**EXHIBIT 4**

*Id.*, at fn. 3. Numerous courts presiding over transvaginal mesh cases involving multiple plaintiffs like this matter have echoed the logic and ruling in *T.F., et al. v. Pfizer. See e.g.*, *Atwell et al. v. Boston Scientific Corp*, 2013 WL 136471 (E.D. Mo. Jan. 10, 2013) (remanding a transvaginal mesh case filed by 94 plaintiffs instead of staying it at the request of the defendant, who simultaneously sought a transfer to the federal MDL) (Jackson, J.); *Brannen et al. v. Ethicon, Inc. et al.*, Case No. 4:12CV1429 RWS (E.D. Mo. Aug 14, 2012) (remanding a transvaginal mesh case filed by 83 plaintiffs from 24 states rather than staying the case pending a potential transfer to the federal MDL) (Sippel, J.); (*Perry v. Luu*, 2013 WL 3354446, at *3, (E.D. Cal. July 3, 2013) (Thurston, Mag. J) (in a transvaginal mesh case against Johnson & Johnson and Ethicon, refusing to delay remanding the case for lack of subject matter jurisdiction despite a pending motion to transfer the case to the federal MDL).[2] In fact, Judge Tucker of the Central District of

---

[2] Courts in other types of cases also routinely acknowledge that a defendants' motion to stay pending transfer to an MDL should not thwart a determination of whether the court has subject matter jurisdiction. *See e.g.*, *Craft v. United Ins. Co. of America*, 2002 WL 32509283 at *1 (S.D. Miss. Jan. 17, 2002) ("The principal recognized in these cases is that if the federal court has no jurisdiction over a matter, then it can neither stay it nor transfer it to the MDL. Since the district court is invested with the same authority to consider federal jurisdiction as the MDL, these cases advocate disposing of the jurisdictional issue at the outset"); *Moton v. Bayer Corp.*. 2005 WL 1653731, at *2 (S.D. Ala. July 8, 2005) ("Many courts have concluded that motions to remand should always, or usually, be resolved prior to transfer."); *Bell v. Prudential Ins. Co.*, 1997 WL 33708408, at *4 (S.D. Miss. 1997) (determining that "[b]ecause the Motion to Remand challenges the subject matter jurisdiction of this Court, the Court concludes that the Motion to Remand must be considered initially to determine whether this Court, or any of the federal district court, has jurisdiction to hear this matter.").

**EXHIBIT 4**

California ruled just four short months ago in a transvaginal mesh case that the threshold jurisdictional issue implicated by the plaintiffs' motion to remand should be decided immediately, rather than staying the case pending potential transfer to the federal MDL in West Virginia. *See Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013). In *Goodwin*, the Court pointed out that the jurisdictional analysis in a vaginal mesh case involving allegations of fraudulent misjoinder is not sufficiently difficult to delay ruling on the motion to remand. *See id*. at *2. The *Goodwin* Court further noted that:

> a determination of the fraudulent misjoinder issues raised in this case requires an application and analysis of Ninth Circuit law, and this Court is in as good a position, if not better, to apply the law of this circuit than a court in West Virginia.

*See id*. Finally, the Court aptly recognized that the appropriate course of action for a defendant in this circumstance is to move to sever in the state court proceeding first, and then remove the case to federal court only if the non-diverse plaintiffs are deemed to be improperly joined. *See id*. at *5. Plaintiffs respectfully submit that ruling on the remand immediately is also the proper course of action here.[3]

---

[3] Plaintiffs are familiar with and respect the Court's Standing Order and the Local Rules of this District. As such, Plaintiffs have set this motion for hearing in accordance with both. However, Plaintiffs respectfully request expedited consideration of the jurisdictional issue due to Boston Scientific's efforts to delay it prior to a potential transfer to the MDL. Plaintiffs submit that the facts and law strongly support remand. Thus, if the Court is not inclined to hear the motion prior to the date on which it is currently set, Plaintiffs request that it be adjudicated on the papers on an expedited basis.

**EXHIBIT 4**

10

MOTION TO REMAND

**2.** **On August 29, 2013, another Central District Court issued an order remanding a multi-party vaginal mesh suit with the same jurisdictional issues as this case.**

In addition to the authorities cited above (and throughout the motion), of particular note is a remand order issued by the Honorable Percy Anderson of the Central District on August 29, 2013 in a multi-plaintiff mesh case against American Medical Systems, Inc. *See* Exhibit C (Doc. #12 in *Muller, et al. v. American Medical Systems, Inc., et al.*; 2:13-cv-06276-PA (RZx)). In *Muller*, sixty-six women filed suit in Los Angeles County Superior Court against American Medical Systems, Inc. and related entities for injuries they suffered from vaginal mesh implants manufactured by the defendants. Just as in this matter, Defendants removed the case to the Central District, arguing that the non-diverse plaintiffs were fraudulently misjoined because their claims purportedly did not arise from the same transaction or occurrence, or series of transactions and occurrences. Like Defendants here, the defendants in *Muller* asked that the non-diverse plaintiffs be severed, thereby giving rise to diversity jurisdiction. The defendants also notified the court of their intent to file a tag-along action in the MDL. (Doc. #1 in *Muller*; 2:13-cv-06276-PA (RZx)).

In line with the jurisprudence set forth above, Judge Anderson immediately assessed the jurisdictional issue; that is, whether the defendants had met there heavy burden to prove that the non-diverse plaintiffs joinder was so egregious that it bordered on a sham. *See* Exhibit C. The issue was so straight forward that the Court remanded the case *sua sponte* two days after it was removed. *See id.* The remand order comports squarely with the

**EXHIBIT 4**
11
MOTION TO REMAND
113

jurisdictional concepts and cases that provide the foundation for Plaintiffs' motion to remand here.

### 3. Diversity jurisdiction is lacking based on the face of Plaintiffs' Original Complaint.

Under 28 U.S.C. § 1332(c)(1), complete diversity must exist between the parties in order for federal diversity jurisdiction to apply. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005) (recognizing that "Defendants may remove an action on the basis of diversity [only] if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum state."). Here, it is beyond dispute that two Plaintiffs reside in Massachusetts and one resides in Delaware, both of which are the corporate residences of Boston Scientific. *See* Plaintiffs' Original Complaint at ¶¶9-11, 68-71; (Doc. #1 at ¶20). As such, the face of Plaintiffs' complaint conclusively establishes the absence of diversity jurisdiction and the necessity of a remand.

### 4. The fraudulent misjoinder doctrine – the primary basis for Boston Scientific's removal of this case – has not been adopted by the Ninth Circuit or the Central District of California and is inapplicable.

Faced with an obvious lack of diversity, Boston Scientific seeks to employ the fraudulent misjoinder doctrine to argue that the non-diverse Plaintiffs should not be considered in the jurisdictional analysis. However, the fraudulent misjoinder doctrine has not been adopted by the Ninth Circuit or Courts this District, and is inapplicable.

Fraudulent (or procedural) misjoinder is a doctrine first articulated by the Eleventh Circuit in *Tapscott*, 77 F.3d at 1360. Fraudulent misjoinder is distinct from the traditional

**EXHIBIT 4**

doctrine of fraudulent joinder. *See Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013). Whereas traditional fraudulent joinder rests on whether the plaintiff's claim against a non-diverse defendant has any merit, fraudulent misjoinder swings on the factual commonality among the plaintiff's claims and determines if they are sufficient to satisfy the standards set forth in the applicable joinder statute (FED. R. CIV. P. 20 or Cal. C.C.P. § 378, which are virtually identical). *See id.*; *see also Perry v. Luu*, 2013 WL 3354446, at *4 (E.D. Cal. July 3, 2013) (Thurston, Mag. J) (explaining that "according to *Tapscott*, fraudulent misjoinder examines the facts to determine whether plaintiffs' claims "aris[e] out of the same transaction, occurrence, or serious of transactions or occurrences" or have any "real connection," while fraudulent joinder requires an examination of the merits to determine if the plaintiff failed to state a claim against a non-diverse defendant.").

The Ninth Circuit has not adopted the fraudulent misjoinder doctrine. *See Goodwin*, 2013 WL 1528966, at *4. And, Plaintiffs can find no case in the Central District of California in which the doctrine has been adopted or applied to establish federal jurisdiction. *See id.*; *see also Flores v. Chevron Corp.*, 2011 WL 2160420, at **4-5 (C.D. Cal May 31, 2011) (acknowledging that the Ninth Circuit has "neither discussed nor adopted the Eleventh Circuit's holding in *Tapscott*," and refusing to sever parties based on the doctrine); *Aaron v. Merck & Co., Inc.*, 2005 WL 5792361, at *3 (C.D. Cal. July 26, 2005) (holding that "the Court declines to adopt and apply the theory set forth in *Tapscott*

**EXHIBIT 4**

to this case"); *Alaniz v. Merck & Co., Inc.*, 2005 WL 6124308, at *3 (C.D. Cal. June 3, 2005) (same).[4]  Rather, in each of these cases, the Court acknowledged that the Ninth Circuit has not adopted the doctrine, and then either rejected the doctrine outright or held that even if it were viable, Plaintiffs' joinder practice did not trigger it. *See id.*   In *Goodwin*, for instance, the Court recognized that the doctrine subverts the appropriate timing of the severance determination:

> The Court notes that in a case raising issues such as this, the better and most efficient course of action would have been for Defendant to seek relief form the alleged misjoinder in state court, "and then, if that court severed the case and diversity then existed, [Defendant] could seek removal of the cause to federal court."

2013 WL 1528966, at *5 (citing *Osborn v. Metro Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (E.D. Cal. 2004)).

In *Perry*, Magistrate Judge Thurston echoed Judge Tucker's rationale in *Goodwin* by providing a poignant analysis of the flawed logic underlying the doctrine:

---

[4]At least one district court in California – the Eastern District – has reached inconsistent positions on whether the doctrine applies. *See e.g.*, *Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (E.D.Cal.2004) (declining to apply the fraudulent misjoinder doctrine and explaining that it adds unnecessary complexity to the procedural joinder analysis); *N.C. ex rel. Jones v. Pfizer, Inc.*, 2012 WL 1029518 at *3 (N.D. Cal. March 26, 2012) (holding that even if it were to adopt *Tapscott*, the doctrine would not apply to the case before it involving claims against drug manufacturers/sellers and healthcare providers); *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*, No. 04–03615 RMW, 2005 WL 2216950 at *6 (N.D. Cal. July 25, 2005) (same). *But see, e.g.*, *Sutton v. Davol, Inc.* 251 F.R.D. 500, 505 (E.D. Cal. May 28, 2008) (finding healthcare provider defendants were fraudulently misjoined with the manufacturing defendants in a case arising out of implantation of a medical device).

**EXHIBIT 4**[14]

The Court finds the concept of fraudulent misjoinder to be faulty. **The Court is confounded by the concept's circular logic in that it requires the Court first – in full recognition of the lack of diversity jurisdiction – sever part of the case and only then find it has jurisdiction.** However, the authority to sever misjoined claims or [plaintiffs] under Rule 20 presumed the Court has jurisdiction to act.

*Perry*, 2013 WL 3354446, at \*5 (emphasis added). The *Perry* Court went on to explain:

> Likewise, as in ***Osborn***, the Court finds no need to expand removal jurisdiction in that there is no showing that the state court is incompetent to determine the issue of misjoinder. Defendants fail to offer a sufficient explanation why they could not seek severance in state court and then remove the severed portion of the litigation to federal court. Finally, the Court finds that the question of expanding removal jurisdiction based upon the novel concept of fraudulent misjoinder is more appropriately presented to Congress. Therefore, in keeping with the requirement that any doubts about federal jurisdiction be resolved in favor of remand, the Court has little hesitation in concluding that the question of misjoinder in this case should be resolved in the state court.

*Id.* (internal Ninth Circuit citations omitted) (emphasis added). Judge Anderson's recent remand order in *Muller* cited above echoes the rationale and rulings in these cases.

Plaintiffs respectfully submit that this Court, like the Ninth Circuit and other Courts in this District, should decline to adopt or apply the fraudulent misjoinder doctrine and return the case to the state court in which it was filed.

**5.      Even assuming the fraudulent misjoinder doctrine is viable here, Boston Scientific cannot satisfy its heavy burden to prove that the Massachusetts and Delaware Plaintiffs were fraudulently misjoined and removal is proper.**

Even if it the Court determines the doctrine is viable, Boston Scientific has not, because it cannot, satisfy its heavy burden to prove that the Massachusetts and Delaware Plaintiffs were fraudulently misjoined. Accordingly, the case should be remanded.

**EXHIBIT 4**

a.     <u>There is a strong presumption against removal jurisdiction and Boston Scientific bears a heavy burden to prove that removal is proper.</u>

The Ninth Circuit requires district courts "to strictly construe the removal statute against removal jurisdiction" and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (holding that "any doubt about the right of removal requires resolution in favor of remand."). The party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (acknowledging that "the burden of establishing federal jurisdiction falls to the party invoking the statute"). The presumption against removal jurisdiction is "strong." *Gaus*, 980 F.2d at 566 ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.").[5] Indeed, to prove that Plaintiffs' were fraudulently misjoined, Defendants must show that joinder of the out-of-state Plaintiffs is so "egregious" that it "border[s] on a sham." *See Tapscott*, 77 F.3d at 1360; *In re Prempro Products Liability Litigation*, 591 F.3d 613, 620-24 (8th Cir.

---

[5] It also bears mention that the party alleging fraudulent joinder under the traditional doctrine has a "heavy burden" of demonstrating by "<u>clear and convincing evidence</u>" that the non-diverse party has been joined fraudulently. *Hamilton Materials, Inc. v. Down Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Padilla v. AT & T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D.Cal.2009). As such, if the fraudulent misjoinder doctrine is deemed viable here, Plaintiffs submit that the same "heavy burden" satisfied only by <u>clear and convincing evidence</u> is the appropriate burden of proof to impose on Boston Scientific.

**EXHIBIT 4**

2010); *Cauoette v. Bristol-Myers Squibb*, 2012 WL 3283858, at *7 (N.D. Cal. Aug. 10, 2012) (holding that if the fraudulent misjoinder doctrine is applicable, the defendant failed to prove that joinder was egregious and bordered on a sham). This they cannot do.

  b.  <u>Boston Scientific cannot satisfy its heavy burden to prove that the out-of-state Plaintiffs were fraudulently misjoined.</u>

Under both Federal Rule of Civil Procedure 20(a) and California Code of Civil Procedure §378, which are substantively identical, joinder of Plaintiffs' claims in this case is appropriate. The claims involve common questions of law and fact and arise from the same transaction, occurrence, or series of transactions and occurrences. Indeed, the liability side of the claims are identical, and the damages aspect shares significant commonalities as well. As such, Boston Scientific cannot prove that joinder is egregious and borders on a sham.

Both the California and the federal permissive joinder statutes have two requirements: (1) the claims must relate to or arise from the same transaction or occurrence, or series of transactions and occurrences, and (2) the claims must share a common question of law or fact. *See* CAL. C.C.P. §378 and FED. R. OF CIV. P. 20(a). These requirements are to be construed liberally as joinder is strongly encouraged. *See League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (explaining that permissive joinder is to be "construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple

**EXHIBIT 4**

17

lawsuits[,]" and that "[u]nder the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Here, Boston Scientific attempts to prove that Plaintiffs claims do not relate to or arise from the same transaction or occurrence, or series of transactions and occurrences. Their effort to do so relies on a narrow and flawed interpretation of the first prong of Rule 20 (or Section 378).  In reality, the transaction/occurrence prong of Rule 20 is broad, particularly when – as here – judicial economy is promoted by its application:

> ***'Transaction' is a word of flexible meaning.*** It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.  Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. ***Absolute identity of all events is unnecessary.***

*In re Prempo*, 591 F.3d at 622 (emphasis added); *see also* 7 Charles A. Wright et al., *Federal Practice and Procedure,* § 1653, at 415 (3d ed. 2001) (explaining that the transaction/ occurrence requirement prescribed by Rule 20(a) is not a rigid test and is meant to be "read as broadly as possible whenever doing so is likely to promote judicial economy."); *see also Moore v. New York Cotton Exchange*, 270 U.S. 593, 610  (1926); *Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966).  Based on this widely accepted standard, the Eighth Circuit in *In re Prempo* held that the defendants failed to demonstrate that the plaintiffs' (who had taken one or more of the defendants' drugs presumably

**EXHIBIT 4**[18]

prescribed by different physicians on different dates) claims did not arise from the same transaction or occurrence:

> Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs. Plaintiffs contend their claims are logically related because they each developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs. Some of the plaintiffs allege to have taken several HRT drugs made by different manufacturers....Based on the plaintiffs' complaints, we cannot say that their claims have "no real connection" to each other such that they are egregiously misjoined.

591 F.3d at 623.

At least two federal district courts to which transvaginal mesh cases were recently removed on virtually the same fraudulent misjoinder bases asserted by Boston Scientific here remanded the cases to state court immediately, following the logic in *In re Prempo*. In *Atwell, et al. v. Boston Scientific Corporation*, 94 Plaintiffs (67 women and 27 of their spouses) filed suit against Boston Scientific for injuries suffered from transvaginal mesh devices designed, manufactured, marketed, and sold by the corporation. *See* 2013 WL 136471, at *1 (E.D. Mo. Jan. 10 2013). Just as in this case, Boston Scientific removed the case to federal court alleging that the plaintiffs' claims were fraudulently misjoined under both prongs of Rule 20(a), and that the non-diverse plaintiffs should be ignored in the jurisdictional analysis. *See id.* at 1-3. Specifically, Boston Scientific argued that "the parties have been misjoined because the plaintiffs were implanted with six different

EXHIBIT 4
19
MOTION TO REMAND
121

devices, using four different placement options, by different surgeons in response to different patient-specific factors." *See id.* at *3. Rejecting Boston Scientific's suggestion that that the claims did not implicate common legal and factual questions and did not arise from the same transaction or series of transactions, the Court held that Boston Scientific did not prove that the joinder was "egregious" or "in bad faith," and remanded it. *See id.*

Judge Sippel reached the same result in *Brannen, et al. v. Ethicon, Inc., et al.*, Case No. 4:12CV1429 RWS (E.D. Mo. Aug. 14, 2012). In that case, 83 Plaintiffs from 24 states who were vaginally implanted with three different Ethicon mesh products joined to file suit for the injuries they suffered. When the case was removed on grounds that the non-diverse plaintiffs were fraudulently misjoined, the Court promptly assessed the jurisdictional issue and remanded the case, explaining: "Plaintiffs in this case have filed suit against defendants for injuries caused by the same products and arising out of the same development, distribution, marketing and sales practices for those products, and common issues of law and fact are likely to arise in litigation." *See* Memorandum and Opinion Order of Remand at p.6, attached hereto as Exhibit D. The Court then concluded that Defendants "failed to demonstrate that the joinder of [non-diverse] plaintiffs in this action is "so egregious and grossly improper....that plaintiffs' misjoinder borders on a sham" *See id.* at 5[6].

---

[6]Plaintiffs note that the *Brannen* case has recently been removed for a second time by Ethicon based on motions the plaintiffs' counsel filed in that case after it was remanded. Ethicon argues it creates CAFA jurisdiction. The *Brannen* plaintiffs' motion to remand

**EXHIBIT 4**

20

MOTION TO REMAND

**122**

Like the mesh manufacturers in in *Atwell* and *Brannen* and the drug manufacturer in *In re Prempo*, Boston Scientific cannot prove that Plaintiffs' joinder is so egregious that it borders on a sham. Instead, Plaintiffs' complaint demonstrates the opposite. As set forth in the Facts Section above, each of the sixty-five Plaintiffs suffered from POP and SUI, and was vaginally implanted with a Boston Scientific mesh products to correct the condition. The liability aspect of Plaintiff's claim is identical, and will focus on Boston Scientific's knowledge of the risks associated with its mesh products, its failure to warn unsuspecting women of those risks (which the FDA ultimately did on its own in 2011), and the design, production, marketing, and distribution of their mesh products. From a damages perspective, all of the Plaintiffs suffered from complications associated with their mesh implant. It is difficult to imagine that a case involving the same liability facts and conduct, and plaintiffs who suffered from the same problem, were vaginally implanted with the same mesh products produced by the same company, and all suffered complications as a result, does not satisfy the liberal joinder standard promulgated in Rule 20 and Section 378, which strongly encourages joinder to promote judicial efficiency.[7] In

---

addressing CAFA jurisdiction has been briefed, but not yet decided. *See Brannen, et al. v. Ethicon, et al.*, 4:13-cv-01251-JAR (E.D. Mo. 2013). CAFA jurisdiction is not at issue here, as Defendants' removal papers establish. Moreover, the *Brannen* plaintiffs' post-removal actions do not affect the sound reasoning and ruling Judge Sippel set forth in his original Order remanding the case.

[7] Indeed, with the pervasive commonalities inherent in every aspect of this case, it seems that Boston Scientific's removal has little to do with whether complete diversity actually exists between the parties, but is instead a tactical move aimed at having this case

**EXHIBIT 4**
21
MOTION TO REMAND
**123**

any event, these facts undermine Boston Scientific's attempt to prove that Plaintiffs' joinder is egregious and borders on a sham. The case should therefore be remanded for lack of subject matter jurisdiction.[8]

## IV.

## CONCLUSION

Plaintiffs respectfully request this Court to remand this case to the court from which it was removed on an expedited basis. Plaintiffs further request all other relief to which they are entitled, whether at law or in equity.

---

transferred to the federal MDL prior to this Court examining the threshold issue of subject matter jurisdiction, which is lacking.

[8] With regard to Defendants' jurisdictional manipulation argument, the entire premise rests on Defendants' statement that the claims are "severable and not joint." (Doc. # 1 at p.10). As such, the argument is nothing more than the fraudulent misjoinder concept repackaged in a way that Defendants hope will give them two bites at the apple. Indeed, Defendants fail to cite a single modern pharmaceutical case in which this concept is analyzed or employed; with good reason. The proper analysis, as set forth in the numerous cases cited by Plaintiffs, is whether Defendants have satisfied their heavy burden to prove that Plaintiffs' joinder is so egregious is borders on a sham.

22

**EXHIBIT 4**

Respectfully submitted,

**GIRARDI KEESE**

/s/ Amanda H. Kent

Thomas V. Girardi
Amy F. Solomon
Amanda H. Kent
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

**ARNOLD & ITKIN LLP**
Kurt B. Arnold
Jason A. Itkin
Noah M. Wexler
Caj D. Boatright
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**THE MOSTYN LAW FIRM**
J. Steve Mostyn
3810 West Alabama Street
Houston, TX 77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)

**Attorneys For Plaintiffs**

**EXHIBIT 4**

# EXHIBIT "A"

EXHIBIT 4

126

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

In re Boston Scientific Corp.,                                    MDL No. 2326
Pelvic Repair System Products Liability Litigation

## BOSTON SCIENTIFIC CORPORATION'S RESPONSE TO
## PLAINTIFFS' MOTION FOR TRANSFER TO THE SOUTHERN
## DISTRICT OF WEST VIRGINIA PURSUANT TO 28 U.S.C. § 1407

### INTRODUCTION

Boston Scientific Corporation ("Boston Scientific") agrees that that its pelvic mesh

products liability cases should be transferred by the Panel to a single district court for

coordinated pretrial proceedings.[1]  Boston Scientific further agrees that the cases against it

should remain in their own, separate MDL specific to Boston Scientific.  Boston Scientific

respectfully submits that the most appropriate forum for coordination of its cases is the United

States District Court for the Western District of Oklahoma before the Honorable Judge Joseph L.

Heaton.  Nevertheless, should the Panel decide that it is appropriate to send separate MDLs

involving Boston Scientific, American Medical Systems, Inc. ("AMS"), and Ethicon, Inc.

("Ethicon") to a single district court judge, Boston Scientific agrees that its cases should be

transferred and coordinated before the Honorable Judge Joseph R. Goodwin in the United States

District Court for the Southern District of West Virginia.

### BACKGROUND

Boston Scientific is currently named in 40 cases pending in federal district courts across

the country.  The plaintiffs in these actions all assert claims arising from one or more of Boston

Scientific's several pelvic mesh products.  Pelvic mesh is a material implanted to provide

---

[1] Movants use both "coordination" and "consolidation" in their moving papers and explicitly request that that the actions be "coordinated and/or consolidated."  Boston Scientific supports transfer for coordinated pretrial proceedings, but does not support consolidation of related cases.

## EXHIBIT 4

reinforcement and support in the treatment of either Pelvic Organ Prolapse ("POP") or Stress Urinary Incontinence ("SUI"). Boston Scientific has separate lines of products for the treatment of POP and the treatment of SUI. Both POP and SUI products are at issue in these cases. Boston Scientific's POP products include Pinnacle® Pelvic Floor Repair Kit and Uphold™ Vaginal Support System. Boston Scientific's SUI products include Advantage® Transvaginal Mid-Urethral Sling System, Advantage Fit™ System, Obtryx® Transobturator Mid-Urethral Sling System, Lynx® Suprapublic Mid-Urethral Sling System, Prefyx™ PPS System, and Solyx™ SIS System.

The 40 cases involving Boston Scientific are:

- *Barber v. Boston Scientific Corporation*, No. 2:11-cv-00952 (M.D. Ala);
- *Buchanan v. Boston Scientific Corporation*, No. 2:11-cv-03946 (N.D. Ala.);
- *Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala);
- *Kirkpatrick v. Boston Scientific Corporation*, No. 5:11-cv-03759 (N.D. Ala);
- *Nalley v. Boston Scientific Corporation*, No. 4:11-cv-03521 (N.D. Ala);
- *Avent v. Boston Scientific Corporation*, No. 2:11-cv-02280 (D. Ariz.);
- *Herkal v. Boston Scientific Corporation*, No. 2:11-cv-08678 (C.D. Cal);
- *Coleman v. Boston Scientific Corporation*, No. 1:10-cv-01968 (E.D. Cal);
- *Boone v. American Medical Systems, Inc.*, No. 4:11-cv-05144 (N.D. Cal);
- *Spence v. Boston Scientific Corporation*, No. 3:11-cv-04961 (N.D. Cal);
- *McMillen v. Boston Scientific Corporation*, No. 1:11-cv-03125 (D. Colo.);
- *Sullivan v. Boston Scientific Corporation*, No. 8:11-cv-02681 (M.D. Fla.);
- *Iglesias v. Boston Scientific Corporation*, No. 1:11-cv-24263 (S.D. Fla.);
- *Bailey v. Boston Scientific Corporation*, No. 1:11-cv-03981 (N.D. Ga.);
- *Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga);
- *Goodson v. Boston Scientific Corporation*, No. 1:11-cv-03023 (N.D. Ga);
- *Preston v. Boston Scientific Corporation*, No. 1:11-cv-03982 (N.D. Ga.);
- *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.);
- *Carroll v. Johnson & Johnson, Inc.*, No. 5:11-cv-01937 (W.D. La.);
- *Jolly v. Boston Scientific Corporation*, No. 3:11-cv-01871 (W.D. La);
- *Mann v. Boston Scientific Corporation*, No. 3:11-cv-01785 (W.D. La);
- *Powell v. Boston Scientific Corporation*, No. 3:11-cv-01876 (W.D. La);
- *Waldroup v. Boston Scientific Corporation*, No. 3:11-cv-01854 (W.D. La);
- *Weller v. Boston Scientific Corporation*, No. 5:11-cv-01696 (W.D. La);
- *Williams, N. v. Boston Scientific Corporation*, No. 3:11-cv-01938 (W.D. La.);
- *Ackerman v. Boston Scientific Corporation*, No. 1:11-cv-12260 (D. Mass.);

- *Tucker v. American Medical Systems, Inc.*, No. 1:11-cv-00974 (M.D. N.C.);
- *Meadows v. Boston Scientific Corporation*, No. 5:11-cv-00143 (W.D. N.C.);
- *Stallman v. Ethicon, Inc.*, No. 5:11-cv-02676 (N.D. Ohio);
- *Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (W.D. Okla.);
- *Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (W.D. Okla.);
- *Williams, L. v. Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.);
- *Beatty v. Boston Scientific Corporation*, No. 2:11-cv-03147 (D.S.C.);
- *Daniels v. Boston Scientific Corporation*, No. 3:11-cv-02849 (D.S.C.);
- *Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.);
- *Templeton v. American Medical Systems, Inc.*, No. 4:11-cv-00844 (N.D. Tex.);
- *Webb v. Boston Scientific Corporation*, No. 1:11-cv-00873 (W.D. Tex);
- *Hayzlett v. Boston Scientific Corporation*, No. 3:11-cv-00838 (E.D. Va.);
- *Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wa); and
- *Moyer v. Boston Scientific Corporation*, No. 2:11-cv-00810 (S.D.W. Va.).[2]

These actions are pending in 23 different federal district courts:

| District Court | Number of Cases |
|---|---|
| 1. Alabama, Middle District | 1 |
| 2. Alabama, Northern District | 4 |
| 3. Arizona District Court | 1 |
| 4. California, Northern District | 2 |
| 5. California, Eastern District | 1 |
| 6. California, Central District | 1 |
| 7. Colorado District Court | 1 |
| 8. Florida, Middle District | 1 |
| 9. Florida, Southern District | 1 |
| 10. Georgia, Northern District | 5 |
| 11. Louisiana, Western District | 7 |
| 12. Ohio, Northern District | 1 |
| 13. Oklahoma, Western District | 3 |
| 14. Massachusetts District Court | 1 |
| 15. North Carolina, Middle District | 1 |
| 16. North Carolina, Western District | 1 |
| 17. South Carolina District Court | 2 |
| 18. Tennessee, Middle District | 1 |
| 19. Texas, Northern District | 1 |
| 20. Texas, Western District | 1 |

---

[2] Movants did not include the following related federal court actions: *Coleman, McMillen, Hamilton, Stallman, Sullivan, Templeton, Waldroup, Williams, L., Hayzlett,* and *Ackerman*. [ECF. No. 1-2 (Nov. 28, 2011)] Boston Scientific has contemporaneously filed a Notice of Related Cases.

3
**EXHIBIT 4**

| 21.  Virginia, Eastern District | 1 |
| 22.  Washington, Western District | 1 |
| 23.  West Virginia, Southern District | 1 |

Plaintiffs are represented by a regionally diverse group of law firms including: Girardi & Keese (California); Alystock, Witkin, Kreis & Overholtz PLLC (Florida); Blasingame, Burch, Garrard & Ashley, PC (Georgia); Motley Rice LLP (California); Houck & Riggle, LLC (Louisiana), and Mueller Law (Texas).  Boston Scientific is represented nationally by Shook, Hardy, & Bacon, LLP, based in Kansas City, Missouri, along with local counsel.

On November 28, 2011, Plaintiffs moved for transfer of the products liability actions against Boston Scientific to Judge Goodwin of the Southern District of West Virginia.  *In re Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.*, MDL No. 2326 (J.P.M.L. Nov. 28, 2011) (ECF No. 1).[3]  The federal litigation involving Boston Scientific is in its infancy. Outside of preliminary motion practice, none of Boston Scientific's cases have advanced significantly toward trial such that they would be unduly prejudiced by transfer.

## ARGUMENT

While transfer of Boston Scientific's pelvic mesh products liability lawsuits to a single district court judge for coordinated pretrial proceedings is appropriate, Boston Scientific agrees with Plaintiffs that Boston Scientific should have a separate MDL.  Boston Scientific's cases should be transferred to the Western District of Oklahoma.  However, should the Panel send all of the manufacturers' separate MDLs to a single district court judge, Boston Scientific agrees

---

[3] On November 23, 2011, AMS affirmatively moved for transfer of its pelvic mesh products liability actions, designating Judge Richard H. Kyle of the United States District Court for the Eastern District of Minnesota as the suggested transferee court, with Judge Goodwin in the Southern District of West Virginia as an alternative transferee forum.  *In re American Medical Systems, Inc. Pelvic Repair System Prods Liab. Litig.*, MDL. No. 2325 (J.P.M.L. Nov. 23, 2011) (ECF No. 1).

**EXHIBIT 4**

4

that Judge Goodwin of the Southern District of West Virginia would be the most appropriate

selection.

## I.   COORDINATION OF PRETRIAL PROCEEDINGS IS NECESSARY TO ACHIEVE THE OBJECTIVES OF 28 U.S.C. SECTION 1407.

Boston Scientific agrees that coordination of its pelvic mesh product liability actions for

pretrial proceedings is warranted.  The Panel has routinely found centralization appropriate for

product liability actions involving similar defective design and failure-to-warn claims.  *See In re*

*Avaulta Pelvic Support Systems Prods Liab. Litig.*, No. 2187, 746 F. Supp. 2d 1362 (J.P.M.L.

2010) (other pelvic mesh product made by a different manufacturer, C.R. Bard, Inc. ("Bard")); *In*

*re Mentor Corp. ObTape Transoburator Sling Prods. Liab. Litig.*, MDL No. 2004, 588 F. Supp.

2d 1374 (M.D. Ga.) (same); *In re Protegen Sling and Vesica Systems Prods. Liab. Litig.*, MDL

No. 1387, 2011 U.S. Dist. LEXIS 1438 (J.P.M.L. 2001) (similar); *In re Kugel Mesh Hernia*

*Patch Prods. Liab. Litig.*, MDL No. 1842, 493 F. Supp. 2d 1371, (J.P.M.L. 2007) (other surgical

mesh products and related components); *In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, MDL

No. 1401, 149 F. Supp. 2d 931 (J.P.M.L. 2001) (other implantable medical device products).

Transfer of Boston Scientific's pelvic mesh products liability lawsuits for coordination of pretrial

proceedings before a single district court judge would serve the convenience of the parties and

witnesses, and promote the just and efficient conduct of this litigation. *See* 28 U.S.C. § 1407.

Transfer should therefore be granted.

## II.   BOSTON SCIENTIFIC SHOULD HAVE ITS OWN MDL BEFORE A SINGLE DISTRICT COURT JUDGE.

Plaintiffs have requested separate MDLs for Bard, Ethicon, and Boston Scientific, as

MDL Nos. 2187, 2327, and 2326.  *See, e.g., In re Ethicon, Inc., Pelvic Repair System Products*

*Liability Litigation*, MDL No. 2327 (J.P.M.L. Nov. 28, 2011).  Defendant manufacturer AMS

**EXHIBIT 4**

has made a parallel motion, requesting the creation of its own MDL for its cases, MDL No.

2325. *In re American Medical Systems, Inc. Pelvic Repair System Prods Liab. Litig.*, MDL. No.

2325 (J.P.M.L. Nov. 28, 2011).   Boston Scientific likewise agrees that each of the different

manufacturers should have its own individual MDL.   Anything other than individual MDLs

would result in unnecessary complication and would deprive each manufacturer of the ability to

chart its own course.

The Panel has held that centralization was appropriate for claims involving various

models of medical devices manufactured and sold by the same manufacturer. *See, e.g., In re*

*Avaulta Pelvic Support Systems Prods Liab. Litig.*, 746 F. Supp. 2d at 1362; *In re Kugel Mesh*

*Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d at 1371.   The Panel has already created

individual MDLs for two separate manufactures of pelvic mesh used in the treatment of POP

and/or SUI.  *See In re Avaulta Prods Liab. Litig.*, 746 F. Supp. 2d at 1362 (Bard); *In re Mentor*

*Corp. ObTape Prods. Liab. Litig.*, 588 F. Supp. 2d at 1374 (Mentor Corp.).

The fact that some cases involve multiple manufacturers is not a hurdle to the creation of

individual MDLs.   The Panel has consistently created separate MDLs for the different

manufacturers and split plaintiffs' claims accordingly.  For example, as Plaintiffs point out, in

*Sava v. C.R. Bard, Inc.*, No. 1:11-cv-3361 (N.D. Ga.), the Panel transferred plaintiff's Mentor

ObTape-related claims to MDL No. 2004 in the Middle District of Georgia, and her Bard

Pelvicol product-related claims to MDL No. 2187 in the Southern District of West Virginia.  In

*Nieders v. Johnson & Johnson*, No. 3:10-cv-3272 (C.D. Ill.), the Panel transferred plaintiff's

Bard product-related claims to MDL No. 2187, severing her Ethicon, Inc. product-related claims.

*See also Culbertson v. C.R. Bard, Inc.*, No. 6:11-cv-02271 (D.S.C.) (Panel made Bard product-

related claims part of MDL No. 2187 and severed and remanded AMS product-related claims to

**EXHIBIT 4**

6

the District of South Carolina); *Swaim v. American Medical Systems, Inc.*, No. 2:11-cv-00827

(S.D.W. Va.) (similar).  Boston Scientific requests that the same process be used here.

## III.  THE WESTERN DISTRICT OF OKLAHOMA IS AN APPROPRIATE TRANSFEREE COURT FOR A SEPARATE BOSTON SCIENTIFIC MDL.

Boston Scientific's pelvic mesh products liability actions should be transferred to the

Western District of Oklahoma before Judge Heaton.  The Panel considers various factors when

determining where to transfer coordinated actions, including: the geographical centrality and

convenience of the district; the docket of the proposed transferee court; the location of the parties

and witnesses; and the preference of the parties. *See, e.g., In re Upjohn Co. Antibiotic "Cleocin"*

*Prods. Liab. Litig.*, 450 F. Supp. 1168 (J.P.M.L. 1978); *In re "Factor VIII or IX Concentrate*

*Blood Products," Product Liab. Litig.*, 853 F. Supp. 454 (J.P.M.L. 1986); *In re Cutter Labs., Inc.*

*"Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.*, 465 F. Supp. 1295 (J.P.M.L. 1979).

The Panel also considers the caseloads of possible transferee courts, and the relevant experience

of available judges.  *See, e.g., In re Peruvian Road Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974);

*In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L.

2003); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356,

1358 (J.P.M.L. 2001).

In determining the appropriate transferee court, "the geographical location of the

transferee court is especially relevant when counsel must travel from distant parts of the

country." *In re Air Fare Litig.*, 322 F. Supp. 1013 (J.P.M.L. 1971).  The Panel favors transfer to

venues that are relatively accessible by parties and witnesses.  *In re Farmers Ins.*, 196 F. Supp.

2d 1373 (J.P.M.L. 2002).  *See also In re Transit Co. Tire Antitrust Litig.*, MDL No. 111, 350 F.

Supp. 1165, 1166 (J.P.M.L. 1972) (selecting a "geographically central location" because "it is

**EXHIBIT 4**

**133**

accessible from all parts of the country and provides a more convenient forum to *all* parties" than a district on the Eastern or Western edge of the country); *In re Library Editions of Children's Books*, MDL Nos. 2, 4–7, 297 F. Supp. 385, 387 (J.P.M.L. 1968) ("although air travel renders both California and New York readily accessible, there is still something to be said for the convenience of a geographically central forum in coast-to-coast litigation").  Having resources to commit to the litigation, and not being overtaxed with existing multidistrict litigation, is also important. *See, e.g., In re Classicstar Mare Lease Litig.*, MDL No. 1877, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) (selecting transferee district where "the general docket conditions permit[ted the Panel] to make the Section 1407 assignment knowing that the [transferee] court has the resources available to manage this litigation."); *In re Serozone Prods. Liab. Litig.*, MDL No. 1477, 217 F. Supp. 2d 1372, 1374 (J.P.M.L. 2002) (selecting transferee forum "not currently taxed with other multidistrict dockets."); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (same).

Taken together, these factors point to the Western District of Oklahoma as the most suitable transferee forum for a separate Boston Scientific MDL.  Over a year has passed since the creation of the Avaulta MDL, No. 2187, for Bard cases.  Boston Scientific has not been a party to the proceedings or had a voice in those initial conferences and case management orders shaping the progress of the litigation.   Adding MDLs for each of the different manufacturers of pelvic mesh to Judge Goodwin's docket may impact the Avaulta MDL and will add hundreds of new cases to Judge Goodwin's docket.  By keeping the manufacturers separate, this work might be better spread about and shared among a small handful of district court judges.  These judges could still certainly coordinate.

**EXHIBIT 4**

8

**134**

Pelvic mesh lawsuits against Boston Scientific appear on the dockets of district courts

scattered throughout the United States:



Oklahoma is the geographic center of these widely dispersed suits. The cases range from coast-

to-coast, but are largely focused in the Southern half of the country. Accordingly, an accessible,

geographically central transferee forum would be the most convenient for all of the parties,

witnesses, and counsel involved. The Western District of Oklahoma is such a court; it is

centrally-situated and located in the accessible metropolis of Oklahoma City. *See In re Farmers*

*Ins. Co. Ins. Premium Litig.*, MDL No. 1564, 295 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) (the

Western District of Oklahoma is "a convenient, central forum."). The Western District is

reasonably accessible to Boston Scientific's national counsel in Kansas City, Missouri, and to

counsel with the largest volume of cases on the plaintiffs' side, located in the neighboring states

9

**EXHIBIT 4**

**135**

of Texas, Louisiana, Alabama, and Georgia. In addition, non-stop flights to Will Rogers World Airport in Oklahoma City are available from Atlanta, Baltimore, Chicago, Dallas, Denver, Detroit, Houston, Kansas City, Las Vegas, Los Angeles, Memphis, Minneapolis, New York, Phoenix, Salt Lake City, San Francisco, St. Louis, and Washington-Dulles.

Additionally, Boston Scientific has three lawsuits pending against it in the Western District of Oklahoma, including one suit before Judge Heaton.[4] Judge Heaton has familiarity with the litigation through his work presiding over the *Hammonds* case. Judge Heaton has spent time analyzing plaintiff's complaint and drafting multiple orders narrowing the issues and claims at hand. *See, e.g., Hammonds v. Boston Scientific, Inc.*, No. 5:11-cv-00663, 2011 WL 4978369 (W.D. Okla. Oct. 19, 2011). In this respect, Judge Heaton is well-positioned to handle this litigation.

According to the 2011 Federal Court Management Statistics, the Western District of Oklahoma also has favorable docket conditions in its comparatively low civil case filing to disposition median, pending actions per judgeship, and percentages of civil cases over three years old. The Western District of Oklahoma has less than 5% of its civil cases pending over three years (about a third of the average of all of the district courts). Judge Heaton has experience with multidistrict litigation, and is not currently burdened by presiding over any active MDLs. The Panel indeed selected Judge Heaton to preside over MDL No. 1600, *In re General Motors "Piston Slap" Products Liability Litigation*. In transferring the actions before Judge Heaton in the Western District of Oklahoma, the Panel observed how the constituent action there was "proceeding apace" and that this district was "a district equipped with the

---

[4] *Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (J., Russell); *Williams v. Endo Pharmaceuticals, Inc.*, No. 5:11-cv-01400 (same); *Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (J., Heaton).

<div align="center">

10

**EXHIBIT 4**

**136**

</div>

resources that this complex docket is likely to require." *In re General Motors "Piston Slap" Products Liability Litigation*, MDL No. 1600 (J.P.M.L. Apr. 15, 2004) (ECF No. 24). These observations remain true today. Judge Heaton's experience and the resources available in the Western District of Oklahoma promise to keep the proceedings apace.

Finally, to the extent coordination is needed among the various MDL Courts involved in pelvic mesh cases, the Western District of Oklahoma would be more than capable of working with the other district courts to ensure consistency. The mere fact that multiple manufactures are involved in several of the cases at issue does not mean that, where needed, coordination and consistency cannot be achieved by the various courts involved.

## IV.   IF THE PANEL PREFERS TRANSFER TO A SINGLE JUDGE FOR ALL OF THE SEPARATE PELVIC MESH MDLs, THE SOUTHERN DISTRICT OF WEST VIRGINIA IS AN ADEQUATE ALTERNATIVE TRANSFEREE COURT.

Should the Panel decide that proposed MDLs involving Boston Scientific, AMS, and Ethicon should be sent to a single judge, Boston Scientific agrees that Judge Goodwin in the Southern District of West Virginia is the appropriate and logical choice. Boston Scientific concurs with AMS and plaintiffs that Judge Goodwin has had the opportunity to become familiar with the factual and legal issues presented in these cases through his handling of MDL No. 2187, which involves pelvic mesh manufactured by a different company, used to treat similar conditions, and that have allegedly resulted in similar injuries. Boston Scientific likewise concurs that Judge Goodwin is well-qualified to handle these matters.

## CONCLUSION

For all of the foregoing reasons, Boston Scientific requests that the Panel transfer the actions against it to a separate MDL in the Western District of Oklahoma before Judge Heaton, or, in the alternative, to the Southern District of West Virginia before Judge Goodwin.

## EXHIBIT 4

11

Dated: December 21, 2011

Respectfully submitted,

/s/ Jon A. Strongman_____
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANT**
**BOSTON SCIENTIFIC CORP.**

**EXHIBIT 4**

**138**

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re Boston Scientific Corp.,                                    MDL No. 2326
Pelvic Repair System Products Liability Litigation

### PROOF OF SERVICE

The undersigned, counsel for Defendant Boston Scientific Corporation, hereby certifies

that he has this day served all parties to this action and clerks of the district courts with a copy of

the foregoing by electronic service and/or by U.S. Mail as follows:

Clerk of the Court
United States District Court
Middle District of Alabama
P.O. Box 711
Montgomery, Alabama 36101-0711
***Barber v. Boston Scientific Corporation*, No. 2:11-cv-00952 (M.D. Ala.).**

Clerk of the Court
United States District Court
Northern District of Alabama – Birmingham Division
Hugo L. Black U.S. Courthouse
1729 Fifth Avenue North
Birmingham, Alabama 35203
***Buchanan v. Boston Scientific Corporation*, No. 2:11-cv-03946 (N.D. Ala.); *Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala); *Kirkpatrick v. Boston Scientific Corporation*, No. 5:11-cv-03759 (N.D. Ala); *Nalley v. Boston Scientific Corporation*, No. 4:11-cv-03521 (N.D. Ala.).**

Clerk of the Court
United States District Court
District of Arizona - Phoenix Division
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 West Washington Street, SPC 1
Phoenix, Arizona 85003-2158
***Avent v. Boston Scientific Corporation*, No. 2:11-cv-02280 (D. Ariz.).**

Clerk of the Court
United States District Court
Central District of California – Western Division
312 North Spring Street
Los Angeles California 90012-4701
***Herkal v. Boston Scientific Corporation*, No. 2:11-cv-08678 (C.D. Cal).**

## EXHIBIT 4

**139**

Clerk of the Court
United States District Court
Eastern District of California
2500 Tulare Street
Fresno, California 93721
*Coleman v. Boston Scientific Corporation*, No. 1:10-cv-01968 (E.D. Cal).

Clerk of the Court
United States District Court
Northern District of California – San Francisco Division
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, California 94102
*Boone v. American Medical Systems, Inc.*, No. 4:11-cv-05144 (N.D. Cal); *Spence v. Boston Scientific Corporation*, No. 3:11-cv-04961 (N.D. Cal).

Clerk of the Court
United States District Court
District of Colorado
Alfred A. Arraj United States Courthouse, Room A105
901 19th Street
Denver, Colorado 80294-3589
*McMillen v. Boston Scientific Corporation*, No. 1:11-cv-03125 (D. Colo.).

Clerk of the Court
United States District Court
Middle District of Florida – Tampa Division
Sam M. Gibbons U.S. Courthouse
801 North Florida Ave.
Tampa, Florida 33602
*Sullivan v. Boston Scientific Corporation*, No. 8:11-cv-02681 (M.D. Fla.).

Clerk, Southern District of Florida
400 North Miami Avenue
Miami, Florida 33128
*Iglesias v. Boston Scientific Corporation*, No. 1:11-cv-24263 (S.D. Fla.).

Clerk, Northern District of Georgia
Atlanta Division
2211 Richard B. Russell Federal Building and Courthouse
75 Spring Street, SW
Atlanta, Georgia 30303
*Bailey v. Boston Scientific Corporation*, No. 1:11-cv-03981 (N.D. Ga.); *Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Goodson v. Boston Scientific Corporation*, No. 1:11-cv-03023 (N.D. Ga.); *Preston v. Boston Scientific Corporation*, No. 1:11-cv-03982 (N.D. Ga.); *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.).

**EXHIBIT 4**

Clerk of the Court
United States District Court
Western District of Louisiana - Shreveport
Suite 1167
300 Fannin Street
Shreveport, Louisiana 71101
*Carroll v. Johnson & Johnson, Inc.*, No. 5:11-cv-01937 (W.D. La.); *Jolly v. Boston Scientific Corporation*, No. 3:11-cv-01871 (W.D. La); *Mann v. Boston Scientific Corporation*, No. 3:11-cv-01785 (W.D. La); *Powell v. Boston Scientific Corporation*, No. 3:11-cv-01876 (W.D. La); *Waldroup v. Boston Scientific Corporation*, No. 3:11-cv-01854 (W.D. La); *Weller v. Boston Scientific Corporation*, No. 5:11-cv-01696 (W.D. La); *Williams, N. v. Boston Scientific Corporation*, No. 3:11-cv-01938 (W.D. La.).

Clerk of the Court
United States District Court
District of Massachusetts - Boston
1 Courthouse Way
Boston, Massachusetts 02210
*Ackerman v. Boston Scientific Corporation*, No. 1:11-cv-12260 (D. Mass.).

Clerk of the Court
United States District Court
Middle District of North Carolina
324 West Market Street, Suite 401
Greensboro, North Carolina 27401
*Tucker v. American Medical Systems, Inc.*, No. 1:11-cv-00974 (M.D. N.C.).

Clerk of the Court
United States District Court
Western District of North Carolina
Statesville Division
200 W. Broad Street
Statesville, North Carolina 28677
*Meadows v. Boston Scientific Corporation*, No. 5:11-cv-00143 (W.D. N.C.).

Clerk, Northern District of Ohio
John F. Seiberling Federal Building and U.S. Courthouse
2 South Main Street
Akron, Ohio 44308
*Stallman v. Ethicon, Inc.*, No. 5:11-cv-02676 (N.D. Ohio).

Clerk of the Court
United States District Court
Western District of Oklahoma – Oklahoma City Division
200 N.W. 4th Street

**EXHIBIT 4**

**141**

Oklahoma City, Oklahoma 73102
*Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (W.D. Okla.);
*Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (W.D. Okla.); *Williams, L. v.
Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.).

Clerk of the Court
United States District Court
District Court of South Carolina – Columbia Division
901 Richland Street
Columbia, South Carolina 29201
*Beatty v. Boston Scientific Corporation*, No. 2:11-cv-03147 (D.S.C.); *Daniels v. Boston
Scientific Corporation*, No. 3:11-cv-02849 (D.S.C.).

Clerk of the Court
United States District Court
Middle District of Tennessee
801 Broadway
Nashville, Tennessee 37203
*Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.).

Clerk of the Court
United States District Court
Northern District of Texas – Fort Worth Division
*Templeton v. American Medical Systems, Inc.*, No. 4:11-cv-00844 (N.D. Tex.).

Clerk of the Court
United States District Court
Western District of Texas – Austin Division
200 West 8th St., Room 130
Austin, Texas 78701
*Webb v. Boston Scientific Corporation*, No. 1:11-cv-00873 (W.D. Tex).

Clerk of the Court
United States District Court
Eastern District of Virginia – Richmond Division
701 East Broad Street
Richmond, Virginia 23219
*Hayzlett v. Boston Scientific Corporation*, No. 3:11-cv-00838 (E.D. Va.).

Clerk of the Court
United States District Court
Western District of Washington – Tacoma Division
1717 Pacific Avenue
Tacoma, Washington 98402
*Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wa).

**EXHIBIT 4**

Clerk of the Court
United States District Court
Southern District of West Virginia – Charleston Division
Robert C. Byrd United States Courthouse
300 Virginia Street, East, Ste. 2400
Charleston, West Virginia 25301
*Moyer v. Boston Scientific Corporation*, No. 2:11-cv-00810 (S.D.W. Va.).

Mark Randall Mueller
MUELLER LAW FIRM
404 W. 7th St.
Austin, Texas 78701
Telephone: 512.478.1236
Facsimile: 512.478.1473
mark@muellerlaw.com
**Counsel for Plaintiffs**
*Barber v. Boston Scientific Corporation*, No. 2:11-cv-00952 (M.D. Ala.); *Buchanan v. Boston Scientific Corporation*, No. 2:11-cv-03946 (N.D. Ala.); *Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala); *Nalley v. Boston Scientific Corporation*, No. 4:11-cv-03521 (N.D. Ala); *Avent v. Boston Scientific Corporation*, No. 2:11-cv-02280 (D. Ariz.); *McMillen v. Boston Scientific Corporation*, No. 1:11-cv-03125 (D. Colo.); *Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Goodson v. Boston Scientific Corporation*, No. 1:11-cv-03023 (N.D. Ga.); *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.); *Tucker v. American Medical Systems, Inc.*, No. 1:11-cv-00974 (M.D. N.C.); *Meadows v. Boston Scientific Corporation*, No. 5:11-cv-00143 (W.D. N.C.); *Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (W.D. Okla.); *Beatty v. Boston Scientific Corporation*, No. 2:11-cv-03147 (D.S.C.); *Daniels v. Boston Scientific Corporation*, No. 3:11-cv-02849 (D.S.C.); *Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.); *Templeton v. American Medical Systems, Inc.*, No. 4:11-cv-00844 (N.D. Tex.); *Webb v. Boston Scientific Corporation*, No. 1:11-cv-00873 (W.D. Tex); *Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wa); **and** *Moyer v. Boston Scientific Corporation*, No. 2:11-cv-00810 (S.D.W. Va.).

William Todd Harvey
BURKE HARVEY & FRANKOWSKI LLC
One Highland Place
2151 Highland Avenue, Suite 120
Birmingham, Alabama 35205
Telephone: 205.930.9091
Facsimile: 205.930.9054
tharvey@bhflegal.com
**Counsel for Plaintiffs**
*Buchanan v. Boston Scientific Corporation*, No. 2:11-cv-03946 (N.D. Ala.); *Nalley v. Boston Scientific Corporation*, No. 4:11-cv-03521 (N.D. Ala.); **and** *Barber v. Boston Scientific Corporation*, No. 2:11-cv-00952 (M.D. Ala.).
**Co-counsel for Plaintiffs**

<div align="center">

**EXHIBIT 4**

**143**

</div>

*Avent v. Boston Scientific Corporation*, No. 2:11-cv-02280 (D. Ariz.); *Daniels v. Boston Scientific Corporation*, No. 3:11-cv-02849 (D.S.C.); *Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.); and *Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wa.).

William Chapman Roedder, Jr.
Archibald Thomas Reeves, IV
MCDOWELL, KNIGHT, ROEDDER & SLEDGE, LLC
63 South Royal Street
Mobile, Alabama 36602
Telephone: 251.432.5300
Facsimile: 251.432.5303
broedder@mcdowellknight.com
areeves@mcdowellknight.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Barber v. Boston Scientific Corporation*, No. 2:11-cv-00952 (M.D. Ala.); *Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala.); *Kirkpatrick v. Boston Scientific Corporation*, No. 5:11-cv-03759 (N.D. Ala.).

Champ Lyons, III
CHAMP LYONS III
P.O. Box 131388
Birmingham, Alabama 35213-1388
Telephone: 205.314.6191
Facsimile: 866.618.4629
champ@champlyons.com
**Co-Counsel for Plaintiffs**
*Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala.).

Barbara R. Binis
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone: 215.241.7948
Facsimile: 215.841.1829
bbinis@reedsmith.com
**Counsel for Defendant or Co-Defendant American Medical Systems, Inc., American Medical Systems Holdings, Inc., and/or Endo Pharmaceuticals, Inc.**
*Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala); *Boone v. American Medical Systems, Inc.*, No. 4:11-cv-05144 (N.D. Cal); *Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.); *Waldroup v. Boston Scientific Corporation*, No. 3:11-cv-01854 (W.D. La); *Tucker v. American Medical Systems, Inc.*, No. 1:11-cv-00974 (M.D. N.C.); *Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (W.D. Okla.); *Williams, L. v. Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.); *Templeton v. American Medical*

**EXHIBIT 4**

*Systems, Inc.*, No. 4:11-cv-00844 (N.D. Tex.); and *Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wash.).

Melody H. Eagan
Brooke G. Malcom
Harlan I. Prater, IV
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: 205.581.0700
Facsimile: 205.581.0799
meagan@lfwlaw.com
bmalcom@lightfootlaw.com
hprater@lfwlaw.com
**Co-Counsel for Defendant American Medical Systems, Inc.**
*Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala.).

C. Anthony Graffeo
WATSON GRAFFEO PC
228 Holmes Avenue NE, Suite 300
Huntsville, Alabama 35801
Telephone: 256.536.8373
Facsimile: 256.536.8349
graffeo@watsongraffeo.com
**Co-Counsel for Plaintiff**
*Kirkpatrick v. Boston Scientific Corporation*, No. 5:11-cv-03759 (N.D. Ala.).

Peter Michael Gorski
LAW OFFICE OF PETER GORSKI PLC
908 W Chandler Blvd., Bldg. D
Chandler, Arizona 85225
Telephone: 480.305.5982
Facsimile: 480.305.5974
pgorski@petergorskilaw.com
**Co-Counsel for Plaintiff**
*Avent v. Boston Scientific Corporation*, No. 2:11-cv-02280 (D. Ariz.).

Thomas Vincent Girardi
Amanda Heather Kent
Amy F. Solomon
Vincent James Carter
Michael M. Kowsari
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017

**EXHIBIT 4**

Telephone: 213.977.0211
Facsimile: 213.481.1554
tgirardi@girardikeese.com
akent@girardikeese.com
asolomon@girardikeese.com
vcarter@girardikeese.com
mkowsari@girardikeese.com
**Counsel for Plaintiffs**
*Herkal v. Boston Scientific Corporation*, No. 2:11-cv-08678 (C.D. Cal); *Coleman v. Boston Scientific Corporation*, No. 1:10-cv-01968 (E.D. Cal).

Eva M. Weiler
Natasha L. Mosley
SHOOK HARDY & BACON LLP
Jamboree Center
5 Park Plaza Suite 1600
Irvine, California 92614-2546
Telephone: 949.475.1500
Facsimile: 949.475.0016
eweiler@shb.com
nmosley@shb.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Herkal v. Boston Scientific Corporation*, No. 2:11-cv-08678 (C.D. Cal); *Coleman v. Boston Scientific Corporation*, No. 1:10-cv-01968 (E.D. Cal).

Mark I. Labaton
MOTLEY RICE LLP
1100 Glendon Aveue
14th Floor
Los Angeles, California 90024
Telephone: 310.500.3488
Facsimile: 310.824.2870
mlabaton@motleyrice.com
**Counsel for Plaintiffs**
*Boone v. American Medical Systems, Inc.*, No. 4:11-cv-05144 (N.D. Cal).

PROXY MEDICAL
Address not listed
**Counsel for Defendant Proxy Biomedical, Ltd. is unknown**
*Boone v. American Medical Systems, Inc.*, No. 4:11-cv-05144 (N.D. Cal).

Thomas J. Brandi
Casey A. Kaufman
THE BRANDI LAW FIRM
354 Pine Street
Third Floor

**EXHIBIT 4**

San Francisco, California 94104
Telephone: 415.989.1800
Facsimile: 415.989.1801
tjb@brandilaw.com
**Counsel for Plaintiffs**
*Spence v. Boston Scientific Corporation*, No. 3:11-cv-04961 (N.D. Cal).

Alicia J. Donahue
Amir M. Nassihi
SHOOK HARDY & BACON L.L.P.
One Montgomery Street
Suite 2700
San Francisco, CA 94104-4505
Telephone: 415.544.1900
Facsimile: 415.391.0281
adonahue@shb.com
anassihi@shb.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Spence v. Boston Scientific Corporation*, No. 3:11-cv-04961 (N.D. Cal).

Timms R. Fowler
FOWLER LAW FIRM
155 East Boardwalk Drive, #300
Fort Collins, Colorado 80525
Telephone: 970.232.3322
Facsimile: 970.232.3101
timmsf@comcast.net
**Co-Counsel for Plaintiff**
*McMillen v. Boston Scientific Corporation*, No. 1:11-cv-03125 (D. Colo.).

Micheal Goetz
MORGAN & MORGAN, P.A.
One Tampa City Center
201 North Franklin St., 7th Floor
Tampa, Florida 33602
Telephone: 813.223.5505
Facsimile: 813.223.5402
mgoetz@forthepeople.com
**Counsel for Plaintiffs**
*Sullivan v. Boston Scientific Corporation*, No. 8:11-cv-02681 (M.D. Fla.).

Bryan Frederick Aylstock
Neil Duane Overholtz
AYLSTOCK WITKIN KREIS & OVERHOLTZ PLLC
17 East Main Street, Suite 200
Pensacola, Florida 32502-5998

**EXHIBIT 4**

**147**

Telephone: 850.202.1010
Facsimile: 850.916.7449
noverholtz@awkolaw.com
**Counsel for Plaintiffs**
*Iglesias v. Boston Scientific Corporation*, No. 1:11-cv-24263 (S.D. Fla.).
**Co-Counsel for Plaintiff**
*Ackerman v. Boston Scientific Corporation*, No. 1:11-cv-12260 (D. Mass.).

Henry G. Garrard, III
BLASINGAME, BURCH, GARRARD & ASHLEY, P.C.
P.O. Box 832
Athens, Georgia 30603
Facsimile: 706.354.4000
Telephone: 706.549.3545
hgg@bbgbalaw.com
**Counsel for Plaintiffs**
*Bailey v. Boston Scientific Corporation*, No. 1:11-cv-03981 (N.D. Ga.); *Preston v. Boston Scientific Corporation*, No. 1:11-cv-03982 (N.D. Ga.); and *Moyer v. Boston Scientific Corporation*, No. 2:11-cv-00810 (S.D.W. Va.).

Johnathan Tyler Krawcheck
Brannon Jones Arnold
WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Telephone: 404.876.2700
jkrawcheck@wwhgd.com
barnold@wwhgd.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Goodson v. Boston Scientific Corporation*, No. 1:11-cv-03023 (N.D. Ga.); *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.).

Christy D. Jones
Michael L. Brown
BUTLER SNOW O'MARA STEVENS & CANNADA
P.O. Box 6010
Suite 1400
1020 Highland Colony Parkway
Ridgeland, Mississippi 39158-6010
Telephone: 601.985.4274
christy.jones@butlersnow.com
michael.brown@butlersnow.com
**Counsel for Defendants or Co-Defendants Ethicon, Inc. (on behalf of itself and its Division, Ethicon Women's Health & Urology) and Johnson & Johnson**

**EXHIBIT 4**

*Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Carroll v. Johnson & Johnson, Inc.*, No. 5:11-cv-01937 (W.D. La.); *Stallman v. Ethicon, Inc.*, No. 5:11-cv-02676 (N.D. Ohio); *Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (W.D. Okla.).

Nancy K. Deming
S. Eric Rumanek
TROUMAN SANDERS
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30308-2216
Telephone: 404.885.3000
karen.demming@troutmansanders.com
eric.rumanek@troutmansanders.com
**Co-counsel for Co-Defendant Ethicon, Inc.**
*Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.).

Lori Gail Cohen
R. Scott Campbell
GREENBERG TRAURIG
3290 Northside Parkway
Suite 400, The Forum
Atlanta, Georgia 30327
Telephone: 678.553.2385
Facsimile: 678.553.2386
cohenl@gtlaw.com
campbellrs@gtlaw.com
**Co-Counsel for Co-Defendant American Medical Systems, Inc.**
*Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.).

Tracy W. Houck
Ronald L. Riggle
HOUCK & RIGGLE
P O Box 1958
Ruston, Louisiana 71273-1958
Telephone: 318.255.4066
Facsimile: 318.255.8520
thouck@suddenlinkmail.com
rriggle@suddenlinkmail.com
**Counsel for Plaintiffs**
*Carroll v. Johnson & Johnson, Inc.*, No. 5:11-cv-01937 (W.D. La.); *Jolly v. Boston Scientific Corporation*, No. 3:11-cv-01871 (W.D. La); *Powell v. Boston Scientific Corporation*, No. 3:11-cv-01876 (W.D. La); *Waldroup v. Boston Scientific Corporation*, No. 3:11-cv-01854 (W.D. La); *Williams, N. v. Boston Scientific Corporation*, No. 3:11-cv-01938 (W.D. La.).

**EXHIBIT 4**

**149**

Brent A. Talbot
Peter J. Rotolo, III
Skye Elizabeth Eiswirth
CHAFFE MCCALL
1100 Poydras St Ste 2300
New Orleans, Louisiana 70163-2300
Telephone: 504.585.7000
Facsimile: 504.544.6134
talbot@chaffe.com
rotolo@chaffe.com
eiswirth@chaffe.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Mann v. Boston Scientific Corporation*, No. 3:11-cv-01785 (W.D. La); *Weller v. Boston Scientific Corporation*, No. 5:11-cv-01696 (W.D. La).

Richard B. North, Jr.
NELSON MULLINS RILEY & SCARBOROUGH
Atlantic Station, 201 17th Street, NW, Suite 1700
Atlanta, Georgia 30363
Telephone: 404.322.6000
Facsimile: 404.322.6050
richard.north@nelsonmullins.com
**Counsel for Co-Defendant C.R. Bard, Inc.**
*Williams, N. v. Boston Scientific Corporation*, No. 3:11-cv-01938 (W.D. La.); *Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (W.D. Okla.).

Samuel M. Furgang
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street, 9th Floor
Boston, Massachusetts 02114-4737
Telephone: 617.227.3030
Facsimile: 617.523.4001
furgang@srbc.com
**Counsel for Plaintiff**
*Ackerman v. Boston Scientific Corporation*, No. 1:11-cv-12260 (D. Mass.).

Peter J. Flowers
Craig S. Mielke
FOOTE, MEYERS, MIELKE & FLOWERS, LLC
3 North Second Street, Suite 300
St. Charles, Illinois 60174
Telephone: 630.232.6333
Facsimile: 630.845.8982
**Co-Counsel for Plaintiff**
*Ackerman v. Boston Scientific Corporation*, No. 1:11-cv-12260 (D. Mass.).

# EXHIBIT 4

Edward Vernon Ferrell Glenn
ALLMAN SPRY LEGGETT & CRUMPLER, P.A.
POD 5129
Winston-Salem, North Carolina 27113-5129
Telephone: 336.722.2300
Facsimile: 336.721.0414
glennlaw@lowcountrylawyer.com
**Co-Counsel for Plaintiff**
*Tucker v. American Medical Systems, Inc.*, **No. 1:11-cv-00974 (M.D. N.C.).**

Vernon F. Glenn
CLORE LAW GROUP
211 Scott Street
Mt. Pleasant, South Carolina 29464
Telephone: 843.971.1999
Facsimile: 843.971.0194
glennlaw@lowcountrylawyer.com
**Co-Counsel for Plaintiffs**
*Meadows v. Boston Scientific Corporation*, **No. 5:11-cv-00143 (W.D. N.C.).**

Brian R. Wilson
NICODEMO & WILSON
124 15th Street, NW
Canton, Ohio 44703
Telephone: 330.452.8831
Facsimile: 330.452.8856
brian@n-wlaw.com
**Counsel for Plaintiffs**
*Stallman v. Ethicon, Inc.*, **No. 5:11-cv-02676 (N.D. Ohio).**

Stephen E. Matasich
DAY, KETTERER, RALEY, WRIGHT & RYBOLT
300 Millennium Centre
200 Market Avenue, North
P.O. Box 24213
Canton, Ohio 44707-4213
Telephone: 330.455.0173
Facsimile: 330.455.2633
sematasich@day-ketterer.com
**Counsel for Co-Defendant Caldera Medical, Inc.**
*Stallman v. Ethicon, Inc.*, **No. 5:11-cv-02676 (N.D. Ohio).**

Erica M. James
Rita A. Maimbourg
TUCKER ELLIS & WEST
1150 Huntington Bldg.

# EXHIBIT 4

**151**

925 Euclid Avenue
Cleveland, Ohio 44115
Telephone: 216.696.4661
Facsimile: 216.592.5009
erica.james@tuckerellis.com
**Co-counsel for Co-Defendant Ethicon, Inc.**
*Stallman v. Ethicon, Inc.*, **No. 5:11-cv-02676 (N.D. Ohio).**

Craig A. Marvinney
LAW OFFICE OF CRAIG A. MARVINNEY
7622 Glenmont Dr. #E
Cleveland, Ohio  44133
Telephone:  216.406.5918
camarvinney@gmail.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Stallman v. Ethicon, Inc.*, **No. 5:11-cv-02676 (N.D. Ohio).**

Melissa S. Hedrick
ATKINS & MARKOFF
9211 N Lake Hefner Parkway
Suite 104
Oklahoma City, Oklahoma 73120
Telephone: 405.607.8757
Facsimile: 405.607.5749
mhedrick@atkinsandmarkoff.com
**Counsel for Plaintiff**
*Hamilton v. American Medical Systems Holdings, Inc.*, **No. 5:11-cv-01265 (W.D. Okla.).**

MENTOR, INC.
Address not listed
**Counsel for Co-Defendant Mentor, Inc. is unknown**
*Hamilton v. American Medical Systems Holdings, Inc.*, **No. 5:11-cv-01265 (W.D. Okla.).**

TYCO COVIDIEN
Address not listed
**Counsel for Co-Defendant Mentor, Inc. is unknown**
*Hamilton v. American Medical Systems Holdings, Inc.*, **No. 5:11-cv-01265 (W.D. Okla.).**

John P. Zelbst
ZELBST HOLMES & BUTLER
P.O. Box 365
411 SW Sixth St
Lawton, Oklahoma 73502-0365
Telephone: 580.248.4844
Facsimile: 580.248.6916
zelbst@zelbst.com

**EXHIBIT 4**
14

**152**

**Co-Counsel for Plaintiff**
*Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (W.D. Okla.).

Richard M. Eldridge
Thomas E. Steichen
Alison Anne Verret
Vani R. Singhal
MCAFEE & TAFT
1717 S Boulder Ave, Suite 900
Tulsa, Oklahoma 74119
Telephone: 918.587.0000
Facsimile: 918.599.9317
richard.eldridge@mcafeetaft.com
tom.steichen@mcafeetaft.com
alison.verret@mcafeetaft.com
vani.singhal@mcafeetaft.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (W.D. Okla.); *Williams, L. v. Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.).

Joseph S. Carson
Gary B. Homsey
HOMSEY COOPER HILL & ASSOCIATES
4816 Classen Blvd
Oklahoma City, Oklahoma 73118
Telephone405.843.9923
Facsimile: 405.848.4223
jsc@homseylawcenter.com
gbh@homseylawcenter.com
**Counsel for Plaintiff**
*Williams, L. v. Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.).

Raymond E. Zschiesche
PHILLIPS MURRAH PC
101 N Robinson Ave, 13th Fl
Oklahoma City, Oklahoma 73102
Telephone: 405.235.4100
Facsimile: 405.235.4133
ecf@phillipsmurrah.com
**Co-Counsel for Co-Defendant American Medical Systems, Inc.**
*Williams, L. v. Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.).

Samuel K. Allen
CLORE LAW GROUP
49 Immigration Street, Suite 100
Charleston, South Carolina 29403

**EXHIBIT 4**

**153**

Telephone: 843.722.8070
Facsimile: 843.722.9881
sam@clorelaw.com
**Counsel for Plaintiffs**
*Beatty v. Boston Scientific Corporation*, No. 2:11-cv-03147 (D.S.C.); *Daniels v. Boston Scientific Corporation*, No. 3:11-cv-02849 (D.S.C.).

Samuel Lanier Felker
Kinika L. Young
BASS, BERRY & SIMS
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
Telephone: 615.742.6200
Facsimile: 615.742.2792
sfelker@bassberry.com
kyoung@bassberry.com
**Co-Counsel for Defendant Boston Scientific Corporation**
*Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.).

Edmund J. Schmidt, III
LAW OFFICE OF EDDIE SCHMIDT
1720 West End Avenue, Suite 300
Nashville, Tennessee 37203
Telephone: 615.425.7121
Facsimile: 615.425.7110
eddie@eschmidtlaw.com
**Counsel for Plaintiff**
*Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.).

CALDERA MEDICAL, INC.
Address not listed
**Counsel for Co-Defendant Caldera Medical, Inc. is unknown**
*Templeton v. American Medical Systems, Inc.*, No. 4:11-cv-00844 (N.D. Tex.).

Andy D. Birchfield, Jr.
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
218 Commerce St.
P.O. Box 4160
Montgomery, Alabama 36103-4160
Telephone: 334.269.2343
Facsimile: 334.954.7555
**Counsel for Plaintiff**
*Hayzlett v. Boston Scientific Corporation*, No. 3:11-cv-00838 (E.D. Va.).

Timothy O'Connor Johnson
HUNDLEY & JOHNSON

**EXHIBIT 4**

5501 Staples Mill Road
P.O. Box 28057
Richmond, Virginia 23228-0057
Telephone: 804.262.9000
t.oconnor@hundleyandjohnson.com
**Co-Counsel for Plaintiff**
*Hayzlett v. Boston Scientific Corporation*, No. 3:11-cv-00838 (E.D. Va.).

Eric M. Fong
FONG LAW, PLLC
569 Division St., Ste A
Port Orchard, Washington 98366
Telephone: 360.876.8205
eric@ericfonglaw.com
**Co-Counsel for Plaintiffs**
*Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wa.).

Kathy Ann Cochran
WILSON SMITH COCHRAN & DICKERSON
901 Fifth Avenue, Suite 1700
Seattle, Washington 98164-2050
Telephone: 206.623.4100
cochran@wscd.com
**Co-Counsel for Co-Defendant American Medical Systems, Inc.**
*Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wa.).

Mark F. Underwood
UNDERWOOD & PROCTOR LAW OFFICES
923 Third Avenue
Huntington, West Virginia 25701
Telephone: 304.522.0508
Facsimile: 304.399.5449
markunderwood@underwoodlawoffices.com
**Co-Counsel for Plaintiffs**
*Moyer v. Boston Scientific Corporation*, No. 2:11-cv-00810 (S.D.W. Va.).

**EXHIBIT 4**

Dated: December 21, 2011

By: /s/ Jon A Strongman
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANT
BOSTON SCIENTIFIC CORP.**

*Barber v. Boston Scientific Corporation*, No. 2:11-cv-00952 (M.D. Ala); *Buchanan v. Boston Scientific Corporation*, No. 2:11-cv-03946 (N.D. Ala.); *Farr v. American Medical Systems, Inc.*, No. 5:11-cv-02767 (N.D. Ala); *Kirkpatrick v. Boston Scientific Corporation*, No. 5:11-cv-03759 (N.D. Ala); *Nalley v. Boston Scientific Corporation*, No. 4:11-cv-03521 (N.D. Ala); *Avent v. Boston Scientific Corporation*, No. 2:11-cv-00280 (D. Ariz.); *Herkal v. Boston Scientific Corporation*, No. 2:11-cv-08678 (C.D. Cal); *Coleman v. Boston Scientific Corporation*, No. 1:10-cv-01968 (E.D. Cal); *Boone v. American Medical Systems, Inc.*, No. 4:11-cv-05144 (N.D. Cal); *Spence v. Boston Scientific Corporation*, No. 3:11-cv-04961 (N.D. Cal); *McMillen v. Boston Scientific Corporation*, No. 1:11-cv-03125 (D. Colo.); *Sullivan v. Boston Scientific Corporation*, No. 8:11-cv-02681 (M.D. Fla.); *Iglesias v. Boston Scientific Corporation*, No. 1:11-cv-24263 (S.D. Fla.); *Bailey v. Boston Scientific Corporation*, No. 1:11-cv-03981 (N.D. Ga.); *Carr v. Ethicon, Inc.*, No. 1:11-cv-02217 (N.D. Ga.); *Goodson v. Boston Scientific Corporation*, No. 1:11-cv-03023 (N.D. Ga.); *Preston v. Boston Scientific Corporation*, No. 1:11-cv-03982 (N.D. Ga.); *Williams, K. v. American Medical Systems, Inc.*, No. 1:11-cv-02782 (N.D. Ga.); *Carroll v. Johnson & Johnson, Inc.*, No. 5:11-cv-01937 (W.D. La.); *Jolly v. Boston Scientific Corporation*, No. 3:11-cv-01871 (W.D. La); *Mann v. Boston Scientific Corporation*, No. 3:11-cv-01785 (W.D. La); *Powell v. Boston Scientific Corporation*, No. 3:11-cv-01876 (W.D. La); *Waldroup v. Boston Scientific Corporation*, No. 3:11-cv-01854 (W.D. La); *Weller v. Boston Scientific Corporation*, No. 5:11-cv-01696 (W.D. La); *Williams, N. v. Boston Scientific Corporation*, No. 3:11-cv-01938 (W.D. La.); *Ackerman v. Boston Scientific Corporation*, No. 1:11-cv-12260 (D. Mass.); *Tucker v. American Medical Systems, Inc.*, No. 1:11-cv-00974 (M.D. N.C.); *Meadows v. Boston Scientific Corporation*, No. 5:11-cv-00143 (W.D. N.C.); *Stallman v. Ethicon, Inc.*, No. 5:11-cv-02676 (N.D. Ohio); *Hamilton v. American Medical Systems Holdings, Inc.*, No. 5:11-cv-01265 (W.D. Okla.); *Hammonds v. Boston Scientific Corporation*, No. 5:11-cv-00663 (W.D. Okla.); *Williams, L. v. Boston Scientific Corporation*, No. 5:11-cv-01400 (W.D. Okla.); *Beatty v. Boston Scientific Corporation*, No. 2:11-cv-03147 (D.S.C.); *Daniels v. Boston Scientific Corporation*, No. 3:11-cv-02849 (D.S.C.); *Kennamore v. Boston Scientific Corporation*, No. 3:11-cv-01064 (M.D. Tenn.); *Templeton v. American Medical Systems, Inc.*, No. 4:11-cv-00844 (N.D. Tex.); *Webb v. Boston Scientific Corporation*, No. 1:11-cv-00873 (W.D. Tex); *Hayzlett v. Boston Scientific Corporation*, No. 3:11-cv-00838 (E.D. Va.); *Horton v. American Medical Systems, Inc.*, No. 3:11-cv-05780 (W.D. Wash.); and *Moyer v. Boston Scientific Corporation*, No. 2:11-cv-00810 (S.D.W. Va.).

**EXHIBIT 4**

**EXHIBIT 4**

**157**

# EXHIBIT "B"

**EXHIBIT 4**

**158**

UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE:  BOSTON SCIENTIFIC CORP.,
PELVIC REPAIR SYSTEM PRODUCTS
LIABILITY LITIGATION                                    MDL No. 2326

This Document Relates to the Cases Identified
Below:

---

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| SHARON JENNINGS-WELCH AND | ) | |
| MICHAEL WELCH, spouse, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:13-cv-00644 |
| | ) | |
| UNITED HEALTHCARE | ) | JUDGE J.P. STADTMUELLER |
| INSURANCE COMPANY, | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| WISCONSIN, | ) | |
| Involuntary Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| WISCONSIN INJURED PATIENTS AND | ) | |
| FAMILIES COMPENSATION FUND, | ) | |
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| JOHNSON & JOHNSON, ETHICON, INC. | ) | |
| PREFERRED PROFESSIONAL | ) | |
| INSURANCE COMPANY, AND | ) | |
| DENNIS P. MILLER, M.D. | ) | |
| | ) | |
| Defendants. | ) | |

---

DEFENDANT BOSTON SCIENTIFIC CORPORATION'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO VACATE CTO-72 AS TO JENNINGS-WELCH

Defendant Boston Scientific Corporation ("Boston Scientific"), by and through counsel,

submits this Response in Opposition to Plaintiffs' Motion to Vacate CTO-72, and respectfully

EXHIBIT 4
EXHIBIT B
159

requests that the Panel transfer this action to Multidistrict Litigation No. 2326 ("MDL No. 2326") without further delay.

## INTRODUCTION

Plaintiffs Sharon Jennings-Welch and Michael Welch have moved to vacate the order transferring the above-captioned action to the Honorable Joseph Goodwin of the Southern District of West Virginia for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. In support, Plaintiffs argue that a pending motion to remand before the United States District Court for the Eastern District of Wisconsin should bar the transfer.[1] This Panel has rejected this argument many times, and for the reasons discussed herein, it should reject it again.

In CTO-1, the Panel stated that, "It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of West Virginia and assigned to Judge Goodwin." *See* (Doc. 56) Conditional Transfer Order (CTO-1) at ¶ 2. The Panel is correct.

Plaintiffs allege that Sharon Jennings-Welch was implanted with a pelvic mesh product manufactured by Boston Scientific and that she sustained injuries as a result thereof. Thus, this case shares common questions of fact and law with all of the other actions that have been transferred to MDL No. 2326. As this Panel has previously recognized, the pendency of a motion to remand is not a proper ground for vacating a Conditional Transfer Order because the transferee judge can easily rule on such motions in the MDL. Plaintiffs' contrary allegations notwithstanding, transfer to the MDL – along with all other similarly-situated actions – will

---

[1] On June 12, 2013, co-defendants Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon") filed a Motion to Stay all proceedings pending transfer of this case to MDL No. 2326. Plaintiffs opposed Ethicon's Motion to Stay on July 1, 2013. Plaintiffs subsequently filed a Motion to Remand on July 2, 2013, which Ethicon opposed on July 22, 2013.

**EXHIBIT 4**

**160**

promote the just and efficient conduct of the litigation. The *Jennings-Welch* case should be transferred to Judge Goodwin without delay.

## ARGUMENT

### A. Plaintiffs' Pending Motion to Remand Does Not Weigh Against MDL Transfer.

This Panel's longstanding precedent firmly establishes that the presence of a pending remand motion is not a valid basis upon which to vacate a Conditional Transfer Order. Indeed, Plaintiffs fail to cite a single Panel opinion in support of their argument that transfer is somehow improper in light of their jurisdictional objection. Instead, Plaintiffs mainly argue the *merits* of their remand motion, and conclusively allege that they believe it will be granted, thus stripping the federal court of jurisdiction.

As a preliminary matter, the merits of Plaintiffs' remand motion are not at issue in this motion. "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). Indeed, "the sole issue . . . is the merits of the transfer viewed against the purposes of the multidistrict statutory scheme." *Id.*

Under 28 U.S.C. § 1407, the Panel has authority to transfer civil actions pending in different districts to any district for coordinated or consolidated pretrial proceedings if: (i) the actions involve one or more common questions of fact; (ii) transfer would serve the convenience of the parties and witnesses; and (iii) transfer would promote the just and efficient conduct of the actions. *See* 28 U.S.C. § 1407(a). This action clearly satisfies each of these requirements. Like the Complaints in the other cases already transferred to Judge Goodwin's court, Plaintiffs allege that Sharon Jennings-Welch suffered physical injuries after she was surgically implanted with a

**EXHIBIT 4**

**161**

pelvic mesh product manufactured by Boston Scientific. Plaintiffs notably do not dispute that their lawsuit raises common questions of fact with the other actions in MDL No. 2326.

Instead, Plaintiffs primarily argue that there would be no uniformity or judicial economy served by allowing the MDL Court to determine jurisdiction. DKT. No. 601-1 at 7. Plaintiffs, however, provide little meaningful analysis to support this argument beyond quoting a paragraph from a case that is easily distinguishable from this case. *See id.* (citing *Barragan v. Warner-Lambert Co.*, 216 F. Supp. 2d 627, 630 (W.D. Tex. 2002)). *Barragan* is distinguishable from this case because the district court's decision in *Barragan* was "unquestionably supported by case law, *including case law from the MDL Court.* Hence, there [was] no risk of [the] Court contributing to the alleged inconsistent decisions issued by federal district courts." *Barragan*, 216 F.Supp.2d at 631 (emphasis added). But unlike *Barragan*, the MDL court here has not addressed the jurisdictional issues presented in this case and, therefore, the risk of district courts issuing inconsistent rulings is still present. The Panel has consistently rejected similar arguments and should do so again here.

Stated simply, the "pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings. We note that motions to remand . . . can be presented to and decided by the transferee judge." *In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Indeed, judicial efficiency is often better-served by permitting the MDL Court to decide a remand motion. *See, e.g., In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2009); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 559 F. Supp. 2d 1402, 1403 (J.P.M.L. 2008) ("Plaintiffs can present their motions for remand to state court to the transferee court."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001)

**EXHIBIT 4**

**162**

("there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995) ("We observe that the pending motion to remand to the Northern District of Alabama action to state court can be presented to and decided by the transferee judge."); *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (J.P.M.L. 1979) (transfer would enable "a single judge to consider these motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) ("We see no reason for delaying our decision. Because these actions involve questions of fact identical to those raised in the actions previously transferred by the Panel, transfer is necessary in order to eliminate the possibility of duplicative discovery and conflicting pretrial rulings.").

This case is no different. There is no good reason, consistent with the policies underpinning 28 U.S.C. § 1407, why United States District Judge Goodwin cannot hear Plaintiffs' remand motion after transfer. Namely, Plaintiffs' motion to remand is not unique. The crux of their motion is that diversity jurisdiction is lacking because they have asserted claims against Sharon Jennings-Welch's healthcare provider – who is an in-state defendant. This jurisdictional issue is "easily capable of arising in hundreds of other cases in other district courts throughout the nation" – each of which shares the same common questions of law and fact with this medical device product liability lawsuit. *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); *see Johnson v. AMR Corp.*, Nos. 95-cv-7659, to 95-cv-7664, 1996 WL 164415, *3 (N.D. Ill. Apr. 3, 1996) (staying consideration of motion to remand involving allegations of fraudulent joinder pending MDL transfer). In fact, other cases involving similar allegations have already been transferred to

**EXHIBIT 4**

**163**

MDL No. 2326, or are currently pending before the Panel. *See Cortez et al. v. Kiani-Khozani, M.D. et al.*, No. 7:13-cv-00036, ECF No. 16 (S.D. Tex. Jun. 11, 2013) (transferred to MDL No. 2326 over objection); *Hannig v. Juarez et al.*, No. 2:12-cv-02058, ECF No. 12 (D. Nev. Apr. 1, 2013) (transferred to MDL No. 2326 over objection); *Muhammad v. Amisub of SC, Inc.*, No. 0:13-cv-288, ECF No. 3 (D.S.C. Feb. 13, 2013) (transferred to MDL No. 2326 – no objection); *Williams v. Baptist Health et al.*, No. 4:12-cv-00683, ECF No. 11 (E.D. Ark. Feb. 7, 2013) (transferred to MDL No. 2326 over objection); *Nutt et al. v. Boston Scientific Corp. et al.*, No. 5:12-cv-00197, ECF No. 3 (M.D. Ga. Jun. 13, 2012) (transferred to MDL No. 2326 – no objection); *Malcolm v. Boston Scientific Corporation et al.*, No, 3:12-cv-05017, ECF No. 25 (W.D. Mo. Jun. 11, 2012) (transferred to MDL No. 2326 over objection). Thus, the real economy lies in transferring all similarly-situated cases to MDL No. 2326, so that "the [same] jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served." *In re Ivy*, 901 F.2d. at 9.

Neither Plaintiffs nor Boston Scientific have any way of knowing when either Court will rule on Plaintiffs' motion to remand. However, Judge Goodwin has consistently reiterated his intent to resolve pending motions on the front end of the MDL. *See, e.g., In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02326 (S.D.W. Va. Feb. 29, 2012). *See also In re: Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327 (J.P.M.L. Jun. 11, 2012) (ECF No. 366) (transferring MOW/3:12-cv-05017 and TXS/4:12-cv-00339 over similar objection); *In re American Medical Systems, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2325 (J.P.M.L. Jun. 11, 2012) (ECF No. 352) (transferring MOE/4:11-cv-02064 and TXS/3:12-cv-00016 over similar objection). Thus, transfer of this case to MDL No. 2326 will

**EXHIBIT 4**

**164**

enable the parties to take advantage of the multiple efficiencies and savings of time and resources associated with consolidated and coordinated pretrial proceedings.

### CONCLUSION

This case is no different than the other cases involving Boston Scientific's pelvic mesh products that have already been transferred to MDL No. 2326.  It is a simple, longstanding rule of this Court that questions regarding federal jurisdiction do not preclude MDL transfer under 28 U.S.C. § 1407.  The legal and factual issues that this case shares with the cases already transferred to MDL No. 2326 establish that a Conditional Transfer Order was properly entered in the *Jennings-Welch* case.  As established above, Plaintiffs' arguments to the contrary lack merit, and their Motion to Vacate CTO-56 should be denied.


Dated: July 29, 2013


/s/ Jon A. Strongman
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANT
BOSTON SCIENTIFIC CORP.**

### EXHIBIT 4
### 165

## UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

IN RE:  BOSTON SCIENTIFIC CORP.,
PELVIC REPAIR SYSTEM PRODUCTS
LIABILITY LITIGATION                                    MDL No. 2326

> This Document Relates to the Cases Identified
> Below:

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| SHARON JENNINGS-WELCH AND )<br>MICHAEL WELCH, spouse, )<br> )<br>Plaintiffs, )<br> )<br>UNITED HEALTHCARE )<br>INSURANCE COMPANY, )<br>BLUE CROSS BLUE SHIELD OF )<br>WISCONSIN, )<br>Involuntary Plaintiffs, )<br>v. )<br> )<br>WISCONSIN INJURED PATIENTS AND )<br>FAMILIES COMPENSATION FUND, )<br>BOSTON SCIENTIFIC CORPORATION, )<br>JOHNSON & JOHNSON, ETHICON, INC. )<br>PREFERRED PROFESSIONAL )<br>INSURANCE COMPANY, AND )<br>DENNIS P. MILLER, M.D. )<br> )<br>Defendants. ) | Case No. 2:13-cv-00644<br><br>JUDGE J.P. STADTMUELLER |

---

## CERTIFICATE OF SERVICE

I, Jon A. Strongman, hereby certify that a true and correct copy of the foregoing was

served on July 29, 2013, via ECF and U.S. Mail upon the following counsel of record:

## EXHIBIT 4

## 166

**James P. Scoptur**
AIKEN & SCOPTUR, SC
2600 N Mayfair Road, Suite 1030
Milwaukee, Wisconsin 53226
Telephone: 414-225-0260
Fax: 414-225-9666
james@aikenandscoptur.com
*Counsel for Plaintiffs*

**Tim K. Goss**
FREESE & GOSS PLLC
3031 Allen Street, Suite 100
Dallas, Texas 75204
Telephone: 214-761-6610
Fax: 214-761-6688
tim@freeseandgoss.com
*Counsel for Plaintiffs*

**Tamara L. Banno**
TAMARA L. BANNO, PC
3031 Allen Street, Suite 100
Dallas, Texas 75204
Telephone: 214-550-5223
Fax: 214-550-5223
tbanno@tlb-law.com
*Counsel for Plaintiffs*

**David. P. Matthews**
**Julie L. Rhoades**
MATTHEWS & ASSOCIATES
2509 Sackett St.
Houston, Texas 77098
Telephone: 713-522-5250
dmatthews@thematthewslawfirm.com
jrhoades@thematthewslawfirm.com
*Counsel for Plaintiffs*

**Christy D. Jones**
BUTLER SNOW
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Telephone: 601-948-4523
Fax: 601-985-4500
christy.jones@butlersnow.com
*Counsel for Co-Defendants*
*Johnson & Johnson and Ethicon, Inc.*

**EXHIBIT 4**

Catherine A. Faught Pollard
QUARLES & BRADY LLP
411 E Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202-4497
Telephone:  414-277-5000
Fax: 414-271-3552
catherine.faught@quarles.com
*Counsel for Co-Defendants*
*Johnson & Johnson and Ethicon, Inc.*

Michael P. Malone
HINSHAW & CULBERTSON LLP
100 E Wisconsin Ave., Suite 2600
Milwaukee, Wisconsin 53202-4115
Telephone: 414-276-6464
Fax: 414-276-9220
MMalone@Hinshawlaw.com
*Counsel for Co-Defendants*
*Dr. Dennis P. Miller and*
*Preferred Professional Insurance Co.*

BLUE CROSS BLUE SHIELD OF WISCONSIN
c/o Registered Agent: CT Corporation System
8040 Excelsior Drive, Suite 200
Madison, WI 53717

UNITED HEALTHCARE INSURANCE COMPANY
c/o Registered Agent: CT Corporation System
8040 Excelsior Drive, Suite 200
Madison, WI 53717

By: /s/ Jon A Strongman
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANT**
**BOSTON SCIENTIFIC CORP.**

**EXHIBIT 4**

# EXHIBIT "C"

**EXHIBIT 4**

**169**

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | | Date | August 29, 2013 |
|---|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Notice of Removal filed by defendants American Medical Systems, Inc., American Medical Systems Holdings, Inc., Endo Pharmaceuticals, Inc., and Endo Health Solutions, Inc. ("Defendants"). Defendants assert that this Court has jurisdiction over the action brought against them by plaintiffs Shannon Muller, et al. ("Plaintiffs") based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

In attempting to invoke this Court's diversity jurisdiction, Defendants must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

**EXHIBIT C**
**EXHIBIT 4**

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|

| Title | Shannon Muller, et al. v. American Medical Systems, et al. |
|---|---|

The sixty-six (66) plaintiffs in this action allege injuries from the surgical implantation of one or more AMS pelvic surgical mesh devices. For purposes of diversity, Plaintiffs are citizens of Massachusetts, Ohio, Virginia, California, Indiana, New Jersey, New Mexico, Texas, Georgia, Alabama, Kentucky, Tennessee, Utah, West Virginia, Florida, and Louisiana; Plaintiff Redethia Davis is a citizen of Delaware and Plaintiff Patricia Zeiber is a citizen of Pennsylvania; American Medical Systems, Inc. is a citizen of Delaware and Minnesota; American Medical Systems Holdings, Inc. is a citizen of Delaware and Minnesota; Endo Pharmaceuticals, Inc. is a citizen of Delaware and Pennsylvania; and Endo Health Solutions, Inc. is a citizen of Delaware and Pennsylvania.

The Ninth Circuit has recognized an exception to the complete diversity requirement where a non-diverse defendant has been "fraudulently joined." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). If a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. See, e.g., Morris, 236 F.3d at 1067.

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. See id. at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." Lieberman v. Meshkin, Mazandarani, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). A court should remand a case "unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" Padilla v. AT&T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting Burris v. AT&T Wireless, Inc., 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)).

Here, Defendants argue that the citizenship of two plaintiffs, Redethia Davis and Patricia Zeiber, should be ignored for diversity purposes based on fraudulent misjoinder. In order for Plaintiffs to join their claims into a single action, the claims must (1) arise out of "the same transaction, occurrence, or series of transactions or occurrences;" and (2) contain "any question of law or fact common to all" plaintiffs. Fed. R. Civ. P. 20(a). Defendants cite Eleventh and Fifth Circuit cases in support of the doctrine of fraudulent misjoinder. "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. Ala. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000); accord In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002) (recognizing that misjoinder of plaintiffs should not be allowed to "circumvent diversity jurisdiction"). The Eleventh Circuit further stated, "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360. However, other than the

**EXHIBIT 4**

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

Eleventh and Fifth Circuits, no other circuit court has adopted the fraudulent misjoinder doctrine; the Ninth Circuit has not expressly adopted it. See Caouette v. Bristol-Myers Squibb Co., 2012 U.S. Dist. LEXIS 113980, 28-33 (N.D. Cal. Aug. 10, 2012).

Several district courts "have criticized Tapscott, arguing that questions of joinder under state law do not implicate federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 621-22 (8th Cir. 2010) (citing cases); see also In re Yasmin & Yaz Mktg., Sales Pracs. & Prods. Liab. Litig., 779 F. Supp. 2d 846, 854-55 (S.D. Ill. 2011) (citing cases). "Many of these courts also opine that the better approach is for parties to seek severance in state court prior to removal." Id. at 855; see also Caouette, 2012 U.S. Dist. LEXIS at 28-33.

Even if the Court were to adopt the doctrine of fraudulent misjoinder and conclude that plaintiffs' claims are not properly joined in this action, it is not clear that the joinder is egregious or grossly improper. See Tapscott, 77 F.3d at 1360; Prempro, 591 F.3d at 622-24 ("absent evidence that plaintiffs' misjoinder borders on a 'sham,' [the Court] decline[s] to apply Tapscott to the instant case"). Defendants have failed to carry their heavy burden of persuasion to demonstrate that the plaintiffs were fraudulently joined. Thus, defendants have not met their burden to establish complete diversity of citizenship between the parties. Accordingly, the Court remands this action to the Los Angeles County Superior Court, Case No. BC515042, for lack of federal subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

**EXHIBIT 4**

# EXHIBIT "D"

EXHIBIT 4

173

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ISEBELL BRANNEN, et al.,       )
                              )
        Plaintiffs,         )
                              )
        vs.               )      Case No. 4:12CV1429 RWS
                              )
ETHICON, INC., et al.,        )
                              )
        Defendants.       )

## MEMORANDUM AND ORDER OF REMAND

This matter is before the Court on its review of this recently-removed case. The Court has reviewed the state-court file and the notice of removal <u>sua sponte</u> to determine whether the matter was properly removed. It was not, so the Court remands the case back to state court for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c).

Plaintiffs filed this action in state court claiming that they suffered various damages as a result of their use of defendants' gynecare transvaginal tape mesh products, which are used to treat stress urinary incontinence.

On August 10, 2012, defendants Ethicon, Inc., Ethicon, LLC, and Johnson & Johnson removed the action to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332. Despite the fact that Ethicon, Inc. and some of the plaintiffs are all citizens of New Jersey, defendants argue that the citizenship of the New Jersey

EXHIBIT 4

174

(and all non-Missouri) plaintiffs should be disregarded because plaintiffs' claims are fraudulently misjoined.

Defendants also urge me to stay all proceedings in this matter because they have moved the Judicial Panel on Multidistrict Litigation (JPML) to transfer this case to Multidistrict Litigation (MDL) Case 2327, In re Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation, which is pending in the Southern District of West Virginia before the Honorable Joseph R. Goodwin. I will not stay these proceedings and must sua sponte remand this case. "A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed." Tortola Restaurants, L.P. v. Kimberly-Clark Corp., 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997) (citing Manual for Complex Litigation 3d § 31.131, p.252 (3d ed. 1995)). This is especially true when dealing with the Court's subject matter jurisdiction. See Thompson v. Apple, Inc., 2011 WL 2671312, *4 (E.D. Ark. July 8, 2011). "In this case, the court believes the best course is to decide the motion to remand because judicial economy will be best served by addressing the remand issue as it will facilitate litigation in the appropriate forum." Kohl v. American Home Products Corp., 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999) (internal citation and quotation marks omitted). As another district court in this circuit has commented, "This Court is in the best position to

**EXHIBIT 4**

**175**

determine its subject matter jurisdiction ... To stay the case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." Stone v. Baxter Intern., Inc., 2009 WL 236116, *2 (D. Neb. Jan. 30, 2009).

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." In re Prempro Products Liability Litigation, 591 F.3d 613, 619 (8th Cir. 2010) (citing Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005)). Diversity jurisdiction under 28 U.S.C. § 1332 requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007). The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. Altimore v. Mount Mercy College, 420 F.3d 763, 768 (8th Cir. 2005). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." In re Prempro, 591 F.3d at 620 (citing Wilkinson v. Shackleford, 478 F.3d 957, 963 (8th Cir. 2007)).

"Courts have long recognized fraudulent joinder as an exception to the complete diversity rule." In re Prempro, 591 F.3d at 620. "Fraudulent joinder

- 3 -

**EXHIBIT 4**

occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." Id.

Here defendants are claiming fraudulent misjoinder.  The Eighth Circuit Court of Appeals has not yet determined whether fraudulent misjoinder is a valid basis for removal. Prempro, 591 F.3d at 620.  The Eighth Circuit recently discussed the doctrine of fraudulent misjoinder, stating:

> A more recent, somewhat different, and novel exception to the complete diversity rule is the fraudulent misjoinder doctrine which one appellate court and several district courts have adopted. Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other. In such cases, some courts have concluded that diversity is not defeated where the claim that destroys diversity has "no real connection with the controversy" involving the claims that would qualify for diversity jurisdiction. Ronald A. Parsons, Jr., Should the Eighth Circuit Recognize Procedural Misjoinder?, 53 S.D. L.Rev. 52, 57 (2008).

Id. (footnotes omitted).

In Prempro, plaintiffs filed three lawsuits in which they asserted state law tort and contract claims against defendant companies that manufactured and marketed hormone replacement therapy (HRT) drugs. Id. at 613.  Defendants removed the cases to federal court, alleging diversity jurisdiction.  In support of removal, defendants argued that plaintiffs' claims were fraudulently misjoined

- 4 -

**EXHIBIT 4**

**177**

because they did not arise out of the same transaction or occurrence as required by Fed. R. Civ. P. 20(a). Id. at 618.

The Eighth Circuit declined to either adopt or reject the fraudulent misjoinder doctrine, holding that "even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder." Id. at 622. In reaching this conclusion, the court considered that plaintiffs' claims arose from a series of transactions involving HRT manufacturers and users and that common questions of law and fact were likely to arise in the litigation, particularly on the issue of causation. Id. at 623. The court concluded that, "[b]ased on the plaintiffs' complaints, we cannot say that their claims have 'no real connection' to each other such that they are egregiously misjoined." Id. (distinguishing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1986), and declining to apply it and fraudulent misjoinder doctrine "absent evidence that plaintiffs' misjoinder borders on a 'sham' . . . .").

Similarly, in this case, there is no need to express an opinion on the validity of the fraudulent misjoinder doctrine because defendants have failed to demonstrate that the joinder of New Jersey and other non-Missouri citizens with Missouri plaintiffs in this action "is so egregious and grossly improper . . . . that plaintiffs' misjoinder borders on a 'sham' . . . ." Prempro, 591 F.3d at 624. As other judges from this district have found, the joinder of plaintiffs alleging injury

**EXHIBIT 4**

**178**

from a single drug is not "egregious" because common issues of law and fact connect plaintiffs' claims. See, e.g., T.F., et al. v. Pfizer, Inc., Case Number 4:12CV1221 CDP (E.D. Mo. July 23, 2012) (Zoloft®); S.F., et al. v. Pfizer Inc., Case Number 4:12CV420 CEJ (E.D. Mo. April 4, 2012) (Zoloft®); Douglas v. GlaxoSmithKline, LLC, 2010 WL 2680308 (E.D. Mo. July 1, 2010) (Avandia®). Plaintiffs in this case have filed suit against defendants for injuries caused by the same products and arising out of the same development, distribution, marketing and sales practices for those products, and common issues of law and fact are likely to arise in the litigation.

In their notice of removal, defendants argue that each plaintiffs' claim will depend upon unique factual determinations and that plaintiffs must have filed this suit for the sole purpose of defeating federal jurisdiction because they "made a conscious decision to join together as many individuals as possible while still staying clear of the 100-claimant threshold that would trigger federal jurisdiction under the Class Action Fairness Act . . . ." These arguments are woefully insufficient to demonstrate the propriety of jurisdiction here. Plaintiffs' claims need not arise from the same transaction or occurrence, nor do they need to share a common outcome or state law, as long as common questions or law are fact are likely to arise in the litigation. See Prempro, 591 F.3d at 623. Nor do I find it relevant to my analysis that the number of plaintiffs falls below the CAFA

- 6 -

**EXHIBIT 4**

**179**

threshold as this fact does not demonstrate that joinder is "so egregious and grossly improper . . . that it warrants an . . . application of the fraudulent misjoinder doctrine." Id. at 624.

Plaintiffs' claims are sufficiently related to support joinder in this case, and defendants have not met its burden of demonstrating that the parties are diverse or that this Court has jurisdiction over this case as required by 28 U.S.C. § 1332. Because I lack subject-matter jurisdiction over this case, I will remand this action to state court.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall remand this action to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis City, Missouri from which it was removed.

**IT IS FURTHER ORDERED** that all other pending motions are denied without prejudice.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2012.

- 7 -

**EXHIBIT 4**

**180**

1  Thomas V. Girardi, SBN 36603
2  Amy F. Solomon, SBN 140333
   Amanda H. Kent, SBN 258298
3  GIRARDI | KEESE
4  1126 Wilshire Boulevard
   Los Angeles, California 90017
5  Telephone: (213) 977-0211
6  Facsimile: (213) 481-1554

7  Kurt B. Arnold Texas SBN 24036150
   Jason A. Itkin Texas SBN 24032461
8  Noah M. Wexler SBN 24060816
   ARNOLD & ITKIN LLP
9  6009 Memorial Drive
   Houston, Texas 77007
10 Telephone: (713) 222-3800
   Facsimile: (713) 222-3850
11
12 J. Steve Mostyn SBN 00798389
   The Mostyn Law Firm
13 3810 West Alabama Street
   Houston, TX 77027
14 Telephone: (713) 861-6616
   Facsimile: (713) 861-8084
15 Attorney(s) For: Plaintiff(s)

16

17            UNITED STATES DISTRICT COURT

18        .FOR THE CENTRAL DISTRICT OF CALIFORNIA

19                  WESTERN DIVISION

20
   SHERRY PATE, et al         )  CASE NO. CV 13-06321 BRO(AJW)
21                            )  [Assigned to Hon. Beverly Reid
            Plaintiff(s),     )  O'Connell]
22                            )
23 vs.                        )  **[PROPOSED] ORDER GRANTING**
                              )  **PLAINTIFFS' MOTION TO**
24 BOSTON SCIENTIFIC          )  **REMAND**
25 CORPORATION                )
                              )  DATE:  October 21, 2013
26         Defendant(s).      )  TIME:  1:30 p.m.
                              )  CTRM:  14
27                            )  JUDGE  Hon. Beverly Reid O'Connell
                              )
28                            )
   _____)

                       **EXHIBIT 4**
                         **181**              1

            [PROPOSED] ORDER ON MOTION TO REMAND

1

       IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand in the above captioned

2

3   civil action is granted and the case is remanded to the Superior Court of the State of

4

   California, County of Los Angeles.

5

6   BY:_____       DATED:_____

7          Hon. Beverly Reid O'Connell
           United States District Court Judge

8          Central District of California
           Western Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 4**

2

[PROPOSED] ORDER ON MOTION TO REMAND

1   Eva M. Weiler (SBN: 233942)
    eweiler@shb.com
2   Lael A. Awong (SBN: 246423)
    lawong@shb.com
3   Brian P. Ziska (SBN: 272043)
    bziska@shb.com
4   Shook, Hardy & Bacon L.L.P.
    Jamboree Center
5   5 Park Plaza, Suite 1600
    Irvine, California 92614-2546
6   Telephone: 949-475-1500
    Facsimile: 949-475-0016

7

8   Attorneys for Defendant
    Boston Scientific Corporation

**FILED**
LOS ANGELES SUPERIOR COURT

NOV 22 2013

JOHN A. CLARKE, CLERK

BY _____ DEPUTY

9               SUPERIOR COURT OF CALIFORNIA

10          COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| 11  SHERRY PATE, DONNA FLORES, | Case No. BC515037 |
| 12  JOAN ROBERTS, ROSEMARY TORRES, ALLISON MOOREHEAD, | Judge: Hon. Rafael Ongkeko |
| MARY BOND, JOSEPHINE PENZA, | Dept.: 91 |
| 13  VALERIE SCHEIBNER, DENISE HUTCHINSON, JANICE RICHARDS, | **ANSWER OF DEFENDANT BOSTON** |
| 14  WILMA HAYMES, BEVERLY | **SCIENTIFIC CORPORATION TO** |
| TOWERY, PATRICIA DABNEY, | **PLAINTIFFS' COMPLAINT** |
| 15  NICOLE DALE, BESSIE JORDAN, CHARLENE PRUETT, LELA | |
| 16  STANLEY, DARLENE REIMOND, | Complaint Filed: July 12, 2013 |
| CHERYL REYNOLDS, DONNA | |
| 17  ADKINS, SALLY KELLEY, ADELINE LEARD, YVETTE THOMPSON, | |
| 18  SHARYN KMIECIAK, SUSAN MACMURDO, DONNA LACKEY, | |
| 19  DEBORAH NAVARRO, LEONA BEHEL, ROBIN FLOYD, TAMI | |
| 20  TITTLE, SANDRA YARBROUGH, GWENDOLYNE ENGLAND, MARY | |
| 21  KING, ANN MCALISTER, KAREN WARREN, YVONNE BRANHAM, | |
| 22  SYLVIA OLIVER-STITT, JENNIFER GIORDANO, REBECCA SANDERS, | |
| 23  MYRTELINA RIVERA, KATHY JENNINGS, TRESA BERGIN, LOIS | |
| 24  GILLUM, KRISTEN HODGES, MELINDA CALHOUN, GENEVA | |
| 25  CHRISTIAN, CHERRI BLANKENSHIP, REBECCA | |
| 26  BOUTWELL, SYLVIA MCQUISTON, KAREN WASCHKOWSKI, | |
| 27  MARYANN SCARAMUZZINI, CAROL BENSON, ANITA SOKERKA, | |
| 28  ROBIN MARET, PAMELA LINGNAU, | |

CIT/CASE:
LER/DEF#:

RECEIPT #: CCH50305710S
DATE PAID: 11/22/13 03:41 PM
PAYMENT: $435.00
RECEIVED:

CHECK:        $435.
CASH:         $0.
CHANGE:       $0.
CARD:         $0.

BC515037

**EXHIBIT 5**
**183**

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

1  MARY BISHOP, RANDEE NIMMER,
   ANNA WEBB, RUTHIE ALGAIER,
2  EDDIE KREDER, EVA
   AINESWORTH, ESTHER ROMERO,
3  DARLENE CAMPBELL, BARBARA
   HALE, SUE WEAVER, and

4           Plaintiffs,

5      vs.

6  BOSTON SCIENTIFIC
   CORPORATION, a Delaware
7  Corporation and DOES 1 through 500,
   inclusive,

8

9           Defendants.

10         Defendant Boston Scientific Corporation ("Boston Scientific"), in answering the

11  complaint filed by the plaintiffs, Sherry Pate, Donna Flores, Joan Roberts, Rosemary Torres,

12  Allison Moorehead, Mary Bond, Josephine Penza, Valerie Scheibner, Denise Hutchinson,

13  Janice Richards, Wilma Haymes, Beverly Towery, Patricia Dabney, Nicole Dale, Bessie

14  Jordan, Charlene Pruett, Lela Stanley, Darlene Reimond, Cheryl Reynolds, Donna Adkins,

15  Sally Kelley, Adeline Leard, Yvette Thompson, Sharyn Kmieciak, Susan MacMurdo, Donna

16  Lackey, Deborah Navarro, Leona Behel, Robin Floyd, Tami Tittle, Sandra Yarbrough,

17  Gwendolyne England, Mary King, Ann Mcalister, Karen Warren, Yvonne Branham, Sylvia

18  Oliver-Stitt, Jennifer Giordano, Rebecca Sanders, Myrtelina Rivera, Kathy Jennings, Tresa

19  Bergin, Lois Gillum, Kristen Hodges, Melinda Calhoun, Geneva Christian, Cherri

20  Blankenship, Rebecca Boutwell, Sylvia McQuiston, Karen Waschkowski, Maryann

21  Scaramuzzini, Carol Benson, Anita Sokerka, Robin Maret, Pamela Lingnau, Mary Bishop,

22  Randee Nimmer, Anna Webb, Ruthie Algaier, Eddie Kreder, Eva Ainesworth, Esther

23  Romero, Darlene Campbell, Barbara Hale, Sue Weaver ( collectively "plaintiffs"), admits,

24  denies, and alleges as follows:

25         Pursuant to Code of Civil Procedure section 431.30, subdivision (d), Boston Scientific

26  denies each and every allegation of plaintiffs' complaint, the whole thereof, and each and

27  every cause of action therein, and further denies plaintiffs sustained or are entitled to recover

28

**EXHIBIT 5**

**184**

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

151203 v1

damages in the sum alleged, or in any sum whatsoever. Without waiving its right to supplement and/or amend this answer and defenses with additional defenses that become available or apparent during the course of investigation, preparation, or discovery, Boston Scientific further denies plaintiffs sustained any injuries, damages, or losses by reason of any act or omission by Boston Scientific.

## DEFENSES

Boston Scientific, for its affirmative defenses applicable to each and every allegation and each and every count contained in plaintiffs' complaint, and without assuming any burden of pleading or proof that would otherwise rest on plaintiffs, states:

### FIRST AFFIRMATIVE DEFENSE

*(Failure to State a Claim)*

1. Each purported cause of action of plaintiffs' complaint fails to allege facts sufficient to constitute a cause of action against Boston Scientific.

### SECOND AFFIRMATIVE DEFENSE

*(Improper Venue)*

2. Venue is not proper in this Court.

### THIRD AFFIRMATIVE DEFENSE

*(Forum Non Conveniens)*

3. Venue is more appropriate in another court, and this matter is subject to transfer or dismissal pursuant to the doctrine of *forum non conveniens*. A suitable alternative forum exists and the balance of public and private interests weighs in favor of that alternative forum. (See *Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751.)

### FOURTH AFFIRMATIVE DEFENSE

*(Misjoinder)*

4. The joinder of plaintiffs is improper. Plaintiffs' claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences.

**EXHIBIT 5**

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

## FIFTH AFFIRMATIVE DEFENSE

*(Lack of Personal Jurisdiction)*

5.   The complaint is barred because the Court lacks personal jurisdiction over all defendants.

## SIXTH AFFIRMATIVE DEFENSE

*(Statute of Limitations)*

6.   Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations including, but not limited to, Code of Civil Procedure sections 335.1, 340.5, 340.8, 343, and Civil Code section 1783.

## SEVENTH AFFIRMATIVE DEFENSE

*(Brown v. Superior Court)*

7.   Plaintiffs' claims are barred, in whole or in part, by the limitations upon the doctrine of strict liability as set forth in *Brown v. Superior Court* (1988) 44 Cal.3d 1049.

## EIGHTH AFFIRMATIVE DEFENSE

*(Causation-Pre-Existing Condition)*

8.   If plaintiffs have been damaged, which Boston Scientific denies, those damages were caused by medical conditions or processes (whether pre-existing or contemporaneous) unrelated to the subject product.

## NINTH AFFIRMATIVE DEFENSE

*(Third-Party Acts)*

9.   If the plaintiffs sustained injuries or incurred expenses as alleged, their injuries or expenses were caused in whole or in part by the conduct of one or more persons or entities for whose conduct Boston Scientific was not responsible and with whom Boston Scientific has no legal connection.

## TENTH AFFIRMATIVE DEFENSE

*(Lack of Causation)*

10.   Boston Scientific asserts that its conduct did not cause, proximately cause,

**EXHIBIT 5**

1   solely cause, or solely-proximately cause the injuries and/or damages claimed by plaintiffs, if
2   any.

### ELEVENTH AFFIRMATIVE DEFENSE

*(Comparative Negligence)*

5       11.     Plaintiffs' claims are barred, in whole or in part, from recovery by the
6   comparative negligence doctrine because plaintiffs' alleged damages were the result of the
7   conduct, actions, or omissions of other individuals, or other entities for whose conduct
8   Boston Scientific is not legally responsible.

### TWELFTH AFFIRMATIVE DEFENSE

*(Proposition 51 – Fair Responsibility Act of 1986)*

11      12.     The liability of Boston Scientific, if any, is subject to the limitations set forth in
12  Civil Code sections 1431–1431.5 and, therefore, plaintiffs' claims are barred, in whole or in
13  part, from recovery by the doctrines of contributory and comparative negligence because
14  plaintiffs' alleged damages were the result of the conduct, actions, or omissions of plaintiffs,
15  other individuals, or other entities for whose conduct Boston Scientific is not legally
16  responsible.

### THIRTEENTH AFFIRMATIVE DEFENSE

*(Product Misuse/Alteration)*

19      13.     Plaintiffs' damages, if any, may have been caused by the misuse and/or abuse
20  of the subject product.

### FOURTEENTH AFFIRMATIVE DEFENSE

*(Restatement (second) of Torts § 402A)*

23      14.     Plaintiffs' claims are barred, in whole or in part, by the limitations on the
24  liability of commercial sellers as set forth in Restatement (second) of Torts § 402A,
25  comments j and k.

26
27
28

EXHIBIT 5
187
ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

1                 **FIFTEENTH AFFIRMATIVE DEFENSE**

2                 *(Causation – Superseding/Intervening Cause)*

3      15.    If the plaintiffs sustained injuries or incurred expenses as alleged, their injuries

4 or expenses were the result of intervening and/or superseding causes, and not as a result of

5 acts or omissions of Boston Scientific.

6                 **SIXTEENTH AFFIRMATIVE DEFENSE**

7               *(Restatement (third) of Torts: Product Liability)*

8      16.    Plaintiffs' claims are barred, in whole or in part, by the limitations on the

9 liability of commercial sellers or distributors as set forth in Restatement (third) of

10 Torts §§ 4 & 6.

11               **SEVENTEENTH AFFIRMATIVE DEFENSE**

12                *(Causation – Idiosyncratic Reaction)*

13      17.    Each purported cause of action of plaintiffs' complaint is barred because any

14 injuries and damages allegedly sustained by plaintiffs were caused by an idiosyncratic

15 reaction to the subject product that was not reasonably foreseeable to Boston Scientific.

16               **EIGHTEENTH AFFIRMATIVE DEFENSE**

17                *(Conformity with Applicable Law)*

18      18.    The conduct of Boston Scientific and the subject product conformed to the

19 Federal Food, Drug, and Cosmetic Act and the requirements of the Food and Drug

20 Administration. Moreover, the activities of Boston Scientific alleged in the complaint

21 conformed with all state and federal statutes, regulations, and industry standards based upon

22 the state of knowledge existing at the relevant time alleged in the complaint.

23              **NINETEENTH AFFIRMATIVE DEFENSE**

24                       *(Offset)*

25      19.    Should Boston Scientific be held liable to plaintiffs, which liability is

26 specifically denied, Boston Scientific would be entitled to a set off for the total of all

27 amounts paid to plaintiffs from all collateral sources.

28                    **EXHIBIT 5**

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Defect)

20.   Plaintiffs' causes of action are barred, in whole or in part, by the lack of a defect since the subject product was properly prepared in accordance with the applicable standard of care.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Consumer Expectation)

21.   Plaintiffs' product liability causes of action are barred because the subject product was consistent with or exceeded consumer expectations.  Notwithstanding the claims and contentions of plaintiffs, plaintiffs received all or substantially all of the benefit from the subject product plaintiffs hoped and intended to receive, and, to that extent, any damages and/or restitution plaintiffs might be entitled to recover from Boston Scientific must be correspondingly reduced.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Learned Intermediary Doctrine)

22.   Boston Scientific provided adequate and complete warnings concerning the subject product to plaintiffs' prescribing physicians.  Therefore, any claims by plaintiffs for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Informed Consent/Assumption of Risk)

23.   Plaintiffs knowingly and voluntarily assumed any and all risks associated with the matters alleged in the complaint.  Pursuant to the doctrines of primary and secondary assumption of risk or informed consent, this conduct bars, in whole or in part, any damages plaintiffs seek to recover herein.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Preemption)

24.   Plaintiffs' claims are expressly preempted by federal law, as established by

**EXHIBIT 5**

statute, including the express preemption provision of the Medical Device Amendments, 21 U.S.C. § 360k(a), to the federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* Plaintiffs' claims, if allowed, would conflict with applicable federal law and violate the Supremacy Clause of the United States Constitution.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

*(Breach of Warranty)*

25.     To the extent applicable, plaintiffs' claims for breach of warranty are barred by a lack of privity between plaintiffs and Boston Scientific, and because plaintiffs failed to provide Boston Scientific with reasonable or adequate notice of the alleged breach of any such purported warranties.  Boston Scientific specifically denies that it made any express or implied warranties.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

*(Failure to Mitigate)*

26.     Each purported cause of action of plaintiffs' complaint is barred by reason of plaintiffs' failure to mitigate their alleged damages or losses.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

*(Equitable Doctrines)*

27.     Each purported cause of action of plaintiffs' complaint is barred by the equitable doctrines of laches, good faith, waiver, estoppel, and res judicata.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

*(Protected Speech)*

28.     Plaintiffs' claims are barred, in whole or in part, because Boston Scientific's advertisements and labeling with respect to the subject product were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

EXHIBIT 5

190

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

## TWENTY-NINTH AFFIRMATIVE DEFENSE

*(Contributory Negligence)*

29.    The plaintiffs were negligent, and their negligence caused or contributed to cause any injuries or expenses they claim.  Any amount plaintiffs claim as compensatory damages, if the claims for such amounts are not entirely barred, must be diminished proportionately by the fault of plaintiffs and the fault of all others who caused or contributed to cause the harm.

## THIRTIETH AFFIRMATIVE DEFENSE

*(State-of-the-Art)*

30.    The claims set forth in the complaint are barred because the methods, standards, and techniques used in issuing warnings and instructions about the use of the subject product conformed to the generally recognized, reasonably available, and reliable state of knowledge in the field at the time the subject product was manufactured and sold. All acts of Boston Scientific at the time of the alleged manufacture, sale, and/or distribution of subject product were in conformity with the state-of-the-art technology at the time.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

*(Punitive Damages)*

31.    To the extent plaintiffs seeks exemplary or punitive damages, Boston Scientific specifically incorporates by reference all standards and/or limitations regarding the determination and enforceability of punitive damage awards that arise in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1519, 1521 (2003).

## THIRTY-SECOND AFFIRMATIVE DEFENSE

*(Failure to State a Claim – Punitive Damages)*

32.    No act or omission of Boston Scientific was malicious, willful, wanton, reckless, grossly negligent, or intentional and, therefore, any award of punitive damages is

**EXHIBIT 5**

1   barred. Plaintiffs have failed to state a claim justifying an award of punitive damages.

2                              **THIRTY-THIRD AFFIRMATIVE DEFENSE**

3                              *(Constitutional Defenses – Punitive Damages)*

4        33.    Plaintiffs' claim for punitive damages is in contravention of Boston Scientific's

5   rights under the Due Process Clause and the Double Jeopardy Clause of the Fifth

6   Amendment of the United States Constitution; the Excessive Fines Clause of the Eighth

7   Amendment of the United States Constitution; the Equal Protection Clause and Due Process

8   Clause of the Fourteenth Amendment of the United States Constitution; similar provisions in

9   the Constitution of the State of California; or any other applicable State and/or the common

10  law and public policies of California or any other applicable State, including, but not limited

11  to:

12       (a)    imposition of punitive damages by a jury that

13              (1) is not provided with standards of sufficient clarity for determining the

14              appropriateness, and the appropriate size, of a punitive damages award;

15              (2) is not adequately and clearly instructed on the limits on punitive damages

16              imposed by the principles of deterrence and punishment;

17              (3) is not expressly prohibited from awarding punitive damages, or

18              determining the amount of an award thereof, in whole or in part, on the basis of

19              invidiously discriminatory characteristics, including the corporate status, or

20              state of residence of Boston Scientific Corporation;

21              (4) is permitted to award punitive damages under a standard for determining

22              liability for such damages that is vague and arbitrary and does not define with

23              sufficient clarity the conduct or mental state that makes punitive damages

24              permissible; and

25              (5) is not subject to trial court and appellate judicial review for reasonableness

26              and the furtherance of legitimate purposes on the basis of objective standards;

27       (b)    imposition of such punitive damages, and determination of the amount of an

28  _____

**EXHIBIT 5**

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

1  award thereof, where applicable state law is impermissibly vague, imprecise, or inconsistent;

2      (c)    imposition of such punitive damages, and determination of the amount of an

3  award thereof, without bifurcating the trial and trying all punitive damages issues only if and

4  after the liability of Boston Scientific has been found on the merits;

5      (d)    imposition of such punitive damages, and determination of the amount of an

6  award thereof, based on anything other than Boston Scientific's conduct in connection with

7  the sale of the subject product alleged in this litigation, or in any other way subjecting

8  Boston Scientific to impermissible multiple punishment for the same alleged wrong;

9      (d)    because of the lack of clear standards, the imposition of punitive damages

10  against Boston Scientific is unconstitutionally vague and/or overbroad.

11  <div align="center">**THIRTY-FOURTH AFFIRMATIVE DEFENSE**</div>

12  <div align="center">*(Scientifically Unknown/Unknowable Risk)*</div>

13      34.    The defective conditions alleged in plaintiffs' complaint and any alternative

14  design characteristics claimed by plaintiffs were not known and, in light of the existing

15  reasonably available scientific and technological knowledge, could not have been known to

16  Boston Scientific. Any such alternative design was not scientifically or technologically

17  feasible, nor was it economically practical.

18  <div align="center">**THIRTY-FIFTH AFFIRMATIVE DEFENSE**</div>

19  <div align="center">*(Additional Defenses)*</div>

20      35.    Boston Scientific has not knowingly or intentionally waived any applicable

21  affirmative defenses and reserves the right to assert and rely on any other applicable defenses

22  as may become available or apparent during discovery proceedings. Boston Scientific

23  further reserves the right to delete affirmative defenses they determine are no longer

24  applicable, and to amend this answer or these affirmative defenses accordingly.

25  ///

26  ///

27  ///

28

**EXHIBIT 5**

11
ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Boston Scientific hereby requests:

(a) That plaintiffs' complaint be dismissed in its entirety, with prejudice;

(b) That judgment against plaintiffs be entered in favor of Boston Scientific;

(c) That any and all claims for damages of any sort or nature be denied;

(d) That Boston Scientific be awarded costs, disbursements, and reasonable attorneys'
   fees; and

(e) For such other and different relief as this Court may deem just and proper.

Dated: November 21, 2013                    SHOOK HARDY & BACON L.L.P.

                                            By: _____
                                                 Eva M. Weiler
                                                 Lael A. Awong
                                                 Brian P. Ziska
                                            Attorneys for Defendant Boston Scientific
                                            Corporation


## JURY DEMAND

Boston Scientific hereby demands a trial by jury on all issues so triable.

Dated: November 21, 2013                    SHOOK HARDY & BACON L.L.P.

                                            By: _____
                                                 Eva M. Weiler
                                                 Lael A. Awong
                                                 Brian P. Ziska
                                            Attorneys for Defendant Boston Scientific
                                            Corporation


**EXHIBIT 18**

**194**

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

## PROOF OF SERVICE

1

2

3       I am employed in the County of Orange, State of California. I am over the age
of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite
4    1600, Irvine, California 92614.

5       On September 4, 2013, I served on the interested parties in said action the
6    within:

7    **ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION**
**TO PLAINTIFFS' COMPLAINT**
8

9    by placing a true copy thereof in a sealed envelope(s) addressed as stated on the
10   attached mailing list.

11   ☒  (MAIL) I am readily familiar with this firm's practice of collection and
processing correspondence for mailing. Under that practice it would be
12   deposited with the U.S. postal service on that same day in the ordinary course
of business. I am aware that on motion of party served, service is presumed
13   invalid if postal cancellation date or postage meter date is more than 1 day after
date of deposit for mailing in affidavit.

14   ☐  (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By
15   placing a true and correct copy of the above document(s) in a sealed envelope
addressed as indicated above and causing such envelope(s) to be delivered to
16   the FEDERAL EXPRESS Service Center, on _____, to be delivered by
their next business day delivery service on _____, to the addressee designated.

17   ☐  (ELECTRONIC FILING) I provided the document(s) listed above
18   electronically through the CM/ECF system pursuant to the instructions set forth
in the Local Rules for the United States District Court for the Central District of
19   California.

20      I declare under penalty of perjury under the laws of the State of California that
21   the foregoing is true and correct.

22      Executed on November 22, 2013, at Irvine, California.

23

24   _____        _____

25   (Type or print name)              (Signature)

26

27

28                              **EXHIBIT 35**
                                    **195**

## SERVICE LIST
*(Sherry Pate, Et Al., V. Boston Scientific Corporation)*

1

Thomas V. Girardi
Amy F. Solomon
Girardi Keese
1126 Wilshire Blvd.
Los Angeles, CA 90017

Tel: 213-977-0211
Fax: 213-481-1554
**Attorneys for Plaintiffs**

J. Steve Mostyn
The Mostyn Law Firm
3810 West Alabama Street
Houston, TX 77027

Tel: 713-861-6616
Fax: 713-861-8084
**Attorneys for Plaintiffs**

Kurt B. Arnold
Jason A. Itkin
Noah M. Wexler
Arnold & Itkin
1401 McKinney Street, Ste. 2550
Houston, TX 77010

Tel: 713-222-3800
Fax: 713-222-3850
**Attorneys for Plaintiffs**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 15**

ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
TO PLAINTIFFS' COMPLAINT

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1600, Irvine, California 92614.

On November 22, 2013, I served on the interested parties in said action the within:

**ANSWER OF DEFENDANT BOSTON SCIENTIFIC CORPORATION TO PLAINTIFFS' COMPLAINT**

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☒ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above. The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached and the original of this declaration.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, to be delivered by their next business day delivery service to the addressee(s) designated.

☐ (ELECTRONIC FILING) I provided the document(s) listed above electronically through the CM/ECF system pursuant to the instructions set forth in the Local Rules for the United States District Court for the Central District of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 22, 2013, at Irvine, California.

| Kim Brunton | *Kim Brunton* |
|---|---|
| (Type or print name) | (Signature) |

**EXHIBIT 5**

**197**

CAPA.198267

151070 v1

## SERVICE LIST
*(Sherry Pate, Et Al., V. Boston Scientific Corporation)*
LASC Case No: BC515037

1

2

3  Thomas V. Girardi                Kurt B. Arnold
   Amy F. Solomon                   Jason A. Itkin
4  Girardi Keese                    Noah M. Wexler
5  1126 Wilshire Blvd.              Arnold & Itkin
   Los Angeles, CA 90017            1401 McKinney Street, Ste. 2550
6                                   Houston, TX 77010

7  Tel: 213-977-0211
   Fax: 213-481-1554                Tel: 713-222-3800
8  **Attorneys for Plaintiffs**     Fax: 713-222-3850
                                    **Attorneys for Plaintiffs**
9  J. Steve Mostyn
10 The Mostyn Law Firm
   3810 West Alabama Street
11 Houston, TX 77027

12 Tel: 713-861-6616
13 Fax: 713-861-8084
   **Attorneys for Plaintiffs**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT 5

**198**

CAPA.198267

151070 v1

1  SHOOK, HARDY & BACON L.L.P.
   Eva M. Weiler (SBN: 233942)
2  Lael A. Awong (SBN: 246423)
   Brian P. Ziska (SBN: 272043)
3  Jamboree Center
   5 Park Plaza, Suite 1600
4  Irvine, California 92614-2546
   Telephone:   949-475-1500
5  Facsimile:   949-475-0016

6  Attorneys for Defendant
   Boston Scientific Corporation
7

8                SUPERIOR COURT OF CALIFORNIA

9        COUNTY OF LOS ANGELES – CENTRAL DISTRICT

10

11  SHERRY PATE, DONNA FLORES,          )  Case No. BC515037
    JOAN ROBERTS, ROSEMARY TORRES,      )
12  ALLISON MOOREHEAD, MARY BOND,       )  Judge: Hon. Rafael Ongkeko
    JOSEPHINE PENZA, VALERIE            )  Dept.: 91
13  SCHEIBNER, DENISE HUTCHINSON,       )
    JANICE RICHARDS, WILMA HAYMES,      )  **PETITION FOR COORDINATION AND**
14  BEVERLY TOWERY, PATRICIA            )  **APPLICATION FOR STAY ORDER;**
    DABNEY, NICOLE DALE, BESSIE         )  **MEMORANDUM OF POINTS AND**
15  JORDAN, CHARLENE PRUETT,            )  **AUTHORITIES**
    LELASTANLEY, DARLINE REIMOND,       )
16  CHERYL REYNOLDS, DONNA ADKINS,      )  HEARING REQUESTED
    SALLY KELLEY, ADELINE LEARD,        )
17  YVETTE THOMPSON, SHARYN             )  [Filed concurrently with Declaration of Eva
    KMIECIAK, SUSAN MACMURDO,           )  M. Weiler]
18  DONNA LACKEY, DEBORAH               )
    NAVARRO, LEONA BEHEL, ROBIN         )  Complaint filed: July 12, 2013
19  FLOYD, TAMI TITTLE, SANDRA          )
    YARBROUGH, GWENDOLYNE               )
20  ENGLAND, MARY KING, ANN             )
    MCALISTER, KAREN WARREN,            )
21  YVONNE BRANHAM, SYLVIA OLIVER-      )
    STITT, JENNIFER GIORDANO,           )
22  REBECCA SANDERS, MYRTELINA          )
    RIVERA, KATHY JENNINGS, TRESA       )
23  BERGIN, LOIS GILLUM, KRISTIN        )
    HODGES, MELINDA CALHOUN,            )
24  GENEVA CHRISTIAN, CHERRI            )
    BLANKENSHIP, REBECCA                )
25  BOUTWELL, SYLVIA MCQUISTON,         )
    KAREN WASCHKOWSKI, MARYANN          )
26  SCARAMUZZINI,                       )
    CAROL BENSON, ANITA SOKERKA,        )
27  ROBIN MARET, PAMELA LINGNAU,        )
    MARY BISHOP, RANDEE NIMMER,         )
28  ANNA WEBB, RUTHIE ALGA  **EXHIBIT 6**

**199** i

1  EDDIE KREDER, EVA AINESWORTH, )
   ESTHER ROMERO, DARLENE         )
2  CAMPBELL, BARBARA HALE, SUE    )
   WEAVER,                        )
3                                 )
                 Plaintiffs,      )
4                                 )
       vs,                        )
5                                 )
   BOSTON SCIENTIFIC CORPORATION, a)
6  Delaware Corporation and DOES 1 through )
   500, inclusive,                )
7                                 )
                 Defendants.      )
8  _____)

9        Petitioner Boston Scientific Corporation ("Petitioner" or "BSC") submits this request

10  to the Chair of the Judicial Council for assignment of a judge to determine whether

11  coordination of this action ("the *Pate* action") with the other 15 included actions referred to

12  below is appropriate.  All parties defendant in this complex action agree to the Petition for

13  Coordination.  (Code Civ. Proc., § 404.)

14

15      A.    **Petition For Coordination**

16        This petition is submitted under Code of Civil Procedure section 404 on the ground

17  that cases involving BSC's pelvic mesh meet the criteria for coordination set forth in Code of

18  Civil Procedure section 404.1 and California Rules of Court, rules 3.400–3.403.  As set forth

19  in the declaration of Eva M. Weiler, coordination will promote the ends of justice because

20  the BSC pelvic mesh cases are complex and satisfy the criteria set forth in Code of Civil

21  Procedure section 404.1:  (1) significant common questions of law or fact predominate; (2)

22  the convenience of the parties, witnesses, and counsel will be served by coordination in a

23  single court; (3) judicial facilities and resources will be more efficiently utilized; (4) the

24  burden on the courts' calendars will be lessened; (5) the disadvantages of duplicative or

25  inconsistent rulings will be avoided; and (6) settlement may be encouraged.

26

27

28                        **EXHIBIT 6**
                          **200**ii

200430 V10

1    The actions that Petitioner is seeking to coordinate are as follows:[1]

2    • *Janet Barkee, et al. vs. Tajinder B Kaur, M.D., et al.*, Case No. 56-2014-

3    00447346-CU-MM-VTA, filed on January 10, 2014, currently pending in Ventura County

4    Superior Court before the Honorable Henry Walsh in department 42.

5    • *Alison Eastburn, et al. v. Boston Scientific Corporation*, Case No. 30-2014-

6    00706600-CU-PL-CXC, filed on February 18, 2014, currently pending in Orange County

7    Superior Court before the Honorable Steven L. Perk in department CX102.

8    • *Nadine Edgar, et al. vs. Boston Scientific Corporation*, Case No. BC531849,

9    filed on December 30, 2013, currently pending in Los Angeles Superior Court before the

10   Honorable Rafael Ongkeko in department 91.

11   • *Estella Forstedt v. Michael Illingworth, M.D., et al.*, Case No. 12CECG03661,

12   filed on November 14, 2012, currently pending in Fresno County Superior Court before the

13   Honorable Kristi C. Kapetan in department 403.

14   • *Patricia Ann Hilderbrand, et al. v. Boston Scientific Corporation, et al.*, Case

15   No. S-1500-CV-280401 DRL, filed on October 1, 2013, currently pending in Kern County

16   Superior Court before the Honorable David R. Lampe in department 11.

17   • *Kitty Kellar, et al. v. Sam Siddighi, MD, et al.*, Case No. CIVDS1307951, filed

18   on July 11, 2013, currently pending in San Bernardino Superior Court before the Honorable

19   David Cohn in department S37J.

20   • *Senorina Martinez, et al. v. Radmila Runic, M.D.; Boston Scientific*

21   *Corporation*, Case No. BC532975, filed on January 13, 2014, currently pending in Los

22   Angeles Superior Court before the Honorable Elia Weinbach in department 92.

23   • *Cheryl Mauck, et al. v. Boston Scientific Corporation*, Case No. BC515043,

24   filed on July 12, 2013, currently pending in Los Angeles Superior Court before the

25   Honorable Teresa Sanchez-Gordon in department 74.

26

27   ---

[1] Further details, including the names of all parties in the included actions, along with their

28   counsel of record and the respective addresses, are included in the declaration of Eva M. Weiler.

**EXHIBIT 6**

**201** iii

200430 V10

1    • *Rebecca Milan v. Anita Rama MD, Boston Scientific Corporation, et al.*, Case
2    No. RG13682257, filed on June 5, 2013, currently pending in Alameda County Superior
3    Court before the Honorable Ronni MacLaren in department 25.

4    • *Laura Morales, et al. v. Audre Toda, MD, et al.*, Case No. BC532976, filed on
5    January 13, 2014, currently pending in Los Angeles Superior Court before the Honorable
6    Rafael Ongkeko in department 91.

7    • *Shannon Muller, et al. vs. Boston Scientific Corporation*, Case No. BC515042,
8    filed on July 12, 2013, currently pending in Los Angeles Superior Court before the
9    Honorable Rita Miller in department 16.

10   • *Sherry Pate, et al. vs. Boston Scientific Corporation, et al.*, Case No.
11   BC515037, filed on June 12, 2013, currently pending in Los Angeles Superior Court before
12   the Honorable Rafael Ongkeko in department 91.

13   • *Lori Pelucca v. Boston Scientific*, et al., Case No. 683323, filed on February
14   26, 2013, currently pending in Stanislaus County Superior Court before the Hon. Timothy
15   Salter in department 22.

16   • *Mercedes Penaherrara, et al. v. Boston Scientific Corporation*, Case No.
17   BC536361, filed on February 13, 2014, currently pending in Los Angeles Superior Court-
18   Central Civil West before the Honorable Kenneth R. Freeman in department 310.

19   • *Micaella Shears v. Arthur Park MD, et al.*, Case No. S-1500-CV 279733 DRL,
20   filed on June 28, 2013, currently pending in Kern County Superior Court before the
21   Honorable David R. Lampe in department 11.

22   • *Veronica Villarreal, et al. v. George Blaine Lake, M.D, et al.*, Case No.
23   254260, filed on November 22, 2013, currently pending in Tulare Superior Court before the
24   Honorable Lloyd L. Hicks in department 2.

25   Petitioner further requests that coordinated proceedings in the BSC pelvic mesh cases
26   be assigned to the Los Angeles Superior Court.  Most of the plaintiffs have cases pending in
27   this county, and the Honorable William F. Highberger is currently serving as coordination
28   judge in JCCP 4772, *In Re Caldera Mesh Product Cases,* which involves product liability

**EXHIBIT 6**
**202**iv

PETITION FOR COORDINATION; APPLICATION FOR STAY ORDER

1   claims arising from plaintiffs' use of pelvic mesh products manufactured by Caldera

2   Medical, Inc. and other manufacturers, including Petitioner.

3         True and correct copies of the complaint caption pages for each included action are

4   attached as Exhibit A to the Declaration of Eva M. Weiler filed with this petition.  A case

5   summary and status of each included action is also included in the Weiler Declaration at

6   paragraphs 4 through 19.  And pursuant to California Rules of Court, rule 3.522, the Notices

7   of Submission of Petition for Coordination will be filed and served, and proof of the same

8   submitted to the Chair of the Judicial Council within five court days of submitting this

9   petition.

10        **B.    Request For Hearing Date**

11        A hearing on this petition is requested.

12

13        **C.    Request For Stay Pending Decision On Coordination**

14        Because Petitioner anticipates that counsel for plaintiffs may continue to advance

15   each of the California BSC pelvic mesh cases individually, Petitioner requests that all the

16   BSC pelvic mesh cases listed above be stayed pending a decision on coordination. (Code

17   Civ. Proc., § 404.5.)  The involved cases are still in the early stages of discovery, and no

18   dispositive motions have been filed or are pending; except for one motion to dismiss based

19   on forum non conveniens pending in *Shannon Muller, et al. vs. Boston Scientific*

20   *Corporation*, Case No. BC515042, which was stayed to allow the parties time to seek

21   coordination and transfer to the Complex Court.  (Weiler Decl., ¶ 14.)  *Cheryl Mauck, et al.*

22   *v. Boston Scientific Corporation,* Case No. BC515043 and *Mercedes Penaherrara, et al. v.*

23   *Boston Scientific Corporation*, Case No. BC536361 were also stayed to accommodate a

24   potential petition for coordination and decision on the same.  (*Id.* at ¶¶ 11 & 17.)  No trial

25   dates are imminent.  Only one—in *Estella Forstedt v. Michael Illingworth, M.D., et al.,*

26   Fresno Superior Court Case No. 12CECG03661—is even set in 2014, and not until

27   November.  None of the actions have reached a stage at which coordination would require

28   substantial revision or duplication of proceedings.

**EXHIBIT 6**

**203**ᵛ

PETITION FOR COORDINATION; APPLICATION FOR STAY ORDER

1         This petition is based on the attached memorandum of points and authorities and the

2    declaration of Eva M. Weiler filed with this petition.  Pursuant to Code of Civil Procedure

3    section 404.1, this petition for coordination is submitted directly to the Chair of the Judicial

4    Council because all parties defendant in this complex action agree to the petition for

5    coordination.  (Weiler Decl., ¶ 3.)

6    Dated:  May 29, 2014              Respectfully submitted,

7                           SHOOK, HARDY & BACON L.L.P.

8

9                           By:_____

10                                  Eva M. Weiler

                        Attorneys for Petitioner Boston Scientific Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 6**

**204**vi

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND LITIGATION BACKGROUND.................................................. 1

II.   CASES FOR COORDINATION.................................................................................. 3

III.  DESCRIPTION OF INDIVIDUAL CLAIMS............................................................. 5

IV.   THE BSC PELVIC MESH CASES ARE COMPLEX............................................... 5

V.    THE BSC PELVIC MESH CASES SHOULD BE COORDINATED .......................... 7

      A.    Significant Common Factual Or Legal Questions Predominate............................ 8

      B.    Coordination Will Benefit The Parties, Counsel, And Witnesses ........................ 8

      C.    Coordination Will Promote Efficient Use Of Judicial Resources, Minimize Burdens On The Courts' Calendars, And Reduce The Risk Of Duplicative And Inconsistent Rulings......................................... 9

VI.   THE BSC PELVIC MESH CASES SHOULD BE COORDINATED IN LOS ANGELES COUNTY ................................................................................ 10

VII.  AN ORDER STAYING THE BSC PELVIC MESH CASES IS NECESSARY TO PRESERVE THE BENEFITS OF COORDINATION ......................................... 11

VIII. CONCLUSION........................................................................................................ 11

**EXHIBIT 6**

205 vii

1
2
3

**<u>TABLE OF AUTHORITIES</u>**

4

**Page(s)**

*Keenan v. Superior Court*
   (1980) 111 Cal.App.3d 336..................................................................7, 8

*McGhan Medical Corp. v. Superior Court*
   (1992) 11 Cal.App.4th 804..............................................................3, 8, 9

**RULES**

Cal. Rules of Court, rule 3.400.............................................................5, 6, 7

Cal. Rules of Court, rule 3.544...............................................................10

**STATUTES**

Code Civ. Proc., § 404.1..................................................................5, 7, 8

Code Civ. Proc., § 404.5....................................................................11

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 6**

**206**viii

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3  **I.      INTRODUCTION AND LITIGATION BACKGROUND**

4          Petitioner Boston Scientific Corporation (" Petitioner") seeks coordination of sixteen

5  (16) cases, involving over 450 plaintiffs, pending in nine (9) counties across California that

6  allege claims related to Boston Scientific Corporation's pelvic mesh products (hereinafter

7  "BSC pelvic mesh products").  There are actions pending against BSC in the Superior Courts

8  of California, for the counties of:  Alameda, Fresno, Kern, Los Angeles, Orange, San

9  Bernardino, Stanislaus, Tulare, and Ventura.  Petitioner seeks coordination pursuant to Code

10  of Civil Procedure section 404, *et seq.* and California Rules of Court 3.521, *et seq.*

11          The sixteen California actions at issue concern claims of injuries allegedly caused by

12  the implantation of one or more BSC pelvic mesh products, which are FDA-approved

13  medical devices indicated for the treatment of stress urinary incontinence and/or pelvic organ

14  prolapse in women.  Recent filings, the sheer number of cases pending against BSC in

15  California, and the huge number of individually named plaintiffs (452) makes this

16  appropriate for coordination at this time.

17          The BSC pelvic mesh cases pending in California are part of a mass tort litigation.

18  On February 7, 2012, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict

19  Litigation ("JPML") created *In re Boston Scientific Corp. Pelvic Repair System Products*

20  *Liability Litigation*, MDL-2326 (the "BSC MDL"), and transferred a number of cases to the

21  United States District Court, Southern District of West Virginia ("MDL Court"), before the

22  Honorable Joseph R. Goodwin.  (Weiler Decl., ¶ 26.)  There are presently over 12,000 cases

23  pending in the BSC MDL.  (*Ibid.*)  And there are other pelvic mesh cases involving similar

24  claims of injury against BSC pending in coordinated actions in Massachusetts and Delaware

25  state courts.  (*Ibid.*)

26          The litigation extends to California as well, and Los Angeles County is the most

27  convenient venue for the vast majority of the parties in the cases Petitioner seeks to

28  coordinate.  The Honorable William Highberger is currently serving as the coordination

**EXHIBIT 6**

**207** [1]

PETITION FOR COORDINATION; APPLICATION FOR STAY ORDER

judge in JCCP 4733, *In re Caldera Medical Product Cases*, which involves product liability

claims arising from plaintiffs' use of pelvic mesh products manufactured by Caldera Medical

Inc. and other manufacturers, including Petitioner. (Weiler Decl., ¶ 24.) American Medical

Systems ("AMS") also filed a petition for coordination of cases involving AMS's pelvic

mesh products on April 10, 2014, and Judge Highberger was assigned to decide that petition

as a request to coordinate add-on cases under California Rules of Court, rule 3.544 with the

existing cases in JCCP 4733, or to determine whether separate coordination is appropriate.

Of Petitioner's actions sought to be coordinated, 345 of the 452 total plaintiffs have actions

pending in Los Angeles County, and another 94 plaintiffs are in Orange County, but were

filed by the same counsel that filed suit on behalf of 93 plaintiffs in Los Angeles.  (*Id.* at ¶¶

5, 17, 24.)  Los Angeles also has a Complex Litigation Panel with the judicial and technical

resources necessary to accommodate this litigation.

Each of these cases shares common questions of fact or law that are significant to the

litigation.  All of the cases in the national pelvic mesh litigation, including the cases sought

to be coordinated here, raise similar overlapping legal issues about the adequacy of the

warnings for BSC pelvic mesh products and scientific causation. (Weiler Decl., ¶ 22.)

Centralized management of this growing and complex product liability litigation

before a single judge offers considerable benefits in terms of efficiency and convenience,

allows for common motions to be filed in and heard by a single court, avoids duplicative and

potentially inconsistent rulings, and will simplify coordination with the national BSC pelvic

mesh litigation. (Weiler Decl., ¶ 29.)  Notably, the majority of plaintiffs' counsel involved

in the included actions are already involved in JCCP 4733 and the BSC MDL. (*Id.* at ¶¶ 23–

24.)

As such, the convenience of the parties, witnesses, and counsel is best served by

coordination that would result in streamlined law and motion practice and discovery in a

central location.  This would allow for coordination with other litigations and eliminates the

need for Petitioner to produce duplicative discovery in multiple jurisdictions and venues,

under potentially varying rules, and with great cost.  (Weiler Decl., ¶¶ 23, 28, 29.)  The

**EXHIBIT 6**

**208**2

PETITION FOR COORDINATION; APPLICATION FOR STAY ORDER

200430 V10

1    Court of Appeal in *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804,

2    813-814, explained:  "Our best prediction about the coordination of these breast implant

3    cases . . . is that it will provide enormous benefit to all of the litigants."  The same is true

4    here.

5

6    **II.    CASES FOR COORDINATION**

7          The actions which Petitioner is seeking to coordinate are as follows:

8    • *Janet Barkee, et al. vs. Tajinder B Kaur, M.D., et al.*, Case No. 56-2014-00447346-

9    CU-MM-VTA, filed on January 10, 2014, currently pending in Ventura County Superior

10   Court before the Honorable Henry Walsh in department 42.

11   • *Alison Eastburn, et al. v. Boston Scientific Corporation*, Case No. 30-2014-00706600-

12   CU-PL-CXC, filed on February 18, 2014, currently pending in Orange County Superior

13   Court before the Honorable Steven L. Perk in department CX102.

14   • *Nadine Edgar, et al. vs. Boston Scientific Corporation*, Case No. BC531849, filed on

15   December 30, 2013, currently pending in Los Angeles Superior Court before the Honorable

16   Rafael Ongkeko in department 91.

17   • *Estella Forstedt v. Michael Illingworth, M.D., et al.*, Case No. 12CECG03661, filed

18   on November 14, 2012, currently pending in Fresno County Superior Court before the

19   Honorable Kristi C. Kapetan in department 403.

20   • *Patricia Ann Hilderbrand, et al. v. Boston Scientific Corporation, et al.*, Case No. S-

21   1500-CV-280401 DRL, filed on October 1, 2013, currently pending in Kern County Superior

22   Court before the Honorable David R. Lampe in department 11.

23   • *Kitty Kellar, et al. v. Sam Siddighi, MD, et al.*, Case No. CIVDS1307951, filed on

24   July 11, 2013, currently pending in San Bernardino Superior Court before the Honorable

25   David Cohn in department S37J.

26   • *Senorina Martinez, et al. v. Radmila Runic, M.D.; Boston Scientific Corporation*,

27   Case No. BC532975, filed on January 13, 2014, currently pending in Los Angeles Superior

28   Court before the Honorable Elia **EXHIBIT 6** in department 92.

**209**[3]

200430 V10

1   • *Cheryl Mauck, et al. v. Boston Scientific Corporation,* Case No. BC515043, filed on

2   July 12, 2013, currently pending in Los Angeles Superior Court before the Honorable Teresa

3   Sanchez-Gordon in department 74.

4   • *Rebecca Milan v. Anita Rama MD, Boston Scientific Corporation, et al.*, Case No.

5   RG13682257, filed on June 5, 2013, currently pending in Alameda County Superior Court

6   before the Honorable Ronni MacLaren in department 25.

7   • *Laura Morales, et al. v. Audre Toda, MD, et al.*, Case No. BC532976, filed on

8   January 13, 2014, currently pending in Los Angeles Superior Court before the Honorable

9   Rafael Ongkeko in department 91.

10   • *Shannon Muller, et al. vs. Boston Scientific Corporation*, Case No. BC515042, filed

11   on July 12, 2013, currently pending in Los Angeles Superior Court before the Honorable

12   Rita Miller in department 16.

13   • *Sherry Pate, et al. vs. Boston Scientific Corporation, et al.*, Case No. BC515037, filed

14   on June 12, 2013, currently pending in Los Angeles Superior Court before the Honorable

15   Rafael Ongkeko department 91.

16   • *Lori Pelucca v. Boston Scientific*, et al., Case No. 683323, filed on February 26, 2013,

17   currently pending in Stanislaus County Superior Court before the Hon. Timothy Salter in

18   department 22.

19   • *Mercedes Penaherrara, et al. v. Boston Scientific Corporation*, Case No. BC536361,

20   filed on February 13, 2014, currently pending in Los Angeles Superior Court- Central Civil

21   West before the Honorable Kenneth R. Freeman in department 310.

22   • *Micaella Shears v. Arthur Park MD, et al.*, Case No. S-1500-CV 279733 DRL, filed

23   on June 28, 2013, currently pending in Kern County Superior Court before the Honorable

24   David R. Lampe in department 11.

25   • *Veronica Villarreal, et al. v. George Blaine Lake, M.D, et al.*, Case No. 254260, filed

26   on November 22, 2013, currently pending in Tulare Superior Court before the Honorable

27   Lloyd L. Hicks in department 2.

28   **EXHIBIT 6**

**210**[4]

PETITION FOR COORDINATION; APPLICATION FOR STAY ORDER

200430 V10

1   True and correct copies of the face pages of the complaint in each included action are

2   attached as Exhibit A to the Weiler Declaration filed with this Petition.  A summary of the

3   status of each included action is also included in the Weiler Declaration at paragraphs 4

4   through 19.

5

6   **III.   DESCRIPTION OF INDIVIDUAL CLAIMS**

7   The BSC pelvic mesh cases sought to be coordinated are product liability-personal

8   injury cases.  Plaintiffs allege they were injured following implantation of pelvic mesh that

9   was designed, manufactured, distributed, and sold by Petitioner.  Plaintiffs claim to have

10  suffered various injuries including recurrence of the initial condition, incontinence, urinary

11  retention, erosion or exposure of their mesh, and/or severe pain allegedly resulting from the

12  implantation of BSC pelvic mesh products.  These cases generally allege that Petitioner is

13  liable under strict liability, negligence, and breach of express and implied warranties based

14  on theories of design defect, manufacturing defect, and failure to warn.  (Weiler Decl., ¶¶ 4–

15  19, 22.)   A number of the plaintiffs also assert fraud and fraud-based claims.   (*Ibid.*)

16

17  **IV.   THE BSC PELVIC MESH CASES ARE COMPLEX.**

18  Coordination of the BSC pelvic mesh cases is appropriate because they are complex

19  and meet the standards for coordination under Code of Civil Procedure section 404.1.

20  Litigation is "complex" if it

21  requires exceptional management to avoid placing unnecessary

22  burdens on the court or the litigants and to expedite the case, keep

23  costs reasonable, and promote effective decision making by the

24  court, the parties and counsel.

25  (Cal. Rules of Court, rule 3.400(a).)

26  In deciding whether a case is complex, a court considers whether the case is likely to

27  involve:  (1) numerous pretrial motions raising difficult legal issues that will be time-

28  consuming to resolve; (2) management of a large number of witnesses or a substantial

**EXHIBIT 6**
**211**[5]

PETITION FOR COORDINATION; APPLICATION FOR STAY ORDER

1  amount of documentary evidence; (3) management of a large number of separately

2  represented parties; (4) coordination with related actions pending in other counties, states,

3  countries, or federal courts; or (5) substantial post-judgment judicial supervision.  (Cal.

4  Rules of Court, rule 3.400(b).)

5       Pursuant to California Rules of Court, rule 3.400(c)(5), claims involving mass torts

6  are provisionally complex.  As discussed above, the BSC pelvic mesh cases pending in

7  California are part of a national mass tort litigation.  There are thousands of cases pending in

8  federal and state courts outside of California, in both coordinated and individual proceedings.

9       In addition, the BSC pelvic mesh cases will involve numerous pretrial motions raising

10  difficult factual, scientific, and legal issues.  Given the nature of product liability litigation, it

11  is anticipated that time-consuming pretrial motions will be filed on issues related to

12  plaintiff's failure to warn allegations, general and specific causation, and expert testimony.

13  Specifically, there are complex scientific issues, including but not limited to:  (1) the

14  adequacy of the warnings; (2) proximate causation related to the warnings; and (3) whether

15  plaintiff can provide a methodologically sound basis or evidence that BSC pelvic mesh

16  causes the alleged injuries.  (Weiler Decl., ¶ 28.)  These motions will be brought in most

17  cases and will be similar.  They will also be time-consuming to resolve because BSC pelvic

18  mesh products are implantable surgical device and determinations on motions will

19  necessarily involve expert testimony on various issues.

20       The BSC pelvic mesh cases will undoubtedly involve a large number of witnesses.

21  The parties will present numerous scientific and causation experts who will require extensive

22  judicial oversight.  There will be numerous fact witnesses, including but not limited to,

23  plaintiffs' implanting surgeon(s), explanting and or revising surgeon(s), where applicable,

24  additional medical care providers, spouses, and many other percipient witnesses for both the

25  plaintiff and defense.  In addition, there will be substantial documentary evidence that is

26  applicable to all cases.  (Weiler Decl., ¶ 27.)  Petitioner has already produced approximately

27  8.5 million pages of documents in the BSC MDL, and this is indicative of the amount of

28  documentary evidence that will be issued in the BSC pelvic mesh cases here.  (*Ibid.*)

**EXHIBIT 6**

**212**[6]

200430 V10

1    Finally, the sixteen included actions pending in California involve 452 different

2    plaintiffs and various BSC pelvic mesh products.  (Weiler Decl., ¶¶ 23–24.)  Complex

3    management of the cases will make litigation more convenient for the parties, keep costs

4    reasonable, and reduce the burden on individual litigants.  Coordination with the BSC MDL

5    and centralized management of the BSC pelvic mesh cases is also necessary to serve the

6    interests of judicial economy and to reduce the risk of inconsistent rulings.  This is

7    particularly true given the majority of plaintiffs' counsel in the included actions are already

8    involved in the BSC MDL, and are therefore, familiar with and bound by the protective

9    orders entered in those actions that govern the confidentiality and use of approximately 8.5

10   million pages of documents already produced by BSC.  (See Weiler Decl., ¶ 23.)

11   Based on the above factors, three included actions have already been deemed complex

12   pursuant to California Rules of Court, rule 3.400(c).  *Forstedt* was deemed complex by the

13   Fresno Superior Court.  (Weiler Decl., ¶ 30.)  *Penaherrera* was deemed complex and

14   transferred to the Los Angeles Superior Court, Central Civil West Complex Panel.  (*Ibid.*)

15   And *Eastburn* was deemed complex and transferred to Orange County Superior Court,

16   Complex Civil Panel.  (*Ibid.*)  Of the remaining thirteen, plaintiffs indicated they have sought

17   to have four cases currently pending in Los Angeles County Superior Court deemed complex

18   and transferred to the complex litigation program.   (*Ibid.*)

19

20   **V.    THE BSC PELVIC MESH CASES SHOULD BE COORDINATED.**

21   Application of the factors in Code of Civil Procedure section 404.1 demonstrates that

22   coordination of the BSC pelvic mesh cases is appropriate.  These factors include:  (1)

23   whether common questions of fact or law predominate and are significant to the litigation;

24   (2) the convenience of the parties, witnesses and counsel; (3) the relative development of the

25   actions and the work product of counsel; (4) the efficient utilization of judicial facilities and

26   manpower; (5) the calendar of the courts; (6) the disadvantages of duplicative and

27   inconsistent rulings, orders and judgments; and (7) the likelihood of settlement of the actions

28   without further litigation should coordination be denied.  (Code Civ. Proc., § 404.1; *Keenan*

**EXHIBIT**
**213**[7]

1 | *v. Superior Court* (1980) 111 Cal.App.3d 336, 341.)  Each of these factors supports

2 | coordination.

3 |

4 | **A.    Significant Common Factual Or Legal Questions Predominate.**

5 |     The BSC pelvic mesh cases are product liability cases in which plaintiffs primarily

6 | allege causes of action for negligence, strict liability, and breach of warranty.  While each of

7 | the cases raises individualized issues, there exist recurring questions of law and fact

8 | concerning specific and general causation and liability.  All of the cases, including the

9 | present case, raise similar overlapping factual and legal issues about the adequacy of the

10 | warnings for BSC pelvic mesh and scientific causation (including general and specific

11 | causation).  (Weiler Decl., ¶ 22.)  Centralized management of these cases will promote

12 | efficient resolution of threshold issues applicable to each case.  To the extent any party can

13 | show that unique issues predominate over common issues in his or her action, the

14 | coordination trial judge will retain the power to sever or otherwise make appropriate

15 | provisions for such cases. (*McGhan Medical Corp., supra,* 11 Cal.App.4th at p. 812 ["the

16 | procedures which may be utilized by the coordinating judge are flexible"].)

17 |

18 | **B.    Coordination Will Benefit The Parties, Counsel, And Witnesses.**

19 |     Because the BSC pelvic mesh cases are related, the convenience of the parties,

20 | witnesses, and counsel will be served by the coordination of pretrial motion practice, written

21 | discovery, and common depositions of both lay and expert witnesses for the California cases.

22 | Overwhelming corporate officials with multiple depositions not only impacts Petitioner's

23 | ability to conduct its businesses, but also wastes the parties' resources.

24 |     Multiple depositions of the same witnesses, and research, briefing, and travel by the

25 | parties and their counsel for hearings, conferences, depositions, and other proceedings in

26 | multiple locations within California should be avoided. (*McGhan Medical Corp., supra*, 11

27 | Cal.App.4th at p. 814 [preparation for trial in the breast implant class actions is "better

28 | achieved if done in a coordinated fashion"]; streamlined discovery through master written

**EXHIBIT 6**
**214**[8]

200430 V10

1   discovery requests, a single form of protective order and format of production, and the cross-

2   noticing of depositions across all cases will reduce duplication, increase efficiency, and

3   ensure that all parties benefit from the same information in an efficient and cost-effective

4   manner.

5

6   **C.     Coordination Will Promote Efficient Use Of Judicial Resources, Minimize**

7   **Burdens On The Courts' Calendars, And Reduce The Risk Of Duplicative**

8   **And Inconsistent Rulings.**

9        Coordination of the BSC pelvic mesh cases is the most efficient use of California's

10  judicial facilities for management of this litigation. It will substantially decrease the burden

11  on the courts' calendars. A single presiding judge will be able to review and rule upon

12  motions applicable to all cases – from discovery disputes and pleading issues to motions

13  involving expert testimony or summary judgment. Coordination will also reduce the risk of

14  inconsistent rulings on these motions, which are applicable to all or most of the BSC pelvic

15  mesh cases. (*McGhan Medical Corp.*, *supra*, 11 Cal.App.4th at p. 814 ["The rulings on

16  these motions should be uniform. . . . This sort of treatment can be achieved by coordination

17  of motion practice. . . . [W]e doubt that it can be otherwise achieved."].)

18       Given that some of the BSC pelvic mesh cases involve non-residents, Petitioner

19  intends to file motions to sever or motions to dismiss those cases based on the doctrine of

20  forum non conveniens. (Weiler Decl., ¶ 28.) Petitioner also intends to file motions for

21  summary judgment based on causation and potentially motions to challenge the admissibility

22  of plaintiffs' experts' opinions. (*Ibid.*) The complexity and volume of these motions merits

23  a coordinated approach.

24       Finally, coordination of the BSC pelvic mesh cases before a single judge will

25  facilitate cooperation between the California litigation and national proceedings. (See, e.g.,

26  Herr, Manual for Complex Litigation (4th ed. 2011) § 20.31, pp. 331-332 [noting potential

27  for state-federal nationwide discovery plan and coordinated national calendar and state-

28                                    **EXHIBIT 6**

                                      **215**9

200430 V10

1  federal cooperation "to minimize conflicts that distract from the primary goal of resolving

2  the parties' disputes."].)

3

4  ## VI.   THE BSC PELVIC MESH CASES SHOULD BE COORDINATED IN LOS

5  ANGELES COUNTY.

6      Petitioner requests the BSC pelvic mesh cases be coordinated and assigned to the Los

7  Angeles Superior Court. The cases filed in Los Angeles County account for 345 of the 452

8  total plaintiffs with actions pending. The Honorable William F. Highberger is currently

9  serving as the coordination judge in JCCP 4733, *In re Caldera Medical Product Cases*,

10  which also involves product liability claims arising from plaintiffs' use of pelvic mesh

11  products manufactured by Caldera Medical Inc. and other manufacturers, including

12  Petitioner. In addition, AMS's petition for coordination was assigned to Judge Highberger to

13  decide whether it should proceed as a request to coordinate add-on cases under California

14  Rules of Court, rule 3.544, with the existing cases in JCCP 4733, or, if Judge Highberger

15  denies the request to coordinate add-on cases, he was further assigned to sit as the

16  coordination motion judge pursuant to California Rules of Court, rule 3.532(e). No hearing

17  has yet been set by Judge Highberger for these issues. But two cases currently pending in

18  Alameda County Superior Court, in which Petitioner is also named, are included in AMS's

19  Petition for Coordination. These cases are (1) *Clemencia Lopez, et al. v. John C. Pfeffer,*

20  *M.D., et al.*, Case No. RG13682270, filed on June 5, 2013, and (2) *Laura Tantillo, et al. v.*

21  *Leonard George Renfer, M.D., et al.*, Case No.RG14709583, filed on January 10, 2014.

22      Petitioner's counsel are Eva M. Weiler, Janet L. Hickson, Lael A. Awong, and Brian

23  P. Ziska, of Shook, Hardy & Bacon, L.L.P., which is located at 5 Park Plaza, Suite 1600,

24  Irvine, California 92614. Petitioner is a defendant in every included action and given the

25  substantial amount of documentary evidence and witnesses that will be presented by

26  Petitioner, coordination close to where Petitioner's counsel is located would be ideal. Given

27  these factors, Los Angeles Superior Court is a convenient and appropriate venue for

28  coordination of the BSC pelvic mesh cases.

**EXHIBIT 6**

**216**10

200430 V10

1  **VII.   AN ORDER STAYING THE BSC PELVIC MESH CASES IS NECESSARY TO**
2  **PRESERVE THE BENEFITS OF COORDINATION.**

3      Petitioner also requests an order staying the BSC pelvic mesh cases pending

4  resolution of this petition. (Code Civ. Proc., § 404.5.)  A stay will prevent wasteful

5  expenditure of resources responding to individual case discovery while coordination is

6  considered.  A stay will also prevent duplicative or inconsistent rulings related to pending

7  motions.  Given that limited to no discovery has been conducted in most cases, a temporary

8  stay will not result in any prejudice to the parties or alter any court-imposed pre-trial

9  deadlines. (Weiler Decl., ¶ 31.)  And three of the cases, *Muller, Mauck,* and *Penaherrara,*

10  have already been stayed to accommodate a decision on coordination. (*Id.* at ¶¶ 11, 14, 17.)

11

12  **VIII.  CONCLUSION**

13      Petitioner respectfully requests that the Chair of the Judicial Council assign this

14  petition to a coordination motion judge to determine whether the BSC pelvic mesh cases

15  should be coordinated and, if so, whether Los Angeles County Superior Court should be

16  selected as the site for coordinated proceeding.  Petitioner also respectfully requests a stay of

17  the BSC pelvic mesh cases, pending a determination on whether the cases should be

18  coordinated.

19

20  Dated:  May 29, 2012                  Respectfully submitted,

21                                     SHOOK HARDY & BACON L.L.P.

22

23                                     By:

24                                         Eva M. Weiler
                                          Lael A. Awong

25                                         Brian P. Ziska
                            Attorneys for Defendants Boston Scientific
                            Corporation

26

27

28                              **EXHIBIT 6**

                               **217** 11

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1600, Irvine, California  92614.

On May 29, 2014, I served on the interested parties in said action the within:

### PETITION FOR COORDINATION AND APPLICATION FOR STAY ORDER; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☒　(MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐　(FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above.  The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

☐　(BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center and to be delivered by their next business day delivery service to the addressee(s) designated.

☒　(ELECTRONIC SERVICE) By electronically mailing a true and correct copy through Shook, Hardy & Bacon L.L.P.'s electronic mail system to **Chair, Judicial Council of California ONLY**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 29, 2014, at Irvine, California.

| | |
|---|---|
| _____ | _____ |
| Kim Brunton | _(Signature)_ |
| (Type or print name) | |

## EXHIBIT 6

**218**

BOSTON SCIENTIFIC CORPORATION'S PROOF OF SERVICE

202877 V1

## SERVICE LIST

*(Sherry Pate, et al., v. Boston Scientific Corporation)*

Thomas V. Girardi
Amy F. Solomon
Girardi Keese
1126 Wilshire Blvd.
Los Angeles, CA  90017

Tel: 213-977-0211
Fax: 213-481-1554
**Attorneys for Plaintiffs**

Kurt B. Arnold
Jason A. Itkin
Noah M. Wexler
Arnold & Itkin
6009 Memorial Drive
Houston, TX 77007

Tel: 713-222-3800
Fax: 713-222-3850
nwexler@arnolditkin.com
**Attorneys for Plaintiffs**

J. Steve Mostyn
The Mostyn Law Firm
3810 West Alabama Street
Houston, TX  77027

Tel: 713-861-6616
Fax: 713-861-8084
**Attorneys for Plaintiffs**

Chair, Judicial Council of California
Administrative Office of the Courts
Attn:  Court Programs and Services Division
(Civil Case Coordination)
455 Golden Gate Avenue
San Francisco, CA  94102-3688

Tel:  415-865-7630
Email:  coordination@jud.ca.gov

**EXHIBIT 6**

**219**    BOSTON SCIENTIFIC CORPORATION'S PROOF OF SERVICE

202877 v1

1   SHOOK, HARDY & BACON L.L.P.
    Eva M. Weiler (SBN: 233942)
2   Brian P. Ziska (SBN: 272043)
    Jamboree Center
3   5 Park Plaza, Suite 1600
    Irvine, CA 92614-2546
4   Telephone: 949.475.1500
    Facsimile: 949.475.0016
5
    Attorneys for Defendant
6   Boston Scientific Corporation

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAY 06 2015

Sherri R. Carter, Executive Officer/Clerk
By: Aldwin Lim, Deputy

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       FOR THE COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

10

| | |
|---|---|
| 11   **COORDINATION PROCEEDING**<br>  **SPECIAL TITLE (CRC 3.550)** | )  **JCCP NO. 4733** |
| 12 | ) |
|   **TRANSVAGINAL MESH MEDICAL** | )  Coordination Trial Judge<br>)  The Hon. William F. Highberger |
| 13   **PRODUCT CASES** | )  Dept: 322 |
| 14 | )  [PROPOSED] CASE MANAGEMENT |
| 15 | )  **ORDER NO. 1: PLAINTIFF PROFILE**<br>)  **FORMS [Governing Cases Where Boston** |
|   This document relates to: | )  **Scientific Is The Only Named** |
| 16 | )  **Manufacturer Defendant]** |
|   *All Boston Scientific Corporation Single* | ) |
| 17   *Manufacturer Cases* | ) |
| 18 | ) |

19       This Order shall govern all cases in which Boston Scientific Corporation ("BSC") is

20 the only named manufacturer defendant.

21     **1.**    **Plaintiff Profile Form ("PPF")**

22       a.    The parties have agreed upon the use of an abbreviated Plaintiff Profile Form

23 ("PPF") (Exhibit 1), including a number of releases, attached to this Order. The PPF shall be

24 completed in each case currently pending in, and in all cases that become part of this Judicial

25 Council Coordination Proceeding ("JCCP").

26       b.    Each plaintiff in a currently filed case that was a part of this JCCP as of the

27 date of the entry of this Order shall submit a completed PPF to BSC within 90 days of the

28

**EXHIBIT 7**

1   date of this Order. In cases coordinated after the date of this Order, each plaintiff shall
2   submit a completed PPF to BSC within 90 days of coordination. Every plaintiff is required
3   to provide BSC with a PPF that is substantially complete in all respects, answering every
4   question in the PPF, even if a plaintiff can answer the question in good faith only by
5   indicating "not applicable." The PPF shall be signed by the plaintiff under penalty of perjury
6   under the laws of the State of California, pursuant to Code of Civil Procedure section 2015.5.
7   If a plaintiff is suing in a representative or derivative capacity, the PPF shall be completed by
8   the person with the legal authority to represent the estate or person under legal disability.
9   Plaintiff spouses with a claim for loss of consortium shall also sign the PPF, attesting that the
10  responses made to the loss of consortium claim questions in the PPF are true and correct,
11  formed after due diligence and reasonable inquiry.

12          c.      A completed PPF shall be considered interrogatory answers under Code of
13  Civil Procedure section 2030.010, et seq., and will be governed by the standards applicable
14  to written discovery under Code of Civil Procedure section 2016.010, et seq. The
15  interrogatories and requests for production in the PPF shall be answered without objection as
16  to the form of the question posed in the agreed upon PPF. Plaintiffs reserve all objections to
17  the admissibility of answers, responses, and documents pursuant to said PPF and any
18  authorizations for release of records. This section does not prohibit a plaintiff from
19  withholding or redacting information from medical or other records provided with the PPF
20  based upon a recognized privilege. If information is withheld or redacted on the basis of
21  privilege, plaintiff shall provide BSC with a privilege log that complies with Code of Civil
22  Procedure section 2031.240, subdivision (c), simultaneously with the submission of the PPF.

23          d.      Contemporaneous with the submission of a PPF, each plaintiff shall provide
24  BSC with hard copies or electronic files of all non-privileged medical records in his or her
25  possession or control, including, in particular, records that support product identification.

26

27

**EXHIBIT 7**

28
[PROPOSED] CASE MANAGEMENT ORDER NO. 1: PLAINTIFF PROFILE FORMS

241411 V5                                    **221**

1     e.     Contemporaneous with the submission of a PPF, each plaintiff shall also

2    produce signed authorizations, which are attached to the PPF, for the release, to an identified

3    records collection vendor, of medical, insurance, employment, Medicare/Medicaid, and

4    Social Security records from any healthcare provider, hospital, clinic, outpatient treatment

5    center, and/or any other entity, institution, agency or other custodian of records identified in

6    the PPF.  These signed authorizations constitute permission for a third party records vendor

7    retained by the parties to obtain the records specified in the authorizations from the records

8    custodians.  In the event an institution, agency or medical provider to which a signed

9    authorization is presented refuses to provide responsive records, the individual plaintiff's

10    attorney shall attempt to resolve the issue with the institution, agency, or provider, such that

11    the necessary records are promptly provided.  In addition, should a further healthcare

12    provider, hospital, clinic, outpatient treatment center, and/or any other entity providing

13    medical, emotional, or mental treatment to the plaintiff be identified, plaintiffs shall provide

14    signed authorizations for those providers within twenty (20) days of a request for the same

15    by BSC.  Any records that pertain to psychiatric related care whether by a psychiatrist or

16    psychologist shall first be available to counsel for the plaintiff who shall have 10 days to

17    assert a recognized privilege and notify both the vendor and counsel for BSC, with an

18    appropriate privilege log. Absent notification within 10 days of the assertion of such a

19    privilege, the vendor shall then provide the records to BSC.

20     f.     Each plaintiff shall immediately preserve and maintain, without deletions or

21    alterations, any content of any personal webpage(s) or social media accounts currently held

22    by them, including but not limited to, photographs, text, links, messages and other postings

23    or profile information that is relevant to the subject matter of this litigation. "Social media"

24    includes, but it not limited to, Facebook, Myspace, Linked In, Friendster, and/or blogs.

25     g.     If a plaintiff does not submit a PPF within the time specified in this Order,

26    BSC's counsel shall send a deficiency letter, as applicable by e-mail and U.S. mail, to the

27

28

**EXHIBIT 7**

1   plaintiffs' individual representative counsel, identifying the plaintiff.  Plaintiff shall have

2   twenty (20) days from receipt of that letter to serve a PPF.  This letter shall include sufficient

3   detail for the parties to meet and confer regarding the alleged deficiencies.  Following

4   reasonable efforts to meet and confer with regard to any PPF deficiencies, BSC may move to

5   dismiss a plaintiff's case.

6          h.    If BSC receives a PPF in the allotted time but the PPF is not substantially

7   complete, BSC's counsel shall send a deficiency letter, as applicable by e-mail and U.S.

8   mail, to the plaintiffs' individual representative counsel, identifying the purported

9   deficiencies.  Plaintiff shall have twenty (20) days from receipt of that letter to serve a PPF

10  that is substantially complete in all respects, or a statement explaining why plaintiff contends

11  that the PPF is substantially complete.  This letter shall include sufficient detail for the

12  parties to meet and confer regarding the alleged deficiencies.

13         i.    The PPF is to be treated as responses to interrogatories under California Code

14  of Civil Procedure section 2030.010, et seq.

15

16  **2.**    **Discovery Pool Selection**

17        Within one hundred eighty (180) days from entry of this Order, the parties shall meet

18  and confer regarding identification of cases for completion of the first discovery group

19  ("Discovery Group One").  Discovery Group One shall include no more than ten (10)

20  individual plaintiffs (excluding loss of consortium spouses).  If the parties cannot agree on

21  the ten (10) plaintiffs for Discovery Group One, the plaintiffs and BSC should submit their

22  proposed lists for Discovery Group One to the Court within fourteen (14) days.  The

23  proposals will be lodged with the Court, not filed, along with an Opening Memorandum in

24  support of their selections and in opposition to the opposing party's selections.  Within ten

25  (10) days of such submission, the parties should be permitted to submit a response to the

26  opposing party's Opening Memorandum regarding selection of cases.  If requested by the

27

28

**EXHIBIT 7**

1   Court, the parties may give a brief oral presentation to the Court on their trial pool proposal,

2   in order to clarify any issues raised in the parties' supporting memoranda and answer any

3   questions from the Court.

4

5       **3.**    **Discovery Group One Work-Up**

6           No later than 30 days following entry of the Order selecting Discovery Group One,

7   the parties should meet and confer and submit to the Court, a proposed schedule for

8   Discovery Group One.

9

10   **IT IS SO ORDERED.**

11

12   Dated: _5/6/15_

13

                       WILLIAM F. HIGHBERGER

               Honorable William F. Highberger
               Judge of the Superior Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**EXHIBIT 57**

28   241411 V5      [PROPOSED] CASE MANAGEMENT ORDER NO. 1:  PLAINTIFF PROFILE FORMS

**224**

# Exhibit 1

**EXHIBIT 7**

**225**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

*Transvaginal Mesh Medical Product Cases,*
JCCP No. 4733

In completing this Plaintiff Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. The Plaintiff Profile Form shall be completed in accordance with the requirements and guidelines set forth in the applicable Case Management Order.

### I. CASE INFORMATION

Caption: _____   Date: _____

Civil Action No.: _____

**Plaintiff's attorney and Contact information:**

_____

_____

_____

_____

### II. PLAINTIFF INFORMATION

Name: _____

Spouse: _____**Loss of Consortium?**   ☐ Yes ☐ No

Address: _____

Date of birth: _____

Social Security No.: _____

### III. DEVICE INFORMATION[1]

Date of implant: _____

*Reason for Implantation:* _____

Brand Name: _____   Mfg. _____

Lot Number: _____

---

[1] Note: In lieu of device information, operating records may be submitted as long as all requested information is legible on the face of the record.

## EXHIBIT 7

## 226

Implanting Surgeon: _____

Medical Facility: _____

Date of implant: _____

*Reason for Implantation:* _____

**Brand Name:** _____ **Mfg.** _____

Implanting Surgeon: _____

Medical Facility: _____

• *Attach medical evidence of product identification.*

## IV.  REMOVAL/REVISION SURGERY INFORMATION

Date of surgery(s): _____

*Type of surgery(s):* _____

Explanting surgeon: _____

Medical Facility: _____

Reason for Explant: _____

Date of surgery(s): _____

*Type of surgery(s):* _____

Explanting surgeon: _____

Medical Facility: _____

Reason for Explant: _____

## V.  OUTCOME ATTRIBUTED TO DEVICE

| | |
|---|---|
| ☐ **Pain** | ☐ **Fistulae** |
| ☐ **Erosion** | ☐ **Recurrence** |
| ☐ **Extrusion** | ☐ **Bleeding** |
| ☐ **Infection** | ☐ **Dyspareunia** |
| ☐ **Urinary Problems** | ☐ **Neuromuscular problems** |
| ☐ **Bowel Problems** | ☐ **Vaginal Scarring** |
| ☐ **Organ Perforation** | ☐ **Other** |

**EXHIBIT 7**

241410 v4

## VI.  PAST HISTORY

**Number of Pregnancies:** \_\_\_\_\_      **Number of Live Births:** \_\_\_\_\_

**Date of Hysterectomy(ies) and Name of Hospital Where Performed:** _____

**Prior to the First Implant, Have You Ever Had:**

| | |
|---|---|
| \_\_\_\_\_ | **Lupus** |
| \_\_\_\_\_ | **Diabetes** |
| \_\_\_\_\_ | **Auto Immune Disorder** |
| \_\_\_\_\_ | **Endometriosis** |
| \_\_\_\_\_ | **Pelvic Pain Syndrome or Disorder** |
| \_\_\_\_\_ | **Fibroids** |
| \_\_\_\_\_ | **Adhesive Disease** |

**Are you claiming damages for lost wages: [ ] Yes        [ ] No**

**If so, for what time period:** _____

**Have you ever filed for bankruptcy: [ ] Yes [ ] No**

**If so, when?** _____

**Do you have a computer: [ ] Yes [ ] No**

**If so, are you a member of Facebook, LinkedIn or other social media websites: [ ] Yes [  ] No**

**Which ones:** _____

## VII.  LIST OF ALL TREATING PHYSICIANS FOR THE PERIOD OF 10 YEARS PRIOR TO THE FIRST MESH IMPLANT THROUGH TODAY, INCLUDING ALL PRIMARY CARE PHYSICIANS, OB-GYNS, UROLOGISTS, ENDOCRINOLOGISTS, RHEUMATOLOGISTS, PSYCHIATRISTS, PSYCHOLOGISTS,[2] OR ANY OTHER PELVIC-RELATED SPECIALISTS

<u>**Primary Care Physicians:**</u>

**Name:** _____

**Address:** _____

**Approximate Period of Treatment:** _____

---

[2] YOU ARE NOT REQUIRED TO DISCLOSE PSYCHOLOGISTS, PSYCHIATRISTS, OR OTHER MENTAL HEALTH CARE PROVIDERS UNLESS YOU ARE CLAIMING MENTAL OR EMOTIONAL INJURIES.

**EXHIBIT 7**

**228**
3

Name: _____

Address: _____

Approximate Period of Treatment: _____

**OB-GYNs:**

Name: _____

Address: _____

Approximate Period of Treatment: _____

Name: _____

Address: _____

Approximate Period of Treatment: _____

**Urologists:**

Name: _____

Address: _____

Approximate Period of Treatment: _____

Name: _____

Address: _____

Approximate Period of Treatment: _____

**Psychiatrists/Psychologists (Answer only if making a claim for emotional/psychological Injury beyond usual pain and suffering):**

Name: _____

Address: _____

Approximate Period of Treatment: _____

**EXHIBIT 7**

**Name:** _____

**Address:** _____

**Approximate Period of Treatment:** _____

**Attach additional pages as needed to identify other health care providers you have seen.**

## AUTHORIZATIONS

Provide ONE (1) SIGNED ORIGINAL copy of the records authorization form attached as Ex. A for EACH provider identified in this Plaintiff Profile Form. These authorization forms will authorize the records vendor selected by the parties to obtain those records identified in the authorizations from the providers identified within this Plaintiff Profile Form.

## VERIFICATION

I, _____, declare under penalty of perjury under the laws of the State of California, that I have carefully reviewed the final copy of this Plaintiff Profile Form dated _____ and verified that the foregoing is true and correct.

_____
Signature of Plaintiff

## VERIFICATION OF LOSS OF CONSORTIUM SPOUSE

I, _____, declare under penalty of perjury under the laws of the State of California, that I have carefully reviewed the final copy of this Plaintiff Profile Form dated _____ and verified that the foregoing is true and correct.

_____
Signature of Plaintiff (Spouse)

**EXHIBIT 7**
5
**230**

241410 v4

# Exhibit A

**EXHIBIT 7**

**231**

# AUTHORIZATION TO DISCLOSE MEDICAL INFORMATION

To: _____

I, the undersigned, hereby authorize and request the Custodian above-named entity to disclose to _____, any and all medical records, including those that may contain protected health information (PHI) regarding _____, whether created before or after the date of signature, but limited to the following time period:

From 10 years before [insert date of implant] to the present.

This authorization specifically does not permit _____ to discuss any aspect of medical care or circumstances ex parte and without the presence of my attorney.

This authorization specifically does **not** permit the release or disclosure of HIV/AIDS records and information.

Records requested may include, but are not limited to:

a) all medical records, physician's records, surgeon's records, pathology/cytology reports, physicals and histories, laboratory reports, operating room records, discharge summaries, progress notes, patient intake forms, consultations, prescriptions, nurses' notes, birth certificate and other vital statistic records, communicable disease testing and treatment records, correspondence, prescription records, medication records, orders for medications, insurance records, consent for treatment, statements of account, itemized bills, invoices and any other papers relating to any examination, diagnosis, treatment, periods of hospitalization, or stays of confinement, or documents containing information regarding amendment of protected health information (PHI) in the medical records, copies (NOT originals) of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films and of any corresponding reports and requisition records, and any other written materials in its possession relating to any and all medical diagnoses, medical examinations, medical and surgical treatments or procedures. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information. This authorization and release does not allow _____ to request or take possession of pathology/cytology specimens, extracted mesh, pathology/cytology or hematology slides, wet tissue or tissue blocks.

b) complete copies of all prescription profile records, prescription slips, medication records, orders for medication, payment records, insurance claims forms correspondence and any other records. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ v. Boston Scientific or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation.

## NOTICE

• **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to _____ except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**

## EXHIBIT 7

**232**

244582 v2

• The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.

• The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to re-disclosure by the recipients. Absent written agreement by the individual signing this authorization through counsel, any documents or other material obtained through this authorization is viewed as confidential for purposes of the applicable protective order, and may be used by a party, or a party's attorney, expert witness, consultant, or other person to whom disclosure is made, only for the purpose of this action.

• The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.

• The individual signing this authorization understands that she/he shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by _____.


I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to _____.


_____

Name of Patient

_____

Signature of Patient or Individual


_____

Former/Alias/Maiden Name of Patient

_____

Date


_____

Patient's Date of Birth

_____

Name of Patient Representative


_____

Patient's Social Security Number

_____

Description of Authority


_____
_____

Patient's Address


# EXHIBIT 7

## AUTHORIZATION AND CONSENT
## TO RELEASE PSYCHOTHERAPY NOTES

Name of Individual:
Social Security Number:
Date of Birth:
Provider Name:

TO:          All physicians, hospitals, clinics and institutions, pharmacists and other healthcare providers

             The Veteran's Administration and all Veteran's Administration hospitals, clinics, physicians and employees

             The Social Security Administration

             Open Records, Administrative Specialist, Department of Workers' Claims

             All employers or other persons, firms, corporations, schools and other educational institutions

The undersigned individual herby authorizes each entity included in any of the above categories to furnish and disclose to The MCS Group          1601 Market Street, Suite 800, Philadelphia, PA 19103          and its authorized representatives, with true and correct copies of all "psychotherapy notes", as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR §164.501. Under HIPAA, the term "psychotherapy notes" means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint or family counseling session and that are separated from the rest of the individual's record. This authorization does not authorize ex parte communication concerning same.

- This authorization provides for the disclosure of the above-named patient's protected health information for purposes of the following litigation matter: _____ v. Boston Scientific, Inc., et al.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice to either Shook, Hardy & Bacon, LLP _____ Jamboree Center, 5 Park Plaza, Suite 1600, Irvine, CA 92614-2546 and to The MCS Group          and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges that he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient for the purposes of this litigation in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations (45 CFR §§164.500-164.534).

- The undersigned is hereby notified that he/she is aware that any and all protected health information disclosed and ultimately furnished to The MCS Group          in accordance with orders of the court pursuant to this authorization will be shared with any and all

**EXHIBIT 7**

co-defendants in the matter of _____ v. Boston Scientific, Inc., et al.

- and is subject to redisclosure by the recipient for the purposes of this litigation in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations (45 CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ v. Boston Scientific, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to** The MCS Group _____ **and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

Individual's Name and Address:

_____        _____
                                        Signature of Individual or Individual's Representative

_____        _____
                                        Printed Name of Individual's Representative (If applicable)

_____        _____
                                        Relationship of Representative to Individual (If applicable)

_____        _____
                                        Description of Representative's authority to act for Individual (If applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**EXHIBIT 7**

**235**

## AUTHORIZATION TO DISCLOSE INSURANCE INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to The MCS Group                              1601 Market Street, Suite 800 Philadelphia, PA 19103                              , any and all records containing insurance information, including those that may contain protected health information (PHI) regarding _____, whether created before or after the date of signature.  Records requested may include, but are not limited to:

> applications for insurance coverage and renewals; all insurance policies, certificates and benefit schedules regarding the insured's coverage, including supplemental coverage; health and physical examination records that were reviewed for underwriting purposes, and any statements, communications, correspondence, reports, questionnaires, and records submitted in connection with applications or renewals for insurance coverage, or claims; all physicians', hospital, dental reports, prescriptions, correspondence, test results, radiology reports and any other medical records that were submitted for claims review purposes; any claim record filed; records of any claim paid; records of all litigation; and any other records of any kind concerning or pertaining to the insured.  I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.  By signing this authorization, I expressly do not authorize any ex parte interview or oral communication about me or any information contained in the materials produced without the presence of my attorney.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ v. Boston Scientific, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to the** The MCS Group _____, **except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that she/he shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by** The MCS Group _____.

## EXHIBIT 7

## 236

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to <u>The MCS Group</u>                    .

---
Name of Individual

---
Former/Alias/Maiden Name of Individual

---
Individual's Date of Birth

---
Individual's Social Security Number

---
Individual's Address

---
Signature of Individual or Individual Representative

---
Date

---
Name of Individual Representative

---
Description of Authority

**EXHIBIT 7**

**237**

## AUTHORIZATION TO DISCLOSE MEDICAID INFORMATION

**To:**

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of The MCS Group _____ 1601 Market Street, Suite 800  Philadelphia, PA 19103 _____, any and all records containing Medicaid information, including those that may contain protected health information (PHI) regarding _____, whether created before or after the date of signature. This authorization should also be construed to permit agents or designees of The MCS Group _____ to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

> all Medicaid records, including explanations of Medicaid benefit records and claims records; any statements, communications, pro reviews, denials, appeals, correspondence, reports, questionnaires or records submitted in connection with claims; all reports from physicians, hospitals, dental providers, prescriptions; correspondence, test results and any other medical records; records of claims paid to or on the behalf of _____; records of litigation and any other records of any kind. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ v. Boston Scientific, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation. By signing this authorization, I expressly do not authorize any ex parte interview or oral communication about me or my medical history by The MCS Group _____ without the presence of my attorney.

> **NOTICE**
> - **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to** The MCS Group _____, **except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
> - **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
> - **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
> - **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
> - **The individual signing this authorization understands that they shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by** The MCS Group _____.

## EXHIBIT 7

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to The MCS Group_____.

| | |
|---|---|
| Name of Individual | Signature   of   Individual   or   Individual |
| Former/Alias/Maiden Name of Individual | Date |
| Individual's Date of Birth | Name of Individual Representative |
| Individual's Social Security Number | Description of Authority |
| Individual's Address | |

**EXHIBIT 7**

**239**

**AUTHORIZATION TO DISCLOSE EMPLOYMENT INFORMATION**

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose The MCS Group _____ 1601 Market Street, Suite 800 Philadelphia, PA 19103 _____, any and all records containing employment information, including those that may contain protected health information (PHI) regarding _____, whether created before or after the date of signature. Records requested may include, but are not limited to:

all applications for employment, resumes, records of all positions held, job descriptions of positions held, payroll records, W-2 forms and W-4 forms, performance evaluations and reports, statements and reports of fellow employees, attendance records, worker's compensation files; all hospital, physician, clinic, infirmary, nurse, dental records; test results, physical examination records and other medical records; any records pertaining to medical or disability claims, or work-related accidents including correspondence, accident reports, injury reports and incident reports; insurance claim forms, questionnaires and records of payments made; pension records, disability benefit records, and all records regarding participation in company-sponsored health, dental, life and disability insurance plans; material safety data sheets, chemical inventories, and environmental monitoring records and all other employee exposure records pertaining to all positions held; and any other records concerning employment with the above-named entity. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information. By signing this authorization, I expressly do not authorize any ex parte interview or oral communication about me or my employment history by The MCS Group _____ without the presence of my attorney.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ **v.** Boston Scientific, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to** The MCS Group _____, **except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that they shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by** The MCS Group _____.

**EXHIBIT 7**

**240**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to <u>The MCS Group</u>_____.

_____
Name of Employee

_____
Former/Alias/Maiden Name of Employee

_____
Employee's Date of Birth

_____
Employee's Social Security Number

_____
Employee's Address

_____
Signature of Employee or Employee Representative

_____
Date

_____
Name of Employee Representative

_____
Description of Authority

**EXHIBIT 7**

**241**

**AUTHORIZATION TO DISCLOSE WORKERS' COMPENSATION INFORMATION**

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to The MCS Group _____ 1601 Market Street, Suite 800 Philadelphia, PA 19103 _____, any and all records containing Workers' Compensation information, including those that may contain protected health information (PHI) regarding _____, whether created before or after the date of signature.  Records requested may include, but are not limited to:

all workers' compensation claims, including claim petitions, judgments, findings, notices of hearings, hearing records, transcripts, decisions and orders; all depositions and reports of witnesses and expert witnesses; employer's accident reports; all other accident, injury, or incident reports; all medical records; records of compensation payment made; investigatory reports and records; applications for employment; records of all positions held; job descriptions of any positions held; salary records; performance evaluations and reports; statements and comments of fellow employees; attendance records; all physicians', hospital, medical, health reports; physical examinations; records relating to health or disability insurance claims, including correspondence, reports, claim forms, questionnaires, records of payments made to physicians, hospitals, and health institutions or professionals; statements of account, itemized bills or invoices; and any other records relating to the above-named individual.  Copies (NOT originals) of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films and of any corresponding reports. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ v. Boston Scientific, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation.  This authorization is for the release of records only and does not allow for ex parte communications regarding the subject matter of this release and without the presence of my attorney.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to** The MCS Group _____, **except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that they shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by** The MCS Group _____.

**EXHIBIT 7**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to
The MCS Group                                    .

| | |
|---|---|
| Name of Individual | Signature of Individual or Individual Representative |
| Former/Alias/Maiden Name of Individual | Date |
| Individual's Date of Birth | Name of Individual Representative |
| Individual's Social Security Number | Description of Authority |
| Individual's Address | |

**EXHIBIT 7**

**243**

**Social Security Administration**
Consent for Release of Information

Form Approved
OMB No. 0960-0566

*SSA will not honor this form unless all required fields have been completed (\*signifies required field).*

TO:  Social Security Administration

_____    _____    _____
\*Name                              \*Date of Birth            \*Social Security Number

I authorize the Social Security Administration to release information or records about me to:

**\*NAME**                                    **\*ADDRESS**

Shook, Hardy & Bacon, LLP            Jamboree Center, 5 Park Plaza, Suite 1600, Irvine, CA 92614-2546

The MCS Group                             1601 Market Street, Suite 800, Philadelphia, PA 19103

\*I want this information released because:
*There may be a charge for releasing information.*

\*Please release the following information selected from the list below:
*You must check at least one box.  Also, SSA will not disclose records unless applicable date ranges are included.*

- ☐ Social Security Number
- ☐ Current monthly Social Security benefit amount
- ☐ Current monthly Supplemental Security Income payment amount
- ☐ My benefit/payment amounts from _____ to _____
- ☐ My Medicare entitlement from _____ to _____
- ☐ Medical records from my claims folder(s) from _____ to _____
  *If you want SSA to release a minor's medical records, do not use this form but instead contact your local SSA office.*
- ☐ Complete medical records from my claims folder(s)
- ☐ Other record(s) from my file (e.g. applications, questionnaires, consultative examination reports, determinations, etc.)

**I am the individual to whom the requested information/record applies, or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare under penalty of perjury in accordance with 28 C.F.R. § 16.41(d)(2004) that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge. I understand that anyone who knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000. I also understand that any applicable fees must be paid by me.**

\*Signature: _____        \*Date: _____

Relationship *(if not the individual)*: _____        \*Daytime Phone: _____

Form **SSA-3288** (07-2010) EF (07-2010)

# EXHIBIT 7

## 244

**Social Security Administration**
Consent for Release of Information

Form Approved
OMB No. 0960-0566

<u>Instructions for Using this Form</u>

Complete this form only if you want us to give information or records about you, a minor, or a legally incompetent adult, to an individual or group (for example, a doctor or an insurance company). If you are the natural or adoptive parent or legal guardian, acting on behalf of a minor, you may complete this form to release only the minor's non-medical records. If you are requesting information for a purpose not directly related to the administration of any program under the Social Security Act, a fee may be charged.

**NOTE:** Do not use this form to:

*   Request us to release the medical records of a minor. Instead, contact your local office by calling 1-800-772-1213 (TTY-1-800-325-0778), or

*   Request information about your earnings or employment history. Instead, complete form SSA-7050-F4 at any Social Security office or online at <u>www.ssa.gov/online/ssa-7050.pdf</u>.

<u>How to Complete this Form</u>

We will not honor this form unless all required fields are completed. An asterisk (*) indicates a required field. Also, we will not honor blanket requests for "all records" or the "entire file." You must specify the information you are requesting and you must sign and date this form.

*   Fill in your name, date of birth, and social security number or the name, date of birth, and social security number of the person to whom the information applies.

*   Fill in the name and address of the individual (or organization) to whom you want us to release your information.

*   Indicate the reason you are requesting us to disclose the information.

*   Check the box(es) next to the type(s) of information you want us to release including the date ranges, if applicable.

*   You, the parent or legal guardian acting on behalf of a minor, or the legal guardian of a legally incompetent adult, must sign and date this form and provide a daytime phone number where you can be reached.

*   If you are not the person whose information is requested, state your relationship to that person. We may require proof of relationship.

**PRIVACY ACT STATEMENT**

Section 205(a) of the Social Security Act, as amended, authorizes us to collect the information requested on this form. The information you provide will be used to respond to your request for SSA records information or process your request when we release your records to a third party. You do not have to provide the requested information. Your response is voluntary; however, we cannot honor your request to release information or records about you to another person or organization without your consent.

We rarely use the information provided on this form for any purpose other than to respond to requests for SSA records information. However, in accordance with 5 U.S.C. § 552a(b) of the Privacy Act, we may disclose the information provided on this form in accordance with approved routine uses, which include but are not limited to the following: 1. To enable an agency or third party to assist Social Security in establishing rights to Social Security benefits and/or coverage; 2. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; 3. To comply with Federal laws requiring the disclosure of the information from our records; and, 4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity of SSA programs.

We may also use the information you provide when we match records by computer. Computer matching programs compare our records with those of other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for Federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

Additional information regarding this form, routine uses of information, and other Social Security programs are available from our Internet website at <u>www.socialsecurity.gov</u> or at your local Social Security office.

**PAPERWORK REDUCTION ACT STATEMENT**

This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the <u>Paperwork Reduction Act of 1995</u>. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE.** You can find your **local Social Security office through SSA's website at <u>www.socialsecurity.gov</u>. Offices are also listed under U.S. Government agencies in your telephone directory or you may call 1-800-772-1213 (TTY 1-800-325-0778).** *You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. Send <u>only</u> comments relating to our time estimate to this address, not the completed form.*

Form **SSA-3288** (07-2010) EF (07-2010) Destroy Prior Editions

# EXHIBIT 7

## 245



# Medicare

Beneficiary Services:1-800-MEDICARE (1-800-633-4227)
TTY/TDD:1-877-486-2048

This form is used to advise Medicare of the person or persons you have chosen to have access to your personal health information.

**Where to Return Your Completed Authorization Forms:**
After you complete and sign the authorization form, return it to the address below:

**Medicare BCC, Written Authorization Dept.**
**PO Box 1270**
**Lawrence, KS 66044**

**For New York Medicare Beneficiaries ONLY**
The New York State Public Health Law protects information that reasonably could identify someone as having HIV symptoms or infection, and information regarding a person's contacts. Because of New York's laws protecting the privacy of information related to alcohol and drug abuse, mental health treatment, and HIV, there are special instructions for how you, as a New York resident, should complete this form.

- For question 2A, check the box for *Limited Information*, even if you want to authorize Medicare to release any and all of your personal health information.

- **Then proceed to question 2B.**

Medicare BCC, Written Authorization Dept.
PO Box 1270
Lawrence, KS 66044

**EXHIBIT 7**

**246**

**Instructions for Completing Section 2B of the Authorization Form:**
*Please select one of the following options.*

- **Option 1** To **include** all information, in the space provided, write: "all information, including information about alcohol and drug abuse, mental health treatment, and HIV". Proceed with the rest of the form.

- **Option 2** To **exclude** the information listed above, write "Exclude information about alcohol and drug abuse, mental health treatment and HIV" in the space provided. *You may also check any of the remaining boxes and include any additional limitations in the space provided.* For example, you could write "payment information". Then proceed with the rest of the form.

If you have any questions or need additional assistance, please feel free to call us at 1-800-MEDICARE (1-800-633-4227). TTY users should call 1-877-486-2048.

Sincerely,


1-800-MEDICARE
Customer Service Representative


Encl.


**EXHIBIT 7**

**247**

## Information to Help You Fill Out the
## "1-800-MEDICARE Authorization to Disclose Personal Health Information" Form

By law, Medicare must have your written permission (an "authorization") to use or give out your personal medical information for any purpose that isn't set out in the privacy notice contained in the Medicare & You handbook. You may take back ("revoke") your written permission at any time, except if Medicare has already acted based on your permission.

If you want 1-800-MEDICARE to give your personal health information to someone other than you, you need to let Medicare know in writing.

If you are requesting personal health information for a deceased beneficiary, please include a copy of the legal documentation which indicates your authority to make a request for information. (For example: Executor/Executrix papers, next of kin attested by court documents with a court stamp and a judge's signature, a Letter of Testamentary or Administration with a court stamp and judge's signature, or personal representative papers with a court stamp and judge's signature.) Also, please explain your relationship to the beneficiary.

Please use this step by step instruction sheet when completing your "1-800-MEDICARE Authorization to Disclose Personal Health Information" Form.  Be sure to complete all sections of the form to  ensure timely processing.

1.  Print the name of the person with Medicare.

    Print the Medicare number exactly as it is shown on the red, white, and blue Medicare card, including any letters (for example, 123456789A).

    Print the birthday in month, day, and year (mm/dd/yyyy) of the person with Medicare.

2.  This section tells Medicare what personal health information to give out.  Please check a box in 2a to indicate how much information Medicare can disclose.  If you only want Medicare to give out limited information (for example, Medicare eligibility), also check the box(es) in 2b that apply to the type of information you want Medicare to give out.

3.  This section tells Medicare when to start and/or when to stop giving out your personal health information.  Check the box that applies and fill in dates, if necessary.

4.  Medicare will give your personal health information to the person(s) or organization(s) you fill in here.  You may fill in more than one person or organization.  If you designate an organization, you must also identify one or more individuals in that organization to whom Medicare may disclose your personal health information.

## EXHIBIT 7

5. The person with Medicare or personal representative must sign their name, fill in the date, and provide the phone number and address of the person with Medicare.

   If you are a personal representative of the person with Medicare, check the box, provide your address and phone number, and attach a copy of the paperwork that shows you can act for that person (for example, Power of Attorney).

6. Send your completed, signed authorization to Medicare at the address shown here on your authorization form.

7. If you change your mind and don't want Medicare to give out your personal health information, write to the address shown under number six on the authorization form and tell Medicare.  Your letter will revoke your authorization and Medicare will no longer give out your personal health information (except for the personal health information Medicare has already given out based on your permission).

You should make a copy of your signed authorization for your records before mailing it to Medicare.

**EXHIBIT 7**

### 1-800-MEDICARE Authorization to Disclose Personal Health Information

Use this form if you want 1-800-MEDICARE to give your personal health information to someone other than you.

_____     _____     _____

1. **Print Name**                          **Medicare Number**              **Date of Birth**
   (First and last name of the person with Medicare)   (Exactly as shown on the Medicare Card)   (mm/dd/yyyy)

2. Medicare will only disclose the personal health information you want disclosed.

   **2A:  Check only _one_ box below to tell Medicare the specific personal health information you want disclosed:**

   ☐ Limited Information (go to question 2b)

   ☐ Any Information (go to question 3)

   **2B:  Complete _only_ if you selected "limited information". Check all that apply:**

   ☐ Information about your Medicare eligibility

   ☐ Information about your Medicare claims

   ☐ Information about plan enrollment (e.g. drug or MA Plan)

   ☐ Information about premium payments

   ☐ Other Specific Information (please write below; for example, payment  information)

   _____

3. **Check only _one_ box below indicating how long Medicare can use this  authorization to disclose your personal health information** (subject to applicable  law—for example, your State may limit how long Medicare may give out your  personal health information):

   ☐ Disclose my personal health information indefinitely

   ☐ Disclose my personal health information for a specified period only
      beginning:  (mm/dd/yyyy)_____   and ending: (mm/dd/yyyy) _____

## EXHIBIT 7

4. **Fill in the name and address of the person(s) or organization(s) to whom you want Medicare to disclose your personal health information.  Please provide the specific name of the person(s) for any organization you list below:**

    1.  Name:  <u>Shook, Hardy & Bacon, LLP</u>

           Address:  <u>Jamboree Center, 5 Park Plaza, Suite 1600, Irvine, CA 92614-2546</u>

    2.  Name:  <u>The MCS Group</u>

           Address:  <u>1601 Market Street, Suite 800  Philadelphia, PA</u> 19103

    3.  Name:  _____

           Address:  _____

5.

> **I authorize 1-800-MEDICARE to disclose my personal health information listed above to the person(s) or organization(s) I have named on this form.  I understand that my personal health information may be re-disclosed by the person(s) or organization(s) and may no longer be protected by law.**
>
> _____   _____   _____
> Signature                                 Telephone Number              Date (mm/dd/yyyy)
>
> Print the address of the person with Medicare  (Street Address, City, State, and ZIP)
>
> _____
>
> _____
>
> ☐ Check here if you are signing as a personal representative and complete below.
>     Please attach the appropriate documentation (for example, Power of Attorney).
>     This <u>only</u> applies if someone other than the person with Medicare signed above.
>
> Print the Personal Representative's Address (Street Address, City, State, and ZIP)
>
> _____
>
> _____
>
> Telephone Number of Personal Representative: _____
>
> Personal Representative's Relationship to the Beneficiary: _____

**EXHIBIT 7**

6. **Send the completed, signed authorization to**:

<div align="center">

Medicare BCC, Written Authorization Dept.
PO Box 1270
Lawrence, KS 66044

</div>

7. **Note:**

You have the right to take back ("revoke") your authorization at any time, in writing, except to the extent that Medicare has already acted based on your permission. If you would like to revoke your authorization, send a written request to the address shown above.

Your authorization or refusal to authorize disclosure of your personal health information will have no effect on your enrollment, eligibility for benefits, or the amount Medicare pays for the health services you receive.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is **0938-0930**. The time required to complete this information collection is estimated to average **15 minutes** per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

<div align="center">

**EXHIBIT 7**

</div>

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1600, Irvine, California 92614.

On April 6, 2015, served on the interested parties in said action the within:

**[PROPOSED] ORDER GRANTING PEITION FOR COORDINATION OF ADD-ON CASE NO. A13**

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☐ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above.  The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, and to be delivered by their next business day delivery service to the addressee designated.

☐ (BY ELECTRONIC SERVICE) By electronically mailing a true and correct copy through Shook, Hardy & Bacon LLP's electronic mail system to the e-mail address(es) as stated on the attached service list

☒ (ELECTRONIC service) I provided the document(s) listed above electronically through the CaseAnywhere system pursuant to the instructions set forth for this matter, as ordered by the Superior Court of Los Angeles, State of California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 6, 2015, at Irvine, California.

| | |
|---|---|
| Janice Liu | *(Signature)* |
| (Type or print name) | (Signature) |

## EXHIBIT 7

**253**

222096 v2

1
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
2
Mark P. Robinson, Jr. (SBN: 054426)
Karen Barth Menzies  (SBN: 180234)
3
Karen L. Karavatos (SBN: 131718)
Amanda Robinson  (SBN: 254711)
4
19 Corporate Plaza Drive
Newport Beach, CA 92660
5
949-720-1288; Fax 949-720-1292

6
Attorneys for Plaintiffs

7

8
SHOOK, HARDY & BACON L.L.P.
Eva M. Weiler (SBN:  233942)
Brian P. Ziska (SBN:  272043)
9
Jamboree Center
5 Park Plaza, Suite 1600
10
Irvine, California 92614-2546
Telephone:  949-475-1500
11
Facsimile: 949-475-0016

12
Attorneys for Defendant
13
Boston Scientific Corporation

14
OTHER PARTIES INCLUDED IN
SIGNATURE BLOCK AT END

15

16
SUPERIOR COURT OF THE STATE OF CALIFORNIA

17
FOR THE COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

18
**COORDINATION PROCEEDING
SPECIAL TITLE (Rule 3.550)**
19

**TRANSVAGINAL MESH PRODUCT
CASES**
20

21

22
This document relates to:

23
*All Cases.*

24

25

26

27

28

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 31 2015

Sherri R. Carter, Executive Officer/Clerk
By: Michele Torres, Deputy

**JCCP NO. 4733**

Caldera Coordination Petition: 8/21/12
AMS Coordination Petition: 4/10/14
Boston Scientific Corporation
Coordination Petition: 5/29/14

Coordination Trial Judge:
Hon. William F. Highberger, Dept. 322

**JOINT REPORT FOR AUGUST 5, 2015
HEARING**

Date:      August 5, 2015
Time:      1:30 p.m.
Dept.:     322

**EXHIBIT 8**

JOINT REPORT FOR AUGUST 5, 2015 HEARING

1    In compliance with this Court's Order at the June 30, 2015 status conference,

2    plaintiffs and defendants Caldera Medical, Inc. ("Caldera"); American Medical Systems

3    ("AMS"); C.R. Bard, Inc. ("Bard"); Boston Scientific Corporation ("Boston Scientific");

4    Coloplast Corp. and Coloplast Manufacturing US, LLC ("Coloplast"); Cook

5    Incorporated, Cook Biotech Incorporated, and Cook Medical Incorporated (collectively

6    "Cook"); Ethicon, Inc., Ethicon L.L.C., and Johnson & Johnson ("Ethicon"); and Atrium

7    Medical Corporation, Maquet Cardiovascular LLC, and Maquet Cardiovascular US

8    Sales, LLC (collectively "Atrium") (collectively hereafter "Mfr. Defendants"), hereby

9    submit their Joint Report in the Transvaginal Mesh Product Cases, JCCP No. 4733.

10

11   **I.   SEVERANCE AND SEPARATE TRIAL OF JOINT VENTURE THEORY**

12   **OF LIABILITY AGAINST AMS AND COLOPLAST**

13   **A.   Defendants' Position**

14   i.   Coloplast's Position

15   Defendant Coloplast Inc. and Coloplast Manufacturing LLC (together,

16   "Coloplast") respectfully responds as follows to the request in Paragraph 11 of the

17   Court's June 30, 2015 Notice of Ruling regarding an early trial on Plaintiffs' joint

18   venture theory.

19   Counsel for Coloplast conferred with lead counsel for Plaintiffs earlier this week

20   regarding a Conditional Settlement of all claims against Caldera. It is Coloplast's

21   understanding that Plaintiffs are not pursuing, at the present time, the "Joint Venture"

22   allegations involving Coloplast that were the subject of Coloplast's demurrer. Thus,

23   consistent with Plaintiffs' and Caldera's prior request for continuance, Coloplast requests

24   that the OSC regarding the severance of the joint venture claims for early trial be

25   continued to September 9 to allow the parties to work through these issues and finalize

26   the Conditional Settlement.

27

28

**EXHIBIT 8**

1    However, if the claims against Coloplast that derive from Caldera products and
2    the joint venture allegations are not settled, then Coloplast is prepared to move to a brief,
3    quick trial on that issue. Specifically, Coloplast responds as follows:

4    • whether the parties are in favor of or against an early trial – **Yes**. Coloplast
5    strongly believes that an adjudication of this issue should be reached before any
6    further proceedings as against Coloplast. In light of the Conditional Settlement,
7    Coloplast respectfully suggests that all proceedings be held in abeyance pending
8    completion of Caldera's purported resolution.

9    • whether a jury would be demanded – **No**. An early trial would result in a
10   declaratory judgment resolving the issue of whether plaintiffs may pursue their
11   joint venture claims against Coloplast, which is a question of equity. A jury is
12   therefore unnecessary. *Caira v. Offner* (2005) 126 Cal. App. 4th 12, 24
13   ("declaratory relief developed as an equitable form of relief" and is not triable by
14   a jury); *see also C&K Engineering Contractors v. Amber Steel Co.* (1978) 23
15   Cal.3d 1, 11 (no jury is needed when "[t]he 'gist' of such an action is equitable").

16   • how long the parties expect the trial to last – **One-to-Three (1-3) Day Bench**
17   **Trial**. The issues here are limited to the plain language of a single contract, and
18   can be resolved quickly in Coloplast's favor on the face of the document itself.

19   • what month the parties propose the trial should be conducted. Prior to Caldera's
20   announcement of a Conditional Settlement, Coloplast was prepared to proceed in
21   **November 2015**. However, in light of these developments, Coloplast suggests
22   that the date of the trial, and all proceedings herein, be held in abeyance pending
23   resolution of the Conditional Settlement.

24              ii.  AMS Position

25   AMS' position is that the OSC should be continued for 30 days so that the parties
26   can confer on how best to proceed (including, potentially resolving the claims involving
27   AMS), in light of the conditional settlement between Federal, plaintiffs and Caldera.

28                **EXHIBIT 38**

**B.    Plaintiffs' Position**

Plaintiffs entirely disagree with Coloplast's interpretation of claims Plaintiffs are pursuing.   Plaintiffs are filing a separate brief in opposition to the OSC.   Plaintiffs demand a jury trial on all issues, whether severed, bifurcated, or consolidated.   Plaintiffs trial time estimated for severed or bifurcated issues is 4 to 6 weeks.   Any such trial should not be set before February of 2016.

**II.    DISCOVERY IN BOSTON SCIENTIFIC GROUPS 1 AND 2**

**A.    Status of Plaintiff Profile Form ("PPF") Submission in Group 1 and 2**

Plaintiffs have provided, and continue to provide, Plaintiff Profile Forms to BSC in compliance with this Court's prior Case Management Order.  To date, Plaintiffs have provided 106 of 244 PFFs, and are finalizing an additional 71 PFFs for submission this week, which will bring the total to 177 of 244 PFFs (approximately 73%). Plaintiffs and are in the process of obtaining and providing the remainder. It is estimated that this process will be complete by **August 14, 2015**.

**B.    Party Proposals Regarding Selection of Discovery Group 1 Cases and Further Discovery**

In Case Management Order ("CMO") No. 1, the parties agreed and the Court ordered that the parties must meet and confer regarding identification of cases for Discovery Group 1 by November 2, 2015.   CMO No. 1 further ordered that Discovery Group 1 is to include no more than 10 individual plaintiffs.  If the parties are unable to agree on the individual plaintiffs for Discovery Group 1, the parties are to submit their proposed lists within 14 days, with an opening memorandum in support of their selections. Within 10 days of that submission, the parties could respond, and then provide an oral presentation to the Court on a trial pool proposal.

The parties have met and conferred, and have come to an impasse on the particular procedures for selecting the Discovery Group 1 plaintiffs and a discovery

**EXHIBIT 8**

1  plan.  The parties would like to seek the Court's guidance on the particular proposals

2  during the status conference.

3

4  **1.     Boston Scientific's Position**

5  *Case Selection for Discovery Group 1:* Cases selected for Discovery Group 1

6  should be limited by the following parameters:

7      a.  they should include only single product cases;

8      b.  they should be split so that pelvic organ prolapse ("POP") and stress

9          urinary incontinence ("SUI") cases are represented (2 POP cases and 3

10         SUI cases for each side), and

11      c.  they should include cases where the plaintiff had no more than one

12         revision.[1]

13      These limitations enable the Court and the parties to have true bellwether cases that

14  are representative of the range of cases presented.  (See Manual for Complex Litigation,

15  Fourth, § 22.315 ["If individual trials, sometimes referred to as bellwether trials or test

16  cases, are to produce reliable information about other mass tort cases, the specific

17  plaintiffs and their claims should be representative of the range of cases."].)   For

18  example, of the 244 plaintiffs in *Edgar, Mauck, Muller,* and *Pate*, only 39 involve the

19  implantation of multiple products.  Having single product cases is thus representative of

20  the vast majority of plaintiffs that would potentially be included in Discovery Group 1.

21  In addition, of the Boston Scientific polypropylene mesh products identified in discovery

22  responses, there are 200 SUI products identified, and just POP products identified.

23

24  _____

25  [1]  In the MDL proceeding, Judge Goodwin ordered that these limitations would apply to
    the bellwether selections, among other limitations that the parties are not requesting at

26  this time.  (See *In re: Boston Scientific Corp., Pelvic Repair System Products Liability
    Litigation* (MDL 2326, August 7, 2013) Pretrial Order No. 51 [Order re:  Bellwether

27  Selections].)  A copy of the order is attached as Exhibit A.

28  **EXHIBIT 8**

| SUI Products | POP Products |
|---|---|
| Advantage (54) | Pinnacle (18) |
| Lynx (41) | Uphold (18) |
| Obtryx (70) | |
| Prefyx (7) | |
| Solyx (28) | |

These numbers justify why a smaller number of POP cases should be selected per side. Further, in the discovery responses received, 200 plaintiffs indicated they have had one or less excision procedures, with only four plaintiffs indicating two excision procedures, and none identifying more than two procedures.  The bellwether plaintiff selections should likewise be limited to those plaintiffs with no more than one revision procedure.

Following application of these limitations to the Group 1 and 2 plaintiff pool, each party should meet and confer and select **5 cases** meeting these criteria and submit them to the Court by **November 2, 2015**, as ordered in in CMO 1.  If either party submits cases that do not conform to these limitations, briefing (as set out in CMO 1) regarding opposition to the same can be submitted to the Court for ruling.

*Further Discovery for Discovery Group 1:* After this Court enters an order confirming the **ten (10)** cases to be included in Discovery Group 1 (hereafter "Bellwether Order"), Boston Scientific proposes the following process and discovery should be carried out with respect to those ten (10) cases only:

    a.  Full plaintiff fact sheets ("PFS") are to be served on Boston Scientific within 20 days of entry of the Bellwether Order.

    b.  Defense fact sheets are to be served on plaintiffs within 40 days of entry of the Bellwether Order.

    c.  Fact witness depositions may be set to begin to occur no earlier than 75 days after entry of the Bellwether Order (which is 55 days following

**EXHIBIT 8**

259   **JOINT REPORT FOR AUGUST 5, 2015 HEARING**

the last date on which a PFS could have been served), following receipt of the PFSs. This time is needed to collect necessary medical records.

d. Depositions to be taken during this time period include: plaintiff, implanter, explanter, additional treating physicians, and other fact witnesses. Each party shall have the right to take lead at the depositions in their own cases; however, if they do not desire to take a particular deposition, the other side may take the lead during the deposition of any additional witness's deposition that they seek. All these depositions are to be taken within 90 days from the date they could first be scheduled.

e. Following completion of the discovery in (a)-(c), the parties will conduct alternate strikes of each other's cases, within seven (7) days, so that of the ten (10) cases, four (4) cases remain, consisting of two (2) cases per side, comprised of one (1) POP and one (1) SUI case per side.

f. Expert discovery, and any additional follow-up fact discovery, would then be completed by July 31, 2016, with staggered production of expert designations.

g. First trials would then begin in August 2016.

**2.     Plaintiff's Position:**

Plaintiffs propose that from the current claims pending before the JCCP that stem from a BSC product only (i.e. "Group 1" cases), Plaintiffs shall select 5 cases for Phase One Discovery and BSC shall select 5 cases for Phase One Discovery. Plaintiffs propose that Plaintiffs and BSC shall provide their respective selections on or before **November 2, 2015.**

**EXHIBIT 8**

**260**     **JOINT REPORT FOR AUGUST 5, 2015 HEARING**

Upon selection, each of the selected Plaintiffs will provide a completed Plaintiff Fact Sheet ("PFS") on or before **November 27, 2015**.  BSC will provide a responsive Defendant Fact Sheet on or before **December 18, 2015.**

Plaintiffs further propose that expert designations and reports for these 10 cases can be made by Plaintiff on or before **January 22, 2016**, with Defendants' expert designations and reports for these 10 cases being due **February 22, 2016.**  Plaintiffs propose that discovery with respect to these 10 selected cases can be completed by **March 25, 2016**.  Plaintiffs request that the Court set these cases for trial(s) on or before **April 25, 2016**.

Plaintiffs have conferred with BSC regarding the mechanism for trial selection and future pre-trial deadlines, but have not reached an agreement in that regard. However, Plaintiffs and BSC agree that 5 case selections per side are appropriate for the first phase of Discovery Group 1 cases, though BSC wants certain limitations that Plaintiffs oppose.

Specifically, Plaintiffs have considered BSC's suggestion to limit the 5 cases selected by each side to a certain ratio of product types and categories, but Plaintiffs disagree that such a limitation is necessary for the efficient prosecution of these claims. Plaintiffs contend that selecting 5 cases without limitation or influence from the opposing side creates a more accurate cross-section of cases for the first phase of trials. As such, Plaintiffs do not consent or agree to this proposed limitation.

In addition, Plaintiffs have considered BSC's suggestion to limit the 5 cases selected by each side to certain specific products, but Plaintiffs disagree that such a limitation is necessary for the efficient prosecution of these claims. Plaintiffs contend that selecting 5 cases without limitation or influence from the opposing side creates a more accurate cross-section of cases for the first phase of trials. As such, Plaintiffs do not consent or agree to this proposed limitation.

**EXHIBIT 8**

1   Plaintiffs have also considered BSC's suggestion to limit the 5 cases selected by

2   each side to cases that do not involve two separate BSC products implanted at the same

3   time, but Plaintiffs disagree that such a limitation is necessary for the efficient

4   prosecution of these claims. Plaintiffs contend that selecting 5 cases without such

5   limitation or influence from the opposing side creates a more accurate cross-section of

6   cases for the first phase of trials. As such, Plaintiffs do not consent or agree to this

7   proposed limitation.

8   Plaintiffs have considered BSC's suggestion to limit the 5 cases selected by each

9   side to cases that do not involve women with more than two revision surgeries, but

10   Plaintiffs disagree that such a limitation is necessary for the efficient prosecution of

11   these claims. Plaintiffs contend that selecting 5 cases without such limitation or

12   influence from the opposing side creates a more accurate cross-section of cases for the

13   first phase of trials. As such, Plaintiffs do not consent or agree to this proposed

14   limitation.

15   Finally, Plaintiffs have considered BSC's suggestion to limit the 5 cases selected

16   by each side to cases which do not involve women with more than one revision surgery,

17   but Plaintiffs disagree that such a limitation is necessary for the efficient prosecution of

18   these claims. Plaintiffs contend that selecting 5 cases without such limitation or

19   influence from the opposing side creates a more accurate cross-section of cases for the

20   first phase of trials. As such, Plaintiffs do not consent or agree to this proposed

21   limitation.

22   Plaintiffs contend that the discovery and schedule outline above will facilitate the

23   efficient adjudication of the Phase One/Group 1 Plaintiffs, and request that the Court

24   enter a revised Case Management Order that adopts the deadlines, mechanism for case

25   selection, and proposal made by Plaintiffs with that goal in mind.

26

27

28   **EXHIBIT 8**

## C.   Boston Scientific Document Production

### 1.   Plaintiffs' Position:

With respect to discovery, Plaintiffs previously served written discovery requests on BSC on March 4, 2014, which Plaintiffs contend were not adequately answered. Since that time, and in accordance with this Court's order, BSC has produced a hard drive containing what it represents is all production made by BSC in the West Virginia MDL and certain Massachusetts state court proceedings.   Plaintiffs contend that the documents produced were not produced in compliance with Plaintiffs' instructions regarding Electronically Stored Information ("ESI") and the applicable California rules concerning the same.   Plaintiffs are in the process of reviewing the documents and information produced. Plaintiffs anticipate filing a motion with this Court requesting supplementation of BSC's prior production to address these deficiencies. Plaintiffs further anticipate serving additional written discovery requests relating to both liability related issues and the Group 1 Plaintiffs' claims.

### 2.   Boston Scientific Response:

Following coordination, this Court ordered Boston Scientific to provide a reproduction of its MDL and Massachusetts productions (over 9 million pages) in this proceeding, and it complied, providing hard drives to all plaintiffs' and doctors' counsel that wanted it.  (See Notice of Rulings on December 2, 2014, at p. 3.)[2]   During a recent meet and confer session, plaintiffs' counsel also asked whether there is an updated production in either of those proceedings.  Boston Scientific is currently looking into this request and will put together any necessary update for submission to plaintiffs as well.

Until this joint statement and a letter received a letter via fax on July 29, 2015, Boston Scientific was unaware of any alleged deficiencies in its document production. The discovery requests to which plaintiffs refer above were served by counsel for the four multi-plaintiff cases at issue, *Edgar, Mauck, Muller,* and *Pate*, prior to coordination.

---

[2] A copy of the notice of ruling is attached as Exhibit B.

**EXHIBIT 8**

1  The parties agreed before coordination to stay that discovery, most of which related to

2  forum non conveniens issues, due to the petition for coordination and the inevitable

3  discovery that would ensue in any resulting coordinated proceeding. There is no basis

4  for plaintiffs' assertion that any discovery was not "adequately answered."

5      As discussed by the parties and the Court in prior status conferences, there is no

6  need for additional and potentially onerous and burdensome discovery requests to be

7  served unless and until plaintiffs have reviewed the document production from the

8  federal MDL proceeding and coordinated Massachusetts proceeding and found there to

9  be necessary information that was not previously produced. Plaintiffs have not

10  identified any categories of information that they perceive to be missing from the

11  productions, nor have plaintiffs met and conferred on any issues relating to the

12  production as a whole. To the extent there are additional topics of discovery not covered

13  within the voluminous discovery produced to plaintiffs thus far, Boston Scientific would

14  like to engage in a meaningful meet and confer process to try and address any concerns.

15  Any discovery motions contemplated by plaintiffs is premature.

16

17  Dated: July 30, 2015         **SHOOK, HARDY & BACON L.L.P.**

18

19                  By:_____ /s/ Eva M. Weiler_____
                          Eva M. Weiler

20                    Attorneys for Defendant Boston Scientific
                  Corporation

21

22  Dated: July 30, 2015         **REED SMITH**

23

24                  By:_____ /s/ David Stanley_____
                        David Stanley

25                   Attorneys for Defendants American Medical
                 Systems, Endo Health Solutions, Inc. and

26                    Endo Pharmaceuticals, Inc.

27

28               **EXHIBIT 8**

1    Dated:  July 30, 2015                    **REED SMITH**

2

3                                            By:_____/s/  Eric J. Buhr_____
                                                        Michael K. Brown
4                                                         Eric J. Buhr
                                             Attorneys for Defendant C.R. Bard, Inc.
5

6    Dated:  July 30, 2015                    **FULBRIGHT & JAWORSKI LLP**

7

8                                            By: _____/s/  Lesley E. Swanson_____
                                                        Jan E. Dodd, Esq.
9                                                     Tarifa B. Laddon, Esq.
                                                     Lesley E. Swanson, Esq.
10                                                  Attorneys for Defendants,
                                             Coloplast Corp. and Coloplast Manufacturing
11                                                           US, LLC

12   Dated:  July 30, 2015                    **ROBINSON CALCAGNIE ROBINSON
                                             SHAPIRO DAVIS INC.**
13

14
                                             By: _____/s/  Karen Karavatos_____
15                                                      Mark P. Robinson, Jr.
                                                        Karen Barth Menzies
16                                                      Karen L. Karavatos

17                                               Co-Plaintiffs' Liaison Counsel

18

19   Dated:  July 30, 2015                    **MOSTYN LAW**

20

21                                           By: _____/s/  Mark Sparks_____
                                                          Mark Sparks
22                                               Counsel For Certain Plaintiffs

23

24   Dated:  July 30, 2015                    **ARNOLD & ITKIN LLP**

25

26                                           By: _____/s/  Noah M. Wexler_____
                                                          Noah M. Wexler
27                                               Counsel For Certain Plaintiffs

28                               **EXHIBIT 28**

# Exhibit A

EXHIBIT 8

266

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:  BOSTON SCIENTIFIC CORP.,
          PELVIC REPAIR SYSTEM
          PRODUCTS LIABILITY LITIGATION

                                                                MDL No. 2326

--------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER # 51**
(Order re:  Bellwether Case Selection)

On August 1, 2013, I heard bellwether presentations from the parties in this MDL.  I am not satisfied with most of the proposed selections I received from the parties.  From the plaintiffs there were multi-product picks, while defendants offered several picks with potential statute of limitations issues (plaintiffs offered one pick that defendants assert may be subject to a statute of limitations issue).  Both parties offered selections that were not representative based on age and other factors or because they had conditions that made the cases outliers (Alzheimer's disease, vaginal obliteration, participation in drug studies, active runner with infertility issues, etc.).  I find it necessary for the parties to resubmit their bellwether selections with more representative cases.  Because the parties seem unwilling or unable to do this on their own, I find it necessary to set the following parameters for what is representative:

(1) No more than eight (8) nominations per side, including only the Obtryx, Advantage/Fit, Pinnacle and Uphold products;

(2) Single product cases only;

(3) Age range of plaintiff: 40-60 years old at implant;

(4) Number of revision surgeries; i.e., surgery under general anesthesia:  0-3;

**EXHIBIT 8**

**267**

(5) No statute of limitations issues; and

(6) No comorbidities or other circumstances that make the plaintiff an outlier or otherwise not representative of the majority of plaintiffs such that the case is not a true bellwether case.

It is **ORDERED** that the parties file their amended bellwether selections simultaneously on **Monday, August 12, 2013, at noon.  The parties may agree to an earlier time if they wish.**  The submissions may be accompanied by a three-page brief in support of the selections. Each side may file a two-page response to the opposing parties' selections on or before **Wednesday, August 14, 2013, at noon.**   Thereafter, I will choose six (6) bellwether cases (rather than five (5)) for the three rounds of trials scheduled for February 11, June 17, and September 9, 2014.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2326 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:13-cv-18645.  In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint.  In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer.  It shall be the responsibility of the parties to review and abide by all pretrial

**EXHIBIT 8**

**268**

orders previously entered by the court.  The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER:  August 7, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

**EXHIBIT 8**

**269**

# Exhibit B

**EXHIBIT 8**

**270**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 09 2014

Sherri R. Carter, Executive Officer/Clerk
By: Robin Sanchez, Deputy

1   SHOOK, HARDY & BACON L.L.P.
    Eva M. Weiler (SBN: 233942)
2   Lael A. Awong (SBN: 246423)
    Brian P. Ziska (SBN: 272043)
3   Jamboree Center
    5 Park Plaza, Suite 1600
4   Irvine, California 92614-2546
    Telephone:   949-475-1500
5   Facsimile:   949-475-0016

6   Attorneys for Defendant
    Boston Scientific Corporation

7

8                   SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF LOS ANGELES

10

11  Coordinated Proceeding Special Title      )   JUDICIAL COUNCIL COORDINATION
    (CRC 3.550)                               )   PROCEEDING NO. 4733
12                                            )
    **TRANSVAGINAL MESH MEDICAL**            )   Judge: Hon. William F. Highberger
13  **PRODUCT CASES**                        )   Dept.: 322
                                              )
14  _____         )   **NOTICE OF RULINGS ON DECEMBER**
                                              )   **2, 2014**
15  This document relates to:                 )
                                              )
    *All Cases.*                              )
16                                            )
                                              )
17  _____         )

18  **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

19          **PLEASE TAKE NOTICE** that, on December 2, 2014, Judge Highberger issued the

20  following rulings:

21          1.      For the reasons stated in the tentative ruling attached hereto as Exhibit A, as

22  well as based on the additional comments by the Honorable William F. Highberger in open

23  court, a transcript of which is attached hereto as Exhibit B, Boston Scientific Corporation's

24  Motion To Dismiss Or Stay Claims Of Out-Of-State Plaintiffs Based On Forum Non

25  Conveniens is denied in *Muller, et al. v. American Medical Systems, Inc., et al.*, Los Angeles

26  Superior Court Case No. BC515042.

27          2.      The parties may submit documents with an electronic "/s/" signature. "Wet

28  ink" signatures will not be required for filings in the JCCP.

EXHIBIT B

**271**

1     3.     A further status conference to set the date and time for a mandatory settlement

2    conference in January regarding the claims against Caldera is set for **December 9, 2014, at**

3    **2:00 p.m. in Department 322 of the above-entitled Court, Central Civil West**

4    **Courthouse, 600 S. Commonwealth Ave., Los Angeles, CA 90005**.

5     4.     If there is full agreement amongst the parties interested in the Caldera

6    mandatory settlement conference as to the protocol and the choice of available judges, then

7    the December 9, 2014 Status Conference may go off-calendar.  The parties were advised to

8    use the bulletin board to give notice of any such agreement.  If there is less than a full

9    agreement, a stipulation and proposed order as to those points that are agreed to and briefs in

10   regard to the points that are not agreed to is ordered to be served on CaseAnywhere on or

11   before close of business on **December 8, 2014**, and may be filed with the Court thereafter.

12     5.     The Court denied the request to open discovery against Caldera.

13     6.     The Court reserved Science Day for **January 29, 2015, at 9:30 a.m. in**

14   **Department 322 of the above-entitled Court, Central Civil West Courthouse, 600 S.**

15   **Commonwealth Ave., Los Angeles, CA 90005**.  Applications for counsel to be admitted

16   pro hac vice may be filed prior to the Science Day.  The Court will not require a formal

17   notice for the pro hac applications.  The key parties to be engaged in Science Day will meet

18   and confer and submit a stipulation to the Court regarding the details for the procedure of

19   Science Day.  Only those key parties will sign the stipulation, but the stipulation will be

20   served such that other parties to the JCCP have opportunity to submit objections if necessary.

21     7.     A further status conference is set on **December 11, 2014, at 1:00 p.m. in**

22   **Department 322 of the above-entitled Court, Central Civil West Courthouse, 600 S.**

23   **Commonwealth Ave., Los Angeles, CA 90005**.

24     8.     A joint report is ordered to be filed on or before **December 9, 2014**, which is

25   two days before the further status conference.

26     9.     Boston Scientific's proposed protective order was entered by the Court.  The

27   Court added language to paragraph (C)(3) on page 8 stating that discovery motions can be

28

**EXHIBIT 8**

**272**   2

1   filed under seal without making an application or motion to seal per California Rules of

2   Court, rule 2.550(a)(3).

3        10.     The stay on discovery with respect to Boston Scientific was lifted only to allow

4   the reproduction of those documents produced by Boston Scientific in the federal multi-

5   district litigation, *In Re: Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.*,

6   MDL No. 2326 and in the Massachusetts coordinated proceeding *In Re: Specially Assigned*

7   *Mesh Implant Cases*, Master Docket No. 11-3750M.

8        11.     The order to show cause regarding why the claims of the plaintiff Carolyn

9   Boyden should not be dismissed was discharged.

10       12.     Boston Scientific Corporation was ordered to give notice of rulings that

11  occurred on December 2, 2014.

12

13  Dated:  December 9, 2014                          SHOOK, HARDY & BACON L.L.P.

14

15                                              By:

16                                                    Eva M. Weiler
                                                      Lael A. Awong
17                                                    Brian P. Ziska
                                                      Attorneys for Defendant Boston Scientific
18                                                    Corporation

19

20

21

22

23

24

25

26

27
                                **EXHIBIT 8**
28
                                **273** ³

EXHIBIT A

**EXHIBIT 8**

**274**

**JCCP4733** *Transvaginal Mesh Medical Products Cases*

**Dec. 2, 2014 Tentative**

**Boston Scientific's Motion To Dismiss Or Stay Claims Of Out-Of-State Plaintiffs Based On Forum Non Conveniens:  Denied**

*Procedural History:*

This motion was originally filed in BC515042 *Muller et al. v. American Medical Systems, Inc. et al.* while that case was pending in Dept. 16 at the Stanley Mosk Courthouse.  That case has since been coordinated with a number of other Transvaginal Mesh Medical Products Cases.  The coordinated cases started out with a large number of individual tort claims filed against Caldera Medical Products (and other co-defendants).  It was thereafter joined with a large number of cases filed as to AMS, also known as American Medical Systems (and other co-defendants) and a large number of cases filed as to Boston Scientific (and other co-defendants).  An additional group of Transvaginal Mesh Medical Product Cases were filed in California state courts as to defendant Johnson & Johnson and those were set to be coordinated with these other cases before the Johnson & Johnson cases were removed to federal court.

*The Federal MDL:*

There are multiple Multi-District Litigation ("MDL") proceedings pending in federal court in West Virginia, organized by the various manufacturer defendants.  Moving party states that as of April 2014 "[t]here are already over 10,000 similar actions now pending in the federal Multi-District Litigation for BSC pelvic mesh device liability matters."  Recently four MDL plaintiffs had their cases tried in Florida, and another four MDL plaintiffs had their cases tried in West Virginia.  Defendant Boston Scientific has advised in its moving and reply papers regarding this motion that it intends to exercise its right in the federal MDL process to have individual plaintiff cases tried in the federal district court in which the claims were first submitted to federal court jurisdiction, which means that the federal trials will be spread across the United States to reflect the state of filing of the original tort claims.

There are a large number of actions pending in state courts in certain states where a specific manufacturer is domiciled and thus unable to remove to federal court based on diversity jurisdiction.  (Caldera is one such example here in California.)  These appear to include courts in Massachusetts, New Jersey and Pennsylvania.

In situations where specific cases are removable to federal court based on diversity jurisdiction, Boston Scientific has routinely exercised its right to remove such cases and then to have them sent for pre-trial proceedings to the pending MDL in the federal court in West Virginia.

*Status Of This Coordinated Proceeding:*

Certain defendants (Caldera, AMS and Coloplast) appear to be trying to negotiate global or inventory settlements of the claims against them with the various plaintiff counsel active before this Court.  Other defendants (e.g. Boston Scientific and C.R. Bard) appear to be actively litigating these cases on their merits, which is their due process right.  By this motion Boston

**EXHIBIT 8**

**275**

Scientific is seeking to limit the case to the California plaintiffs and to send the non-California plaintiffs to another forum, presumably either their own home states or to the state of domicile of the defendant.

*Legal Standard In Ruling On Forum Non-Conveniens:*

Moving party has the burden on this motion. The standard in seeking dismissal is higher than in seeking a mere stay. (Here moving party seeks each, in the alternative.) Here, the motion only involves the non-California (i.e. non-resident) plaintiffs. To obtain dismissal of a non-resident's claim, a moving party must show that California state court is a "seriously inconvenient forum." *National Football League v. Fireman's Fund, Ins. Co.* (2013) 216 Cal.App.4th 902, 930-33. If a stay only is sought the standard is different: The Court must determine first whether a "suitable alternative forum" exists for the same claims, and then, assuming there is such a forum (or forums) the Court must balance the weight of recognized private interest factors and public interest factors to see if some other forum is better than plaintiff's chosen forum.

Under both the "seriously inconvenient forum" standard and the alternative "suitable alternative forum/weighing factors" test, this Court finds that Boston Scientific's motion should be denied.

Indisputably these 61 plaintiffs (out of 66 plaintiffs in this specific filing) have little contact with California. So their choice of California is entitled to "due deference," nothing more. *National Football League, supra,* 216 Cal.App.4th at 929-30. By the same token, it has been the experience of this judge with mass-action drug cases that discovery from treating doctors and percipient witnesses is readily available in any and all states of the union via commissions and videotaped depositions. There is no showing that this defendant will be denied due process if it has to rely on videotaped depositions of such witnesses rather than by personal appearance at time of trial. The plaintiffs herein in opposition to the motion have agreed to present themselves in their chosen forum (Los Angeles, California) for deposition and they will presumably come to trial in person if they happen to be chosen as a bellwether plaintiff.

If defendant's motion is granted one of two scenarios (or some blend of the two) will happen in lieu of these cases proceeding here.

Option A: The remaining California plaintiffs in this case will be subject to removal to federal court based on diversity, and the non-California plaintiffs will re-file in their home states and also be subject to removal unless their home state happens to be Massachusetts or Delaware. The removed cases will be added to the West Virginia MDL for pre-trial purposes and then re-distributed to a multitude of different federal district courts for actual trial.

Option B: The remaining California plaintiffs in this case will be subject to removal to federal court based on diversity and the non-California plaintiffs will re-file in defendant's domicile state (i.e. Massachusetts or Delaware) and those cases will proceed in tandem with other litigation.

**EXHIBIT 8**

**276**

Under Option A or Option B, this Court will still be dealing with hundreds of other similar cases which remain in this Court because they are not removable. This includes cases with Caldera as a co-defendant and any cases where a California plaintiff has named a California treating doctor as a co-defendant (even if the manufacturer is non-resident in California). This is more than a trivial nub of cases so this Court will have to manage this litigation whether or not Boston Scientific finds an escape route from this forum.

While the California state trial courts have certainly had their share of financial problems and continue to have this problem, the Court does not perceive the marginal extra effort of managing this case with Boston Scientific in the mix is notably greater than if it is absent. Indeed, the Complex Civil Litigation Program exists to handle exactly these kind of mass-action cases and the extra funding which is provided to make this possible should argue in favor of continuing to provide these services in adverse financial times, not to withhold such services while retaining the funds.

Even assuming that Boston Scientific could re-locate most if not all of these claims to the MDL, the resulting trial process is markedly less quick and cost-effective as compared to keeping these cases in this courtroom. The MDL process ends with a re-distribution of the work back to federal district judges who have had no contact with the progress of the cases and the legal and factual issues. The cases show up to compete with other pending trials on the District Court' docket, particularly criminal cases which share the judge's time and resources and which always claim priority. Insofar as some of the cases stay in state courts in Massachusetts, New Jersey, Pennsylvania or elsewhere, the problem of balkanized litigation is only compounded, not mitigated.

Since the Court is inclined to deny this motion based on its exercise of discretion in weighing the private and public factors discussed above, the plaintiffs' fallback request for additional discovery to assist in opposing the motion is moot.

**EXHIBIT 8**

3

**277**

EXHIBIT B

**EXHIBIT 8**

**278**

TVMP1202

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                    FOR THE COUNTY OF LOS ANGELES

 3   DEPARTMENT 322           HON. WILLIAM F. HIGHBERGER, JUDGE

 4

 5

 6   COORDINATION PROCEEDING              )
     SPECIAL TITLE (RULE 3.550)           )
 7                                        )
     IN RE TRANSVAGINAL MESH PRODUCT CASES )  JCCP NO. 4733
 8   _____)

 9

10              REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                 TUESDAY, DECEMBER 2, 2014

12

13   APPEARANCES OF COUNSEL:

14   FOR PLAINTIFFS:        ARNOLD & ITKIN LLP
                            BY:  KURT B. ARNOLD, ESQUIRE
15                               NOAH WEXLER, ESQUIRE
                            6009 Memorial Drive
16                          Houston, Texas  77007

17                          ROBINSON CALCAGNIE ROBINSON SHAPIRO
                            DAVIS, INC.
18                          BY:  KAREN L. KARAVATOS, ATTY AT LAW
                            19 Corporate Plaza Drive
19                          Newport Beach, California  92660

20                          LEVIN SIMES
                            BY:  LAUREL L. SIMES, ATTORNEY AT LAW
21                          353 Sacramento Street, 20th Floor
                            San Francisco, California  94111
22
     FOR DEFENDANTS:        SHOOK, HARDY & BACON LLP
23                          BY:  EVA M. WEILER, ATTORNEY AT LAW
                                 BRIAN P. ZISKA, ESQUIRE
24                          5 Park Plaza, Suite 1600
                            Irvine, California  92614-2546
25

26      [FURTHER APPEARANCES OF COUNSEL ON THE FOLLOWING PAGE]

27
                            TIMOTHY J. McCOY, CSR NO. 4745
28                          OFFICIAL REPORTER PRO TEMPORE


 1   APPEARANCES OF COUNSEL (CONTINUED):
```

Page 1

# EXHIBIT 8

279

TVMP1202

2
3   FOR PLAINTIFFS:        CLARK LOVE HUTSON
                          BY:  BLAKE A. DEADY, ESQUIRE
4                         440 Louisiana Street, Suite 1600
                          Houston, Texas  77002

5                         LAW OFFICES OF BRIAN D. WITZER, INC.
                          BY:  MICHAEL P. MANAPOL, ESQUIRE
6                         8752 Holloway Drive
                          West Hollywood, California  90069-2327
7

8   FOR DEFENDANTS:        REED SMITH LLP
                          BY:  DAVID E. STANLEY, ESQUIRE
9                              ERIC J. BUHR, ESQUIRE
                          355 South Grand Avenue, Suite 2900
10                        Los Angeles, California  90071

11                        TUCKER ELLIS LLP
                          BY:  JOSHUA J. WES, ESQUIRE
12                        515 South Flower Street, 42nd Floor
                          Los Angeles, California  90071
13

                          MADORY ZELL PLEISS & McGRATH
14                        BY:  PATRICIA N. SCIDMORE, ATTY AT LAW
                          17822 17th Street, Suite 205
15                        Tustin, California  92780

16                        REBACK, McANDREWS, KJAR, WARFORD,
                          STOCKALPER & MOORE, LLP
17                        BY:  JUSTIN JANZEN, ESQUIRE
                          215 North "D" Street, Suite 303
18                        San Bernardino, California  92401

19                        DAVIS, GRASS, GOLDSTEIN & FINLAY
                          BY:  JENNIFER R. KOERNER, ATTY AT LAW
20                        3105 Sedona Court
                          Ontario, California  91746
21

22  TELEPHONIC COURTCALL APPEARANCES:
23
    FOR DEFENDANTS:        SILLS CUMMIS & GROSS
24                        BY:  BETH S. ROSE, ATTORNEY AT LAW

25                        MORRIS POLICH & PURDY, LLP
                          BY:  ANTHONY G. BRAZIL, ESQUIRE
26
                          SHOOK, HARDY & BACON LLP
27                        BY:  GABRIEL S. SPOONER, ESQUIRE

28

1   TELEPHONIC COURTCALL APPEARANCES (CONTINUED):

2   FOR DEFENDANTS:        FULBRIGHT & JAWORSKI LLP
                          BY:  LESLEY E. SWANSON, ATTORNEY AT LAW
3
                          LAW BRANDMEYER + PACKER LLP
4                         BY:  JENNIFER VILLEBRO, ATTORNEY AT LAW
                                  Page 2

# EXHIBIT 8

TVMP1202

```
 5                        HARRINGTON FOXX DUBROW & CANTER, LLP
                          BY:  JULIA GOWER, ATTORNEY AT LAW
 6
                          WOODEN & McLAUGHLIN LLP
 7                        BY:  JENNIFER L. SCHUSTER, ATTY AT LAW

 8                        AKERMAN LLP
                          BY:  KAREN P. CICCONE, ATTORNEY AT LAW
 9
                          REBACK, McANDREWS, KJAR, WARFORD,
10                        STOCKALPER & MOORE, LLP
                          BY:  HARLAN N. PETOYAN, ESQUIRE
11
                          HINSHAW, MARSH, STILL & HINSHAW, LLP
12                        BY:  PATRICK STOKES, ESQUIRE

13                        McCORMICK BARSTOW SHEPPARD WAYTE
                          & CARRUTH LLP
14                        BY:  BEN NICHOLSON, ESQUIRE

15                        LaFOLLETTE, JOHNSON, DE HAAS, FESLER
                          & AMES
16                        BY:  CHRISTOPHER CANNON, ESQUIRE

17                        McNAMARA, NEY, BEATTY, SLATTERY, BORGES
                          & AMBACHER, LLP
18                        BY:  JAMES ALLEN, ESQUIRE

19                        GALLOWAY, LUCCHESE, EVERSON & PICCHI
                          BY:  MICHAEL AUSTIN, ESQUIRE
20
                          BOYCE SCHAEFFER MAINIERI LLP
21                        BY:  LAURA COTA, ATTORNEY AT LAW

22                        CLINKENBEARD, RAMSEY, SPACKMAN & CLARK
                          BY:  BARBARA A. CARROLL, ATTY AT LAW
23
       FOR PLAINTIFFS:    HERSH & HERSH
24                        BY:  MARK BURTON, ESQUIRE

25                        LAW OFFICES OF JENNIFER R. JOHNSON
                          BY:  JENNIFER R. JOHNSON, ATTY AT LAW
26
                          WOOD SMITH HENNING & BERMAN LLP
27                        BY:  JERALD L. MONSON, ESQUIRE

28


 1    TELEPHONIC COURTCALL APPEARANCES (CONTINUED):

 2    FOR PLAINTIFFS:     SKIKOS, CRAWFORD, SKIKOS, JOSEPH
                          & MILLICAN
 3                        BY:  MELISSA MIELKE, ATTORNEY AT LAW

 4                        MARLIN/SALTZMAN LLP
                          BY:  WILLIAM BAIRD, ESQUIRE
 5
                          WATERS & KRAUS
 6                        BY:  PATRICK NAGLER, ESQUIRE
```

Page 3

# EXHIBIT 8

## 281

```
                              TVMP1202
 7                        GARRARD & DAVIS LLP
                          BY:  DIANE M. DALY, ATTORNEY AT LAW
 8
                          LAW OFFICE OF STEVEN K. BECKETT
 9                        BY:  STEVEN K. BECKETT, ESQUIRE

10                        KERSHAW CUTTER & RATINOFF LLP
                          BY:  KEITH SMITH, ESQUIRE
11
                          DOYLE & LOWTHER LLP
12                        BY:  CHRISTPHER W. CANTRELL, ESQUIRE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                                      1
```

```
 1   CASE NUMBER:            JCCP4733

 2   CASE NAME:             TRANSVAGINAL MESH PRODUCT CASES

 3   LOS ANGELES, CA        TUESDAY, DECEMBER 2, 2014

 4   DEPARTMENT 322         HON. WILLIAM F. HIGHBERGER, JUDGE

 5   TIME:                  9:05 A.M.

 6   REPORTER:              TIMOTHY J. McCOY, CSR NO. 4745

 7   APPEARANCES:           (AS HERETOFORE NOTED)

 8                              * * *

 9
```

Page 4
**EXHIBIT 8**

**282**

TVMP1202

10          THE COURT:  Remain seated.

11              Okay.  On the record in JCCP 4733.

12              Mr. McCoy, our court reporter, has asked me to

13    set the following protocol, which I happily will adopt, and

14    that is:  Counsel present in this courtroom, give your name

15    once; counsel on the phone, repeat your name any time you

16    choose to speak, since neither he nor I have an immediate

17    ability to know who's speaking on the phone.

18              So let's start with those of you in court,

19    beginning on the plaintiff's side, please.

20          MR. ARNOLD:  Good morning, your Honor.  Kurt Arnold

21    and Noah Wexler on behalf of the Muller plaintiffs.

22          THE COURT:  You're Mr. Wexler?

23          MR. WEXLER:  Noah Wexler, yes, your Honor.

24          THE COURT:  Okay.  Greetings.

25          MS. SIMES:  Laurel Simes, Levin Simes, for

26    plaintiffs.

27          MR. DEADY:  Good morning, your Honor.  Blake

28    Deady, Clark Love & Hutson, on behalf of plaintiffs.

                                                              2

1          THE COURT:  Any other plaintiff lawyers in the room?

2          MR. KAHL:  Good morning, your Honor.  Ryan Kahl on

3    behalf of plaintiffs Patricia and Clinton Hilderbrand.

4          MR. MANAPOL:  Michael Manapol on behalf of plaintiff

5    Caroline Hamil.

6          THE COURT:  Bear with me one second.

7              The man that just spoke?

8          MR. MANAPOL:  I'm sorry.  Michael Manapol on behalf

9    of plaintiff Caroline Hamil.

10          THE COURT:  Wonderful.

11              Any other plaintiffs' counsel in the courtroom?

Page 5
# EXHIBIT 8

## 283

TVMP1202

12          MR. NAGLER:  Yes.  Good morning, your Honor.  Patrick

13   Nagler appearing on behalf of plaintiffs, for Waters, Kraus

14   & Paul and John Janofsky.

15          THE COURT:  Okay.  One moment.  I wasn't interested

16   in the phone yet, but since you've spoken I'll try to find

17   you here.

18                Actually, I'll go back to the phone later.

19                Let's turn to defense counsel in the courtroom.

20          MS. WEILER:  Eva Weiler on behalf of Boston

21   Scientific Corporation, your Honor.

22          MR. ZISKA:  Brian Ziska, also on behalf of Boston

23   Scientific Corporation.

24          MR. STANLEY:  Good morning, your Honor.  David

25   Stanley on behalf of American Medical Systems.

26          MR. BUHR:  Eric Buhr on behalf of defendant C.R.

27   Bard.

28          MR. WES:  Joshua Wes on behalf of defendants Ethicon

                                                                    3

 1   and Johnson & Johnson.

 2          THE COURT:  Okay.  Other defense counsel in the

 3   courtroom?

 4          MS. SCIDMORE:  Patricia Scidmore on behalf of

 5   Redlands Community Hospital.

 6          MR. JANZEN:  Justin Janzen on behalf of Dr. Mukai.

 7          THE COURT:  Anybody else in the courtroom here to

 8   make an appearance?

 9          MS. KOERNER:  Jennifer Koerner on behalf of Beaver

10   Medical Group and Dr. Apodaca.

11          THE COURT:  Did I get a business card from you,

12   ma'am?

13          MS. KOERNER:  No, your Honor.  I'll get you one

14   right now.

Page 6

**EXHIBIT 8**

**284**

TVMP1202

15        THE COURT:  Are you licensed and admitted in

16  California or pro hac'd in?

17        MS. KOERNER:  Yes.  Yes.

18        THE COURT:  Okay.  Then a card would be appreciated.

19             While that is attended to, when I give your

20  surname as a lawyer on the phone, please respond with

21  your first and last name and a short reference to who

22  you represent.

23             Attorney Lopez?

24             Do we have Graham Lopez today from the Zumwalt

25  Law Firm?

26             Apparently not.

27             Attorney Gower?

28        MS. GOWER:  Yes.  Attorney Julia Gower for defendant

                                                                    4

1  Encision.

2        THE COURT:  For whom?

3        MS. GOWER:  Julia Gower for Defendant Encision, Inc.

4        THE COURT:  Thank you.  It's easier to hear if you

5  enunciate.

6             Attorney Ciccone?

7        MS. CICCONE:  Yes, your Honor.  Karen Ciccone for

8  Defendant Atrium and Mackay.

9        THE COURT:  Thank you.

10             Attorney Brazil?

11        MR. BRAZIL:  Yes, your Honor.  Good morning.  Anthony

12  Brazil for Defendant Caldera.

13        THE COURT:  Attorney Kreps?

14             Do we have Ronn B. Kreps from Fulbright &

15  Jaworski by any chance with us today?

16             Apparently not.

Page 7
# EXHIBIT 8

## 285

TVMP1202

17           Attorney Swanson from the same firm for the
18  same client?
19        MS. SWANSON:  Yes, your Honor.  Lesley Swanson for
20  the Coloplast defendants.
21        THE COURT:  Thank you.
22           Attorney Patoyan?
23        MR. PATOYAN:  Yes, your Honor.  Harlan Petoyan for
24  David Ginsberg.
25        THE COURT:  Attorney Janofsky?
26        MR. NAGLER:  Yes, your Honor.  Patrick Nagler
27  appearing on behalf of John Janofsky, on behalf of
28  plaintiffs.

                                                          5

1         THE COURT:  So instead of John Janofsky it is
2   Patrick, last name what?
3         MR. NAGLER:  Nagler.  N-a-g-l-e-r, your Honor.
4         THE COURT:  With Waters & Kraus?
5         MR. NAGLER:  Yes, your Honor.
6         THE COURT:  For various plaintiffs?
7         MR. NAGLER:  Yes, your Honor.
8         THE COURT:  Okay.
9            Attorney Monson?
10        MR. MONSON:  Good morning, your Honor.  Jerald Monson
11  appearing on behalf of Gerald Thorpe, Stephen Hordynski and
12  Arthur Parks.
13        THE COURT:  Thank you.
14           Attorney Schuster?
15        MS. SCHUSTER:  Yes, your Honor.  Jennifer Shuster on
16  behalf of the Cook defendants.
17        THE COURT:  Thank you.
18           Attorney Still?
19        MR. STOKES:  Your Honor, Patrick Stokes, on
                      Page 8

# EXHIBIT 8

## 286

TVMP1202

20    CourtCall, last name S-t-o-k-e-s, for Mr. Still, on behalf

21    of Dr. Leonard Renfer.

22          THE COURT:  Thank you.

23              Attorney Skikos?

24      MS. MIELKE:  Good morning, your Honor.  Melissa

25    Mielke, last name M-i-e-l-k-e, appearing for Skikos

26    Crawford.

27          THE COURT:  Melanie is the first name?  Is that

28    right, Ms. Mielke?

                                                              6

1       MS. MIELKE:  It's Melissa.

2           THE COURT:  My apologies.

3       MS. MIELKE:  No problem.  Thank you, your Honor.

4           THE COURT:  Melissa Mielke, Milkie; correct?

5       MS. MIELKE:  M-i-e-l-k-e.

6           THE COURT:  M-i-e-l-k-e.  Okay.

7               Attorney Burton?

8       MR. BURTON:  Yes, your Honor.  Mark Burton on behalf

9    of plaintiffs.

10          THE COURT:  Okay.  You're normally here front and

11    center.  You've left it to your friends from Texas this

12    morning.

13      MR. BURTON:  Yeah.  The trial I've been in for two

14    weeks has a long life.  It was expected to be less than a

15    week, and sometimes these things go on.

16          THE COURT:  Apparently that judge hasn't met my chess

17    clock.  But whatever.

18      MR. BURTON:  Definitely not, your Honor.

19          THE COURT:  Attorney Beltramo?

20      MR. NICHOLSON:  Yes, your Honor.  This is Ben

21    Nicholson, N-i-c-h-o-l-s-o-n, appearing for Mr. Beltramo,

Page 9
## EXHIBIT 8

## 287

TVMP1202

22    on behalf of Drs. Lake and Illingworth.

23         THE COURT:  Do you prefer Ben, Benjamin, or some

24    other formulation?

25         MR. NICHOLSON:  Ben.

26         THE COURT:  Okay.  Thank you.

27              Attorney Poli?

28              Anybody from Gomez Trial Attorneys in San                    7

1     Diego?

2              Anybody for Erin and Shawn Gulk?

3              Apparently not.

4              Attorney Villebro?

5         MS. VILLEBRO:  Yes.  Good morning, your Honor.

6     Jennifer Villebro on behalf of Dr. Red Alinsod, South

7     Coast Urogynecology, and Dr. Radmila Runic.

8         THE COURT:  Thank you.

9              Attorney Cannon?

10        MR. CANNON:  Good morning, your Honor.  Christopher

11    Cannon for Defendant Sam Siddighi, M.D.

12        THE COURT:  Continuing here, Attorney Carroll?

13        MS. CARROLL:  Good morning, your Honor.  Barbara

14    Carroll for Dr. Tajinder Kaur.

15        THE COURT:  Thank you.

16             Attorney Cota?

17        MS. COTA:  Good morning, your Honor.  Laura Cota on

18    behalf of defendant Dr. Edward Charles Allen.

19        THE COURT:  Attorney Cantrell?

20        MR. CANTRELL:  Good morning, your Honor.  Chris

21    Cantrell for the plaintiffs.

22        THE COURT:  Thank you.

23             Are you in California or some other state,

24    Mr. Cantrell?

Page 10

**EXHIBIT 8**

**288**

TVMP1202

25         MR. CANTRELL:  California, your Honor.  San Diego.

26         THE COURT:  Okay.

27             Attorney Johnson?

28         MS. JOHNSON:  Yes, your Honor.  Jennifer R. Johnson    8

1  for various plaintiffs.

2         THE COURT:  Are you in California or somewhere else?

3         MS. JOHNSON:  Yes.  Costa Mesa.

4         THE COURT:  Okay.  The reason I'm asking is, one

5  of the collateral issues here is what it would involve if

6  plaintiffs had to go sue in their home states, because at

7  the moment they have sued in the California forum and a

8  licensed California lawyer is sufficient, but if they were

9  to be chased to their home forum, then maybe they've got to

10  engage new counsel.  Obviously, we've got somebody in front

11  of us from Texas, but that doesn't mean we have somebody in

12  front of us from every other relevant state, such as West

13  Virginia.

14             Anyway, back to appearances.  Attorney Cutter?

15             Do we have Brooks Cutter from Kershaw, Cutter &

16  Ratinoff?

17             Apparently not.

18             Attorney Karavatos?

19         MS. KARAVATOS:  Good morning, your Honor.  Karen

20  Karavatos for plaintiffs.

21         THE COURT:  Attorney Rose?

22         MS. ROSE:  Good morning, your Honor.  Beth Rose for

23  Caldera Medical.

24         THE COURT:  I miss you.  You're normally up here

25  front and center, too.  But you escaped today.

26             Attorney De La Cerda?

**EXHIBIT 8**

**289**

TVMP1202

27          Do we have anybody from Edwards & De La Cerda

28  for plaintiffs?

9

1          Attorney Daly?

2     MS. DALY:  Diane Daly for plaintiff Michele Shears.

3     THE COURT:  Thank you.

4          Attorney Lazar?

5     MR. BAIRD:  Good morning, your Honor.  William Baird

6  on behalf of Attorney Lazar, on behalf of plaintiffs.

7     THE COURT:  First name William, last name?

8     MR. BAIRD:  Baird.  B-a-i-r-d.

9     THE COURT:  B-a-i-r-d.  Okay.  Thank you.

10         Attorney Beckett?

11    MR. BECKETT:  Steven Beckett for plaintiffs Kitty

12 and Albert Kellar.

13    THE COURT:  Attorney Austin?

14    MR. AUSTIN:  Good morning, your Honor.  Michael

15 Austin for defendant Robert Altman.

16    THE COURT:  Where is the 925 area code, Mr. Austin?

17    MR. AUSTIN:  Contra Costa County.  Bay Area.

18    THE COURT:  Okay.  Fair enough.

19         Attorney Billups-Sloane?

20    MR. ALLEN:  Good morning, your Honor.  James Allen,

21 A-l-l-e-n, on behalf of Dr. Anita Rama, M.D.

22    THE COURT:  Thank you.

23         Attorney Spooner?

24    MR. SPOONER:  Good morning, your Honor.  Gabriel

25 Spooner on behalf of Tissue Science Laboratory.

26    THE COURT:  Okay.  Is there anybody else who wishes

27 to note an appearance in regard to this Transvaginal Mesh

28 Medical Products matter at this time?

10

Page 12
**EXHIBIT 8**

**290**

TVMP1202

1    MR. SMITH:  Good morning, your Honor.  This is

2  Keith Smith for Brooks Kutter.  I apologize, I got

3  disconnected right before you called the names.

4    THE COURT:  Hang on a second here.

5    Who is your client, sir?

6    MR. SMITH:  Veronica Villarreal.

7    THE COURT:  Okay.  Bear with me.  I don't see you

8  on the CourtCall sign-in sheet.  I'll just make a side-note

9  here.

10    Keith Smith, and you represent plaintiffs;

11  right?

12    MR. SMITH:  That's correct.  Thank you, your Honor.

13    THE COURT:  Okay.  Anybody else wish to make an

14  appearance beyond Mr. Smith?

15    Okay.  First, I'm going to make some

16  supplemental comments on the written tentative, but I'm

17  going to ask a general question to any of our learned

18  counsel before me.  I'm not aware of there being any case

19  that's been cited to me where the question of forum non

20  conveniens had to be applied in the context of what in

21  the profession is now known as a mass action or multiple

22  plaintiffs, typically scores of hundreds if not thousands,

23  who bring facts or similar claims typically involving a

24  specific product or service, often in the medical area,

25  sometimes in other kinds of mass tort context.

26    Is there some case that's out there that is

27  trying to apply the general concepts of forum non conveniens

28  in the context of a mass action?

                                                        11

1    MS. WEILER:  Your Honor, Eva Weiler on behalf of

2  Boston Scientific.

**EXHIBIT 8**

**291**

TVMP1202

3        I think the closest one you're going to find is
4   probably actually Stangvik, which had to do with the Shiley
5   heart valves.
6        THE COURT:  That was, what, nine or eleven Swedes and
7   Norwegians?
8        MS. WEILER:  Yeah, they were actually Norway and
9   Swedish plaintiffs in the actual proceeding in Stangvik,
10   and then there were I think 184 or 108 separate other cases,
11   as well.
12        But that's probably the closest that I can
13   come up with that would be similar, especially with the --
14        THE COURT:  And I appreciate that because I'm looking
15   for anything that's a close cousin.  I have Stangvik out
16   on the bench.
17        MR. BURTON:  Your Honor?  Mark Burton.
18        THE COURT:  Yes, Mr. Burton.
19        MR. BURTON:  In the trial court context, the one
20   I can recall there in Los Angeles would be Avandia, and
21   I'm sorry, I don't recall the name of the female judge
22   who decided the forum non conveniens motion, but I do
23   remember that it was a very large motion involving I
24   think it was thousands of plaintiffs pending at the time,
25   I believe.
26        THE COURT:  I'm guessing that was my --
27
28        (CourtCall interruption)
                                                              12

1        THE COURT:  Would those of you who aren't talking
2   put your phones on mute, please.  I don't really need to
3   hear family experiences in the background.  And it's enough
4   to have 30 open telephone circuits.
5        So Mr. Burton, I think it probably was Victoria

Page 14

# EXHIBIT 8

## 292

TVMP1202

6    Chaney.  Does that ring a bell, Mr. Burton?

7         MR. BURTON:  I believe you're correct, your Honor.

8         THE COURT:  She is now on the Court of Appeals, but

9    a trial court decision, although interesting, isn't the

10   kind of appellate authority I'm interested in.

11            But again, the lack of such published appellate

12   authority is what I'm really trying to point out to.  So

13   your comment tends to confirm that.

14            Back to Stangvik.  Help me out.  Were there

15   hundreds of pending cases in California even as a dozen

16   Swedes and Norwegians tried to pour in, Ms. Weiler, to your

17   understanding?

18        MS. WEILER:  It looks like there was a remaining 108

19   cases involving a heart valve that had a potential for being

20   tried in California.  And I'm pulling that directly from

21   the summary at the outset, your Honor, if you want to see

22   where I'm reading.  It's in the right-hand column if you're

23   also looking at a Westlaw publication.

24        THE COURT:  Actually, I have LexisNexis.

25            Okay.  I'm going to hand you my copy of the

26   printout and see if you can show me where you get your

27   reference to "many pending cases."

28        MS. WEILER:  Okay.  Yours doesn't have the summary

                                                          13

1    that I have in the beginning.

2         THE COURT:  That's why they copyright them.  The only

3    copyrighted portion of the material is in the headnotes.

4         MS. WEILER:  Your Honor, if you'd like to look at

5    what I'm looking at here.

6         THE COURT:  Well, that's not written by the judges,

7    that's written by some editor at Westlaw who thinks they

Page 15
## EXHIBIT 8

**293**

TVMP1202

8    did a better job.

9         MS. WEILER:  Let me use my own copy.

10        THE COURT:  While Ms. Weiler is looking at that,

11   I have a question for the counsel for the doctors who have

12   appeared via their lawyers today.

13             Are any of the doctors who are appearing

14   through counsel today non-California residents at the time

15   the facts giving rise to the litigation arose?

16             I'm going to infer otherwise, that all the

17   doctors who are appearing in the case at this time are

18   California residents.  Anybody got a contrary example of

19   one of a medical professional?

20             For the record, 15 seconds later nobody

21   suggests there's any such example.

22             Do plaintiffs have any awareness that Stangvik

23   involved something happened concurrently with dozens or

24   a hundred plus open court cases in a California court,

25   particularly the Orange County courts?

26        MR. ARNOLD:  Your Honor, the motion specifically

27   was on a dismissal of two individuals who were --

28        THE COURT:  Who were from Sweden and Norway.

                                                          14

1         MR. ARNOLD:  Correct, your Honor.

2         THE COURT:  The context matters, so I am curious

3    as to whether the published decision of our State Supreme

4    Court in 1991 establishes that two were going to disappear

5    and a hundred plus would remain to litigate.

6         MR. WEXLER:  And your Honor, I'm looking also at

7    the appellate decision underneath it to see if they have

8    anything noted, and it doesn't have anything.

9         MS. WEILER:  Here we go:  "Defendants state that

10   the number of cases filed against Shiley involving heart

Page 16

**EXHIBIT 8**

**294**

TVMP1202

11   valves increased to 235 by the time the briefs were filed."

12         That's the first reference.

13   THE COURT:  This is deep into the State Supreme Court

14   decision?

15   MS. WEILER:  Yeah.  "It noted that foreign plaintiffs

16   have filed 108 actions in California against Shiley relating

17   to the heart valves, and that, according to plaintiffs,

18   about one million pages of documents are relevant to their

19   actions."

20         I'm looking at -- this is 758.

21   THE COURT:  Ms. Weiler believes that it is manifest

22   at Page 758 of the appellate decision, and that's the

23   paragraph beginning "As to. . ."

24         But none of that tells me, on Page 758,

25   that there was one or two or 106 or 235 that were filed

26   by California plaintiffs, because it appears that the

27   108 is a count of foreign plaintiffs.

28   MS. WEILER:  I think you're right, your Honor.

                                                          15

1    THE COURT:  And then the 235 appears to be just an

2    updated count of the foreign plaintiffs.  So it's a question

3    of whether the doors of the California court would swing

4    open to a mass action solely of foreign plaintiffs.

5    MR. ARNOLD:  Correct.

6    MS. WEILER:  Who for some reason weren't enthused

7    with using the courts of Sweden or Norway.

8    MR. ARNOLD:  True.

9    MS. WEILER:  Yes, your Honor, I believe that's

10   correct.

11   THE COURT:  Okay.  Fair enough.

12         So, that tends to help point out that we are

Page 17
**EXHIBIT 8**

**295**

TVMP1202

13   in many ways in relatively new territory because, the truth

14   of the matter is, as indicated in my written tentative,

15   whether Boston Scientific can relocate most of its

16   litigation to another courtroom or not, there's a lot that's

17   going to keep me busy.  I mean, the fact that it takes 20

18   minutes to take appearances and that there are approximately

19   ten or more attorneys representing treating doctor

20   defendants who are California residents as co-defendants all

21   tends to show how this is a one-off case as compared to the

22   precedence that we deal with.

23           And by way of example, in the NFL, an

24   unincorporated association with a headquarters in New York,

25   albeit with a couple of member football clubs in California,

26   winds up trying to litigate insurance coverage.  If, as

27   happened here, Judge Wiley decides to stay his case and

28   chase people to New York, then basically Judge Wiley is

16

1   done with it, other than babysitting a fully stayed case.

2           Here, by comparison, if I were to stay some or

3   all of the claims involving Boston Scientific, the work on

4   my desk doesn't materially change.

5           So I'm going to offer the following additional

6   comments on the written tentative before I hear from

7   Ms. Weiler or whoever it is who wishes to argue in support

8   of the motion, since the tentative is to grant and my

9   supplemental comments are all in furtherance of the same

10   conclusion.

11           First, I would note that Stangvik, and in this

12   regard it's in my view consistent with the more recent NFL

13   case from the immediate appellate court, boils down the test

14   for the trial court in exercise of discretion to the rather

15   vague proposition of:  Is it just that the litigation

Page 18

**EXHIBIT 8**

**296**

TVMP1202

16   proceed in an alternative forum.

17          But I think that consistent with what I've

18   said in my written tentative, that is simply another way

19   of stating the proposition that the court must balance the

20   weight of recognized private interest factors and public

21   interest factors to see if some other forum is better than

22   plaintiffs' chosen forum.

23          Secondly, the plaintiffs may be entitled only

24   to due deference based on their choice of the California

25   forum, but it does concern me, and that's why I asked

26   several of the lawyers checking in, that if they were to be

27   chased back to their home states to file suit, it doesn't

28   do them much good to have located and retained a California

17

1    law firm that otherwise is authorized to practice in the

2    forum that's been chosen, and, instead, to force them to

3    go engage somebody in their home state who's authorized to

4    litigate.

5          And while it's pretty obvious who you'd find

6    to litigate in Texas, based on the appearances this morning,

7    it's not terribly obvious who it is who's already on the

8    plaintiffs' team who would be plausible litigation counsel

9    in places like West Virginia.

10          And I think that goes to the analysis of what

11   is due deference, because it makes it more inconvenient

12   for plaintiffs, insofar as they have to retain wholly new

13   counsel or tell their current counsel who are licensed

14   perhaps only in California, to go retain local counsel

15   in another state and then have to modify what is in all

16   likelihood a contingency fee arrangement so that more

17   mouths can feed at the trough, which just complicates

Page 19

**EXHIBIT 8**

**297**

TVMP1202

18    the litigation with no obvious upside, unless one is the

19    defendant trying to frustrate the plaintiffs' pursuit of

20    the litigation, which is not a cognizable private factor.

21                    Turning to the availability of

22    electronically-recorded depositions, which I have shown

23    my age by referring to them as "video-taped depositions,"

24    which may or may not be reduced to video tape in the current

25    technology, but, in any case, I'm pretty unpersuaded by the

26    moving party's citation to a 1959 case about the downsides

27    of using depositions at trial as compared to live testimony,

28    since although TV was known and the large networks have

                                                                18


1    a way to make a movie image of their live TV shows, there

2    was no practical ability of litigants to memorialize facial

3    expressions and body language through what we now would

4    refer to as video-taped depositions.  So the wisdom of the

5    appellate courts in 1959 of the hazards of proceeding at

6    trial by deposition I think tells me very little at the

7    present time.

8                    Candidly, from my own observations at trials,

9    I think our jurors pay as much, if not more, attention to

10    testimony that's presented via a TV monitor, perhaps because

11    it reflects their life's experience with how they receive

12    information.  In any case, they pay equal respect, if not

13    more.  And because of the requirement that video depositions

14    be edited in advance, it actually tends to go faster at the

15    time of trial.

16                    And I'm not persuaded at the moment that there

17    are any key witnesses who need to be cross-examined live

18    in front of a jury who would not be coming to trial anyway.

19    Because who do you really want to cross-examine at trial?

20    You want to cross-examine the expert witnesses, and I am

                        Page 20

## EXHIBIT 8

## 298

TVMP1202

21   quite happy to infer that the retained forensic witnesses

22   for both sides will indeed show up in this forum in the

23   flesh, because they'll be designated experts to testify.

24            So who won't come in the flesh?  Well, the

25   plaintiffs will come in the flesh for their depositions,

26   and the plaintiffs would be darn foolish if they didn't

27   come in the flesh for the trial.

28            So who is limited to video depositions?

19

1    Presumptively it's the treating doctors wherever they're

2    located.  But I don't sense that it is a game of killer

3    cross-examination trying to elucidate the truth from these

4    disinterested third-party witnesses when they're not the

5    defendants.

6            Yes, we have some doctor defendants, but

7    they're all Californians.  They may be more than 75 miles

8    from this courthouse, depending on when the case arose,

9    in which case it might be hard to bring them in even

10   if they're in California.  But perhaps the trial of the

11   California plaintiff's case will go back to a home county

12   which might be within 75 miles of such doctor's practice.

13            But for out-of-state doctors I think the

14   video deposition ought to be quite sufficient, because I

15   don't perceive that those kinds of witnesses are going to

16   somehow be shown up through the genius of cross-examination

17   to being prevaricating as compared to simply giving their

18   disinterested testimony about what happened, since the

19   out-of-state doctors appear universally by being omitted

20   from the case as to be not defendants and therefore not

21   to have a personal financial interest in the outcome of

22   the litigation.

Page 21
**EXHIBIT 8**

**299**

TVMP1202

23        One other point.  Choice of law.  It's
24   not that difficult for a trial judge, and I'm at the
25   moment still a member of the District of Columbia Bar
26   and the New York Bar, as well as an inactive member of
27   the California Bar, so choice of law is not the most
28   excruciating legal question that would be presented to

20

1    a trial judge.
2         Conceitedly, if one were trying to figure out
3    what the law of Norway or Sweden is in a case, that's when
4    you actually get a live witness on the stand to try to teach
5    the judge what the law of the foreign jurisdiction is when
6    "foreign" means outside the 50 states comprised in the
7    United States of America as well as its districts and
8    territories.
9         But I think, you know, it's a question of
10   degree when we get a non-U.S. plaintiff trying to invoke
11   a California court for a non-U.S. fact pattern, and here
12   we have U.S. citizens or residents trying to invoke the
13   jurisdiction of this court as to facts which arose somewhere
14   within the borders of the United States of America, which
15   is at least a difference by degree.
16        And finally, various arguments are made
17   in moving party's papers that this court ought to be
18   sensitive to the forum state's interest in having a
19   chance to adjudicate claims involving its citizens, so
20   that, hypothetically, Texas should have the right to have
21   adjudicated in its courts the misfortunes of a Texas
22   plaintiff who had transvaginal mesh inserted giving rise
23   to alleged tort liability.
24        Sounds nice in the abstract, but what's
25   actually going to happen, as I understand the likely

Page 22

**EXHIBIT 8**

**300**

TVMP1202

26    scenario of events, is that a Texas plaintiff sent back to

27    Texas to file will find themselves briefly in the Federal

28    District Court in Texas, which is still within the borders

21

1    of Texas but is not quite the same thing as the state,

2    through its state court system, treating with the interests

3    of its citizens and its local defendants, but instead

4    navigating through the gates of the federal courthouse,

5    finding themselves in Charlston, West Virginia soon enough.

6    Because the federal court system, for quite rational

7    reasons, which should be praised, not criticized, has

8    pulled together all of these cases, as best as the federal

9    court system can, in a single Multi-District Litigation

10   case proceeding in Charlston, West Virginia.

11           But the point of it is that that's far

12   away from Texas -- excuse me, in Austin and McAllen

13   and Houston and wherever else it is in Texas, where the

14   local interests are supposedly going to be nurtured by

15   local litigation.

16           And so I'm not terribly persuaded by the fact

17   that the sister states will not have a chance to litigate

18   the cases in their own courts since they would in fact be

19   proceeding more often than not in the federal court system.

20           Conceitedly, Massachusetts, New Jersey and

21   Pennsylvaia, at least to my understanding, probably would

22   have a chance to have this litigation proceed in their state

23   courts, at least as to certain defendants, because of the

24   domicile of certain key defendants.

25           But that litigation is already underway,

26   and I'm not sure why it gains anything for me to chase a

27   New Jersey plaintiff out of my court to the New Jersey court

Page 23

**EXHIBIT 8**

**301**

TVMP1202

28   or to chase a Massachusetts plaintiff out of my court to a

22

1    court in the Commonwealth since the matters will proceed

2    here.

3           Frankly, the fewer places in which the larger

4    count of the litigation is proceeding, the more likely it

5    is that discovery can be managed efficiently and all the

6    rest.

7           So the question is one presented to my

8    discretion.  I've articulated now verbally, as well as

9    yesterday in writing, why I think the motion should be

10   respectfully denied.

11          Perfectly ethical to bring, I understand why

12   the motion is brought, and it's conceivable that somebody

13   else exercising discretion on the same record might come up

14   with a contrary conclusion because it's a very legitimate

15   question to raise.

16          But in my weighing of the considerations,

17   this is why I would determine that the motion should be

18   respectfully denied.

19          It's not obvious to me why some follow-on

20   motion of the same type would lead to a different outcome,

21   but I suppose one always has to be willing to see if there's

22   something new or different or peculiar about the record

23   presented that would lead to an alternative result.

24          All right.  Mr. Wexler and Mr. Arnold, I

25   assume, at least in the short term, you'd be prepared

26   to submit?

27          MR. ARNOLD:  Yes, your Honor.

28          THE COURT:  So Ms. Weiler or Mr. Ziska, as you

23

1    wish.  Unless somebody else is your chosen advocate?

Page 24

# EXHIBIT 8

## 302

TVMP1202

2      MS. WEILER:  I will, your Honor.  Thank you.

3           I'd like to go through the points that you've

4  raised.  Hopefully that will be most convenient for the

5  Court.

6      THE COURT:  Take your time.  If you want a half an

7  hour, that's fine by me.  This is serious business, but I

8  intend to do it once thoroughly.  So I don't want to rush

9  this one.  But I'm not sure I want to hear it six more

10  times in the next six months.

11      MS. WEILER:  Understandable.

12           Just as a preliminary matter, before I forget,

13  your Honor, if I could, with regard to the supplemental

14  briefing that was provided by plaintiffs' counsel, Boston

15  Scientific, for purposes of the record, objects to its

16  consideration, given especially this court's order on

17  November 21st stating that no additional briefing but

18  supplemental briefs --

19      THE COURT:  Is it true that Boston Scientific will

20  exercise its rights in the MDL to take the litigation back

21  to the first federal district court in which it was filed?

22      MS. WEILER:  I'm sorry.  Are you asking if we would

23  refuse to waive under Lexicon?

24      THE COURT:  Yes.

25      MS. WEILER:  I don't know that, as a matter of fact,

26  that it has.  That has been our practice up until this

27  point, and --

28      THE COURT:  That's all I need to know.

                                                          24


1      MS. WEILER:  Okay.

2      THE COURT:  I'll disregard the plaintiffs'

3  supplemental brief.

Page 25

**EXHIBIT 8**

**303**

TVMP1202

 4          MS. WEILER:  Thank you.

 5          THE COURT:  Because I'm assuming that the odds are

 6    that you're going to take the case, as is your right, back

 7    to the district court which first touched the case, which

 8    means lots of different district courts.

 9          MS. WEILER:  Presumably, your Honor, yes.

10          THE COURT:  None of whom seem to be well equipped

11    to handle it when it shows up unannounced at the least

12    convenient time.

13          MS. WEILER:  True, your Honor.  However, based on

14    what I've seen from this litigation, I would not presume

15    that doctors would not be added if the case gets refiled --

16    for instance, if they were dismissed in this court, that

17    they could be refiled in another court, adding on resident

18    doctors in those instances.  They could also be combined

19    with other plaintiffs attempting to destroy diversity.

20    So while perhaps --

21          THE COURT:  So that could make it non-removable

22    and we really vulcanize the litigation as we invite the

23    plaintiffs to sue local defendants, either because it's

24    worth their while at this point to add an equally-culpable

25    party or because somebody thought ahead about the niceties

26    of removal jurisdiction.

27          MS. WEILER:  It could be.

28                One thing do I want to inform the Court of,

                                                              25

 1    that I think would be very helpful, is to talk about the

 2    numbers that we're dealing with.

 3                In the Muller case today we're talking about

 4    66 plaintiffs, 61 of which are not California residents,

 5    they are from 17 separate states.  But you can't just look

 6    at Muller to really appreciate what we're talking about.

Page 26

**EXHIBIT 8**

**304**

TVMP1202

7   We've got the Boston Scientific cases that involve

8   doctor defendants that are linked to California, which is

9   represented by all the counsel you hear on the phone.  They

10   are the counsel that have been retained by these plaintiffs

11   to represent them in California individual actions.

12          Then we have six multi-plaintiff cases,

13   four of which have been brought by Arnold & Itkin and Tom

14   Girardi's firm, two of which have been brought by Robinson

15   Calcagnie, and also the Clark Love firm.  Those six cases

16   are really what we're talking about here.

17          The other 24 cases where Boston Scientific has

18   been named as a defendant, those are really not at issue.

19   Those are the bolus of cases that we're not talking about

20   today.

21       THE COURT:  Is that because they're all California

22   plaintiffs?

23       MS. WEILER:  That's because they're California

24   plaintiffs and they have a named doctor defendant.

25       THE COURT:  You tend to get a California plaintiff

26   if you're going to get a California doctor defendant, unless

27   somebody just went to Rodeo Drive to get their transvaginal

28   mesh surgery done or something.

                                                          26

1       MS. WEILER:  Fair enough.

2          So we're really talking about these six cases.

3   Within those six cases there are 434 plaintiffs, if I've

4   counted correctly.  I may be one off, one or two, but you'll

5   bear with me I hope.

6          Within those 434 plaintiffs, approximately

7   49 are California residents.  That's 11 percent.  The rest

8   of them have absolutely no connection to California.  They

Page 27
**EXHIBIT 8**

**305**

TVMP1202

9   didn't get implanted here, their doctors aren't here, they

10  didn't get explanted here.

11          We have discovery at least in the Arnold Itkin

12  cases that corroborate those things.  We know that there's

13  just no reason that they're here except for the fact that

14  they've somehow been lumped in with these six cases by some

15  means through plaintiffs' counsels' gamesmanship to put

16  these specific number of people in this particular case,

17  to get it here and to get it to stay here.

18          In Muller there is one Massachusetts

19  plaintiff and one Delaware plaintiff, in Mauck there is

20  two Massachusetts plaintiffs, one Delaware plaintiff, and

21  the others follow similarly.  In fact, in one of the Clark

22  Love cases, the Penaherrera case, the main --

23          THE COURT:  I accept that it's opportunistic.

24          MS. WEILER:  Fair enough.  One of those --

25          THE COURT:  But the plaintiffs -- you know, and

26  I accept that in this day and age lawyer advertising is

27  lawful.  There are, if anybody watches the TV, 1-800BADDRUG

28  kind of ads that don't only involve prescription drugs but

                                                           27

1   sometimes involve medical appliances, and that may be a

2   way in which plaintiffs find their lawyer or the lawyer

3   finds a willing client, and they found their way here with

4   people licensed to practice here and they have chosen to

5   litigate here.

6           And now you're asking me basically to tell

7   somebody -- and I don't have a quick census of all the

8   states, but I know West Virginia is one of them.  To my

9   understanding, although apparently a lot of these lawyers

10  have figured out how to get to the Federal Court in

11  Charlston, West Virginia, I don't understand that I have

                        Page 28

# EXHIBIT 8

# 306

TVMP1202

12   anybody involved in this docket on the plaintiffs' side
13   who's licensed to file a case in West Virginia state court.
14   But you're telling that plaintiff you've got to go find
15   yourself a West Virginia-licensed lawyer to refile your
16   case in West Virginia state court.
17        MS. WEILER:  By and large, the states that are
18   represented within these cases is almost 50 states,
19   your Honor.  And they're represented, by and large, by
20   Texas counsel and, as I understand it, through California
21   local counsel.  I may have a misunderstanding of that
22   representation, but that's my understanding.
23        THE COURT:  So a small percentage go back to Texas
24   where the licensure is dandy and in 48 other states we've
25   got a problem.
26        MS. WEILER:  Well, it's actually not a small
27   percentage, your Honor.  Actually, there are more --
28   there are just as many plaintiffs in Texas as there are

                                                              28

1    in California, among these six cases.  So it's not that
2    California is, you know, extra special because it has more,
3    it's just --
4         THE COURT:  Well, we've seen in the asbestos dockets
5    that there's something about tort reform in Texas that has
6    inspired the Texas Bar to look for alternative forums.
7    But I know how to apply choice of law.
8         MS. WEILER:  On the choice of law issue, I certainly
9    appreciate that this court is very capable of analyzing
10   choice of law.  The additional complexity of it, though, is
11   simply based on how many choice of law issues we're going
12   to have to deal with.  In Muller alone there will be
13   18 separate choice of law issues, there's 17 separate

                     Page 29
                  **EXHIBIT 8**
                     **307**

TVMP1202

14    non-California cases --

15        THE COURT:  That's fine.  We pick up some bellwether

16    cases.

17        What I've seen, to be blunt, is show me where

18    the patient lives, show me where the patient got treated,

19    show me where the patient got hurt.  If it's all the same

20    state, that's the law.

21        The most subtle question I had in another one

22    of these cases was a snowbird who went from a more northerly

23    climate to a southern state and traveled sometimes weekly,

24    sometimes seasonally, kept a footprint back in the other

25    state, didn't do good tax planning so, for whatever reason,

26    they didn't choose to get the Florida residence quicker,

27    although for tax reasons you'd think that's the first

28    thing you'd do, and so you'd get a choice of law question

29

1    involving a snowbird.  Interesting legal question, but

2    you just look at the facts and at some point you've got

3    to pick between the snowbelt and the sunbelt as to that

4    one plaintiff and you get an answer to the choice of

5    law question.  But it's not California.

6        MS. WEILER:  Well, Muller has one wrinkle in it

7    in that there would be a California issue simply because

8    there's a potential for SOL problems, your Honor, based

9    on when the case was initially filed.  It was filed

10    against -- captioned AMS, but Boston Scientific within

11    the substance of the complaint, AMS removed it, it was

12    remanded, Boston Scientific wasn't brought in until October,

13    when it was originally filed back in July, so they were

14    brought in as a fictitious name, even though Boston

15    Scientific was clearly known about in the body of the

16    complaint to begin with.

Page 30

**EXHIBIT 8**

**308**

TVMP1202

17          So there's some question of procedure there

18   and there will probably be some statute of limitations

19   issues.

20          THE COURT:  Well, the Doe practice may be peculiar

21   to California, but that really is procedure; whereas, which

22   state's statute of limitations should apply presumably is

23   going to be informed by which state has the more substantial

24   interest in having its statute of limitations apply.

25          MS. WEILER:  I'm certainly not trying to articulate

26   that this court is not capable of handling choice of law.

27   Clearly it is.  That's not the issue.  It's really that

28   we're dealing with, what is it, 90 percent of the plaintiffs

                                                              30

1    here that wouldn't be here except for this kind of ad hoc

2    collection of joining them up.  I mean, they've sufficiently

3    done it in a way to avoid CAFA.  Obviously they're allowed

4    to do that, but Boston Scientific, unlike a --

5          THE COURT:  You'll have to talk to Congress about

6    that, not to me.

7          MS. WEILER:  Unlike a situation where we are a

8    California defendant, it makes no sense that we are here

9    for 90 percent of those plaintiffs.

10         THE COURT:  But you're going to be here anyway.

11         MS. WEILER:  But we're only --

12         THE COURT:  And frankly, it isn't like I've been

13   asked to take Joe's Pizzaria at, you know, 10th Avenue and

14   96th Street in Manhattan and tell Joe's Pizzaria, the single

15   sole proprietor, to defend in California.

16         You know, I don't know if this is a Fortune

17   500 Company, but Boston Scientific, you know, has a

18   significant footprint that doesn't seem to make it unduly

Page 31

# EXHIBIT 8

## 309

TVMP1202

19    unfair.

20            And, frankly, what you're begging for is a

21    chance to be sued in 50 states instead of one place.  And

22    that proves too much.  Because that proves basically you are

23    trying to chop up the litigation into lots of pieces because

24    you're prepared to deal with them in 50 places, because

25    you're trying to make it hard for the plaintiffs, because

26    you can afford to make it hard, and that's just siege

27    warfare by another name.

28            MS. WEILER:  Well, just to respond to that comment in

31

1    particular, the representations about Boston Scientific's

2    footprint in California are not exactly accurate.  While

3    Boston Scientific does conduct business in California --

4            THE COURT:  What you're showing is that it is

5    inconvenient to be litigating here.

6            MS. WEILER:  Yeah, it's inconvenient because I have

7    no mesh connection to California but for sales reps that

8    meet with doctors here.  I don't manufacture --

9            THE COURT:  But you've already produced the records

10    once for the MDL.  That's what we're going to have you

11    reproduce.  You're basically just hitting a copy button for

12    the first round of voluminous production.

13            You've had to make the same production, I

14    assume, for the New Jersey state court and the Massachusetts

15    state court and the Philadelphia Court of Common Pleas in

16    Pennsylvania and perhaps some other court in Pennsylvania.

17    So how burdensome is it to hit, you know, the copy button

18    to reproduce the same discovery?

19            And if you're being chased for more discovery,

20    I'm going to want to have any follow-on general discovery

21    track that's already happened in the MDL in particular and

Page 32

**EXHIBIT 8**

**310**

TVMP1202

22    listen sympathetically to any argument that a different

23    formulation of the discovery has been produced once and you

24    shouldn't have to do some one-off variation just because

25    some creative lawyer from Girardi & Keese or Arnold & Itkin

26    thinks there's a better way to make the discovery demand.

27        MS. WEILER:  It's not my point to say that we haven't

28    produced MDL documentation in other locations.  That's not

                                                              32

1     the issue.  We've done I think somewhere between 30 and 70

2     depos, all of which have originated from our Massachusetts

3     facility, because that's where mesh happens, so to speak,

4     for Boston Scientific.  That's not the issue.

5            If it's that part of the analysis, that we

6     are here because of our large footprint in California, the

7     footprint just doesn't exist here.  It's not that big.  It's

8     not that big as to mesh.  Boston Scientific makes lots of

9     other products.  It makes a lot of other products within

10    its women's health and urology division, which is where

11    the mesh falls.

12           So, to the extent that is part of the analysis,

13    that's inaccurate.  It's inaccurate to rely on Boston

14    Scientific being in California because we do a lot of stuff

15    here.  That's just not accurate when it comes to mesh.

16        THE COURT:  Well, what factual showing do you want

17    me to look at about why it's a bad forum than the hit count?

18    Is there something in your declaration or your supplemental

19    declaration that's going to show why the planes don't get

20    from here to Boston or to -- I mean, frankly, you're having

21    to go to Charlston, West Virginia.  I mean, that's about as

22    hard a place to get to as anywhere.

23        MS. WEILER:  I can attest to that, your Honor.

Page 33

**EXHIBIT 8**

**311**

TVMP1202

24        THE COURT:  And that's where you are, though.

25        MS. WEILER:  No, but I think what --

26        THE COURT:  And that's where you want to go.

27    Because when all is said and done, your litigation strategy

28    is to move all this, at least for pretrial purposes, to

33

1     Charlston, West Virginia.  That's not Massachusetts either.

2         MS. WEILER:  Some of it can go to Massachusetts.

3     The Massachusetts plaintiffs that are here can certainly

4     go to Massachusetts.

5             But I think the point is, part of the point

6     is that the convenience factors, it's not just -- this

7     isn't just an alternative forum.  It is more convenient

8     to be elsewhere, for a number of reasons.

9             If you look specifically at the private

10    interest factors we're dealing with, some of the ones

11    that are mentioned --

12        THE COURT:  Why is Texas better than California

13    vis-a-vis a Boston-based business?

14        MS. WEILER:  Well, for some of the private interest

15    factors that are mentioned specifically in the NFL, for

16    example, the whole idea is that we're supposed to have

17    ease of access to sources of proof, costs of obtaining

18    witnesses at trial, compulsory means for getting them there.

19            If I have Texas plaintiffs in Texas, those

20    three examples that are cited in NFL as a basis for the

21    private interest factors --

22        THE COURT:  Well, we issue commissions that are

23    enforceable around the country all the time.  Our process

24    via the cooperation of Texas, practically speaking, extends

25    into Texas and elsewhere.

26            Yeah, it's a nuisance in New York.  At least

Page 34

**EXHIBIT 8**

**312**

TVMP1202

27    when I practiced law, you had to open a miscellaneous
28    proceeding in the Supreme Court and hire a local lawyer

34

1    to get your subpoena issued -- maybe they simplified it,
2    but a sophisticated law firm like Shook Hardy can certainly
3    figure out how to get a subpoena issued in New York based
4    on a case pending in California.
5         MS. WEILER:  It's not so much an issue that we aren't
6    able to, it's an issue of convenience, your Honor.  Having
7    done a couple of these trials, I'm --
8         THE COURT:  But the convenience you're asking for
9    is to take something that comes out of one forum and put it
10    into fifty forums.  That is not convenient, that is siege
11    warfare.
12        MS. WEILER:  It can be in multiple forums, it can
13    be in the West Virginia forum.  If these cases go back and
14    are refiled in their states as single-plaintiff cases, I
15    presume they would be removed.  If they're removed, they go
16    to West Virginia.  And ultimately, because Boston Scientific
17    has not agreed to waive Lexicon up until this point, they
18    get tried back in their home court, which is something
19    that I think is directly on point with the public interest
20    factors.
21             We actually want a local jury making decisions
22    about people from the community.  We actually want people
23    who care about the people in their community to --
24        THE COURT:  What's your showing that there's
25    something wrong about a Los Angeles County jury deciding
26    this case as between Boston Scientific, based in Delaware
27    and Massachusetts, and a non-California plaintiff?  Is
28    there some reason to think they're going to be unfair to

35

Page 35

# EXHIBIT 8

## 313

TVMP1202

1  Boston Scientific and head over heels sympathetic to a

2  Texas plaintiff?

3      MS. WEILER:  I think that using this court's

4  resources, this state's resources, to bring unrelated

5  parties here and seat 12 and have them stay away from

6  work for a two-and-a-half, three-week trial --

7      THE COURT:  We're not going to try all these cases.

8  I can guarantee you that.  I will be retired before all

9  these cases are tried, and I don't necessarily plan to

10  retire quickly.

11          The point is, we're going to try some

12  bellwether cases.  And they can maybe be chosen for some

13  other reasons.  We may have a Texas bellwether, we may

14  have a Bakersfield bellwether, we may have a Massachusetts

15  bellwether, but that's because, frankly, the state of

16  residence is going to be the least relevant factor to

17  picking the bellwethers.

18      MS. WEILER:  But it's not the least relevant factor

19  when thinking about the public interest factors that are

20  weighed for purposes of convenience.

21      THE COURT:  Well, managing mass action litigation

22  is what really I'm trying to do, and I'm trying to figure

23  out what the private and public interest factors are in

24  managing mass action litigation, which is the real task

25  in front of me, and that's why I started with my question

26  about what case on point can I refer, to and I've determined

27  essentially that there is none and it's a question of first

28  impression.

                                                        36

1      MS. WEILER:  And you're exactly right that there's

2  no mass tort exception to the forum non conveniens rules

                    Page 36

**EXHIBIT 8**

**314**

TVMP1202

3   either.  So. . .

4        THE COURT:  But it's the context in which I have to

5   engage in the balancing process.  And if I choose to ignore

6   the nature of what I'm doing, then I am really shortsighted

7   and ignorant.

8        MS. WEILER:  I think, though, that the burden in

9   terms of forum non conveniens is simply that we have to

10   look to see is there a better forum, and my position is,

11   on behalf of Boston Scientific with respect to the private

12   interest factors, when we're looking at getting people to

13   trial -- and just to --

14        THE COURT:  I can accept that.  I can accept the

15   formulation is there a better forum.  And you're saying is

16   the better forum lots of individual litigation in lots of

17   state courts because the happenstance of nonremovability

18   if some doctor gets added as a defendant or massaging it

19   through MDL and going back to a bunch of federal district

20   courts for litigation at the time of trial, and neither

21   of those in my humble view are a better forum.

22            I'm happy to put that on the record and

23   rely upon that conclusion in my exercise of discretion

24   and the management of litigation, my experience as a judge

25   handling complex litigation for over six years, if not more,

26   that this is the better forum and that is not a better

27   forum.  Because it's just vulcanized and chaotic.

28            It is a wonderful way to wear down your enemy.

                                                              37

1   I can recognize that.  I practiced law.  I practiced law

2   at a big firm.  I understand what this is all about.

3        MS. WEILER:  Two of the pieces that should be

4   considered, though, are that the MDL does exist, and in

Page 37

**EXHIBIT 8**

**315**

TVMP1202

5   terms of assessing convenience, we know that there is

6   a lot of money that's been poured into that proceeding

7   to effectuate efficient pretrial proceedings.  The court

8   now is running through a hundred cases at a time and

9   pushing them forward.  So they've got a set procedure

10  that's handling this on a national level that's --

11          THE COURT:  Yeah, they just had eight plaintiffs

12  tried in two different trials with consistent outcomes that

13  presumably either caused the treasurer to gird his loins

14  and set up a big reserve or prompt a prudent risk manager

15  to figure out alternatives to continue the litigation.

16          Was Boston Scientific a defendant in any of

17  those cases in Florida or West Virginia?

18          MS. WEILER:  We just tried the case in West Virginia,

19  which was an Obtryx 4 case, and then we tried the case down

20  the Florida, which is a Pinnacle case.  That's a prolapse

21  product that we make.

22          THE COURT:  But it was Boston Scientific in the

23  crosshairs?

24          MS. WEILER:  Yes.

25          THE COURT:  Not Coloplast or --

26          MS. WEILER:  No.

27          THE COURT:  -- or Johnson & Johnson or --

28          MS. WEILER:  Just Boston Scientific.

                                                          38

1           THE COURT:  -- Caldera.  It was Boston Scientific in

2   the crosshairs.

3           MS. WEILER:  Correct.

4           THE COURT:  Okay.  Well, the hunter hit the target

5   eight times over.  You've got a due process right to

6   litigate all the cases, but you're going to have a hard

7   time in my court, or anywhere, finding anybody who's going

Page 38

**EXHIBIT 8**

**316**

TVMP1202

8   to find you 10,000 different trial sites.

9        MS. WEILER:  And I don't think the expectation

10  is for 10,000 different trial sites, but I think the

11  expectation is to try and get trials of plaintiffs who

12  belong in their particular community.  For example --

13       THE COURT:  Maybe that's an argument that my

14  bellwether trials ought to err on the side of Southern

15  California instead of Northern California plaintiffs or

16  Arkansas plaintiffs.  But I'm not picking bellwethers today.

17       MS. WEILER:  What we're talking about, though, is

18  convenience, and part of the convenience is money, part of

19  the convenience is how to get witnesses where we need them

20  to get.  Part of it is money in terms of not just the courts

21  but the parties' expenses.

22           If I want to bring -- and let me comment on

23  this real quickly.  You mentioned who's going to be coming

24  to trial, who do we want to cross-examine.  I can tell you

25  that the people typically that we want to have show up

26  to trial are very often the implanter and the explanter

27  physician.  So it's the guy that puts it in and it's the

28  guy that takes it out, if that happens to be the case.

                                                        39

1            So the testimony of those doctors in particular

2   is very important and has a very big impact, especially

3   considering the Learned Intermediary Doctrine that is

4   at play in this.  It has to do with the credibility of

5   that doctor in terms of what warnings were given to the

6   plaintiff.  That's a very big piece.

7            So if I am trying one of these --

8        THE COURT:  Do they tend to lie and deceive so that

9   only the magic of on-the-spot cross-examination gets to

Page 39
**EXHIBIT 8**

**317**

TVMP1202

10    the truth?

11        MS. WEILER:  I think we have plenty of deposition

12    testimony from many of these implanters and explanters and

13    have opted to bring them to court for purposes of their

14    live testimony as a point of reference.

15            We have also had to do it by video deposition,

16    and I can say that I have myself spent hundreds of hours

17    going through and trying to designate deposition testimony,

18    which is exceedingly onerous, and I've, you know, I've seen

19    jurors --

20        THE COURT:  The jury loves it, though.  It goes much

21    faster.  A hundred hours of your time is much better than

22    an hour of the jury's time wasted.

23        MS. WEILER:  In one of the trials that we did I think

24    we had probably eight to nine hours of video depositions.

25    So it wasn't, unfortunately, just a small, short, condensed

26    period, your Honor.

27            In addition, some of the people that are being

28    presented by video deposition are also experts.  In the last

                                                              40

1    case we just had in West Virginia, one of plaintiff experts

2    was presented by video.  So it's not just some insignificant

3    thing that we're presenting.

4        THE COURT:  Well, now, that's curious.  That was

5    with your consent?  Or the judge allowed them to bring an

6    expert -- a forensic expert?

7        MS. WEILER:  It was a medical expert, so a

8    urogynecologist, and they brought him by way of a pre --

9    a trial testimony deposition.  We had to go separately

10    and depose him for purposes of trial and then bring him

11    in by video to present to the jury in that format.

12        THE COURT:  Was he ill or too busy, or?

                            Page 40

## EXHIBIT 8

## 318

TVMP1202

13        MS. WEILER:  I don't know the specific circumstances
14    of why he didn't show up, your Honor.
15              So the video designation deposition playing in
16    trial is not just a small piece, unfortunately.  It actually
17    bears out to be quite a substantial part of the trials that
18    we're having to deal with.  So --
19        THE COURT:  I'm not persuaded that the truth-finding
20    process is impaired.
21        MS. WEILER:  But in this context we're not talking
22    about -- I mean the burden isn't to as to whether the
23    truth-finding process is impaired.  It's as to convenience.
24    So if I'm forced to try and compel a doctor to come to court
25    for trial and it's out of the jurisdiction of the court, I
26    have to go through the commissions process and --
27        THE COURT:  Don't bother or offer him a first-class
28    air ticket.  Those are your two choices.

                                                              41

1         MS. WEILER:  Well, and that's also part of the
2     convenience factor.  Now I'm paying for someone to fly
3     from, you know, be it Georgia out to California to testify
4     in trial, and I've got all the procedures, the inconvenient
5     procedures that are associated with it.  If this was a --
6         THE COURT:  For 21st Century litigation, the
7     idea that you go and depose somebody in another state
8     with a commission and videotape them when you have a
9     trial is not, in my view, a cognizable inconvenience
10    for a firm such as Shook Hardy.
11              If you told me you're a sole practitioner in
12    Encino representing a mom and pop drug store or a pizzeria,
13    I might accept it.  But not for Shook Hardy.
14              How many offices does Shook Hardy have?

**EXHIBIT 8**

**319**

TVMP1202

15    MS. WEILER:  I believe we have ten, your Honor.

16    THE COURT:  And not all in California.

17    MS. WEILER:  Correct, your Honor.

18         The convenience of counsel, though, is not

19    supposed to be given weight by the court in terms of

20    assessing forum non conveniens grounds.  So where I happen

21    to sit, where counsel happens to sit --

22    THE COURT:  Well, whose convenience am I worried

23    about, then?  The doctor in Georgia?

24    MS. WEILER:  We're talking about -- let me rephrase.

25         The convenience of where I am in particular is

26    not the issue.  It's the convenience of how do I get those

27    people, the witnesses, the sources of proof.

28         Now, we have talked about the MDL production.

42

1    I'm not talking about that.  I'm talking about the things

2    that we actually need to produce for trial, the people that

3    need to show up.

4    THE COURT:  It's unique as to any one plaintiff in

5    a bellwether who's actually going to get ready for trial.

6    And that's not all 10,000 in the MDL.

7         And let's assume I've got 2,000 plaintiffs.  I

8    might by now.  It's not all 2,000 plaintiffs.  I'm not going

9    to have you or your adversaries spend the time concurrently

10    preparing 2,000 bellwether cases for trial.  Six, eight, 10,

11    12, 15 maybe, maybe even 25, even to allow for shrinkage,

12    for a given anticipated trial set.  But now you're chasing

13    the records of 25 people, whether you do it in Bakersfield

14    or Tustin or Augusta, Georgia.

15    MS. WEILER:  And the 25 people you just referenced,

16    your Honor, are the 25 California cases that I actually have

17    that are tied to California.  The balance of those people

Page 42

**EXHIBIT 8**

**320**

TVMP1202

18    are not California.

19         THE COURT:  Well, maybe they're my bellwethers.

20    Maybe that's a good argument for who the bellwethers are.

21              I mean, candidly, to digress for a moment, we

22    have a different question of what to do when a plaintiff

23    believes they have two different manufacturers to blame for

24    their misfortune and whether they get to litigate or whether

25    they find themselves trapped in some twilight zone because

26    their cases are so one off factually that it doesn't advance

27    the efficient management of a mass action to bother to

28    adjudicate their cases in the short run because they will

                                                            43

1    not tend to inform the larger exercise.

2              And so it may be in the same way that some of

3    the people who have done sort of tourism litigation will

4    have to wait and hope that the bellwether cases of somebody

5    else motivates a plausible compromise they can accept, or

6    it may just turn out that, like tobacco litigation or

7    something, it's never compromised as to certain defendants

8    and everything is litigated.

9              I hope it doesn't turn out that way, but maybe

10    that's what's going to happen with some of the transvaginal

11    mesh litigation.

12              I'm not going to plan on that assumption,

13    because that's a total destruction of every state and

14    federal court's capacity to provide justice to others,

15    because they'll have nothing to do in the federal system

16    but to litigate transvaginal mesh cases, the 10,000

17    cases that are supposed to be tried to separate juries.

18    So. . .

19              But I'm not going to work on the assumption

Page 43
**EXHIBIT 8**

**321**

TVMP1202

20    that we're going to fail in that regard.  You may know

21    better than I, though, whether or not there's any

22    possibility of eventual global resolution.

23            But it may also be that, you know, sometimes

24    insurance is exhausted and then the treasurer has to figure

25    out what to do, and then, I suppose, talk to bankruptcy

26    counsel.  That is one quick and efficient way to adjudicate

27    them.

28            Because literally if you're going to lose

44

1    $4 million a case and you're going to try 10,000 cases,

2    what's four million times 10,000?  It's probably more

3    than the net worth of Boston Scientific.

4        MS. WEILER:  My math skills aren't quick enough to

5    do it without a calculator, your Honor.

6        THE COURT:  I don't even think Bill Gates or Apple

7    could afford that kind of exposure.

8            Yeah, there's not a enough spaces on the

9    computer.  It's a lot of money is what I'm saying.  So it's

10    a parade of horribles that's more theoretical than actual,

11    because at some point the board of directors, unless you

12    start getting defense verdicts, is going to say:  Make

13    this problem go away.

14        MS. WEILER:  Which we have, your Honor.

15        THE COURT:  I know.  You've won some.

16        MS. WEILER:  Yeah.

17        THE COURT:  But it wasn't the last eight outcomes.

18        MS. WEILER:  Those were both consolidated trials, as

19    a result of which I think we certainly have an opinion as to

20    the prejudice that that may create, putting those plaintiffs

21    together from the outset.

22            But no, we do have defense verdicts that we're

Page 44

**EXHIBIT 8**

**322**

TVMP1202

23    also including in our analysis of how to proceed with the

24    balance of litigation.

25          THE COURT:  Understandably.  I have no personal

26    opinion of the ultimate merits of the case.  I haven't

27    gotten near enough the facts.

28          MS. WEILER:  I think having addressed your Honor's

45

1    comments, if I've missed any I don't --

2          THE COURT:  You haven't changed my mind.  Is there

3    anything new or different you want to try out?

4          MS. WEILER:  No.  I think just for purposes of

5    rounding it out, I think Boston Scientific's position

6    is it's about convenience.  It's not about due process,

7    it's about convenience in this particular motion.

8          THE COURT:  Well, when I asked is it for the

9    convenience of the lawyer, you say no, it's not the

10    convenience of the lawyer.

11          Is it for the convenience of the plaintiff?

12    Apparently, no, it's not the convenience of the plaintiff,

13    because you want me to tell the plaintiffs fire Girardi &

14    Keese or Arnold & Itkin and go hire some lawyer you've never

15    met in West Virginia or Georgia or North Carolina, or tell

16    Girardi & Keese and Arnold & Itkin you've got to go share

17    your contingency fee with somebody else.  That doesn't help

18    the plaintiff.

19          Is it for the convenience of the doctor in

20    Augusta, Georgia theoretically?  Well, under my theory he's

21    going to go down to the nearest Holiday Inn to a conference

22    room and be deposed in a videotape.  That's what he'd like.

23    Not have to go to court in Augusta, Georgia and not have

24    to go to court in Los Angeles, unless he's voluntarily

Page 45
**EXHIBIT 8**

**323**

TVMP1202

25    motivated to do so.

26                Is it for the convenience of Boston Scientific?

27    You just want to wear these people down or get them to

28    Charlston, West Virginia.  But Charlston, West Virginia

46

♀

1    is not otherwise inherently convenient, it just happens

2    to be the central forum.

3                But particularly when the MDL is going to

4    lead to the trials being jiggled back into all the federal

5    district courts of this land, there's nothing efficient or

6    convenient about that in the abstract, whether it's for the

7    federal system or the litigants, it's just a recipe for

8    disaster.

9                MS. WEILER:  Well, it is a --

10               THE COURT:  In terms of inefficiency and delay.

11               And I'm trying to foster general public

12   interest and efficiency and conflict resolution of the

13   dispute, and bifurcating it up and chasing it over the

14   horizon like a bunch of wild geese or feral pigs doesn't

15   help anything.

16               MS. WEILER:  It is more convenient to go the

17   West Virginia route if -- especially if it goes back, as

18   we have, without waiving Lexicon, to the home state for

19   those bellwether trials.  Because we've got the attendance

20   of witnesses there and the availability of due process.

21               THE COURT:  I don't agree.  I understand the issue.

22   I do not agree that the MDL process result, leading then

23   to scattering the trials back to federal district courts

24   that haven't seen the case for months or years and telling

25   them, "Surprise, look who's here," like an unwanted holiday

26   guest, and you're going to try the case just after you get

27   done with that bank robbery or that three-defendant drug

Page 46

**EXHIBIT 8**

**324**

TVMP1202

28    case.  There's nothing convenient about that.

47

1        MS. WEILER:  Just for the Court's own context, the

2    judge that tried the Obtryx 4 case in West Virginia was

3    not actually Judge Goodwin.  He went down to Florida to --

4        THE COURT:  He got his traveling papers to Florida

5    that he couldn't get to come to California.

6        MS. WEILER:  Exactly.  So Judge Berger handled the

7    Obtryx 4 case.  She was not otherwise originally privy

8    to the circumstances of that case.

9        THE COURT:  She worked in the same courthouse as

10    Judge Goodwin.

11       MS. WEILER:  She worked in the same courthouse,

12    that's correct.

13       THE COURT:  And she could go down the hallway and

14    in advance, and she knew his phone phone and. . .

15       MS. WEILER:  But she wasn't trying -- she has not

16    been trying transvaginal mesh cases up until this point.

17    And certainly --

18       THE COURT:  Also, she's in the same courthouse,

19    so Judge Goodwin can say:  I need you ready to start this

20    trial.

21           Does he think that every federal court from

22    Portland, Maine to San Diego and Seattle to Miami is going

23    to just pop a trial court open when one of these things

24    gets sent out from the MDL for trial expeditiously?  I

25    don't think so.

26       MS. WEILER:  The other piece, with regard to

27    convenience of counsel, if a plaintiff --

28       THE COURT:  Well, you said that's irrelevant.

48

**EXHIBIT 8**

**325**

TVMP1202

1    MS. WEILER:  I know.  And I'm actually providing
2  you a case cite for that, your Honor.
3    THE COURT:  Okay.
4    MS. WEILER:  I don't have the case with me,
5  it's Great Northern Railway Company vs. Superior Court,
6  12 Cal.App.3d 105, Page 112.
7    It says that allowing a plaintiff to obtain
8  and retain foreign jurisdiction simply by reaching across
9  a number of states in selecting the attorney of her choice
10  would enfeeble, if not destroy, the legitimate purpose
11  of the doctrine here under consideration.
12    THE COURT:  The date of decision of that case?
13    MS. WEILER:  1970, your Honor.
14    THE COURT:  Okay.
15    MS. WEILER:  So just as a context for law on that
16  particular issue, that's at least a case reference.
17    THE COURT:  I'll look at the whole case just to get
18  context.
19    What was the full cite of that?  Is it in
20  your papers?
21    MS. WEILER:  It is.  It's in our reply briefing on
22  page -- sorry.  No, it's not.  I'm looking at something
23  different.  It's the Great Northern Railway Company --
24    THE COURT:  Let me get a pen.  Hang on.
25    MS. WEILER:  I think I actually have your red pen
26  that you left over here, if you want that back.
27    THE COURT:  Oh.  Great Northern v.?
28    MS. WEILER:  Great Northern Railway Company vs.

49

1  Superior Court, 12 Cal.App.3d 105.  Specific reference
2  is to Page 112.  This is from a separate briefing in
3  litigation in --

Page 48

**EXHIBIT 8**

**326**

TVMP1202

4          THE COURT:  Do you have it in hard copy with you?

5          MS. WEILER:  I don't, because it's from a separate

6     brief for a different litigation.

7          THE COURT:  I don't have Cal.App.3d on the shelf,

8     so I've got to get my trusty law clerk to print it because

9     I got a new computer yesterday, but all the passwords

10    disappeared, so. . .

11

12                    (Pause in proceedings)

13

14          THE COURT:  All right.  Back on the record.

15              Great Northern v. Superior Court arose out of

16    a single brakeman's wrongful death case -- actually it's

17    the heirs' wrongful death case when a single brakeman died.

18              He met his misfortune in Spokane, Washington,

19    but at the relevant time the Great Northern had 63 miles

20    of trackage in California up north, out of a total of 1300

21    miles of trackage.

22              The plaintiff had found a lawyer in Alameda

23    to take the case, and it was noted that the delay to trial

24    in Alameda was greater than it would have been in the

25    federal court in Spokane or in state court in Spokane.

26              And the general proposition is that it's a

27    matter of discretion.  There is some deference to the

28    plaintiff established.  The failure of the trial court

                                                          50

1     to kick the case, however, was reversed by the appellate

2     court.

3              And what prompted me to chuckle before

4     I went back on the record is that the plaintiff had

5     such make-weight arguments as the assertion that, quote,

Page 49

**EXHIBIT 8**

**327**

TVMP1202

6  although in her argument below plaintiff urged the

7  availability of treating doctors the California, it is

8  obvious, since Mr. Gibson suffered instant death in the

9  accident, that there were no treating doctors.

10            So it seems like it was a pathetic make-weight

11 argument at least, and it's so one off factually -- and, you

12 know, if this is a one-person wrongful death case that arose

13 in Spokane or McAllen, Texas, I'd send it back to Washington

14 or Texas in a heartbeat.  But this arises in a totally

15 different context of a mass action.

16            And yes, there they said the fact that they

17 found themselves a California lawyer to bring the case

18 wasn't entitled to any deference, but I still think the

19 consequences that you desire, which is to make many of these

20 plaintiffs have to engage new counsel or new co-counsel,

21 is a relevant consideration, and it's only one of the many

22 things that is up in the larger tab below that I'm looking

23 at in exercising my discretion.

24            But I will hear from your adversary, in part to

25 see if they have any words of wisdom that might illuminate

26 the reasons for me to do what I think I'm going to do, but

27 I'll hear from you your final thoughts and then I'll give

28 you a reply after they speak.

                                                          51

1            MS. WEILER:  Thank you.

2            The only last thing I wanted to say is

3  that with regard to the public interest factors, what NFL

4  talks about is avoiding overburdening California courts,

5  protecting potential jurors, and weighing competing ties

6  of California and alternative jurisdictions.  And I only

7  raise that to the extent of:  California does not have

8  interest in the 435 plaintiffs.

                    Page 50

                **EXHIBIT 8**

                    **328**

TVMP1202

9      THE COURT:  That's a drop in the ocean compared

10   to everything else that I'm dealing with here.  And for

11   that reason, it doesn't really work to the detriment.

12           I assure you, my wife is the presiding judge

13   elect, I sit on state committees that worry about the

14   misapplication for scarce funds for construction projects

15   that would be better used to keep courtrooms open.  I can

16   give you a bar speech about how we've been done wrong by

17   the governor and the legislature and to some extent by

18   ourselves in how we're not providing adequate service.

19           But fortunately, the complex courts, my court

20   and the five other ones, plus Judge Elias with asbestos,

21   have figured out efficient ways to manage mass action

22   litigation, we're actually unique in this state and unique

23   in the nation, and I see no reason to withhold those

24   services when funds to provide this kind of service still

25   exist in a dreary financial environment for the court

26   system.  But fortunately we have it.

27           Frankly, I asked my staff yesterday does the

28   inclusion of these extra cases make any meaningful burden

52

1    to them, and they told me no.

2            Aldwin Lim is my witness.  He's not in the

3    room, but he's the Judicial Assistant, and I asked him,

4    and I think Mr. Sanchez at the same time, my courtroom

5    attendant, and that was what I heard.

6            Because it's not just me intellectually.  A

7    big part of what it takes to run one of these courtrooms,

8    because we're still in a paper-based litigation system,

9    is shuffling through all the paper in a literal sense.

10   MS. WEILER:  One of the first questions that you

Page 51

# EXHIBIT 8

TVMP1202

11  asked counsel when we first appeared in front of you at
12  the beginning of this, back when Caldera was really just
13  at issue in terms of a coordinated proceeding, was your
14  concern as to how many cases would be still coming.  And
15  if this forum non conveniens motion is denied, it does
16  invite the opportunity for plaintiffs that are unrelated to
17  California to continue to come here and continue to provide
18  additional tax and burden to the court system and to --
19       THE COURT:  I expect that.  But they do have to pay
20  a filing fee and a complex fee, and the defendant has to pay
21  a filing fee and a complex fee.  And to some extent because
22  of the -- although we don't get the complex fee, because
23  immediately the funds generally finance all kinds of state
24  trial courts, the use of the fees you pay doesn't stay here,
25  it goes into a common pot, maybe in some technical sense are
26  financing juvenile court in a Modoc or a family law court in
27  Solano, but in any case some revenue comes into the court
28  system.

53

1       MS. WEILER:  And for exactly that purpose --
2       THE COURT:  We're a profit center, to be honest.
3  Your filing fees more than exceed the resources we get to
4  provide complex services.  For which we are thankful.
5       MS. WEILER:  And it was for that exact -- well, not
6  just that purpose, but for in part that purpose that Judge
7  Goodwin required severance of cases just like this so that
8  plaintiffs could not avoid the filing fees that they were
9  avoiding by bringing all the plaintiffs together.  So. . .
10       THE COURT:  The plaintiffs in California have figured
11  that out a long time ago, and at least as a matter of local
12  legal culture the inclusion of multiple plaintiffs is there.
13            Of course, it does say to your client you need

Page 52

**EXHIBIT 8**

**330**

TVMP1202

14   to pay multiple first appearance fees.  So. . .

15              Maybe I'll just chop them down into 20 or

16   28 or put surcharges on.  I don't want to go there.  We

17   fortunately have the money we need to run the court and

18   I don't need to start playing games to just do that.  And

19   I realize if I chopped it one way or the other, then all

20   of a sudden:  We'll remove.

21              That's why you always want me to bring in a --

22   well, you do want me to bring in a hacksaw and cut them

23   into pieces because you might find a removable subpart.

24        MS. WEILER:  Potentially, your Honor.

25        THE COURT:  Indeed.

26              So you've come this far, Mr. Wexler,

27   Mr. Arnold.  Why am I wrong?  Or am I right?

28        MR. ARNOLD:  Judge, we think you're exactly right,

                                                        54

1    for all the reasons you've already articulated.  And not

2    just in your preliminary opinion, but this morning, too.

3              And so, candidly, we don't have much to

4    add.  My preference is to be brief.  Unless your Honor

5    has specific questions that you'd like me to address.

6         THE COURT:  No.  The law is clear that no findings

7    of fact are required in ruling on a motion for forum non

8    conveniens, and I have taken the time to speak at length

9    on the record, so I don't think it generates an appealable

10   order.  But if somebody wants to take a writ, at least

11   you've got the benefit of a transcript.

12              At the moment I don't propose to do more than

13   adopt the tentative as part of the minute order today,

14   unless you have some desire for greater prolixity.

15        MR. ARNOLD:  No, your Honor.

Page 53
**EXHIBIT 8**

**331**

TVMP1202

16          THE COURT:  That was short, but you get the last

17  word, Ms. Weiler.

18          MS. WEILER:  Thank you.  I think the last word will

19  also be short.

20              In your tentative you also talked about the

21  hundreds of cases that would remain here.  Boston Scientific

22  is distinguishable from Caldera, which is representative

23  of why you have hundreds of cases.  Even with these

24  multi-plaintiff cases, Boston Scientific only has 30

25  cases before your Honor.  Caldera does have the California

26  connection, Boston Scientific simply does not.  So. . .

27          THE COURT:  Okay.  The tentative is adopted for the

28  reasons stated in the tentative, as well as the additional

                                                            55

1   comments of the judge in open court.

2               Plaintiff, through Attorney Arnold, to give

3   notice and file it with the court within a week of today,

4   December 9th.

5               All right.  So now we move into a further

6   status conference.

7               What do we know about Carolyn Boyden?  I've

8   got an Order to Show Cause for Carolyn Boyden on docket

9   for reasons I remember not.

10          MR. WES:  Your Honor, that claim of Carolyn Boyden

11  was dismissed by plaintiff's counsel.  So that OSC can just

12  be discharged.

13          THE COURT:  Okay.  Item 4 on the docket is

14  discharged.

15              Okay.  So where do we go next on Boston

16  Scientific?  You're still here.  It's addressed to some

17  extent in your status report.

18              So I guess now we move into your status

Page 54

# EXHIBIT 8

# 332

TVMP1202

19    report.  Bear with me while I shuffle some papers here.

20

21                    (Pause in proceedings)

22

23         THE COURT:  Back on the record.

24             Do I understand right that it's now the

25    practice in Federal Court that if you just put a "/s/"

26    that's taken as a signature and it's hoped that there's

27    no misuse of authority?

28         MS. WEILER:  It has to do with obtaining signatures

                                                              56

1     or consent by each of the parties ahead of time.  So as

2     long as you have the actual consent via -- in some form

3     of writing or an actual signature in the file, that "/s/"

4     is an acceptable electronic signature.

5          THE COURT:  Everyone else agree that that's the

6     etiquette in federal court these days?

7              I'll accept it here, then, since we're in

8     a way sort of cloning what's happening in Charlston.

9              But Mr. Sanchez, that's a change of past

10    practice, so I'm not going to insist on a wet ink

11    signature, at least on this case

12                 So, I need to contact Judge Bendix and see

13    if she is prepared to do something with Chaplin; right?

14                 Are you otherwise agreeable that, for Caldera,

15    that's the collective game plan?

16         MS. SIMES:  Yes, your Honor.

17         THE COURT:  Do you want to take a moment now and

18    see if I can reach her?  Because I haven't contacted her

19    in advance on this proposition.  Or do you want to proceed

20    with other things and have me pick that up later?

Page 55
**EXHIBIT 8**

**333**

TVMP1202

21        MS. SIMES:  Your Honor, Laurel Simes.

22              Only that it might be helpful because it's

23    getting close to the end of the year.

24        THE COURT:  And the dates in mind are January 21,

25    January 27, January 28, or January 29; correct?

26        MR. DEADY:  Yes, your Honor.

27        MS. ROSE:  Your Honor?  Beth Rose for Caldera.

28              Your Honor just correctly identified the

57

1     dates Caldera proposed to the plaintiffs.  In the joint

2     report the plaintiffs said that they preferred January 21st,

3     but I think we're flexible.  But I would defer to Ms. Simes

4     in terms of more detailed information about the plaintiffs'

5     availability.

6         THE COURT:  Do you see this as one day all day, or

7     part day or multi-day?

8         MS. ROSE:  Beth Rose again.

9               I would suggest one full day.

10        MS. SIMES:  I would suggest one full day, but it

11    might bleed over into the next day, as sometimes happens.

12        THE COURT:  And are you particularly enthused with

13    Judge Bendix as compared to one of her peers, or just the

14    idea of somebody in that program?

15        MS. SIMES:  I have had a great deal of success with

16    having cases actually resolved with that particular judge.

17        THE COURT:  So it is Judge Bendix personally, if at

18    all possible.

19        MS. SIMES:  Yes.  Yes.

20        THE COURT:  Do you concur, Ms. Rose?

21        MS. ROSE:  Beth Rose for Caldera.

22              Caldera agrees and joins in Ms. Simes' request.

23        THE COURT:  Okay.  Well, I'll take a recess, then.

Page 56

**EXHIBIT 8**

**334**

TVMP1202

24    Use this as your bathroom break if you want.  I'll be back

25    in ten minutes.

26

27                        (Recess taken)

28
                                                                    58

1     CASE NUMBER:          JCCP4733

2     CASE NAME:            TRANSVAGINAL MESH PRODUCT CASES

3     LOS ANGELES, CA       TUESDAY, DECEMBER 2, 2014

4     DEPARTMENT 322        HON. WILLIAM F. HIGHBERGER, JUDGE

5     TIME:                 10:40 A.M.

6     REPORTER:             TIMOTHY J. MCCOY, CSR NO. 4745

7     APPEARANCES:          (AS HERETOFORE NOTED)

8                            * * *

9

10          THE COURT:  Back on the record in the Transvaginal

11    Mesh matter.

12             Mr. Lim, do we have everyone in from the hall?

13          THE CLERK:  I believe so.

14          THE COURT:  Okay.  I have had a chance to talk to

15    the clerk in support of our settlement courts at the Mosk

16    Courthouse in Department 18.  She advises me that Judge

17    Bendix has been reassigned temporarily to sit as a justice

18    pro tem on the state Court of Appeal for the Second District

19    through the end of March.  But I have the names of some

20    alternatives who are available on the dates in question,

21    and would at this point request that only the key people

22    involved, specifically in the Caldera settlement

23    negotiations, join me in chambers so I can review with

24    you some of the options specific to getting something set

25    on the dates requested in January.

Page 57
**EXHIBIT 8**

**335**

TVMP1202

26        And Mr. Burton, who do you request that I

27  bring in on the plaintiffs' side?

28        Did Mr. Burton hang up, anticipating a call?    59

1    MS. ROSE:  Actually, Judge Highberger, this Beth

2  Rose for Caldera.

3       We'd request that Laurel Simes be present

4  in chambers.  Her partner Rachel Abrams had been designated

5  as settlement liaison counsel, and our dealings over the

6  past few months have been both with her colleague, Rachel

7  Abrams, and also with the Robinson firm.  Karen Menzies

8  is also co-settlement liaison counsel, and I believe Karen

9  Karavatos from Karen Menzies' firm is also on the phone.

10      So from Caldera's perspective, those are the

11  two most pertinent and important people.

12    THE COURT:  Simes and who?

13    MS. ROSE:  Karen Karavatos.

14    THE COURT:  Okay.

15    MS. SIMES:  And actually, your Honor, Ms. Karavatos

16  is here in court.

17    MS. ROSE:  Oh.

18    MS. SIMES:  She was delayed earlier.

19    THE COURT:  But she's the one that popped up.

20    MS. SIMES:  Yes.

21    THE COURT:  So I'm going to have Simes and Karavatos

22  in person, and because Burton has otherwise seemed to act

23  like a lead liaison counsel for the plaintiffs generally, to

24  allow him in, unless somebody tells me you don't want Burton

25  in the mix.

26    MS. ROSE:  Again, Beth Rose for Caldera.

27      If Mr. Burton would like to participate in

28  the settlement, we would certainly welcome that.  That has

Page 58

## EXHIBIT 8

TVMP1202

60

1    been our assumption all along, that all plaintiffs were

2    participating in the settlement process.

3          THE COURT:  Okay.  What about, there was a

4    Ms. Johnson who I think piped up on the phone?

5          MS. SIMES:  Yes, your Honor.  Ms. Johnson just

6    texted me and said she did not know who was all here in

7    the courtroom, and that's why she called.  But she said

8    that's all right, she's fine.

9          THE COURT:  So I'll proceed with Burton, Simes

10   and Karavatos on the plaintiffs' side, and Ms. Rose and

11   Mr. Brazil on the defense side, unless there's an objection.

12         Okay.  Hearing no objection, the court's in

13   recess.

14         Ms. Rose, expect to be called back.

15         Mr. Brazil and Mr. Burton, if you're on the

16   line, expect to be called.

17         Ms. Simes and Ms. Karavatos, please join me in

18   chambers.

19         The court's in recess.

20         MS. ROSE:  Thank you.

21

22               (Recess taken)

23

24

25

26

27

28

61

1    CASE NUMBER:             JCCP4733

**EXHIBIT 8**

**337**

TVMP1202

```
 2   CASE NAME:              TRANSVAGINAL MESH PRODUCT CASES
 3   LOS ANGELES, CA         TUESDAY, DECEMBER 2, 2014
 4   DEPARTMENT 322          HON. WILLIAM F. HIGHBERGER, JUDGE
 5   TIME:                   11:15 A.M.
 6   REPORTER:               TIMOTHY J. MCCOY, CSR NO. 4745
 7   APPEARANCES:            (AS HERETOFORE NOTED)
 8                                * * *
 9
10        THE COURT:  Okay.  We're back on the record.
11            I did talk in chambers via phone and in person
12   with Ms. Simes, Ms. Karavatos, Mr. Brazil, Ms. Rose and
13   Mr. Burton.
14            On the plaintiffs' side, if you want to know
15   more about what happened, contact one of them.  Likewise on
16   the defense side.
17            What I am going to do is set a further
18   proceeding on this docket for next Tuesday, the 9th, at 2:00
19   p.m., in regard to basically a status conference to set the
20   date and time in terms for a mandatory settlement conference
21   in January regarding an intent to try to settle the claims
22   against Caldera.  CourtCall appearances are fine.
23            If there's full agreement amongst the parties
24   interested in the Caldera mandatory settlement conference
25   as to the protocol and the choice of available judges, it's
26   conceivable that it will go off calendar.  Use the bulletin
27   board to advise me of any such agreement.
28            If there is less than complete agreement,
```

62

```
 1   please submit by close of business next Monday, the 8th, a
 2   stipulation and proposed order as to those points which are
 3   hopefully agreed to, and then your briefs in regard to what
 4   you want me to do that your adversary won't cooperate with,
```

Page 60

**EXHIBIT 8**

**338**

TVMP1202

 5   whether it's making the second assistant bottle washer come

 6   or each plaintiffs' counsel come in person or whatever it is

 7   that's in dispute.

 8              Is that a fair synopsis of what we discussed

 9   in chambers, Ms. Rose?

10        MS. ROSE:  Yes, your Honor.

11        THE COURT:  Ms. Simes?

12        MS. SIMES:  Yes, your Honor.

13        THE COURT:  Anything else you want to add, Ms. Rose?

14        MS. ROSE:  No thank you, your Honor.

15        THE COURT:  Ms. Simes?

16        MS. SIMES:  No thank you.

17              Except, your Honor, what time would you want

18   any submission if we are unable to reach an agreement by

19   Monday?

20        THE COURT:  Close of business on Monday is 4:30 p.m.,

21   and for these purposes I'd let you bootleg it as a

22   CaseAnywhere upload.  File it later in person, but don't

23   worry about getting it into the courtroom at 4:30 p.m. in

24   a physical sense.  Just get it uploaded via CaseAnywhere

25   by 4:30 p.m.

26        MS. SIMES:  Thank you, your Honor.

27        THE COURT:  Don't take that as a general invitation

28   to forgetting to file, but for these purposes I'll employ

                                                              63

 1   your parallel.

 2        MS. SIMES:  Thank you, your Honor.

 3        THE COURT:  Okay.  That also will include the

 4   question of what I'm dealing with in what was referred

 5   to in the joint report for today is, quote, non-mediating

 6   plaintiffs, unquote, and their associated request to open

Page 61
**EXHIBIT 8**

TVMP1202

7   discovery.

8            At the moment, in order to have an effective

9   MSC, I'm presently of the view that I'm going to order

10  anybody who claims they're non-mediating on the plaintiffs'

11  side to participate in the MSC, and even though there may

12  be some reason to think that one or more of plaintiffs'

13  counsel believe that that doesn't necessarily improve their

14  lie in terms of game advantage, I think the hazards of

15  opening up discovery between now and the MSC at the end

16  of January are self-evident such that I'm not going to

17  authorize it.  If you don't like that outcome, bring an

18  ex-parte or a noticed motion.

19           All right.  So I'm ready to turn to Science

20  Day, unless somebody -- and I'm up to the bottom of Page 3

21  of the joint report, unless somebody has other issues we

22  need to address before I move to Science Day.

23           Hearing nothing, I'll move on.

24           You seem to be making some progress, as

25  I understand it, basically Boston Scientific and the

26  plaintiffs' bar.  That makes sense to me.

27       MS. WEILER:  There is one addition, your Honor.

28  The Cook defendants have a slightly different product,

                                                            64

1   it's not actually a synthetic mesh, and they have

2   specifically asked for 13 minutes of time to explain

3   about that.  That's the only caveat.

4       THE COURT:  Okay by me.

5            And that's okay with you?  You have to share

6   your time.

7       MS. WEILER:  Yes, your Honor.

8       THE COURT:  Okay.

9            All right.  Now, do we have agreement on

Page 62

**EXHIBIT 8**

**340**

TVMP1202

10    February 6th versus January 29?

11         MS. WEILER:  It looks like from the papers that

12    defendants put in January 29th and plaintiffs put in

13    February 6th, your Honor.

14         THE COURT:  Why does one day work better for

15    somebody as opposed to the other?

16         MS. WEILER:  On behalf of Boston Scientific, I

17    intend to have other counsel from out of state travel

18    in to participate in the presentation, and that date was

19    better in terms of their scheduling with trial and whatnot.

20         THE COURT:  So that's why you want February 6th?

21         MS. WEILER:  I prefer January 29th, your Honor.

22         THE COURT:  And from a plaintiff point of view,

23    why is January 29 so bad?

24         MS. SIMES:  That I cannot personally address.

25         MS. KARAVATOS:  Your Honor, Karen Karavatos.

26              January 29th is fine for plaintiffs.

27         THE COURT:  Okay.  Then I'll reserve the entirety

28    of Thursday, January 29 for Science Day, for calendar

                                                          65

1     purposes, starting at 9:00 a.m.  If it helps to start at

2     9:30 or 10:00, I'm open to that.  But for the purposes of

3     trying to avoid competing business, I at least book my own

4     time from 9:00 a.m. on.

5          MS. WEILER:  If we could start at 9:30 or 10:00,

6     that would be appreciated, your Honor.

7          THE COURT:  You're traveling down from --

8          MS. WEILER:  Yes.

9          THE COURT:  I'll put it down for 9:30.

10         MS. WEILER:  Thank you, your Honor.

11         THE COURT:  Okay.  But that will include both morning

**EXHIBIT 8**

**341**

TVMP1202

12  and afternoon.  So it's 9:30 to noon and 1:30 till 4:30 p.m.

13          What else, if anything, do we need to discuss

14  to try to make the Science Day project come forward

15  successfully?

16          Ms. Weiler?

17      MS. WEILER:  It's my understanding that we're pretty

18  much in agreement.  There was one piece articulated in

19  plaintiffs' specific position that wasn't clarified for my

20  benefit and it had to do with communications made, documents

21  shown or distributed, photographs displayed and videos

22  shown shall not be the subject of any questions posed to

23  plaintiffs, plaintiffs' experts or any plaintiffs' witnesses

24  during depositions or trial.

25          And if I'm understanding what that means,

26  basically plaintiffs don't want anybody to use the materials

27  at Science Day or to ask questions about Science Day to

28  their experts or to the plaintiffs later, which I don't

66

1  oppose.

2          What I am wary of, though, is the way it's

3  written might suggest that to the extent information taken

4  from the public purview or taken from Boston Scientific, if

5  I couldn't use those in the context of a depo where I would

6  normally use them, this language potentially precludes

7  that, and that's why I'm a little wary of it.  That's all.

8      THE COURT:  The first thing I'd say before I invite

9  plaintiffs to respond is you ought to have a written

10  Stipulation and Order about Science Day, and I think it

11  needs to be noticed to everybody else with a chance to

12  object, because although it may not have signatures of

13  every one of these doctor lawyers who's made an appearance

14  earlier this morning or all of the manufacturer

Page 64

**EXHIBIT 8**

**342**

TVMP1202

15    co-defendants, insofar as I as a bench officer with their

16    case before me participate in some kind of off-the-record

17    matter, I think they have a right to object at a minimum.

18              I think trying to get their signatures on

19    a stipulation is a bridge too far in terms of practical

20    mechanics, but through the magic of CaseAnywhere service

21    they'll all be on notice of the proposed order and given

22    some time to object before it becomes the order of the

23    Court.

24              But I think the bargaining ought to be

25    between those of you who are more directly involved with

26    the exercise, which appears to be you Ms. Weiler and

27    Ms. Karavatos, and those who you choose to align with

28    yourselves for this narrow purpose.

                                                            67

1              Is that okay with you, Ms. Karavatos?

2         MS. KARAVATOS:  Yes, your Honor.

3         THE COURT:  And Ms. Weiler?

4         MS. WEILER:  Yes, your Honor.  Thank you.

5         THE COURT:  But we have enough time between now and

6    January 29th to try to get this thing done resolved by, say,

7    January 5th or January 10th, so we would have a legitimate

8    protocol for the process.

9         MS. WEILER:  One question I do have --

10        THE COURT:  Oh, the other thing I was going to

11   say, though, so in addition to getting something in

12   writing, is, yeah, exactly, if there was an FDA notice,

13   a recall, hypothetically, or a statement to do research,

14   which is germane to somebody's presentation at Science

15   Day, it doesn't somehow become off limits just because

16   it was used on Science Day.  But if it's going to be

Page 65
**EXHIBIT 8**

**343**

TVMP1202

17  used in discovery, it has to have a legitimate alternative

18  provenance that predates Science Day or for some legitimate

19  reason post-dates Science Day but isn't just the

20  opportunistic demand to say, "Oh, that e-mail you showed

21  on Science Day, I want that in discovery," if the only

22  way they know about that e-mail is because it showed up

23  on Science Day.

24      MS. WEILER:  Exactly, your Honor.

25      THE COURT:  But that can all be memorialized in

26  the writing, hopefully.

27      Ms. Karavatos, now do you wish to respond

28  further by way of clarification, or leave it for your

68

1  negotiations?

2      MS. KARAVATOS:  Your Honor, we're fine with working

3  out the language of the stipulation that would protect

4  my clients from being cross-examined during deposition

5  regarding what's said during Science Day.

6      MR. WEILER:  The one additional item is that, as

7  I mentioned, my partner that would be coming out is not

8  currently pro hac in this proceeding.

9      Does he need to be pro hac'd in in order to

10  present at Science Day, considering it's off the record?

11      THE COURT:  I think you can afford that.  Yes.

12      MS. WEILER:  Can I have a date for a pro hac?

13  Do you want me to bring it on a regularly-noticed motion?

14      THE COURT:  No.

15      MS. WEILER:  Okay.

16      THE COURT:  Submit it as an application.  Just don't

17  forget the $500 fee.

18      MS. WEILER:  Of course, your Honor.

19      THE COURT:  Which again goes to the general coffers

Page 66

**EXHIBIT 8**

**344**

TVMP1202

20    in San Francisco and doesn't buy me toner cartridges.

21         MS. WEILER:  I do think it's actually $50.

22         THE COURT:  Oh, no.  It's $500 for a pro hac.

23         MS. WEILER:  Has it gone up?

24         THE COURT:  And indeed, it's for a 12-month period,

25    as I understand it.  If you want your pro hac to persist

26    for more than 12 months, you have to reapply.

27         MS. WEILER:  We do have to update, I know that.

28         THE COURT:  But you know, I'm a fan of economical

                                                              69

1    litigation, so hopefully for the Texas lawyers and all,

2    we'll have this case done within 12 months so they won't

3    have to pay a second pro hac fee.

4              This is the Legislature's genius.  They have

5    turned the courts from being a public service into being

6    a bad tollgate on a turnpike.  It is most regrettable.

7              Okay.  On Science Day, anything else you

8    want to take up today?

9              Okay.  So I guess we get to the question of

10   what do we do next about discovery with Boston Scientific.

11             Have you come to agreement on a protective

12   order, or are you still haggling in ways I have to worry

13   about?

14        MS. WEILER:  No, I believe we're in agreement.

15             Basically what's been submitted as Exhibit A

16   to the joint status report is a copy of the MDL order with

17   only slight revisions to include the California local rules

18   with regard to motions to seal, et cetera, the 2.550,

19   et seq.

20             Otherwise, it's my understanding that we have

21   an agreement on that one.

**EXHIBIT 8**

Page 67

**345**

TVMP1202

22          THE COURT:  Does anybody wish to object to the

23   contents of Exhibit A to today's joint report as a

24   stipulated protective order that the Court will otherwise

25   adopt at this time?

26              Hearing no objections, I will then sign it

27   under today's date and it will become the order of the

28   Court.

                                                              70

1           MS. WEILER:  Thank you, your Honor.

2           THE COURT:  I would propose, as much for my staff's

3   administrative convenience as anything, to add to Paragraph

4   C-3 on Page 8 at Line 20 some language to the general effect

5   that confidential materials submitted regarding discovery

6   motions can be automatically filed under seal without need

7   for further fuss and bother.

8               This is a mercy both for you and for my staff,

9   because the fact that you get an easy sealing, if it's a

10  discovery motion, saves you the burden of bringing a motion

11  or application to file under seal and it also gives clear

12  authority to my staff to treat them as under seal if it's

13  a discovery motion.

14              Understood so far what I'm proposing?

15          MS. WEILER:  Yes.

16          MR. ARNOLD:  Yes, your Honor.

17          MR. WEXLER:  Yes, your Honor.

18          THE COURT:  Anybody object to this addition to

19  Paragraph C-3?

20          MR. ARNOLD:  No objection.

21          MR. WEXLER:  No, your Honor.

22          MS. WEILER:  No, your Honor.

23          THE COURT:  Okay.  Remember also, though, that even

24  though you get a free pass on getting things filed under

Page 68

**EXHIBIT 8**

**346**

TVMP1202

25    seal, any time you submit something under seal, whether it

26    is under seal right from the get-go as a discovery matter

27    or conditionally lodged under seal in the more difficult

28    process, you must be providing a redacted public record

                                                                          71

1     counterpart of the document at the same time that you

2     submit the secret version of the document, because the

3     public file needs to have a redacted version that's as

4     complete as possible in the public file, and it's not my

5     staff's job to start redacting your documents to do that.

6     So you always need to be doing that.

7              And a helpful hint:  Don't try to redact with

8     White-Out tape, as I've seen done by some incredibly lazy

9     paralegals on occasion, since you can lift the White-Out

10    tape off the public record.

11             MS. WEILER:  Would you like us to submit a revised

12    order with that additional language, your Honor?

13             THE COURT:  Naw.

14             MS. WEILER:  Okay.  Thank you.

15             THE COURT:  So the added language says that

16    discovery motions can be filed under seal without making

17    an application or motion to seal per CRC 2.550(a)(3),

18    period, end quote.  That being a reference to California

19    Rule of Court 2.550(a)(3).  That's on Page 8.  And any

20    conformed copies may repeat those additions.

21             Subject to that, your stipulated order is

22    adopted.

23             And I think I provided earlier that you,

24    Mr. Arnold, were giving notice when we're done today?

25             MR. ARNOLD:  Yes, your Honor.

26             THE COURT:  Since you have something to crow about.

Page 69

**EXHIBIT 8**

**347**

TVMP1202

27    So you can give notice of this, as well.

28         MS. WEILER:  Your Honor, I'm actually happy to do
                                                                    72

1    that, to provide notice, given the order is coming from

2    us anyway.  So. . .

3         THE COURT:  Okay.  Do you want to give notice on

4    the protective order?  Or everything?

5         MS. WEILER:  I can give notice on everything, your

6    Honor.

7         THE COURT:  It was a valiant effort.

8         MS. WEILER:  Thank you.

9         THE COURT:  You marshaled all the arguments that

10   you could.  Really, from your client's point of view, you

11   did the very best that you could under the circumstances,

12   given what you had to work with.

13        MS. WEILER:  Thank you, your Honor.

14        THE COURT:  Include that with the bill.

15             Okay.  So what else should we talk about in the

16   very brief time available now?  Otherwise, I'm inclined to

17   kick the can to next Tuesday or perhaps some other date past

18   next Tuesday if we're going limit next Tuesday to the issues

19   of the Caldera MSC in January.

20             But we clearly need to have a next date before

21   the end of January.  And, indeed, the next date of the MSC

22   is not in front of me, it's in front of a colleague.  So,

23   what do we use our next five minutes for and when do we come

24   back?

25             From the plaintiffs' point of view, who's the

26   chief?  Ms. Simes?

27        MS. SIMES:  Well, I think that maybe next Tuesday

28   should only be dedicated to the MSC, because so many people
                                                                    73

Page 70
**EXHIBIT 8**

**348**

TVMP1202

1    will be absent.  We have a mediation in another case,

2    everybody involved in this is going there.  I don't know

3    about other people, how they feel about that, but. . .

4         THE COURT:  How soon do you want to come back

5    otherwise?

6         MS. SIMES:  Not far.  Soon.  Pretty soon.

7         THE COURT:  What's good availability if it's not next

8    Tuesday?

9         MS. SIMES:  I'm pretty open except for the Christmas

10   Eve parts.  I don't know about our other colleagues.

11        MS. WEILER:  Your Honor?  With respect to what's

12   being done in the next five minutes, my response would

13   depend on what you intend to do with regard to Boston

14   Scientific's discovery.

15        THE COURT:  I've signed a protective order and I

16   hope you get on with the business of regurgitating what

17   you produced in West Virginia.  And insofar as it's

18   different, what you produced in Massachusetts and --

19   yeah, for your purposes, Massachusetts --

20        MS. WEILER:  Okay.

21        THE COURT:  -- that much I'd like to see go forward.

22   Because insofar as you're giving them an authorized data

23   dump and I've lifted the stay on discovery at this point

24   simply to reproduce what you produced for the the federal

25   MDL in the Massachusetts state court proceeding.

26        MS. WEILER:  No problem, your Honor.

27        MR. WEXLER:  Your Honor, for clarification, would

28   that include also their discovery responses in addition
                                                                74

1    to just the physical document production?  Because I'm

2    assuming, having not seen it, that there's going to be

Page 71
**EXHIBIT 8**

**349**

TVMP1202

3   answers to discovery responses that indicate what is

4   responsive to certain requests.

5        THE COURT:  Well, you certainly need a verification

6   to explain the documents.

7        MS. WEILER:  There's an index that comes along with

8   it that includes Bates numbers and categories of documents

9   within that.

10            As to the verification, are you referring to

11   like a custodian of record verification?

12        THE COURT:  Well, there ought to be something that

13   says what it purports to be, because I do understand that

14   getting the information is nice in the abstract, but if by

15   way of example you said this is like half of our adverse

16   incident reports, not all of them, well, that's different

17   than saying this was an attempt in good faith in the MDL

18   to produce all of our adverse incident reports from Day A

19   to Day B.  So then if that's verified, then it is what it

20   purports to be.

21            If you said, well, actually, for whatever

22   reason in the MDL, with the authority of the court we

23   produced half of our adverse incident reports, at least

24   they'll know to think to ask about, well, what about the

25   other half.

26            Or if you just say, well, these are some of

27   our documents, and that's all that the verification says,

28   that these are some documents from the Boston Scientific,

75

1   further affiant sayeth naught, then they really don't know

2   what they got.  Although they can start pawing through

3   a million images.  But they do at some point need to get

4   something that purports to say under oath what the metes

5   and bounds are of what it purports to be.

Page 72

**EXHIBIT 8**

**350**

TVMP1202

6         In theory, in the MDL, there were demands

7    and then there were objections and then there were

8    modifications of the offer and then there was a production

9    and a verification of the response via the modification of

10   the offer, and so you didn't give them what they demanded

11   but you gave them what you said you were going to give them,

12   and you verified you said what you gave them.  But that part

13   will in some fashion need to be attached.

14        But frankly, if you just get on with the job

15   of regurgitating the images, some of these people, I assume

16   Ms. Simes and others, have seen them already.  They probably

17   can see these in their sleep.

18        MS. WEILER:  Yes, your Honor.

19        THE COURT:  But for other people --

20        MS. SIMES:  I'd rather not, your Honor.

21        THE COURT:  Come again?

22        MS. SIMES:  I'd rather not, your Honor, with all due

23   respect, see them in my sleep.

24        THE COURT:  But anyway, but for some of these people

25   it may be the first exposure.  For those who have seen

26   it before, and it's only an official reproduction on this

27   docket, there's probably less questions.  For those who are

28   seeing it a first time, they certainly won't understand the

                                                            76

1    metes and bounds.

2         But if you just get on with the business of

3    starting the data dump, the effort to define by a bone fide

4    verification what the metes and bounds are certainly will

5    need to come, but there's plenty enough work to keep people

6    busy over the holidays and excite the curiosity of the

7    novitiates.

Page 73
**EXHIBIT 8**

**351**

TVMP1202

8          MS. WEILER:  In terms of the actual production, we
9     have been producing our MDL production and our Massachusetts
10    production via hard drive.  I do know that at least the
11    first set of hard drives is about $2500 to $3,000 to
12    produce, and then subsequent versions are obviously cheaper.
13    But in terms of to whom I am sending a hard drive to,
14    obviously the cost matters to me.
15              So who should I be expected to actually send
16    them to?  I know that many of these plaintiffs already have
17    access to the MDL and Massachusetts proceedings, but, you
18    know, we're obviously here and I'm happy to regurgitate,
19    I'd just like to know.
20          THE COURT:  So the hardware cost, if I go into Best
21    Buy or to Cisco to buy the hard drive it is 2500 per unit?
22          MS. WEILER:  No.  There's the hard drive cost itself,
23    and that's the cheaper cost that comes along later, I think
24    that's more like two or three hundred dollars.  The first
25    cost, though, has to do with actually formatting it for
26    purposes of putting it in this particular -- it's a service
27    provider that does it for us, they have to put it on, and
28    it's my understanding from talking to our discovery folks

                                                            77

1     that that first one costs me 3,000 bucks.
2          THE COURT:  Even though they did it for West Virginia
3     and did it again for Massachusetts?
4          MS. WEILER:  Yes, your Honor.
5          THE COURT:  They've got a creative approach to always
6     going back to square one and charging you like it's new
7     work?
8          MS. WEILER:  That's my understanding.
9              And it may be part of the contract that was
10    negotiated.  I don't know the specifics, though.
                          Page 74
                       **EXHIBIT 8**

                          **352**

TVMP1202

11          THE COURT:  Well, they always need to look for their

12   own profit opportunity.

13          MS. WEILER:  Of course.

14          THE COURT:  Bargain with your adversary on that in

15   the short run.  I would hope your adversary would at least

16   agree to pay for the cost of the hard drive that you're

17   furnishing, but you can pick the brand so that you don't

18   have 28 different versions of hard drives.

19          MR. BURTON:  Your Honor, this is Mark Burton

20   speaking.

21              Because we've already been engaged with Boston

22   Scientific in California regarding discovery documents,

23   they produced many of those same documents already to

24   our firm, I believe that we could handle that, and any

25   additional documents I can meet and confer with her to

26   make sure that we've already received a copy of those

27   same documents to our firm directly and we can handle

28   that as co-lead.
                                                                    78

1          THE COURT:  Well, if Mr. Burton has everything that

2    the other plaintiffs should want to get, then arguably

3    Mr. Burton can just clone what he's got and deny your vendor

4    their rapacious set-up fee to do something a third time.

5          MS. WEILER:  The only caveat to that is that

6    Mr. Burton also has plaintiff-specific discovery responses

7    in a separate California case that would not be within

8    what the Court is ordering us to produce now, and I would

9    presumably request, and I assume Mr. Burton would also want,

10   redaction from those documents.

11          THE COURT:  That sounds like a good thing to talk

12   about between now and when you get back together.

Page 75

# EXHIBIT 8

## 353

TVMP1202

13          So in the interest of time, I'm just going
14   to pick a time we can get back together.  I would propose
15   we do something on the afternoon of Tuesday, the 16th,
16   perhaps at 11:00 a.m.?
17          MS. WEILER:  Your Honor, I will be on a plane that
18   day.  Is it possible for the 15th?
19          THE COURT:  Do other counsel want to hash out when
20   you want to be coming in?
21          MS. WEILER:  If it were the afternoon of the 15th,
22   that would be all right.  But -- or maybe the -- well, I
23   think that would probably be okay.
24          THE COURT:  I have counsel on Acosta before me in
25   the audience.
26          Is the motion for summary adjudication noticed
27   for Monday, December 15th still relevant, or does it get
28   mooted by changed circumstances?

                                                        79

1          VOICE IN THE AUDIENCE:  Still relevant.
2          THE COURT:  Okay.  I don't really have good
3    availability to give you the amount of time this takes
4    on the 15th.
5          You practice with others, such as Mr. Brazil,
6    Ms. Weiler.  I can't always oblige every lawyer who
7    otherwise has a busy schedule.
8          MS. WEILER:  Mr. Brazil represents Caldera, your
9    Honor.
10         THE COURT:  Well, fair enough.  But you've got
11   Mr. Ziska at your elbow.
12         MS. WEILER:  If the Court would entertain another
13   day that week other than the 16th, I could participate
14   by phone and would be happy to do so.
15         THE COURT:  I'm taking a little bit of vacation on

Page 76

# EXHIBIT 8

## 354

TVMP1202

16    the 17th through the 19th and don't plan to surrender that

17    to your busy schedule.

18              But I'll be happy to see you folks on the 23rd.

19    MS. SIMES:  Your Honor, that would be problematic

20    for everybody.  But what about --

21    THE COURT:  What about the afternoon of the 11th?

22    MS. WEILER:  That would work, your Honor.

23    MS. SIMES:  I'm flying from New Orleans from a

24    conference.  I mean a mediation.

25              Actually, you know what?  No, wait.  I can

26    do that.  I can do that.  I can fly from there to here.

27    THE COURT:  Okay.  We'll start at 1:00 on Thursday,

28    December 11th.  A joint report due two court days in

                                                          80

1    advance, which is Tuesday the 9th.  Make every effort to

2    actually file it in the courtroom, don't just assume I'm

3    going to pull it off of CaseAnywhere.

4              I really have to kick you folks out of here

5    now so I can talk to the people on Acosta.  So is there

6    anything else that desperately needs me to address?

7    MS. WEILER:  Yes.  Just one quick procedural error.

8              One of the exhibits that was attached to the

9    joint report as Exhibit C was actually just a duplication

10   of Exhibit B.

11             I have the correct Exhibit C.  If there's no

12   objections, I would just ask to swap it out.

13   THE COURT:  So the B I got is a Plaintiff Fact Sheet.

14   MS. WEILER:  The B is correct, but --

15   THE COURT:  The C was a Defendant Fact Sheet.

16   MS. WEILER:  You actually have the correct one?

17   THE COURT:  Yeah.

Page 77

# EXHIBIT 8

TVMP1202

18    MS. WEILER:  Oh, then you've got it.  The copy we

19  printed off had just a duplication.

20    THE COURT:  All right.  Anything anybody else needs,

21  desperately needs to take up with the Court?

22    COURTROOM RESPONSE:  No, your Honor.

23    THE COURT:  If not, the court's in recess.

24

25    (At 11:40 a.m., the proceedings were adjourned)

26                    - - -

27

28

♀

1           SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               FOR THE COUNTY OF LOS ANGELES

3  DEPARTMENT 322          HON. WILLIAM F. HIGHBERGER, JUDGE

4

5

6  COORDINATION PROCEEDING              )
   SPECIAL TITLE (RULE 3.550)           )
7                                       )
   IN RE TRANSVAGINAL MESH PRODUCT CASES )   JCCP NO. 4733
8  _____)

9

10          I, TIMOTHY J. McCOY, CSR No. 4745, Official

11  Reporter of the Superior Court of the State of California,

12  for the County of Los Angeles, do hereby certify that the

13  foregoing pages, 1 through 80, inclusive, comprise a full,

14  true and correct transcript of the proceedings held in

15  the above-entitled matter on Tuesday, December 2, 2014.

16

17          DATED THIS 7TH DAY OF DECEMBER 2014.

18

19

20

Page 78

# EXHIBIT 8

## 356

TVMP1202

21

22

23

24

25

26

27

28

♀

_____
TIMOTHY J. McCOY, CSR NO. 4745
OFFICIAL REPORTER PRO TEMPORE
LOS ANGELES SUPERIOR COURT

**EXHIBIT 8**

**357**

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1600, Irvine, California 92614.

On December 9, 2014, served on the interested parties in said action the within:

### NOTICE OF RULINGS ON DECEMBER 2, 2014

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☐ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above. The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, and to be delivered by their next business day delivery service to the addressee designated.

☐ (BY ELECTRONIC SERVICE) By electronically mailing a true and correct copy through Shook, Hardy & Bacon LLP's electronic mail system to the e-mail address(es) as stated on the attached service list

☒ (ELECTRONIC service) I provided the document(s) listed above electronically through the CaseAnywhere system pursuant to the instructions set forth for this matter, as ordered by the Superior Court of Los Angeles, State of California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 9, 2014, at Irvine, California.

| | |
|---|---|
| Rose Featherstone | _De Featherstone_ |
| (Type or print name) | (Signature) |

## EXHIBIT 8

## 358

222096 v2

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1600, Irvine, California  92614.

On July 30, 2015, served on the interested parties in said action the within:

### JOINT REPORT FOR AUGUST 5, 2015 HEARING

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☐ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above.  The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, and to be delivered by their next business day delivery service to the addressee designated.

☐ (BY ELECTRONIC SERVICE) By electronically mailing a true and correct copy through Shook, Hardy & Bacon LLP's electronic mail system to the e-mail address(es) as stated on the attached service list

☒ (ELECTRONIC service) I provided the document(s) listed above electronically through the CaseAnywhere system pursuant to the instructions set forth for this matter, as ordered by the Superior Court of Los Angeles, State of California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 30, 2015, at Irvine, California.

_____
Janice Liu
(Type or print name)

_____
(Signature)

## EXHIBIT 8

## 359

222096 v2

1   Mark P. Robinson, Jr., Esq. CA Bar # 054426
    Karen Barth Menzies, Esq. CA Bar # 180234
    Karen L. Karavatos, Esq. CA Bar # 131718
2   Amanda Robinson, Esq. CA Bar# 254711
    **ROBINSON CALCAGNIE ROBINSON**
3   **SHAPIRO DAVIS, Inc.**
    19 Corporate Plaza Drive
4   Newport Beach, CA 92660
    949-720-1288; Fax 949-720-1292
5
6   **Attorneys for Plaintiffs**

7   SHOOK, HARDY & BACON L.L.P.
    Eva M. Weiler (SBN: 233942)
8   Lael A. Awong (SBN: 246423)
    Brian P. Ziska (SBN: 272043)
9   Jamboree Center
    5 Park Plaza, Suite 1600
10  Irvine, California 92614-2546
    Telephone: 949-475-1500
11  Facsimile: 949-475-0016

12  Attorneys for Defendant
13  **Boston Scientific Corporation**

14  **OTHER PARTIES INCLUDED IN**
    **SIGNATURE BLOCK AT END**
15

16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17            FOR THE COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

18

19  | **COORDINATION PROCEEDING** | **JCCP NO. 4733** |
    **SPECIAL TITLE (Rule 3.550)**

20  **TRANSVAGINAL MESH PRODUCT**   Caldera Coordination Petition: 8/21/12
21  **CASES**                       AMS Coordination Petition: 4/10/14
                                    Boston Scientific Corporation
22                                  Coordination Petition: 5/29/14

23  This document relates to:       Coordination Trial Judge:
                                    Hon. William F. Highberger, Dept. 322
24  *All Cases.*
                                    **STIPULATION AND [PROPOSED]**
25                                  **ORDER REGARDING SCIENCE DAY**
                                    **PROCEDURES**
26
27
28                          **EXHIBIT 9**

236207 v1

Plaintiffs, by and through their liaison counsel, and Boston Scientific Corporation ("Boston Scientific") through its counsel of record, stipulate as follows:

1.   Science Day will go forward on February 6, 2015, at 9:30 a.m.   Plaintiffs shall present first for up to two hours, followed by Boston Scientific for up to two hours, with the Cook entities being allotted up to fifteen (15) minutes of that time with regard to their particular product(s);

2.   No part of these presentations shall be videotaped, recorded, or transcribed;

3.   Copies of the parties' presentations may be provided to the Court but shall not be part of the record, nor given to opposing counsel, and unless the content is otherwise from or within the litigation or public purview, it may not be used subsequent to these proceedings for any purpose by counsel or otherwise in this proceeding;

4.   All communications made, documents shown, photographs displayed, and videos shown are deemed inadmissible and non-discoverable pursuant to Cal. Evid. Code §§ 1119, 1154, et seq.;

5.   All information shared, communications made, documents shown or distributed, or photographs or video content displayed shall remain strictly confidential and shall not be construed as a waiver of any protections afforded by HIPPA, physician-patient privileges, therapist-patient privileges, attorney-client privileges, or attorney work product privileges;

6.   Communications made, documents shown or distributed, or photographs or video content displayed, unless otherwise from or within this litigation or within the public purview, shall neither become discoverable nor be used for impeachment purposes merely because they were included in a Science Day presentation;

7.   Communications made, documents shown or distributed, or photographs or video content displayed, in Science Day presentations, unless otherwise from or within this litigation or within the public purview, shall not be the subject of questions posed to individual plaintiffs during their depositions or during testimony given at trial.

**EXHIBIT 9**

STIPULATION AND ORDER REGARDING SCIENCE DAY PROCEDURES

**361**

236207 v1

8.   The presentations are to be made by attorneys only, not experts.

Dated:  December 9, 2014                    **SHOOK, HARDY & BACON L.L.P.**


                                           By:_____/s/_____
                                                    Eva M. Weiler

                                           Attorneys for Defendant Boston Scientific
                                           Corporation

Dated:  December 9, 2014                    **HERSH & HERSH**


                                           By: _____/s/_____
                                                    Mark Burton

                                           Co-Liaison Counsel For Plaintiffs


Dated:  December 9, 2014                    **ROBINSON CALCAGNIE ROBINSON
                                           SHAPIRO DAVIS INC.**


                                           By: _____/s/_____
                                                    Mark P. Robinson, Jr.
                                                    Karen Barth Menzies
                                                    Karen L. Karavatos

                                           Co-Liaison Counsel For Plaintiffs


**IT IS SO ORDERED.**




Dated:  _____, 2014      By:_____

                                           The Honorable William F. Highberger
                                           Judge of Superior Court



**EXHIBIT 9**
STIPULATION AND ORDER REGARDING SCIENCE DAY PROCEDURES

362

236207 v1

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1600, Irvine, California 92614.

On January 9, 2015, served on the interested parties in said action the within:

**STIPULATION AND [PROPOSED] ORDER REGARDING SCIENCE DAY PROCEDURES**

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☐ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, and to be delivered by their next business day delivery service to the addressee designated.

☐ (BY ELECTRONIC SERVICE) By electronically mailing a true and correct copy through Shook, Hardy & Bacon LLP's electronic mail system to the e-mail address(es) as stated on the attached service list

☒ (ELECTRONIC service) I provided the document(s) listed above electronically through the CaseAnywhere system pursuant to the instructions set forth for this matter, as ordered by the Superior Court of Los Angeles, State of California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 9, 2015, at Irvine, California.

| | |
|---|---|
| Rose Featherstone | |
| (Type or print name) | (Signature) |

**EXHIBIT 9**

STIPULATION AND ORDER REGARDING SCIENCE DAY PROCEDURES

**363**

222096 v2
236207 v1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER  JUDGE | A. LIM  DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| ADD-ON | |
| R. SANCHEZ, CA  Deputy Sheriff | NONE  Reporter |

| | | | |
|---|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel | |
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | | |
| | JOHNSON & JOHNSON ET AL | Defendant Counsel | |
| | {CASE FILE SENT TO DEPT 322} | | |
| | COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

RULING ON SUBMITTED MATTER;


Ruling on submitted matters

JOHNSON & JOHNSON MOTION TO QUASH SERVICE, ETC.:
GRANT. A revised version of the [Proposed] Order
submitted by Johnson & Johnson with the motion is
being filed concurrently herewith.

RELEVANT LEGAL HISTORY:
All courts are necessarily concerned with the extent
to which they can or should assert jurisdiction over
parties since the assertion of a right to adjudicate
claims against persons who have no meaningful
contact with the jurisdiction (government)
maintaining a court creates situations where the
defendants are unlikely to respect any resulting
orders or judgments. Further, constitutional due
process considerations - which date back at least as
far as the establishment of the United States
Constitution and the Bill of Rights - require
American courts to constrain their assertion of
jurisdiction to conform to judicially created norms
as to when jurisdiction exists and when it is
lacking.

California, by statute in C.C.P. § 410.10, has
decided that its state courts have and thus should
assert jurisdiction "on any basis not inconsistent

Page    1 of 29    DEPT. 322

| |
|---|
| MINUTES ENTERED |
| 06/22/15 |
| COUNTY CLERK |

**EXHIBIT 10**

**364**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                                **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE | A. LIM                  DEPUTY CLERK

HONORABLE                   JUDGE PRO TEM           ELECTRONIC RECORDING MONITOR
ADD-ON

      R. SANCHEZ, CA      Deputy Sheriff | NONE               Reporter

---

3:30 pm | BC531848                    Plaintiff
                                       Counsel
         XOCHILT ROBINSON ET AL          NO APPEARANCE
        VS
        JOHNSON & JOHNSON ET AL     Defendant
                                      Counsel
        {CASE FILE SENT TO DEPT 322}
        COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

with the Constitution of this state or of the United
States."  Over the years any number of suits have
been brought and tried to conclusion in California
where the connection of the facts giving rise to the
suit to events occurring in California has often
been slim or non-existent.  Indeed, a sophisticated
practice of law has developed in California where
claims of plaintiffs from across the entire country
are brought together to be litigated as Judicial
Council Coordinated Proceedings in this court and in
several other urban locations throughout the state.

A "minimum contacts" jurisprudence for the
evaluation of in personam jurisdiction has developed
over several generations since the doctrine was set
forth in International Shoe Co. v. Washington (1945)
326 U.S. 310, 316 (overturning a narrow view of
jurisdiction previously set forth in Pennoyer v.
Neff (1878) 95 U.S. 714, 733).  With 20/20
hindsight, it appears that many of the cases which
evaluated the minimum contacts between a defendant
and the forum state so as to determine whether the
exercise of jurisdiction would offend "traditional
notions of fair play and substantial justice" under
the 14th Amendment's "due process" clause did so
without requiring that the defendant's contact with
the forum be directly related to the facts of the
case.

The United States Supreme Court's direct involvement

Page   2 of 29    DEPT. 322

<div style="border:1px solid black; display:inline-block; padding:4px;">
MINUTES ENTERED<br>
06/22/15<br>
COUNTY CLERK
</div>

**EXHIBIT 10**

365

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15 | | **DEPT.** 322
---|---|---

HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM | DEPUTY CLERK

HONORABLE | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA  Deputy Sheriff | NONE | Reporter

| | |
|---|---|
| 3:30 pm | BC531848 |

Plaintiff
Counsel

XOCHILT ROBINSON ET AL          NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

with this body of law has been intermittent and
relatively infrequent.  Most lawyers, judges and
scholars had paid little attention to the "general
jurisdiction" subset of in-personam-jurisdiction law
because the typical jurisdictional battle was fought
over the "minimum contacts" showing needed to obtain
"long-arm" jurisdiction over a party not otherwise
present in a forum state.  As to jurisdiction over
natural persons (i.e. human beings), a mere
voluntary presence in a given state has been held by
the United States Supreme Court to be a sufficient
basis for the assertion of jurisdiction.  Burnham v.
Superior Court (1990) 495 U.S. 604, 612.  Since this
kind of transitory physical presence in a state by a
person was considered sufficient for assertion of
jurisdiction, it seemed settled law that a large
multi-state corporate entity with a substantial
physical presence in a given state would itself be
subject to the assertion of general jurisdiction.

But all of these long accepted assumptions as to the
nature of in-personam jurisdiction analysis were set
off kilter when the United States Supreme Court
issued its decision in Daimler AG v. Bauman (2014)
134 S.Ct. 746.  Plaintiffs in that case had no
contact with California, having been victims of
atrocities committed in Argentina during the "Dirty
War," and Daimler AG did business indirectly in
California by being the sole shareholder in
Mercedes-Benz USA LLC (through an additional layer

Page    3 of 29    DEPT. 322

**MINUTES ENTERED**
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**366**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                                    **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE    A. LIM          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM         ELECTRONIC RECORDING MONITOR
ADD-ON
         R. SANCHEZ, CA    Deputy Sheriff    NONE              Reporter

---

3:30 pm | BC531848                    Plaintiff
                                      Counsel
         XOCHILT ROBINSON ET AL                  NO APPEARANCE
         VS
         JOHNSON & JOHNSON ET AL      Defendant
                                      Counsel
         {CASE FILE SENT TO DEPT 322}
         COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

of ownership).  Perhaps because Mercedes-Benz USA
LLC ("MBUSA") had no connection to the events in
Argentina, it was not sued in its own right.  The
record showed that 2.4% of Daimler AG's worldwide
sales were in California.

While the District Court and the original 9th
Circuit panel decision had sustained Daimler AG's
jurisdictional challenge, on rehearing en banc the
9th Circuit adopted former panel dissenter Stephen
Reinhardt's reasoning that the assertion of
jurisdiction over Daimler AG in California for these
claims was supported on an agency theory (i.e. the
presence of MBUSA) and by the conclusion that such
an assertion of jurisdiction satisfied the due
process "reasonableness" test.  The Supreme Court
reversed, applying its view of California's
jurisdictional law as constrained by 14th Amendment
due process limitations.  First, it noted the
"different trajectories" of the law regulating
general jurisdiction as compared to "specific
jurisdiction":

As is evident from Perkins, Helicopteros, and
Goodyear, general and specific jurisdiction have
followed markedly different trajectories
post-International Shoe. Specific jurisdiction has
been cut loose from Pennoyer's sway, but we have
declined to stretch general jurisdiction beyond
limits traditionally recognized.  As this Court has

Page    4 of 29    DEPT. 322

```
MINUTES ENTERED
06/22/15
COUNTY CLERK
```

**EXHIBIT 10**

**367**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                                                    **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE    A. LIM         DEPUTY CLERK

HONORABLE                           JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
ADD-ON
         R. SANCHEZ, CA    Deputy Sheriff    NONE              Reporter

---

| 3:30 pm | BC531848 | Plaintiff Counsel | |
|---------|----------|-------------------|--|
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | | |
| | JOHNSON & JOHNSON ET AL | Defendant Counsel | |

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

increasingly trained on the "relationship among the
defendant, the forum, and the litigation," Shaffer,
433 U. S., at 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683,
i.e., specific jurisdiction, general jurisdiction
has come to occupy a less dominant place in the
contemporary scheme.

134 S.Ct. at 757-78.  On the record in that case, no
attempt had been made to show that specific
jurisdiction existed: "Plaintiffs have never
attempted to fit this case into the specific
jurisdiction category."  Id.  Thus, the key holding
in that case provided a statement of the current
test for constitutionally permissible assertion of
general jurisdiction:

Here, neither Daimler nor MBUSA is incorporated in
California, nor does either entity have its
principal place of business there. If Daimler's
California activities sufficed to allow adjudication
of this Argentina-rooted case in California, the
same global reach would presumably be available in
every other State in which MBUSA's sales are
sizable. Such exorbitant exercises of all-purpose
jurisdiction would scarcely permit out-of-state
defendants "to structure their primary conduct with
some minimum assurance as to where that conduct will
and will not render them liable to suit." Burger
King Corp., 471 U. S., at 472, 105 S. Ct. 2174, 85
L. Ed. 2d 528.

Page    5 of 29    DEPT. 322

| MINUTES ENTERED |
|---|
| 06/22/15 |
| **COUNTY CLERK** |

**EXHIBIT 10**

**368**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                                                    **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM                    DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM |                 ELECTRONIC RECORDING MONITOR
ADD-ON
              R. SANCHEZ, CA    Deputy Sheriff | NONE                    Reporter

| 3:30 pm | BC531848 | Plaintiff Counsel | |
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | Defendant | |
| | JOHNSON & JOHNSON ET AL | Counsel | |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

134 S.Ct. at 761-62 (emphasis added). For all
intents and purposes, a new chapter in the law for
assessing when a large corporation could be sued had
begun since the "minimum contacts/reasonableness"
standard relied upon by Judge Reinhardt no longer
had any relevance to the analysis of general
jurisdiction, as such.

APPLICABLE LEGAL STANDARDS FOR ASSERTING
JURISDICTION:

(a)   GENERAL JURISDICTION

As noted above, the law of general jurisdiction had
been allowed to become a rarely noticed backwater in
decades following International Shoe until an
extreme case like Daimler AG prompted a
reexamination of the issue by the U.S. Supreme
Court. Now we know via Daimler AG that a fictitious
entity like Daimler AG or Johnson & Johnson can only
be sued on a general jurisdiction theory (where the
claim itself has no logical factual connection to
the forum) where the entity "is at home" and that a
corporation has, at most, two "home" states: (1) its
place of incorporation, and (2) its principal place
of business.

If there was any doubt about this conclusion, it was
laid to rest by the recent decision of our own Court

Page   6 of 29    DEPT. 322

| MINUTES ENTERED |
| 06/22/15 |
| COUNTY CLERK |

## EXHIBIT 10

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                                    **DEPT.** 322

HONORABLE  WILLIAM F. HIGHBERGER  JUDGE | A. LIM                     DEPUTY CLERK

HONORABLE                      JUDGE PRO TEM    | ELECTRONIC RECORDING MONITOR
ADD-ON
          R. SANCHEZ, CA    Deputy Sheriff | NONE

                                                                  Reporter

| 3:30 pm | BC531848 |  | Plaintiff Counsel |  |
|---|---|---|---|---|
|  | XOCHILT ROBINSON ET AL |  |  | NO APPEARANCE |
|  | VS |  | Defendant |  |
|  | JOHNSON & JOHNSON ET AL |  | Counsel |  |

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

of Appeal in BNSF Railway Co. v. Superior Court
(March 27, 2015) 235 Cal.App.4th 591, a case which
held that no general jurisdiction applied as to a
massive corporation doing business in 28 states and
2 Canadian provinces with 1,149 miles of track in
California (out of 2,319 miles overall), 3,520
employees in California (out of 44,000 employees
overall) and which obtained six percent of its
revenue in California.  The only relevant facts were
that it was incorporated in Delaware and had its
principal place of business in Texas, which was both
its official and operations headquarters and its
largest single state in terms of employees, revenue
and track.

BNSF expressly rejected the plaintiff's argument
there (repeated by these plaintiffs in briefs filed
before BNSF was issued) that the foreign
plaintiff/comity concerns which were part of the
record in Bauman limited that case's applicability
to situations where the transitory plaintiffs were
litigation tourists from another county.  For the
same reasons, those arguments have no potency in the
context of this motion.

Barriere v. Juluca (S.D.Fla. 2014) 2014 WL 652831,
cited by plaintiffs, is not controlling, and it
would be inconsistent with BNSF insofar as
jurisdiction was premised on general jurisdiction.
But from a reading of plaintiff's quote from

                    Page    7 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

## EXHIBIT 10

### 370

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE

A. LIM    DEPUTY CLERK

HONORABLE    JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA    Deputy Sheriff

NONE    Reporter

| 3:30 pm | BC531848 | | |
|---|---|---|---|

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

NO APPEARANCE

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

Barriere, it appears to be a quite reasonable
conclusion based on specific jurisdiction concepts:
the plaintiffs were allegedly hurt at defendant's
foreign resort, and defendant actively marketed the
foreign property in Florida from a physical office
in Florida to Florida residents.  The order by Judge
Arnold New in the state court in Philadelphia
denying a similar jurisdictional challenge by
Johnson & Johnson is not of precedential value since
no reasoning is provided and it is not published;
further it is obviously not controlling whereas BNSF
Railway is.

(b)   SPECIFIC JURISDICTION

"Specific jurisdiction," sometimes referred to as
"limited jurisdiction," is still controlled by the
minimum contacts/reasonableness standard set forth
in International Shoe except that Daimler AG and
BNSF teach us that there must be a factual nexus
between the claim presented and California.  It is
not enough that the defendant might be large enough
such that paying to defend in California would not
be undue burden.  That was equally the case for
Daimler AG and BNSF Railway, but neither the
plaintiffs nor the courts in those cases even argued
that specific jurisdiction supported a finding of
jurisdiction in either case. Simply put, a
plaintiff seeking to assert specific jurisdiction
must show that the claim presented arose out of

Page    8 of 29    DEPT. 322

**MINUTES ENTERED**
06/22/15
**COUNTY CLERK**

**EXHIBIT 10**

**371**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                   **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER     JUDGE | A. LIM              DEPUTY CLERK

HONORABLE                JUDGE PRO TEM |      ELECTRONIC RECORDING MONITOR
ADD-ON

     R. SANCHEZ, CA      Deputy Sheriff | NONE                   Reporter

---

3:30 pm | BC531848              Plaintiff
                         Counsel

XOCHILT ROBINSON ET AL            NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL     Defendant
                         Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

defendant's activities in the jurisdiction or that
the defendant's activities occurring outside of
California were intended to cause injury within
California. See generally Edmon & Rylarsdaam
[formerly Weil & Brown] CALIFORNIA PRACTICE GUIDE:
CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group)
3:263 to 3:271 and cases cited therein. The
broader statements in pre-Bauman "stream of
commerce" cases regarding assertion of jurisdiction
just because it is foreseeable that product will get
to California are no longer good law. See
CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE BEFORE
TRIAL, supra, 3:206.5 and cases cited therein,
Bauman and BNSF Railway.

ALLEGATIONS AND SUPPLEMENTAL FACTS OFFERED IN
SUPPORT OF ASSERTION OF JURISDICTION:

Defendant Johnson & Johnson filed various
declarations in support of its opening motion, the
factual accuracy of which is not disputed by
plaintiffs. Plaintiffs' original Opposition, filed
February 13, 2015 and refiled (for reasons not
obvious) on February 20, 2015, is supported by (a) a
declaration of counsel affirming that all plaintiffs
will appear in California for deposition (absent
agreement otherwise) and trial, (b) two discovery
responses from Johnson & Johnson as to
jurisdictional discovery (each of which states that
Johnson & Johnson is a holding company that does not

Page    9 of 29      DEPT. 322

**MINUTES ENTERED**
06/22/15
**COUNTY CLERK**

**EXHIBIT 10**

**372**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| DATE: 06/22/15 | | | **DEPT.** 322 |
|---|---|---|---|
| HONORABLE WILLIAM F. HIGHBERGER | JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| ADD-ON R. SANCHEZ, CA | Deputy Sheriff | NONE | Reporter |

| 3:30 pm | BC531848 | | |
|---|---|---|---|
| | | Plaintiff Counsel | NO APPEARANCE |
| | XOCHILT ROBINSON ET AL VS JOHNSON & JOHNSON ET AL | Defendant Counsel | |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

itself design or market products), (c) various
pleadings, discovery demands, remand orders, rulings
by other trial courts (i.e. Judge Highberger) on a
similar motion on forum non conveniens grounds, and
(d) Johnson & Johnson's 10-K filing with the
Securities and Exchange Commission.  Plaintiff also
submitted two publications by the federal Food &
Drug Administration and three documents filed by
defendants in the pending federal court
Multi-District Litigation proceeding in West
Virginia.  Plaintiffs with court permission filed a
Sur-Reply to the original motion papers on April 10,
2015 and Plaintiffs' Supplemental Brief Re Personal
Jurisdiction, etc. on May 27, 2015 (corrected by
errata on May 28, 2015), but those additional
filings provide no additional factual material.

The Court finds that no material factual dispute is
created by any of the papers before the Court.
Since the relevant facts are undisputed, the only
real question is:  What is the correct legal ruling
applying the law to the facts?

(a)   GENERAL JURISDICTION:

It is undisputed that Johnson & Johnson is
incorporated in New Jersey and that it has its
corporate headquarters in New Brunswick, New Jersey.
Johnson & Johnson is a holding company which does
not itself operate the design, manufacturing and

Page   10 of 29   DEPT. 322

| MINUTES ENTERED |
|---|
| 06/22/15 |
| COUNTY CLERK |

**EXHIBIT 10**

373

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

DEPT. 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE | A. LIM      DEPUTY CLERK

HONORABLE          JUDGE PRO TEM           ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA    Deputy Sheriff | NONE      Reporter

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

**NATURE OF PROCEEDINGS:**

sales operations which form the commercial heart of
its business; those businesses are conducted by
various subsidiary corporate entities. Moving party
showed without contradiction that the operating
subsidiary Ethicon, Inc. did not have "a physical
office in California dedicated to the design,
manufacture, or marketing of any mesh product" and
that "No Ethicon mesh product is designed,
manufactured, or labeled in California." Rastogi
Declaration 2. Under the circumstances, it is
unquestionable that moving party Johnson & Johnson
is not "at home" in California for purposes of
invoking general jurisdiction.

Plaintiffs argued via counsel at oral argument that
this was an "exceptional case" cases within the
meaning of Daimler AG in footnote 19:

19. We do not foreclose the possibility that in an
exceptional case, see, e.g., Perkins, described
supra, at ___ - ___, 187 L. Ed. 2d, at 634-636, and
n. 8, a corporation's operations in a forum other
than its formal place of incorporation or principal
place of business may be so substantial and of such
a nature as to render the corporation at home in
that State. But this case presents no occasion to
explore that question, because Daimler's activities
in California plainly do not approach that level. It
is one thing to hold a corporation answerable for
operations in the forum State, see infra, at ___,

Page 11 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**374**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |

| | | | |
|---|---|---|---|
| HONORABLE | WILLIAM F. HIGHBERGER | JUDGE | A. LIM | DEPUTY CLERK |

HONORABLE                                         JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA          Deputy Sheriff    NONE          Reporter

| | | |
|---|---|---|
| 3:30 pm | BC531848 | |
| | | Plaintiff |
| | | Counsel |
| | XOCHILT ROBINSON ET AL | NO APPEARANCE |
| | VS | Defendant |
| | JOHNSON & JOHNSON ET AL | Counsel |
| | {CASE FILE SENT TO DEPT 322} | |
| | COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

187 L. Ed. 2d, at 642, quite another to expose it to
suit on claims having no connection whatever to the
forum State.

Plaintiffs conceded that they had no factual showing
in their papers supporting the "exceptional case"
argument and when asked for an offer of proof, they
had no particulars to provide, asking instead for
discovery re same.  The Court is persuaded after
reviewing the relevant U.S. Supreme Court cases that
the "exceptional case" concept is intended to be
highly limited, e.g. to the peculiar one-off
situation in Perkins v. Benguet Consolidated Mining
Co. (1951) 342 U.S. 437, where a Philippines mining
company's principal place of business was
temporarily relocated to Ohio as a result of
Japanese military occupation during World War II and
thus the defendant was subject to general
jurisdiction in Ohio.  Daimler AG described the
holding in Perkins as follows: "No fair reader of
the full opinion in Perkins could conclude that the
Court meant to convey anything other than that Ohio
was the center of the corporation's wartime
activities." 134 S.Ct. at 755 n.8.

The U.S. Supreme Court made as clear as they could
in Daimler AG that mere bigness of operations in a
given forum state was not the relevant test for
being "at home" since it would produce entirely
unpredictable outcomes, the exact antithesis of what

Page  12 of 29    DEPT. 322

| MINUTES ENTERED |
|---|
| 06/22/15 |
| COUNTY CLERK |

## EXHIBIT 10

## 375

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | |
|---|---|
| DATE: 06/22/15 | DEPT. 322 |
| HONORABLE WILLIAM F. HIGHBERGER  JUDGE | A. LIM  DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| ADD-ON  R. SANCHEZ, CA  Deputy Sheriff | NONE  Reporter |

| | | |
|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel |
| | XOCHILT ROBINSON ET AL | NO APPEARANCE |
| | VS | Defendant |
| | JOHNSON & JOHNSON ET AL | Counsel |
| | {CASE FILE SENT TO DEPT 322} | |
| | COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

they were hoping to achieve with the rule being stated: "If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"  134 S.Ct. at 731.

The Court agrees with moving party that defendant's relationship with this forum can and should be tested plaintiff-by-plaintiff, and the motion is only brought as to the non-California plaintiffs. The mere happenstance of the joinder of those claims with the claims of the California plaintiffs does not cause the Court to doubt the correctness of the ruling above.  That 67 plaintiffs have banded together (or found themselves joined together) in one suit brought by California counsel in conjunction with Texas counsel does not change the analysis.  By the nature of the product, each plaintiff had a separate surgery by a specific treating physician for a specific set of complaints with a specific medical history.  That the products and their disclosure warnings were the same or similar and that the product approval process with the federal Food and Drug Administration was common

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**376**

Case 2:15-cv-06781-PSG-AGR Document 20-1 Filed 09/10/15 Page 372 of 438 Page ID #:1056

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                              **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE  | A. LIM          DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM |          ELECTRONIC RECORDING MONITOR
ADD-ON
          R. SANCHEZ, CA           Deputy Sheriff | NONE     Reporter

| | |
|---|---|
| 3:30 pm | BC531848 |
| | |
| | XOCHILT ROBINSON ET AL |
| | VS |
| | JOHNSON & JOHNSON ET AL |
| | |
| | {CASE FILE SENT TO DEPT 322} |
| | COMPLEX 7/7/14 R/T JCCP4733 |

Plaintiff
Counsel                    NO APPEARANCE

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

to all plaintiffs is not enough to make the
jurisdictional facts relevant to a California
plaintiff applicable to a non-California plaintiff.

(b)   SPECIFIC JURISDICTION:

Plaintiffs do not directly argue the point as their
argument conflates the two jurisdictional concepts
together.  Here, as in Bauman and BNSF, the claims
of the non-California plaintiffs have no logical
connection with California.  These plaintiffs did
not have surgery in California, and the onset of
their injuries occurred outside of California.
Plaintiffs have not attempted to show that Johnson &
Johnson (or its wholly owned subsidiaries such as
Ethicon, Inc.) designed the trans-vaginal mesh
products in California or that the products
implanted in theses plaintiffs were manufactured in
California.  Moving party's contrary showing by
declaration is undisputed.  Clearly, if these kinds
of facts existed, the analysis of specific
jurisdiction might lead to a different outcome.

PLAINTIFF'S WAIVER ARGUMENT:

The Court agrees with Defendant that plaintiffs
waived any waiver argument that they themselves
might have had as to the assertion of jurisdiction
over Johnson & Johnson by not including it in either
their original Opposition filed in February or in

Page  14 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**377**

Case 2:15-cv-06781-PSG-AGR   Document 20-1   Filed 09/10/15   Page 373 of 438   Page ID #:504

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/22/15 | | DEPT. 322 |
|---|---|---|
| HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| ADD-ON        R. SANCHEZ, CA    Deputy Sheriff | NONE | Reporter |

| 3:30 pm | BC531848 | Plaintiff Counsel | NO APPEARANCE |
|---|---|---|---|
| | XOCHILT ROBINSON ET AL VS JOHNSON & JOHNSON ET AL | Defendant Counsel | |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

their Sur-Reply filed April 10, 2015.  The Court further agrees with Defendant that the inclusion of a Declaration from a Johnson & Johnson executive in the original motion filed last summer by co-defendant Ethicon, Inc. on the forum non conveniens motion was not a general appearance in this action by Johnson & Johnson.  Something more affirmative would have been required for Johnson & Johnson to be deemed appearing before the court for all purposes in this docket.

PLAINTIFFS' DISCOVERY REQUEST AND REQUEST FOR CONTINUANCE:

The Court has reviewed the discovery served on Johnson & Johnson (Exhibits O & P to Opposition) and this defendant's responses thereto (Exhibits R, S & T).  Given the relevant legal standards to apply to determine general and specific jurisdiction, the Court has determined that the answers provided by this defendant to date are sufficient and that any further responses would not have a logical tendency to change the analysis of the ultimate question set forth above in this notice of intended ruling.  As noted above, the "exceptional case" concept noted by the U.S. Supreme Court in Daimler AG at n. 19 by reference to Perkins v. Benguet Consolidated Mining Co, supra, is intended to be highly limited and not an opportunity to force a large corporation to be "at home" in multiple separate jurisdictions.

Page  15 of 29     DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**378**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/22/15 | | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE ADD-ON JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, CA Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel |
| | XOCHILT ROBINSON ET AL VS JOHNSON & JOHNSON ET AL | NO APPEARANCE |
| | | Defendant Counsel |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

Plaintiffs' discovery, to which defendant responded albeit with objections, appeared intended to show that Johnson & Johnson (directly or via its subsidiaries) had substantial operations in California, which is not the relevant question. The extent to which discovery is needed to resolve the question of general jurisdiction was directly addressed by the Supreme Court in Daimler AG:

Justice Sotomayor fears that our holding will "lead to greater unpredictability by radically expanding the scope of jurisdictional discovery." Post, at ___, 187 L. Ed. 2d, at 650. But it is hard to see why much in the way of discovery would be needed to determine where a corporation is at home. Justice Sotomayor's proposal to import Asahi's "reasonableness" check into the general jurisdiction determination, on the other hand, would indeed compound the jurisdictional inquiry. The reasonableness factors identified in Asahi include "the burden on the defendant," "the interests of the forum State," "the plaintiff's interest in obtaining relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," "the shared interest of the several States in furthering fundamental substantive social policies," and, in the international context, "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." 480 U. S., at 113-115, 107 S. Ct.

Page 16 of 29     DEPT. 322

| |
|---|
| MINUTES ENTERED 06/22/15 COUNTY CLERK |

## EXHIBIT 10

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER  JUDGE | A. LIM  DEPUTY CLERK

HONORABLE  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA  Deputy Sheriff | NONE  Reporter

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

**NATURE OF PROCEEDINGS:**

1026, 94 L. Ed. 2d 92 (some internal quotation marks
omitted). Imposing such a checklist in cases of
general jurisdiction would hardly promote the
efficient disposition of an issue that should be
resolved expeditiously at the outset of litigation.

134 S.Ct. at 762 n. 20 (emphasis added). Simply
put, the additional discovery which plaintiffs say
they want (based on demands previously served) would
not inform the relevant question: whether Johnson &
Johnson is "at home" in California. Thus there is
no reason to delay ruling.

Further, if plaintiffs really wanted the discovery,
they should have used the time since the responses
were served on February 10, 2015 to move to compel,
but they failed to do so.

DEFENDANT'S OBJECTION TO LENGTH OF PLAINTIFF'S
ORIGINAL OPPOSITION:

Overruled. Defendant has had ample opportunity to
set forth its own position at length in its Reply,
its Response To Plaintiffs' Sur-Reply, its Response
To Plaintiffs' Supplemental Brief and its sua sponte
Notice Of New Authority Pertaining To Motion To
Quash.

FORUM NON CONVENIENS MOTION, IN THE ALTERNATIVE:
This is moot in view of the Court's ruling on the

Page  17 of 29  DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**380**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM           DEPUTY CLERK

HONORABLE             JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA     Deputy Sheriff | NONE           Reporter

---

3:30 pm | BC531848            Plaintiff
                     Counsel

XOCHILT ROBINSON ET AL       NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL       Defendant
                     Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

challenge to in personam jurisdiction.

SEVERANCE MOTION, IN THE ALTERNATIVE:

Moving party Johnson & Johnson only asked that
severance of claims be granted in the challenge to
jurisdiction failed.  Under the circumstances, the
alternative request is moot.  The ruling on the
companion motion brought by Ethicon will, indeed,
cause a severance of each plaintiff's claim into a
separate action.

CONCLUSION:

Many of the unquestioned assumptions of the bench
and bar regarding the extent to which minimum
contacts/reasonableness "long arm" jurisdiction can
be invoked have been shredded by Daimler AG v.
Bauman and its progeny BNSF Railway.  Based on those
two cases, the Court finds that it lacks general
jurisdiction as to moving party Johnson & Johnson as
to the non-California plaintiffs since Johnson &
Johnson is not "at home" in California.  The Court
also finds that plaintiffs have failed to show, in
the alternative, that there is a proper basis to
assert "specific jurisdiction" (also known as
limited jurisdiction) over Johnson & Johnson as to
the non-California plaintiffs' claims since those
claims have no factual nexus to California.  Since
this will lead to an appealable order as between

Page 18 of 29     DEPT. 322

**MINUTES ENTERED**
06/22/15
**COUNTY CLERK**

## EXHIBIT 10

## 381

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                        **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER     JUDGE | A. LIM           DEPUTY CLERK

HONORABLE                JUDGE PRO TEM       ELECTRONIC RECORDING MONITOR
ADD-ON
     R. SANCHEZ, CA       Deputy Sheriff | NONE           Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL         Plaintiff Counsel
VS                               NO APPEARANCE
JOHNSON & JOHNSON ET AL       Defendant Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

these parties and this defendant, plaintiffs should
be able to obtain immediate appellate review of this
ruling (subject to the normal timelines applicable
in the Court of Appeal).

ETHICON, INC. MOTION TO DISMISS BASED ON FORUM NON
CONVENIENS, ETC.: GRANT IN PART, DENY IN PART
WITHOUT PREJUDICE

FORUM NON CONVENIENS MOTION:

Defendant Ethicon, having waived its potential
challenge to in personam jurisdiction, requests that
the Court dismiss the claims of the non-California
plaintiffs or to stay them pending litigation of
such claims in the various plaintiffs' own home
state on the basis of forum non conveniens. Ethicon
and its parent Johnson & Johnson are defendants
(along with various other manufacturers) in various
cases proceeding in JCCP4733. For the same reasons
that this Court denied the motion for forum non
conveniens in Muller v. Boston Scientific in
JCCP4733, this Court believes that the motion should
be denied here. That similar tort claims should
proceed together for pre-trial proceedings does not
lead to the conclusion that all such tort claims
should be tried together. The likely result would
be chaos, confusion, inordinately long trials and a
denial of due process to the defendant(s). The
question of how to pick a specific plaintiff case

Page 19 of 29     DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**382**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/22/15 | | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER  JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM  ADD-ON | | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, CA  Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel | |
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | Defendant Counsel | |
| | JOHNSON & JOHNSON ET AL | | |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

for the early bell weather trial and whether or not
to joint two or more plaintiff claims for a single
trial are other issues for another day.

The Court is not blind to the long-term reality that
defendants such as Ethicon and Johnson & Johnson
will in all likelihood be able to avoid any new
filings from sticking in state court in California
assuming that each is not subject to general
jurisdiction for a suit filed by non-California
plaintiffs.  The California plaintiffs who chose to
sue in state court will find themselves removed, and
any non-California plaintiffs who sue in this court
in the future will likely find their claims
dismissed (unless they can show a factual basis for
specific jurisdiction).  But taking the current
docket as it is (e.g. the pending claims against
Ethicon) and mindful of the pendency of the similar
cases in JCCP4733, this Court believes that
efficiency is gained by keeping these plaintiffs in
this forum and not Balkanizing the litigation
effort.  No disrespect is meant for the pending
federal MDL, but the anticipated process of sending
trial-ready "bell weather" cases to some other
federal district court for trial seems like a recipe
for delay, inconsistent outcomes (when the question
of law is otherwise the same), and extra expense.

Because the Court has discretion to weigh the
factors relevant to ruling on this motion, this

Page  20 of 29   DEPT. 322

| |
|---|
| **MINUTES ENTERED** 06/22/15 **COUNTY CLERK** |

**EXHIBIT 10**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                               **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE | A. LIM                   DEPUTY CLERK

HONORABLE                JUDGE PRO TEM         ELECTRONIC RECORDING MONITOR
ADD-ON

    R. SANCHEZ, CA      Deputy Sheriff | NONE

                                                Reporter

3:30 pm | BC531848

                         Plaintiff
                         Counsel
    XOCHILT ROBINSON ET AL          NO APPEARANCE
    VS
    JOHNSON & JOHNSON ET AL      Defendant
                         Counsel
    {CASE FILE SENT TO DEPT 322}
    COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

Court exercises its discretion to find that the better course of wisdom is to let these specific claims against Ethicon proceed in this forum. If plaintiffs consider the inclusion of co-defendant Johnson & Johnson in the case to be essential, then they will have to find a way to bring the entire litigation into another courthouse. That choice, however, is for plaintiffs to make, not this Court.

This motion is denied without prejudice because the Court recognizes that the posture of this case may well change after the severance request discussed below is granted. Defendant can renew the motion if most of the plaintiffs' cases are removed to federal court and only a few non-California plaintiffs remain in this docket.

MOTION, IN THE ALTERNATIVE, FOR SEVERANCE OF VARIOUS PLAINTIFFS' CLAIMS:

Ethicon asks, in the alternative, that the claims of the non-California plaintiffs be severed under the grounds that they are not appropriate for permissive joinder under C.C.P. § 378(a).

After listening to oral argument and carefully reviewing the California Rules of Court applicable to cases deemed complex like BC531848, the Court concludes that C.C.P. § 378(a) remains applicable in this docket (and would also remain applicable if

                      Page 21 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**384**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM ADD-ON | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, CA Deputy Sheriff | NONE Reporter |

3:30 pm BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel                    NO APPEARANCE

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

this case had been incorporated into a Judicial
Council Coordinated Proceeding). C.C.P. § 404.7 and
CRC 3.504(b) allow a Rule of Court applicable to
complex and/or complex/coordinated cases to trump
the normal code provisions, but the Court and
plaintiffs' counsel have been unable to identify an
express California Rule of Court which modifies the
otherwise enforceable provisions of C.C.P. § 378(a).

Under the authority of David v. Medtronic, Inc. (2d
DCA June 12, 2015) No. B254914, the Court finds that
the combined claims of the 67 plaintiffs here do not
arise out of "the same transaction, occurrence, or
series of transactions or occurrences." Defendant
has shown by Exhibit A to the Wes Declaration, filed
December 1, 2014 and the underlying evidentiary
support cited therein that there is a wide range of
products involved and that each of the female
plaintiffs had her implant surgery on an individual
basis in any number of locations spread throughout
the United States. Each such plaintiff had her own
medical history and presenting problems and each
patient had a doctor recommend this surgery in lieu
of other therapies based on the specific facts known
to such doctor. This does not constitute the "same
transaction  or series of transactions" for
purposes of C.C.P. § 378(a).

The fact that Judge Jesus Bernal did not retain this
case in federal court when presented with this

Page   22 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

## EXHIBIT 10

### 385

Case 2:15-cv-06781-PSG-AGR  Document 20-1  Filed 09/10/15  Page 381 of 438  Page ID #:1035

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                                          **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER     JUDGE | A. LIM          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM |          ELECTRONIC RECORDING MONITOR
ADD-ON
       R. SANCHEZ, CA     Deputy Sheriff | NONE              Reporter

---

3:30 pm | BC531848                           Plaintiff
                                             Counsel
         XOCHILT ROBINSON ET AL                        NO APPEARANCE
         VS                                  Defendant
         JOHNSON & JOHNSON ET AL             Counsel

         {CASE FILE SENT TO DEPT 322}
         COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

defendant's "fraudulent joinder" argument does not
foreclose (or predict) the resolution of the
misjoinder question because the "fraudulent joinder"
test (insofar as it is recognized by certain federal
courts) is a different test.  Indeed, by his
pinpoint citation to Osborn v. Metropolitan Life
Ins. Co. (E.D.Cal. 2004) 341 F.Supp.2d 1123, 1127,
Judge Bernal was pointing to the statement therein
that misjoinder is properly addressed in the state
court on remand as a possible prelude to a second
removal petition.  The cited portion of Osborn
states in relevant part (emphasis added):

Professors Wright, Miller, and Cooper have
characterized the Tapscott "fraudulent misjoinder"
theory as a "new concept" that "appears to be part
of the doctrine of fraudulent joinder." WRIGHT,
MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE:
Jurisdiction 3d § 3723 at 656. They observe that the
doctrine adds to the complexity of a federal court's
decision as to removal, and note that even in the
Eleventh Circuit not all procedural misjoinder rises
to the level of fraudulent joinder. They posit that
"numerous additional decisions will be needed to
clarify" the distinction between which misjoinder
claims rise to the level of "egregiousness"
justifying a refusal to remand. Id. They further
suggest that an aggrieved defendant could avoid the
confusion and complexity created by this standard by
seeking relief from the misjoinder in state court

                Page  23 of 29    DEPT. 322

┌─────────────────────┐
│ **MINUTES ENTERED** │
│ 06/22/15            │
│ **COUNTY CLERK**    │
└─────────────────────┘

**EXHIBIT 10**

**386**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM      DEPUTY CLERK |
| HONORABLE     JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| ADD-ON    R. SANCHEZ, CA    Deputy Sheriff | NONE        Reporter |

| | | | |
|---|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel | |
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | | |
| | JOHNSON & JOHNSON ET AL | Defendant Counsel | |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

and then removing to federal court. Id.

My own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.

For all these reasons, the Court does believe that the motion for severance is legally valid and that this Court does not have discretion to deny it just because the case has been designated "complex" or because the case is pending in this court's Complex Civil Litigation Program. The Court can still keep the several severed cases together as related cases (assuming they remain in state court), it can consolidate them for discovery purposes, it can even contemplate adding them on the Court's own motion to the pending coordination proceeding in JCCP4733, and it can include them in case selection for suitable bell weather trials. But those are all distinct questions from whether or not defendant is entitled to have its severance request granted.

MECHANICS OF SEVERANCE:

After consultation with Senior Administrator Greg Drapac, who is in charge of civil operations at the

| |
|---|
| **MINUTES ENTERED** 06/22/15 **COUNTY CLERK** |

Page 24 of 29     DEPT. 322

**EXHIBIT 10**

**387**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                               **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE    A. LIM                    DEPUTY CLERK

HONORABLE                       JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR
ADD-ON

       R. SANCHEZ, CA        Deputy Sheriff    NONE                  Reporter

---

3:30 pm   BC531848                        Plaintiff
                                         Counsel

XOCHILT ROBINSON ET AL          NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL      Defendant
                                         Counsel
{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

Stanley Mosk Courthouse and indirectly responsible
for operations at Central Civil West Courthouse, the
Court has determined that the most efficient way to
accomplish severance in the specific context of this
case is to give each of the severed plaintiff's
cases (indeed to give ALL of the individual
plaintiff's cases) a specific docket number which
includes an alpha suffix to the general civil docket
number originally assigned to this aggregation of
claims.  The original docket number was BC531848.

For convenience, the 67 plaintiffs names have been
placed in alphabetical order by surname, and the
alpha suffix postscripts will start as BC531848A and
run through BC531848OOO.  The complete list appears
below, and a free-standing copy of the same list
will be served concurrently herewith for counsel's
ready reference.

No new filing fee will be charged to plaintiffs or
defendants as a consequence of this severance
process, and no new filing of one-off complaints
will be required since that would appear to elevate
form over substance to a pointless degree.  Insofar
as specific cases going forward involve only one
plaintiff, the caption should reflect that
plaintiff's name as the sole plaintiff, e.g. Theresa
Barnes v. Johnson & Johnson, et al., and the docket
number with suffix shall be shown, e.g.  BC531848A.
As an administrative matter, the clerk's entries for

Page 25 of 29     DEPT. 322

                                             MINUTES ENTERED
                                             06/22/15
                                             COUNTY CLERK

**EXHIBIT 10**

**388**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                                                    **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER      JUDGE | A. LIM                          DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

   R. SANCHEZ, CA           Deputy Sheriff | NONE                                   Reporter

---

3:30 pm | BC531848                           Plaintiff
                                            Counsel
        | XOCHILT ROBINSON ET AL                     NO APPEARANCE
        | VS                                Defendant
        | JOHNSON & JOHNSON ET AL           Counsel

        | {CASE FILE SENT TO DEPT 322}
        | COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

the several severed cases will all be found under
BC531848 as the ancient computer system does not
have a capability of cleaving the docket into 67
separate, cloned, electronic copies.  Service via
the electronic service system under JCCP4733 via
CaseAnywhere will continue to be the court-ordered
mode of service.

DOCKET NUMBERS FOR INDIVIDUAL PLAINTIFF CASES
ORIGINALLY FILED AS A SINGLE DOCKET IN BC531848

LAST NAME GIVEN NAME(S)   DOCKET NUMBER
BARNES    THERESA         BC531848A
BERRY     LINDA           BC531848B
BLACKMER  CAROLYN         BC531848C
BRADLEY-LERMA  KELLY      BC531848D
BREEDEN   MERRY           BC531848E
BUCHANAN  FLORENCE        BC531848F
BUELL     MALLAH          BC531848G
CARMONA   SARA            BC531848H
COOVERT   SERENA          BC531848I
CUNNINGHAM     DAWN       BC531848J
DAGON     ILHAM           BC531848K
DAVIS     MARTHA          BC531848L
DULEY     MARGARET        BC531848M
EDWARDS   MARY            BC531848N
FESLER    JUDITH          BC531848O
FRIEL     MARY            BC531848P
GAUNT     RUTH            BC531848Q
GIBBS     PATRICIA        BC531848R

Page  26 of 29    DEPT. 322

| MINUTES ENTERED |
| 06/22/15 |
| COUNTY CLERK |

**EXHIBIT 10**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE

A. LIM   DEPUTY CLERK

HONORABLE   JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA   Deputy Sheriff

NONE   Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff Counsel

Defendant Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

| | | |
|---|---|---|
| GOODMAN | PHYLLIS | BC531848S |
| GUASE | DINA | BC531848T |
| HAMANN | SANDRA | BC531848U |
| HAND BONNIE | | BC531848V |
| HEWLEIT | JANE | BC531848W |
| HIRD JANICE | | BC531848X |
| HUFFMAN | SHIRLENE | BC531848Y |
| KATUIN | MARY | BC531848Z |
| KOTZEN | LAURI | BC531848AA |
| KRUM | AVA | BC531848BB |
| LOUGHMAN | SHARON | BC531848CC |
| MASTERS | VENITA | BC531848DD |
| MAY | JUDY | BC531848EE |
| MCCASKELL | ANGELEA | BC531848FF |
| MCMILLAN | LISHA | BC531848GG |
| MILEUSNIC | HILDEGARD | BC531848HH |
| MILLER | MARCILLE | BC531848II |
| MOXLEY | MARIAN | BC531848JJ |
| MULLER | TRACY | BC531848KK |
| MURPHY | LISA | BC531848LL |
| NAQUIN | MAIDA | BC531848MM |
| NEWMAN | WILHELMINA | BC531848NN |
| NUNES | JOANN | BC531848OO |
| OMEROVIC | MEDINA | BC531848PP |
| ORSI | MARY | BC531848QQ |
| PARNELL | MARIE | BC531848RR |
| PEARSON | DONNA | BC531848SS |
| PEELE | PAMELA | BC531848TT |
| PELTER | GWEN | BC531848UU |
| PIAZZA | TAMMY | BC531848VV |

Page  27 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**EXHIBIT 10**

**390**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM     DEPUTY CLERK

HONORABLE            JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

   R. SANCHEZ, CA     Deputy Sheriff | NONE       Reporter

---

| 3:30 pm | BC531848 | Plaintiff Counsel | |
|---|---|---|---|
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | Defendant | |
| | JOHNSON & JOHNSON ET AL | Counsel | |
| | | | |
| | {CASE FILE SENT TO DEPT 322} | | |
| | COMPLEX 7/7/14 R/T JCCP4733 | | |

---

**NATURE OF PROCEEDINGS:**

```
PIOTROSWSKI    NOLA       BC531848WW
QUIAMBAO   BIBIANA        BC531848XX
REAVIS     JOYCE          BC531848YY
RENUCCI    BOBBIE JO      BC531848ZZ
ROBERTS    SHERRY         BC531848AAA
ROBINSON   XOCHILT        BC531848BBB
SCHULER    VALENTINE      BC531848CCC
SCHURICHT  SUSAN          BC531848DDD
SKELTON    VICKIE         BC531848EEE
SPANGLER   JADE           BC531848FFF
STEWART    PAMELA         BC531848GGG
STEWART    SHIRLEY        BC531848HHH
TINKHAM    BEVERLY        BC531848III
TOBIN      IRENE          BC531848JJJ
TORTORICI  CYNTHIA        BC531848KKK
VOKATY     GOERGINA       BC531848LLL
WALTON     LINDA          BC531848MMM
WEST REGINA               BC531848NNN
WICK MARIE                BC531848OOO
```

The Court sets a Further Status Conference on July 30, 2015 at 11:00 a.m. in this department with Joint Status Report due three (3) court days in advance.

         CERTIFICATE OF ELECTRONIC SERVICE
          CODE OF CIVIL PROCEDURE 1010.6

I, the below named Executive Officer/Clerk of the

**MINUTES ENTERED**
06/22/15
**COUNTY CLERK**

## EXHIBIT 10

**391**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE | A. LIM

DEPUTY CLERK

HONORABLE   JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

ADD-ON

R. SANCHEZ, CA   Deputy Sheriff | NONE

Reporter

| | |
|---|---|
| 3:30 pm | BC531848 |

Plaintiff
Counsel

XOCHILT ROBINSON ET AL                NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

above entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served one copy of the
Minute Order
entered herein, on June 22, 2015, upon each
party or counsel of record in the above entitled
action, by electronically serving the document on
Case Anywhere at www.caseanywhere.com
on June 23, 2015 from my place of business,
Central Civil West Courthouse, 600 South
Commonwealth Avenue, Los Angeles, California 90005
in accordance with standard court practices.


Dated: June 23, 2015

Sherri R. Carter, Executive Officer/Clerk


By: _____, Deputy Clerk
                    A. LIM

MINUTES ENTERED
06/22/15
COUNTY CLERK

1    SHOOK, HARDY & BACON L.L.P.
     Eva M. Weiler (SBN: 233942)
2    Brian P. Ziska (SBN: 272043)
     Jamboree Center
3    5 Park Plaza, Suite 1600
     Irvine, California 92614-2546
4    Telephone:    949-475-1500
     Facsimile:    949-475-0016
5
     Attorneys for Defendant
6    Boston Scientific Corporation

7

8                    SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10

11   Coordinated Proceeding Special Title          ) JUDICIAL COUNCIL COORDINATION
     (CRC 3.550)                                    ) PROCEEDING NO. 4733
12                                                  )
     **TRANSVAGINAL MESH MEDICAL**                  ) Judge:  Hon. William F. Highberger
13   **PRODUCT CASES**                              ) Dept.:  322
                                                    )
14   ─────────────────────────────                 ) [PROPOSED] ORDER GRANTING
     This document relates to:                      ) DEFENDANT BOSTON SCIENTIFIC
15                                                  ) CORPORATION'S MOTION TO
     *Edgar v. Boston Scientific Corporation,*      ) SEVER PLAINTIFFS' CLAIMS
16   LASC Case No. BC531849                         )
                                                    ) [Filed concurrently with Notice of Motion
17   *Mauck v. Boston Scientific Corporation,*      ) and Motion and Declaration of Eva M.
     LASC Case No. BC515043                         ) Weiler in support thereof]
18                                                  )
     *Muller v. American Medical Systems, Inc.,*    ) Date:   August 5, 2015
19   LASC Case No. BC515042                         ) Time:   1:30 p.m.
                                                    ) Dept.:  322
20   *Pate v. Boston Scientific Corporation,*       )
     LASC Case No. BC515037                         )
21                                                  )
                                                    )
22                                                  )

23

24         Defendant Boston Scientific Corporation's motion to sever plaintiffs' claims came on

25   regularly for hearing before this Court on August 5, 2015, at 1:30 p.m., in department 322 of

26   the above-referenced Court.  Appearances of plaintiffs and defendants were made by and

27   through their counsel, as reflected in the record.  Having reviewed the papers submitted and

28   heard the arguments of counsel, and good cause appearing therefor,

─────────────────────────────────────────────────────────────────────────────
ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

**393**

*(stamp)* CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

AUG 05 2015

Sherri R. Carter, Executive Officer/Clerk
By: Aldwin Lim, Deputy

RECEIVED JUL 10 2015

1    **IT IS HEREBY ORDERED THAT** Boston Scientific's motion is **GRANTED** as

2    follows:

3    The Court severs the claims of the plaintiffs in their entirety, for all purposes, in the

4    following actions:

5    (1) *Edgar v. Boston Scientific Corporation*, LASC Case No. BC531849;

6    (2) *Mauck v. Boston Scientific Corporation*, LASC Case No. BC515043;

7    (3) *Muller v. American Medical Systems, Inc.*, LASC Case No. BC515042;

8    (4) *Pate v. Boston Scientific Corporation*, LASC Case No. BC515037.

9

10   Plaintiffs have not asserted a right to relief arising out of the same transaction or

11   series of transactions, so joinder is not permissive under Code of Civil Procedure section

12   378. (Code Civ. Proc., § 378, subd. (a)(1); *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th

13   734.) The Court also severs the claims of the plaintiffs in the interests of justice and to

14   prevent undue prejudice to defendants. (Code Civ. Proc., § 379.5.)

15   The most efficient way to accomplish severance in the specific context of these cases

16   is to give each severed plaintiff's case (indeed to give ALL of the individual plaintiff's

17   cases) a specific docket number that gives an alpha suffix to the general civil docket number

18   originally assigned to the aggregation of claims for each case. For convenience, the

19   plaintiffs names have been placed in alphabetical order by surname for each case, and the

20   alpha suffix postscripts will start as the original case number with postscript A. The

21   complete list for each case appears below.

22   No new filing fee will be charged to plaintiffs or defendants as a consequence of this

23   severance process, and no new filing of one-off complaints will be required since that would

24   appear to elevate form over substance. Insofar as specific cases going forward involve only

25   one plaintiff, the caption should reflect that plaintiff's name as the sole plaintiff (e.g., Vicky

26   Allen v. Boston Scientific Corporation, and the docket number with suffix shall be

27   BC531849A). A complete list of the new docket numbers is attached to this order. As an

28

2

273033 V1

**EXHIBIT 11**

**394**

1   administrative matter, the clerk's entries for the several severed cases will all be found under

2   their original case number as the computer system does not have a capability of cleaving the

3   docket into separate, cloned, electronic copies of each case. Service via the electronic

4   service system under JCCP4733 via CaseAnywhere will continue to be the court-ordered

5   mode of service.

6

7                                         WILLIAM F. HIGHBERGER, JUD

8   Dated: 8/5/15                                  _____

                                           The Honorable William F. Highberger

9                                         Judge of the Superior Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">3</div>

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

<div align="center">**EXHIBIT 11**</div>

# DOCKET NUMBERS FOR INDIVIDUAL PLAINTIFF CASES

Originally filed as *Edgar v. Boston Scientific Corporation*, LASC Case No. BC531849:

| | | |
|---|---|---|
| Allen | Vicky | BC531849A |
| Anderson | Jennifer | BC531849B |
| Aqel | Miryam | BC531849C |
| Bagby | Hazel | BC531849D |
| Camacho | Rosa | BC531849E |
| Campbell | Toni | BC531849F |
| Carney | Alice | BC531849G |
| Chacon | Cynthia | BC531849H |
| Clayton | Loreen | BC531849I |
| Cooper | Christeann | BC531849J |
| Crowell | Ruth | BC531849K |
| Czerniakowski | Jacqueline | BC531849L |
| Dolbee-Norris | Bonnie | BC531849M |
| Edgar | Nadine | BC531849N |
| Fry | Lori | BC531849O |
| Garcia | Elma | BC531849P |
| Granchey | Brenda | BC531849Q |
| Helm | Jennifer | BC531849R |
| Hitchcock | Rosalind | BC531849S |
| Hulsey | Janet | BC531849T |
| Jelaco | Rochelle | BC531849U |
| Keiser | Sandra | BC531849V |
| Kowarsh | Maria | BC531849W |
| Landon | Cheryl | BC531849X |
| Limbasuta | Jennifer | BC531849Y |
| Mansey | Kim | BC531849Z |
| McLeod | Barbara | BC531849AA |
| Petrich | Donna | BC531849BB |
| Poper | Mary | BC531849CC |
| Porter | Snadra | BC531849DD |
| Powe | Kathy | BC531849EE |
| Riegel | Shirley | BC531849FF |
| Serrano | Gladys | BC531849GG |
| Sites | Patricia | BC531849HH |
| Smith | Diana | BC531849II |
| Smith | Lorma | BC531849JJ |
| Stalker | Evelyn | BC531849KK |
| Stepp | Jane | BC531849LL |

4

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

## EXHIBIT 11

| Terrell | Karen | BC531849MM |
| Thompson | Christi | BC531849NN |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

Originally filed as *Mauck v. Boston Scientific Corporation*, LASC Case No. BC515043:

| | | |
|---|---|---|
| Aho | Audrey | BC515043A |
| Babb | Karen | BC515043B |
| Ballard | Melissa | BC515043C |
| Barraza | Gloria | BC515043D |
| Barton | Tammy | BC515043E |
| Bivins | Brenda | BC515043F |
| Boshers | Debra | BC515043G |
| Brenner | Kay | BC515043H |
| Carpenter | Katie | BC515043I |
| Clark | Rosanna | BC515043J |
| Craig | Amanda | BC515043K |
| Craven | Shanie | BC515043L |
| Crowe | Collette | BC515043M |
| Damberval | Nicole | BC515043N |
| Dean | Ledonna | BC515043O |
| Fisher | Raina | BC515043P |
| Foley | Jennie | BC515043Q |
| Fullen | Donna | BC515043R |
| Garza | Pamela | BC515043S |
| Goforth | Tammy | BC515043T |
| Griffin | Renee | BC515043U |
| Harper | Linda | BC515043V |
| Harris | Celena | BC515043W |
| Hatcher | Margo | BC515043X |
| Henry | April | BC515043Y |
| Howe | Carolyn | BC515043Z |
| Hoyer | Monica | BC515043AA |
| Hunt | Brenda | BC515043BB |
| Jeane | Gwendolyn | BC515043CC |
| Johnson | Beth | BC515043DD |
| Knox | Wannita | BC515043EE |
| Lafleur | Sonya | BC515043FF |
| Lambert | Rosemarie | BC515043GG |
| Leach | Anita | BC515043HH |
| Lester | Ruby | BC515043II |
| Lewis | Carrie | BC515043JJ |
| Martin | Helen | BC515043KK |
| Mauck | Cheryl | BC515043LL |
| Maxwell | Kristy | BC515043MM |
| Mccarthy | Debra | BC515043NN |

6

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

| | | |
|---|---|---|
| Mccorkle | Vicki | BC515043OO |
| McDonald | Christie | BC515043PP |
| Morales | Avelina | BC515043QQ |
| Morrison-McCool | Tammy | BC515043RR |
| Mosley | Martha | BC515043SS |
| Neighbors | Dorothy | BC515043TT |
| Novotny | Angelina | BC515043UU |
| Ohler | Tracy | BC515043VV |
| Phillips | Jean | BC515043WW |
| Phillips | Judy | BC515043XX |
| Pirkle | Tammy | BC515043YY |
| Prout | Mary | BC515043ZZ |
| Quintero | Peggy | BC515043AAA |
| Raines | Angel | BC515043BBB |
| Red | Tracey | BC515043CCC |
| Rodriguez | Teresa | BC515043DDD |
| Rogers | Janet | BC515043EEE |
| Rowe | Frances | BC515043FFF |
| Sansom | Sandra | BC515043GGG |
| Searles | Kezia | BC515043HHH |
| Slye | Katherine | BC515043III |
| Snodgrass | Jacqueline | BC515043JJJ |
| Sparks | Karolyn | BC515043KKK |
| Sprouse | Kathryn | BC515043LLL |
| Stone | Samantha | BC515043MMM |
| Sullivan | Lena | BC515043NNN |
| Taylor | Brenda | BC515043OOO |
| Vodicka | Doni | BC515043PPP |
| Wallace | Virginia | BC515043QQQ |
| Wililams | Courtney | BC515043RRR |
| Williams | Linda | BC515043SSS |
| Wootton | Lisa | BC515043TTT |
| Wyman | Mary | BC515043UUU |

7

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

Originally filed as *Muller v. American Medical Systems, Inc.*, LASC Case No. BC515042:

| | | |
|---|---|---|
| Aschraft | Stacey | BC515042A |
| Beck | Brenda | BC515042B |
| Becker | Gretchen | BC515042C |
| Byrd | Tracy | BC515042D |
| Cantrell | Evelyn | BC515042E |
| Carcich | Marsha | BC515042F |
| Cavazos | Rosabel | BC515042G |
| Conaway | Ashley | BC515042H |
| Cooper | Connie | BC515042I |
| Crichlow | Verdina | BC515042J |
| Crim | Debra | BC515042K |
| Criner | Julie | BC515042L |
| Cross | Dorothy | BC515042M |
| Dalton | Barbara | BC515042N |
| Davis | Redethis | BC515042O |
| Feuchtwanger | Carolann | BC515042P |
| Flores | Rosa | BC515042Q |
| Gebeau | Amanda | BC515042R |
| Grant | Shannon | BC515042S |
| Hall | Janice | BC515042T |
| Hammond | Sara | BC515042U |
| Heath | Christine | BC515042V |
| Hogan | Donna | BC515042W |
| Holland | Victoria | BC515042X |
| Holman | Debra | BC515042Y |
| Jackson | Tina | BC515042Z |
| Jimenez | Tawana | BC515042AA |
| Johnston | Karen | BC515042BB |
| Jones | Linda | BC515042CC |
| Jordan | Bridgett | BC515042DD |
| Jordan | Dorothy | BC515042EE |
| Jordan | Tina | BC515042FF |
| Kelsoe | Cynthia | BC515042GG |
| Kerr | Sharon | BC515042HH |
| King | Wanda | BC515042II |
| Kinsey | Amy | BC515042JJ |
| Lambert | Kim | BC515042KK |
| Langella | Dale | BC515042LL |
| Mantay | Megan | BC515042MM |

8

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

**400**

| Martin | Julie | BC515042NN |
|---|---|---|
| Martinez | Pauline | BC515042OO |
| McBride | Anna | BC515042PP |
| Mitchell | Lisa | BC515042QQ |
| Morgan-Thomas | Deborah | BC515042RR |
| Muller | Shannon | BC515042SS |
| Mullins | Evelyn | BC515042TT |
| Nelson | Barbara | BC515042UU |
| Nelson | Patricia | BC515042VV |
| Panchou | Wanda | BC515042WW |
| Peterson | Tracy | BC515042XX |
| Riggs | Traci | BC515042YY |
| Robinson | Deborah | BC515042ZZ |
| Rogers | Sarah | BC515042AAA |
| Rowe | Tracie | BC515042BBB |
| Ruester | Debbi | BC515042CCC |
| Schoen | Shirley | BC515042DDD |
| Seal | Dottie | BC515042EEE |
| Standford | Sherri | BC515042FFF |
| Struck | Michelle | BC515042GGG |
| Tennant | Lori | BC515042HHH |
| Turner | Vickie | BC515042III |
| Vance | Debra | BC515042JJJ |
| Vanderpool | Deborah | BC515042KKK |
| Wright | Asa | BC515042LLL |
| Zavoda | Debbie | BC515042MMM |
| Zeiber | Patricia | BC515042NNN |

9

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

Originally filed as *Pate v. Boston Scientific Corporation*, LASC Case No. BC515037:

| | | |
|---|---|---|
| Adkins | Donna | BC515037A |
| Ainesworth | Eva | BC515037B |
| Algaier | Ruthie | BC515037C |
| Behel | Leona | BC515037D |
| Benson | Carol | BC515037E |
| Bergin | Tresa | BC515037F |
| Bishop | Mary | BC515037G |
| Blankenship | Cherri | BC515037H |
| Bond | Mary | BC515037I |
| Boutwell | Rebecca | BC515037J |
| Branham | Yvonne | BC515037K |
| Calhoun | Melinda | BC515037L |
| Campbell | Darlene | BC515037M |
| Christian | Geneva | BC515037N |
| Dabney | Patricia | BC515037O |
| Dale | Nicole | BC515037P |
| England | Gwendolyne | BC515037Q |
| Flores | Donna | BC515037R |
| Floyd | Robin | BC515037S |
| Gillum | Lois | BC515037T |
| Giordano | Jennifer | BC515037U |
| Hale | Barbara | BC515037V |
| Haymes | Wilma | BC515037W |
| Hodges | Kristen | BC515037X |
| Hutchinson | Denise | BC515037Y |
| Jennings | Kathy | BC515037Z |
| Jordan | Bessie | BC515037AA |
| Kelley | Sally | BC515037BB |
| King | Mary | BC515037CC |
| Kmieciak | Sharyn | BC515037DD |
| Kreder | Eddie | BC515037EE |
| Lackey | Donna | BC515037FF |
| Leard | Adeline | BC515037GG |
| Lingnau | Pamela | BC515037HH |
| Macmurdo | Susan | BC515037II |
| Maret | Robin | BC515037JJ |
| McAlister | Ann | BC515037KK |
| McQuiston | Sylvia | BC515037LL |
| Moorehead | Allison | BC515037MM |
| Navarro | Deborah | BC515037NN |

10

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**

| Nimmer | Randee | BC515037OO |
| Oliver-Stitt | Sylvia | BC515037PP |
| Pate | Sherry | BC515037QQ |
| Penza | Josephine | BC515037RR |
| Pruett | Charlene | BC515037SS |
| Reimond | Darlene | BC515037TT |
| Reynolds | Cheryl | BC515037UU |
| Richards | Janice | BC515037VV |
| Rivera | Myrtelina | BC515037WW |
| Roberts | Joan | BC515037XX |
| Romero | Esther | BC515037YY |
| Sanders | Rebecca | BC515037ZZ |
| Scaramuzzini | Maryann | BC515037AAA |
| Scheibner | Valerie | BC515037BBB |
| Sokerka | Anita | BC515037CCC |
| Stanley | Lela | BC515037DDD |
| Thompson | Yvette | BC515037EEE |
| Tittle | Tami | BC515037FFF |
| Torres | Rosemary | BC515037GGG |
| Towery | Beverly | BC515037HHH |
| Warren | Karen | BC515037III |
| Waschkowski | Karen | BC515037JJJ |
| Weaver | Sue | BC515037KKK |
| Webb | Anna | BC515037LLL |
| Yarbrough | Sandra | BC515037MMM |

11

ORDER GRANTING DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO SEVER PLAINTIFFS' CLAIMS

273033 V1

**EXHIBIT 11**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**TERRY NAFISI**
District Court Executive and
Clerk of Court

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

July 21, 2015

 Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
 111 North Hill Street
 Los Angeles, CA 90012

Re:  Case Number:  _____2:15–cv–05315–PA–AGR_____
      Previously Superior Court Case No.  _____BC531848F_____
      Case Name:  _____FLORENCE BUCHANAN V. JOHNSON AND JOHNSON ET AL_____

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on  _____7/21/2015_____, the above–referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  _/s/ *Grace Kami*_
      Deputy Clerk
      (213) 894–0747
      Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

_____
Date                                                Deputy Clerk

**EXHIBIT 12**

**404**

CV–103 (09/08)    LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Florence Buchanan ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

## EXHIBIT 12
## 405

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

### A.      Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Missouri.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.      Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]      Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT 12**
**406**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|----------|----------------------|------|---------------|

| Title | Florence Buchanan v. Johnson & Johnson, et al. |
|-------|------------------------------------------------|

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.      Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

facts about Plaintiff.

### EXHIBIT 12
### 407

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

# EXHIBIT 12
## 408

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848F, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2]     Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT 12**
**409**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

  Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
  111 North Hill Street
  Los Angeles, CA 90012

Re:  Case Number:    2:15–cv–05317–PA–E
      Previously Superior Court Case No.    BC531848H
      Case Name:    SARA CARMONA V. JOHNSON & JOHNSON ET AL

Dear Sir/Madam:

     Pursuant to this Court's ORDER OF REMAND issued on    7/21/2015    , the above–referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  /s/ *Grace Kami*
     Deputy Clerk
     (213) 894–0747
     Western Division

*cc: Counsel of record*

─────────────────────────────────────────────

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

_____
Date

Deputy Clerk

**EXHIBIT 12**
**410**

CV–103 (09/08)    LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Sara Carmona ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

## EXHIBIT 12
## 411

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

## A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Florida. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

## B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT 12**

**412**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.     Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

facts about Plaintiff.

### EXHIBIT 12
### 413

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

### Conclusion



**EXHIBIT 12**

**414**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848H, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2/]      Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

EXHIBIT 12
415



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**TERRY NAFISI**
District Court Executive and
Clerk of Court

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

July 21, 2015

 Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse 
 111 North Hill Street 
 Los Angeles, CA 90012 

Re:  Case Number:    2:15–cv–05371–PA–GJS    
         Previously Superior Court Case No.    BC531848QQ    
         Case Name:    MARY ORSI V. JOHNSON AND JOHNSON ET AL    

Dear Sir/Madam:

        Pursuant to this Court's ORDER OF REMAND issued on    7/21/2015    , the above–referenced case is hereby remanded to your jurisdiction.

        Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

        Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

                                        Respectfully,

                                        Clerk, U.S. District Court

                                        By:  /s/ *Grace Kami*   
                                             Deputy Clerk
                                             (213) 894–0747
                                             Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

                                        Clerk, Superior Court

                                        By: _____
_____                    Deputy Clerk
Date

**EXHIBIT 12**

**416**

CV–103 (09/08)    LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:

None

Attorneys Present for Defendants:

None

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Mary Orsi ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

## EXHIBIT 12
### 417

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Washington. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT 12**
**418**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.     Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

facts about Plaintiff.

**EXHIBIT 12**
**419**

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

## EXHIBIT 12
## 420

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

**Conclusion**

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848QQ, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2]  Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT 12**
**421**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

 Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
 111 North Hill Street
 Los Angeles, CA 90012

Re:  Case Number: _____2:15–cv–05382–PA–FFM_____
     Previously Superior Court Case No. _____BC531848BBB_____
     Case Name: _____XOCHILT ROBINSON V. JOHNSON AND JOHNSON ET AL_____

Dear Sir/Madam:

       Pursuant to this Court's ORDER OF REMAND issued on _____7/21/2015_____, the above–referenced case is hereby remanded to your jurisdiction.

       Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

       Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

                                        Respectfully,

                                        Clerk, U.S. District Court

                                        By: _/s/ Grace Kami_
                                            Deputy Clerk
                                            (213) 894–0747
                                            Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

                                        Clerk, Superior Court

                                        By: _____

_____
Date                                        Deputy Clerk

**EXHIBIT 12**

**422**

CV–103 (09/08)    LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Xochilt Robinson ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

## EXHIBIT 12
## 423

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

## A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. <u>Kantor v. Wellesley Galleries, Ltd.</u>, 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. <u>See</u> <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." <u>Id.</u> For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); <u>see also</u> <u>Indus. Tectonics, Inc. v. Aero Alloy</u>, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. <u>See</u> <u>Johnson v. Columbia Props. Anchorage, LP</u>, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of California. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

## B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. <u>Gaus</u>, 980 F.2d 564, 566 (9th Cir. 1992) (<u>citing</u> <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." <u>Matheson v. Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." <u>Id.</u> at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

EXHIBIT 12
424

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.     Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

facts about Plaintiff.

### EXHIBIT 12
### 425

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | | Date | July 21, 2015 |
|----------|----------------------|---|------|---------------|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

## EXHIBIT 12
## 426

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/] Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848BBB, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2/] Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional. See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional. While the district court may remand any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

EXHIBIT 12
427



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**TERRY NAFISI**
District Court Executive and
Clerk of Court

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

July 21, 2015

 Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
 111 North Hill Street
 Los Angeles, CA 90012

Re: Case Number:  ____2:15–cv–05385–PA–E____
     Previously Superior Court Case No.  ____BC531848EEE____
     Case Name:  ____VICKIE SKELTON V. JOHNSON AND JOHNSON ET AL____

Dear Sir/Madam:

     Pursuant to this Court's ORDER OF REMAND issued on  ____7/21/2015____, the above–referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  _/s/ Grace Kami_
     Deputy Clerk
     (213) 894–0747
     Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

_____     By: _____
Date                              Deputy Clerk

**EXHIBIT 12**
**428**

CV–103 (09/08)   LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Vickie Skelton ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

**EXHIBIT 12**

**429**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | | Date | July 21, 2015 |
|---|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | | |

## A. Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Arkansas. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

## B. Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]     Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT 12**
**430**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.    Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

facts about Plaintiff.

**EXHIBIT 12**

**431**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

## EXHIBIT 12
### 432

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | | Date | July 21, 2015 |
|---|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | | |

**Conclusion**

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2] Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848EEE. See 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction.

IT IS SO ORDERED.

---

[2] Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional. See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional. While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT 12**
**433**

UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE: BOSTON SCIENTIFIC CORP.,
PELVIC REPAIR SYSTEM PRODUCTS
LIABILITY LITIGATION                                        MDL No. 2326

This Document Relates to the Cases Identified
Below:

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| SHARON JENNINGS-WELCH AND ) <br> MICHAEL WELCH, spouse, ) <br> ) <br>         Plaintiffs, ) <br> ) <br> UNITED HEALTHCARE ) <br> INSURANCE COMPANY, ) <br> BLUE CROSS BLUE SHIELD OF ) <br> WISCONSIN, ) <br>     Involuntary Plaintiffs, ) <br> v. ) <br> ) <br> WISCONSIN INJURED PATIENTS AND ) <br> FAMILIES COMPENSATION FUND, ) <br> BOSTON SCIENTIFIC CORPORATION, ) <br> JOHNSON & JOHNSON, ETHICON, INC. ) <br> PREFERRED PROFESSIONAL ) <br> INSURANCE COMPANY, AND ) <br> DENNIS P. MILLER, M.D. ) <br> ) <br>      Defendants. ) | Case No. 2:13-cv-00644 <br><br> JUDGE J.P. STADTMUELLER |

**DEFENDANT BOSTON SCIENTIFIC CORPORATION'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO VACATE CTO-72 AS TO JENNINGS-WELCH**

Defendant Boston Scientific Corporation ("Boston Scientific"), by and through counsel,

submits this Response in Opposition to Plaintiffs' Motion to Vacate CTO-72, and respectfully

**EXHIBIT 13**
**434**

requests that the Panel transfer this action to Multidistrict Litigation No. 2326 ("MDL No. 2326") without further delay.

## INTRODUCTION

Plaintiffs Sharon Jennings-Welch and Michael Welch have moved to vacate the order transferring the above-captioned action to the Honorable Joseph Goodwin of the Southern District of West Virginia for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. In support, Plaintiffs argue that a pending motion to remand before the United States District Court for the Eastern District of Wisconsin should bar the transfer.[1] This Panel has rejected this argument many times, and for the reasons discussed herein, it should reject it again.

In CTO-1, the Panel stated that, "It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of West Virginia and assigned to Judge Goodwin." *See* (Doc. 56) Conditional Transfer Order (CTO-1) at ¶ 2. The Panel is correct.

Plaintiffs allege that Sharon Jennings-Welch was implanted with a pelvic mesh product manufactured by Boston Scientific and that she sustained injuries as a result thereof. Thus, this case shares common questions of fact and law with all of the other actions that have been transferred to MDL No. 2326. As this Panel has previously recognized, the pendency of a motion to remand is not a proper ground for vacating a Conditional Transfer Order because the transferee judge can easily rule on such motions in the MDL. Plaintiffs' contrary allegations notwithstanding, transfer to the MDL – along with all other similarly-situated actions – will

---

[1] On June 12, 2013, co-defendants Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon") filed a Motion to Stay all proceedings pending transfer of this case to MDL No. 2326. Plaintiffs opposed Ethicon's Motion to Stay on July 1, 2013. Plaintiffs subsequently filed a Motion to Remand on July 2, 2013, which Ethicon opposed on July 22, 2013.

**EXHIBIT 13**

2

promote the just and efficient conduct of the litigation.  The *Jennings-Welch* case should be transferred to Judge Goodwin without delay.

## ARGUMENT

### A. Plaintiffs' Pending Motion to Remand Does Not Weigh Against MDL Transfer.

This Panel's longstanding precedent firmly establishes that the presence of a pending remand motion is not a valid basis upon which to vacate a Conditional Transfer Order.  Indeed, Plaintiffs fail to cite a single Panel opinion in support of their argument that transfer is somehow improper in light of their jurisdictional objection.  Instead, Plaintiffs mainly argue the *merits* of their remand motion, and conclusively allege that they believe it will be granted, thus stripping the federal court of jurisdiction.

As a preliminary matter, the merits of Plaintiffs' remand motion are not at issue in this motion.  "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand."  *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990).  Indeed, "the sole issue . . . is the merits of the transfer viewed against the purposes of the multidistrict statutory scheme."  *Id.*

Under 28 U.S.C. § 1407, the Panel has authority to transfer civil actions pending in different districts to any district for coordinated or consolidated pretrial proceedings if: (i) the actions involve one or more common questions of fact; (ii) transfer would serve the convenience of the parties and witnesses; and (iii) transfer would promote the just and efficient conduct of the actions.  *See* 28 U.S.C. § 1407(a).  This action clearly satisfies each of these requirements.  Like the Complaints in the other cases already transferred to Judge Goodwin's court, Plaintiffs allege that Sharon Jennings-Welch suffered physical injuries after she was surgically implanted with a

**EXHIBIT 13**
3
**436**

pelvic mesh product manufactured by Boston Scientific. Plaintiffs notably do not dispute that
their lawsuit raises common questions of fact with the other actions in MDL No. 2326.

Instead, Plaintiffs primarily argue that there would be no uniformity or judicial economy
served by allowing the MDL Court to determine jurisdiction. DKT. No. 601-1 at 7. Plaintiffs,
however, provide little meaningful analysis to support this argument beyond quoting a paragraph
from a case that is easily distinguishable from this case. *See id.* (citing *Barragan v. Warner-
Lambert Co.*, 216 F. Supp. 2d 627, 630 (W.D. Tex. 2002)). *Barragan* is distinguishable from
this case because the district court's decision in *Barragan* was "unquestionably supported by
case law, *including case law from the MDL Court.* Hence, there [was] no risk of [the] Court
contributing to the alleged inconsistent decisions issued by federal district courts." *Barragan*,
216 F.Supp.2d at 631 (emphasis added). But unlike *Barragan*, the MDL court here has not
addressed the jurisdictional issues presented in this case and, therefore, the risk of district courts
issuing inconsistent rulings is still present. The Panel has consistently rejected similar arguments
and should do so again here.

Stated simply, the "pendency of a motion to remand to state court is not a sufficient basis
to avoid inclusion in Section 1407 proceedings. We note that motions to remand . . . can be
presented to and decided by the transferee judge." *In re VIOXX Prods. Liab. Litig.*, 360 F. Supp.
2d 1352, 1354 (J.P.M.L. 2005). Indeed, judicial efficiency is often better-served by permitting
the MDL Court to decide a remand motion. *See, e.g., In re Bayer Corp. Combination Aspirin
Prod. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2009); *In re
Gadolinium Contrast Dyes Prods. Liab. Litig.*, 559 F. Supp. 2d 1402, 1403 (J.P.M.L. 2008)
("Plaintiffs can present their motions for remand to state court to the transferee court."); *In re
Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001)

**EXHIBIT 13**
4
**437**

("there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995) ("We observe that the pending motion to remand to the Northern District of Alabama action to state court can be presented to and decided by the transferee judge."); *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (J.P.M.L. 1979) (transfer would enable "a single judge to consider these motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) ("We see no reason for delaying our decision. Because these actions involve questions of fact identical to those raised in the actions previously transferred by the Panel, transfer is necessary in order to eliminate the possibility of duplicative discovery and conflicting pretrial rulings.").

This case is no different. There is no good reason, consistent with the policies underpinning 28 U.S.C. § 1407, why United States District Judge Goodwin cannot hear Plaintiffs' remand motion after transfer. Namely, Plaintiffs' motion to remand is not unique. The crux of their motion is that diversity jurisdiction is lacking because they have asserted claims against Sharon Jennings-Welch's healthcare provider – who is an in-state defendant. This jurisdictional issue is "easily capable of arising in hundreds of other cases in other district courts throughout the nation" – each of which shares the same common questions of law and fact with this medical device product liability lawsuit. *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); *see Johnson v. AMR Corp.*, Nos. 95-cv-7659, to 95-cv-7664, 1996 WL 164415, *3 (N.D. Ill. Apr. 3, 1996) (staying consideration of motion to remand involving allegations of fraudulent joinder pending MDL transfer). In fact, other cases involving similar allegations have already been transferred to

**EXHIBIT 13**

**438**

MDL No. 2326, or are currently pending before the Panel.  *See Cortez et al. v. Kiani-Khozani, M.D. et al.*, No. 7:13-cv-00036, ECF No. 16 (S.D. Tex. Jun. 11, 2013) (transferred to MDL No. 2326 over objection); *Hannig v. Juarez et al.*, No. 2:12-cv-02058, ECF No. 12 (D. Nev. Apr. 1, 2013) (transferred to MDL No. 2326 over objection); *Muhammad v. Amisub of SC, Inc.*, No. 0:13-cv-288, ECF No. 3 (D.S.C. Feb. 13, 2013) (transferred to MDL No. 2326 – no objection); *Williams v. Baptist Health et al.*, No. 4:12-cv-00683, ECF No. 11 (E.D. Ark. Feb. 7, 2013) (transferred to MDL No. 2326 over objection); *Nutt et al. v. Boston Scientific Corp. et al.*, No. 5:12-cv-00197, ECF No. 3 (M.D. Ga. Jun. 13, 2012) (transferred to MDL No. 2326 – no objection); *Malcolm v. Boston Scientific Corporation et al.*, No, 3:12-cv-05017, ECF No. 25 (W.D. Mo. Jun. 11, 2012) (transferred to MDL No. 2326 over objection).  Thus, the real economy lies in transferring all similarly-situated cases to MDL No. 2326, so that "the [same] jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course.  Consistency as well as economy is thus served."  *In re Ivy*, 901 F.2d. at 9.

Neither Plaintiffs nor Boston Scientific have any way of knowing when either Court will rule on Plaintiffs' motion to remand.  However, Judge Goodwin has consistently reiterated his intent to resolve pending motions on the front end of the MDL.  *See, e.g.*, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02326 (S.D.W. Va. Feb. 29, 2012).  *See also In re: Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327 (J.P.M.L. Jun. 11, 2012) (ECF No. 366) (transferring MOW/3:12-cv-05017 and TXS/4:12-cv-00339 over similar objection); *In re American Medical Systems, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2325 (J.P.M.L. Jun. 11, 2012) (ECF No. 352) (transferring MOE/4:11-cv-02064 and TXS/3:12-cv-00016 over similar objection).  Thus, transfer of this case to MDL No. 2326 will

**EXHIBIT 13**

enable the parties to take advantage of the multiple efficiencies and savings of time and resources associated with consolidated and coordinated pretrial proceedings.

## CONCLUSION

This case is no different than the other cases involving Boston Scientific's pelvic mesh products that have already been transferred to MDL No. 2326. It is a simple, longstanding rule of this Court that questions regarding federal jurisdiction do not preclude MDL transfer under 28 U.S.C. § 1407. The legal and factual issues that this case shares with the cases already transferred to MDL No. 2326 establish that a Conditional Transfer Order was properly entered in the *Jennings-Welch* case. As established above, Plaintiffs' arguments to the contrary lack merit, and their Motion to Vacate CTO-56 should be denied.


Dated: July 29, 2013


/s/ Jon A. Strongman
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANT**
**BOSTON SCIENTIFIC CORP.**


**EXHIBIT 13**
**440**

## UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

**IN RE: BOSTON SCIENTIFIC CORP.,**
**PELVIC REPAIR SYSTEM PRODUCTS**
**LIABILITY LITIGATION**                                    MDL No. 2326

      This Document Relates to the Cases Identified
Below:

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| SHARON JENNINGS-WELCH AND MICHAEL WELCH, spouse, ) ) ) | |
|     Plaintiffs, ) ) | Case No. 2:13-cv-00644 |
| UNITED HEALTHCARE INSURANCE COMPANY, BLUE CROSS BLUE SHIELD OF WISCONSIN, ) ) ) ) ) | JUDGE J.P. STADTMUELLER |
|     Involuntary Plaintiffs, ) | |
| v. ) ) | |
| WISCONSIN INJURED PATIENTS AND FAMILIES COMPENSATION FUND, BOSTON SCIENTIFIC CORPORATION, JOHNSON & JOHNSON, ETHICON, INC. PREFERRED PROFESSIONAL INSURANCE COMPANY, AND DENNIS P. MILLER, M.D. ) ) ) ) ) ) ) ) | |
|     Defendants. ) | |

---

## CERTIFICATE OF SERVICE

    I, Jon A. Strongman, hereby certify that a true and correct copy of the foregoing was

served on July 29, 2013, via ECF and U.S. Mail upon the following counsel of record:

## EXHIBIT 13
### 441

**James P. Scoptur**
AIKEN & SCOPTUR, SC
2600 N Mayfair Road, Suite 1030
Milwaukee, Wisconsin 53226
Telephone:  414-225-0260
Fax:  414-225-9666
james@aikenandscoptur.com
*Counsel for Plaintiffs*

**Tim K. Goss**
FREESE & GOSS PLLC
3031 Allen Street, Suite 100
Dallas, Texas 75204
Telephone:  214-761-6610
Fax:  214-761-6688
tim@freeseandgoss.com
*Counsel for Plaintiffs*

**Tamara L. Banno**
TAMARA L. BANNO, PC
3031 Allen Street, Suite 100
Dallas, Texas 75204
Telephone:  214-550-5223
Fax:  214-550-5223
tbanno@tlb-law.com
*Counsel for Plaintiffs*

**David. P. Matthews**
**Julie L. Rhoades**
MATTHEWS & ASSOCIATES
2509 Sackett St.
Houston, Texas 77098
Telephone:  713-522-5250
dmatthews@thematthewslawfirm.com
jrhoades@thematthewslawfirm.com
*Counsel for Plaintiffs*

**Christy D. Jones**
BUTLER SNOW
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Telephone:  601-948-4523
Fax:  601-985-4500
christy.jones@butlersnow.com
*Counsel for Co-Defendants*
*Johnson & Johnson and Ethicon, Inc.*

**EXHIBIT 13**
9
**442**

**Catherine A. Faught Pollard**
QUARLES & BRADY LLP
411 E Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202-4497
Telephone: 414-277-5000
Fax: 414-271-3552
catherine.faught@quarles.com
*Counsel for Co-Defendants*
*Johnson & Johnson and Ethicon, Inc.*

**Michael P. Malone**
HINSHAW & CULBERTSON LLP
100 E Wisconsin Ave., Suite 2600
Milwaukee, Wisconsin 53202-4115
Telephone: 414-276-6464
Fax: 414-276-9220
MMalone@Hinshawlaw.com
*Counsel for Co-Defendants*
*Dr. Dennis P. Miller and*
*Preferred Professional Insurance Co.*

BLUE CROSS BLUE SHIELD OF WISCONSIN
c/o Registered Agent: CT Corporation System
8040 Excelsior Drive, Suite 200
Madison, WI 53717

UNITED HEALTHCARE INSURANCE COMPANY
c/o Registered Agent: CT Corporation System
8040 Excelsior Drive, Suite 200
Madison, WI 53717

By: /s/ Jon A Strongman
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANT**
**BOSTON SCIENTIFIC CORP.**

**EXHIBIT 13**
**443**